## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

RONALDO LIGONS,                                    File No. 15-CV-2210, PJS/BT
BARRY MICHAELSON,
JOHN ROE, and JANE ROE,
JOHN MILES AND JANE MILES,
JOHN STILES AND JANE STILES,
individually, and on behalf of those similarly situated,

       Plaintiffs,

v.                                                 **FIRST AMENDED**

MINNESOTA DEPARTMENT OF CORRECTIONS,               **COMPLAINT**

THOMAS ROY,                                        **JURY DEMANDED**
Minnesota Commissioner of Corrections,             for all claims triable to
in his official capacity,                          the jury;

DR. DAVID A. PAULSON, M.D.,                         **EQUITABLE RELIEF**
in his individual and his official capacities for actions
under color of law as Medical Director,            **AND DECLARATORY**
Minnesota Department of Corrections,
                                                    **RELIEF DEMANDED**

NANETTE LARSON,                                    **FOR CLASS CLAIMS**
in her individual and her official capacities
for actions under color of law as Health Services Director,   **AND INDIVIDUAL**
Minnesota Department of Corrections,
                                                    **CLAIMS AMENABLE**
Dr. D. QUIRAM, M.D.,
in his individual and his official capacities for   **TO DECLARATORY**
actions under color of law as Plaintiffs' treating physician
at Minnesota Correctional Facility, Stillwater,    **AND EQUITABLE**

Dr. R. HANSON, M.D.,                               **RELIEF**
in his individual and his official capacities
for actions under color of law as Plaintiffs' treating physician
at Minnesota Correctional Facility, Stillwater,

JOHN and JANE DOES A - J,
in their respective individual and official capacities
for actions under color of law as staff of
Minnesota Correctional Facilities, Stillwater and Faribault,

and

CENTURION OF MINNESOTA, L.L.C.,

    Defendants,

## INTRODUCTION

Plaintiffs are inmates of the Minnesota Department of Corrections. The plaintiff class representatives, RONALDO LIGONS and BARRY MICHAELSON, suffer from the serious medical need, disability, and life-threatening viral disease known as hepatitis-C (HCV for "hepatitis-C virus"). Prior to late 2013, HCV treatment consisted of Interferon injections which lasted nearly a year with low levels of success and serious side effects. In December 2013, FDA-designated HCV "breakthrough" drugs were approved to cure HCV at a 95% rate, with one-pill-per-day for 12 weeks irrespective of the stage of the infection. In January 2014, the American Association for the Study of Liver Disease and Association for the Study of Infectious Disease (AALSD/ASID) adopted the "breakthrough" drug 12-week daily-pill therapy protocol, with the 95% cure rate, as the hepatitis-C treatment community standard-of-care, thus replacing the highly toxic and less effective 48-week Interferon-based injection therapy in very short order.

For non-medical reasons, Defendants refuse to provide the "breakthrough" drug treatment based on the medical needs of the Plaintiffs, *viz.* the hepatitis-C treatment community standard-of-care, which will cure Plaintiffs' HCV infection in three months from its inception.

Since June 2014, the Federal Bureau of Prisons, the Center for Disease Control, the

United States Public Health Service, the Food and Drug Administration, and the United States Department of Veterans Affairs have all recognized the changed standard-of- care within the hepatitis-C medical treatment community for HCV patients in their approval and implementation of one-pill-per-day, 12-week protocols for the treatment of HCV patients, as the up-to-date standard of care in the hepatitis-C treatment community.

By December 2014, FDA approval of Harvoni and Viekera-Pak, two additional "breakthrough" drugs, eliminated toxic Interferon entirely in 12-week oral treatments as the current standard of care post-December 2014. The dangerous and serious side-effects associated with the 48-week toxic Interferon-injection therapy have rapidly made toxic Interferon medically obsolete among physicians specializing in treating HCV infections.

The plaintiffs, individually and as a class, sue the Defendants in their respective, specified individual and official capacities for their joint and several actions that constitute deliberate indifference to their serious medical needs as Hepatitis C patients, in violation of their clearly established Eighth and Fourteenth Amendment rights under the United States Constitution, for which 42 U.S.C. § 1983 provides declaratory, equitable, and legal remedies. Defendants have refused Plantiffs' repeated requests to be treated with the up-to-date medications that cure all stages of HCV infection, irrespective of viral load, and, with minor variations, irrespective of genotype of HCV, for non-medical reasons of administrative convenience or cost, which are not related to the individual medical needs of Plaintiffs.

The plaintiffs, individually and as a class, sue the Minnesota Department of Corrections, a recipient of federal monies, Commissioner Tom Roy, Centurion of

Minnesota, L.L.C., a recipient of federal monies, and other named Defendants in their official capacities for acts constituting discrimination because of their disability of Hepatitis C under Title II of the Americans with Disabilities Act as Amended and § 504 of the Rehabilitation Act of 1973.

The plaintiff class representatives have exhausted their administrative remedies under governing national and state laws.

The plaintiffs demand jury trial for all claims triable to the jury.

## JURISDICTION AND VENUE

1. Plaintiffs set forth claims under U.S. Const. amend. VIII and XIV, 42 U.S.C. § 12131 et seq., and 29 U.S.C. § 791 et seq.

2. 28 U.S.C. §§ 1331 (federal question) and 1343(a)(4) (federal civil rights question) confer subject matter jurisdiction on this court.

3. Plaintiffs state claims that arise under Minnesota law.

4. 28 U.S.C. § 1367 confers supplemental jurisdiction for all claims that arise under Minnesota law.

5. The substantial number of events in this lawsuit took place in Washington and Ramsey Counties, state of Minnesota.

6. Plaintiffs lay venue in this court per 28 U.S.C. § 1391.

## PLAINTIFFS

7. Plaintiff RONALDO LIGONS (LIGONS) has been an inmate of MN DOC and its correctional facilities since 1992.

8. In 1998, Ligons was informed by Defendant MN DOC agents, employees, or

4

representatives that he was HCV-positive.

9. The source of was the unsanitary living conditions with the Minnesota Department of Corrections and medical treatment provided therein for his insulin dependent diabetes and other blood exposures.

10. The 48-week, toxic Interferon injection treatment MN DOC provided to Mr. Ligons failed in 2006.

11. Mr. Ligons is to be released from MN DOC custody in more than three months, viz., more than twelve weeks from the date of suit.

12. Mr. Ligons was an inmate of the Minnesota Correctional Facility at Stillwater (MCF Stillwater) until February 2015.

13. Mr. Ligons is a current inmate at the Minnesota Correctional Facility at Faribault (MCF Faribault).

14. As the direct result of the policy and practice of MN DOC and CENTURION OF MINNESOTA, L.L.C., and individual Defendants' conduct, Mr. LIGONS has been denied the current standard-of-care one-pill per day, twelve week HCV treatment that cures HCV at a 95% rate, in deliberate indifference to his serious medical needs as a Hepatitis C sufferer, and because of his disability as a hepatitis C sufferer.

15. Mr. Ligons has been denied HCV curative medication because of non-medical MNDOC policies designed to ration medication to a limited number of inmates, for administrative convenience or money, without regard to Mr. Ligons individual medical needs and disabling case of HCV.

16. Plaintiff **BARRY MICHAELSON** (Michaelson) is an inmate of the **MN DOC** at MCF Stillwater.

17. Defendant **MN DOC** agents, representatives, or employees informed Mr. Michaelson that he was HCV-negative in October 2009, when he entered MN DOC custody.

18. Mr. Michaelson tested HCV positive in 2010, only *after* being double-bunked with a bleeding, HCV-positive cellmate and his exposure to other sources of HCV *in MN DOC facilities.*

19. Mr. Michaelson is to be released in more than three (3) months, viz., more than twelve weeks, from the date of suit.

20. As the direct result of the policy and practice of **MN DOC** and **CENTURION OF MINNESOTA, L.L.C.**, and individual Defendants' conduct, Mr. **LIGONS** and Mr. **MICHAELSON** have been denied the current standard-of-care one-pill per day, twelve week HCV treatment that cures HCV at a 95% rate, in deliberate indifference to their serious medical needs as Hepatitis C sufferers, and because of their disabilities as hepatitis C sufferers.

21. Mr. Michaelson has been denied HCV curative medication because of non-medical MNDOC policies designed to ration medication to a limited number of inmates for administrative convenience or money, without regard to Mr. Michaelson's individual medical needs and disabling case of HCV.

22. In the cases of Mr. Ligons and Mr. Michaelson, HCV is a disability and disease of the digestive and circulatory systems that substantially and materially impairs their

respective major life activities of (a) self-caring, (b) social interaction with other persons, (c) manual tasks particularly those involving knives, scissors, pins, needles, toothbrushes, eating utensils, or shaving razors, (d) reproduction, and (e) life itself.

23. Each day that MN DOC delays treatment of Mr. Ligons' and Mr. Michaelson's cases of HCV, the likelihood of cirrhosis of the liver, liver cancer, a liver transplant, and death from HCV grow for each of them, as well as each member of the Class, as does the likelihood of infection for those with whom they come in contact in MN DOC facilities and, after their respective release, with whom they make contact in the general public.

24. The Plaintiffs' liver, digestive system, and circulatory systems continue to deteriorate, as do those of other members of the named class, the subclass of plaintiffs with known cases of HCV that are not treated, and the subclass of plaintiffs with unknown and untreated cases of HCV.

25. Mr. Ligons and Mr. Michaelson have demanded HCV treatment in accordance with the one-pill a day, twelve week treatment protocol for Sovaldi that the FDA, U.S. Public Health Service, and Center for Disease Control have approved, and which the Federal Bureau of Prisons (FBOP) has approved for administration to HCV-positive federal inmates.

26. The Defendants jointly and severally have denied treatment to plaintiffs Ligons and Michaelson because of the Defendants' respective polic(y/ies) and acts designed to limit or ration anti-HCV medication for non-medical reasons of administrative convenience or cost, unrelated to the individual medical needs of Plaintiffs, or the

medical benefits they would derive from being cured of HCV.

27. Plaintiffs Ligons, Michaelson and those similarly situated, are that portion of the approximately 9,000 inmates at the nine Minnesota Department of Correction (MnDOC or MN DOC) facilities who have tested positive, or will test positive, for HCV (15% would be 1350 inmates).

28. Plaintiffs Ligons and Michaelson have requested the up-to-date 12-week HCV treatment which the FDA has approved since December 2013 and confirmed since December 2014.

29. The Federal Bureau of Prisons (FBOP) adopted the FDA-approved 12-week HCV treatment no later than June 2014.

30. Plaintiffs Ligons and Michaelson reported their respective requests for the FDA-approved 12 week treatment to MN DOC Medical Director David Paulson, M.D., and MN DOC Health Services Director Nanette Larson.

31. Medical Director Dr. Paulson and Health Services Director Larson, jointly and severally, individually and officially, have denied Ligons' and Michaelson's respective requests for the FDA-approved 12 week treatment.

32. Plaintiffs Ligons and Michaels have exhausted their respective administrative remedies under governing federal and state law.

33. Plaintiffs JOHN ROE and JANE ROE are the estimated 50-80% of male and female inmates of MN DOC institutions who have not been screened for HCV, as they were for HIV, and do not know their HCV status.

34. Plaintiffs JOHN MILES AND JANE MILES are the respective male and female

inmates of MN DOC institutions who have tested positive for HCV, and have not received treatment for HCV, in compliance with the professional standard of medical care for HCV-positive individuals that the FDA, FBOP, CDC, U.S. Public Health Service, and U.S. Department of Veterans Affairs approved since December 2013.

35. Plaintiffs JOHN STILES AND JANE STILES are the respective male and female inmates of MN DOC institutions who are HCV-positive, do not know that they are HCV-positive, and have not received treatment for HCV, in compliance with the professional standard of medical care for HCV-positive individuals that the FDA, FBOP, CDC, U.S. Public Health Service, and U.S. Department of Veterans Affairs approved since December 2013.

36. All Plaintiffs are daily exposed to HCV infection, or re-infection while incarcerated, due to the deliberate indifference of Defendants who have not adopted the safer, more effective treatment protocols for HCV treatment adopted by the CDC, U.S. Public Health Service, and Federal BOP to prevent infection and re-infection of inmates.

37. Plaintiffs Ligons and Michaelson reported the FBOP adoption of the FDA-approved 12 week protocol to Dr. Paulson.

38. Dr. Paulson denied Messrs. Ligons' and Michaelson's respective requests.

39. Defendants' knowing refusal to make available the safer and more effective cure for Plaintiffs' HCV infection, and continuing a policy of refusing to make the 12-week treatment and cure available for non-medical reasons of administrative convenience

9

and cost, are prolonging the harm HCV is causing to named Plaintiffs' bodies and life expectancies, and those of other MN DOC inmate class member and other MN DOC inmate subclass members, and demonstrate deliberate indifference to the plaintiffs' respective serious medical needs.

## DEFENDANTS

40. Defendant MINNESOTA DEPARTMENT OF CORRECTIONS (MN DOC, MnDoc, MnDOC) is an agency of the state of Minnesota.

41. Defendant MN DOC has its principal place of business and headquarters in the city of St. Paul, Ramsey County, state of Minnesota.

42. Defendant MN DOC is a recipient of federal funds.

43. Plaintiffs sue Defendant MN DOC for creation and implementation of policies that (a) have directly inflicted harm and demonstrated deliberate indifference to the disability, disease, and serious medical needs of plaintiffs, in defiance of the Plaintiffs' clearly established rights under U.S. Const. amend. VIII and XIV through 42 U.S.C. § 1983, (b) discriminated against Plaintiffs on the basis of their disability in defiance of Title II of the Americans with Disabilities Act as Amended at 42 U.S.C. § 12131 et seq., § 504 of the Rehabilitation Act of 1973 at 29 U.S.C. § 791 et seq., and (c) have directly inflicted harm and demonstrated deliberate indifference to the disability, disease, and serious medical needs of plaintiffs, in defiance of the Plaintiffs' clearly established rights under Minn. Const. Art. I, §§ 2, 5, 7, and 16, for which Minn. Const. Art. I, § 8 provides a remedy.

44. Defendant THOMAS ROY, an adult individual, (Roy, Commissioner Roy, Commissioner) is the Commissioner of Corrections of the MINNESOTA DEPARTMENT OF CORRECTIONS (MN DOC), whom Minnesota Governor Mark Dayton appointed as Commissioner of Corrections.

45. COMMISSIONER ROY is responsible for policy, administration and supervision of staff within MN DOC during all times relevant to this action.

46. Plaintiffs sue COMMISSIONER ROY in his official capacity.

47. Defendant DAVID A. PAULSON, M.D. is an adult individual and the Medical Director of MN DOC, with his office in the Central Office of MN DOC.

48. Dr. Paulson is responsible for medical services within the MN DOC system.

49. On information and belief after reasonable inquiry by the plaintiffs, Dr. Paulson is responsible for the establishment of medical policy that governs the medical treatment of all inmates of MN DOC, including the Plaintiffs.

50. Dr. Paulson has authored *The Facts about HCV,* published by the Hazelden Foundation in 2002 with a second edition in 2008 in which Dr. Paulson held himself out as an HCV expert and treating physician in the Minnesota Department of Human Services.

51. Plaintiffs sue Defendant David Paulson in his respective individual and official capacities for actions taken under color of law as Medical Director, MN DOC.

52. Defendant NANETTE LARSON is an adult individual and the Director of Health

Services in the Central Office of MN DOC.

53. Grievances arising from the denial of medical care, and the denial of Plaintiffs' requested medical care, by MN DOC staff that are appealed to the Central Office are reviewed and ruled upon by NANETTE LARSON in accordance with governing federal law, state law, and applicable MN DOC regulations having the force of law.

54. On information and belief after reasonable inquiry by the plaintiffs, grievances arising from the denial of medical care, and the denial of Plaintiffs' requested medical care, by MN DOC staff that are appealed to the Central Office are reviewed and ruled upon by NANETTE LARSON, after consultation with Defendant PAULSON.

55. Plaintiffs sue Defendant LARSON in her individual and official capacities for her actions taken under color of law as Director of Health Services, MN DOC.

56. DR. D. QUIRAM, M.D., and DR. R. HANSON, M.D., adult individuals, are treating physicians of Plaintiffs.

57. DR. QUIRAM and DR. HANSON provide medical services to Plaintiffs, pursuant to contract with MN DOC.

58. DR. QUIRAM and DR. HANSON have the obligation to provide independent, individualized, safe, effective medical care to each Plaintiff, consistent with current community standards of professional medical care.

59. Plaintiffs sue DR. QUIRAM and DR. HANSON in individual and official capacities for action taken under color of law as Plaintiffs' treating physicians under contract to MN DOC through Defendant CENTURION OF MINNESOTA, L.L.C., for their deliberately indifferent failure to treat Plaintiffs' disability, disease, and serious medical needs of hepatitis C in compliance with current standards of individualized professional medical care.

60. Defendants JOHN and JANE DOES A – J, adult individuals, are male and female doctors, nurses, case managers, correctional officers, supervisors, and MN DOC employees, agents, or representatives, whose work places are MCF Stillwater or MCF Faribault, charged with responding to requests for medical care for hepatitis C from named Plaintiffs, or responding to requests for medical care for hepatitis C from now-unknown inmates of the MN DOC.

61. Plaintiffs sue DEFENDANTS JOHN AND JANE DOE A – J in their respective individual and official capacities for actions taken under color of law for their deliberately indifferent failure to treat Plaintiffs' disability, disease, and serious medical needs of hepatitis C in compliance with current standards of individualized professional medical care.

62. Defendant CENTURION OF MINNESOTA, L.L.C. (CENTURION), is a for-profit limited liability company with its principal business and headquarters in Minnesota, doing business in Minnesota.

63. Defendant CENTURION OF MINNESOTA, L.L.C. (CENTURION),

previously misnamed CENTENE CORPORATION, is a recipient of federal funds.

64. Defendant CENTURION contracted with MN DOC to provide medical treatment services to MN DOC inmates for sixty-seven million dollars ($67,000,000), beginning on 1 January 2014.

65. Plaintiffs sue Defendant CENTURION for creation and implementation of policies, pursuant to contract with MN DOC, that have directly inflicted harm and demonstrated deliberate indifference to the disability, disease, and serious medical needs of plaintiffs, in defiance of U.S. Const. amend. VIII and XIV through 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act as Amended at 42 U.S.C. § 12131 et seq., and § 504 of the Rehabilitation Act of 1973 at 29 U.S.C. § 791 et seq.

66. Plaintiffs sue the Defendants in their respective, specified capacities, for actions under color of law at all times relevant to this lawsuit, for their joint and several actions, policy creations, and policy implementations that manifest deliberate indifference to the Plaintiffs' serious medical needs of hepatitis C, in violation of Plaintiffs' rights under U.S. Const. amend. VIII and XIV through 42 U.S.C. § 1983 and Minn. Const. Art. I, §§ 2, 5, 7, and 8, and discriminate against Plaintiffs on account of their disabilities in violation of Title II of the Americans with Disabilities Act as Amended, 42 U.S.C. § 12131 et seq., § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq.

67. Because of the "silent epidemic" of HCV-positive inmates entering the MNDOC system, and the high-costs of treating HVC infections, the Defendants MNDOC and Centurion have instituted a policy of rationing anti-HCV medication to as few inmates as possible, for reasons of administrative convenience and cost, unrelated to the medical needs of individual inmates, who are the Plaintiffs.

## FACTS

### A. HEPATITIS C VIRUS (HCV) DEFINED

68. HCV was not discovered until 1989. Blood screening was not possible until the mid-1990's. According to the CDC, everyone born between 1945 and 1965 is at risk and should undergo testing for hepatitis C.

69. The Centers for Disease Control (CDC) estimate the potentially fatal blood-borne Hepatitis-C Virus (HCV) infects some 4 million Americans of all ages and walks of life (about 2% of the population) and causes more deaths than HIV/AIDS.

70. Between 20 - 50% of America's 2.3 million inmates are HCV-positive. According to the CDC, therefore most prisoners and 98% of the general population are at risk from unscreened, untreated inmates.

71. Eliminating HCV from corrections facilities filters HCV from the entire nation's blood pool.

72. HCV is a chronic, potentially fatal blood-borne viral disease that substantially and materially degrades the liver's ability to purify blood and to convert substances in

the blood to glucose, inflicting progressive damage on the liver, which substantially and materially impairs the body's digestive and circulatory systems each day.

73. HCV can be spread by mere contact with an infected individual's blood, under such circumstances as:  (a) physical activity in sports,  (b) tattooing, (c) use of a needle not properly cleaned and sterilized, (d) exposure to an infected person's blood in the course of medical care, (e) barber and cosmetology care, (f) sexual activity, (g) sharing of eating utensils and food, (h) sharing razors or other personal grooming supplies, (i) sharing bathrooms or shower facilities, (j) sharing living quarters, or (k) physical violence between inmates or involving staff.

74. If left untreated, even asymptomatic HCV causes cirrhosis, or destructive scarring of the liver, liver cancer, and may require a liver transplant, and eventually cause other symptoms to those it afflicts.  As a communicable disease, HCV poses an unreasonable and substantial risk of serious present and future medical and physical harm to the Plaintiffs, and the general public after Plaintiffs' release from prison. *Roe v. Elyea*, 631 F.3d 843 (7th Cir. 2011).

75. HCV substantially and materially impairs the individual's, and these plaintiffs', major life activities of (a) self-caring, (b) social interaction with other persons, (c) manual tasks particularly those involving knives, scissors, pins, needles, toothbrushes, eating utensils, or shaving razors, (d) reproduction, and (e) life itself.

76. Each day treatment is postponed, the likelihoods of: cirrhosis of the liver, liver cancer, a liver transplant, and death from HCV grow for each member of the Class,

as does the likelihood of infection for those with whom they come in contact in MN DOC facilities and for members of the general public after they are released into the general population outside prison.

## B. BACKGROUND – CENTERS FOR DISEASE CONTROL, FDA, FBOP, U.S. PUBLIC HEALTH SERVICE, SURGEON GENERAL, AND THE V.A.

77. Eradicating HCV from the whole population became possible in December 2013 because of the approval of the first FDA "breakthrough" drugs.

78. In December 2013, the United States Food and Drug Administration (FDA) approved a new class of safer, direct-acting, anti-viral drugs that *cure* HCV infections in 12-weeks of daily pill therapy at a 95% success rate.

79. In January 2014, the Infectious Disease Society of America (IDSA) and the American Association for the Study of Liver Disease (AASLD) issued guidelines recommending *sofosbuvir* (*Sovaldi*) and similar new drugs as *first-line therapy* to replace year-long Interferon-based injections entirely. *See*, www.hcvguidelines.org.

In June 2014 the Federal Bureau of Prisons (FBOP) issued "Clinical Practice Guidelines" (Guidelines, or Protocol) for HCV treatment of inmates. The FBOP *specifically* rejected the more dangerous, less effective 48-week toxic Interferon-based injection treatment regimen.

80.

81. The protocol specifically lists the ASSLD/IDSA *sofosbuvir* twelve week, one pill per day regimen as the safer, more effective, standard-of-care in all FBOP facilities.

82. Other agencies of the United States, including the Centers for Disease Control (CDC), the United States Department of Veterans Affairs (VA), and the Surgeon General of the United States Public Health Service (Surgeon General) adopted the one pill per day, twelve-week protocol as the standard of care for treatment of HCV, and specifically rejected the forty-eight week toxic Interferon injection regimen, as has: the CDC, the Veterans Administration (VA), and the Surgeon General of the US. Public Health Service.   Private insurers that include UnitedHealth, Anthem, and Aetna cover the non-interferon anti-viral oral pill treatments.

83. As set forth in the FBOP June 14, 2014 Clinical Practice Guidelines for HCV, the above protocols' only medical criteria are that the patient; (a) not be pregnant; (b) have sufficient time in custody to complete treatment; and, (c) "demonstrate willingness and ability to adhere to rigorous treatment and to abstain from high risk activities."

84. According to the AALSD/IDSA, FBOP, CDC, and VA protocols, chemical dependency treatment, however, is not a medically required precondition for the twelve week HCV treatment.

85. Similarly, sharing of contaminated needles is a known vector for transmission of the human immunodeficiency virus (HIV).

86. Nonetheless, upon information and belief, chemical dependency treatment is NOT a precondition for HIV/AIDS anti-viral therapies in MN DOC facilities.

87. The AALSD/IDSA, FBOP, CDC, and VA HIV/AIDS treatment protocols require treatment upon a positive test for HIV, without waiting for the onset of HIV-related illnesses, including Kaposi's sarcoma or pneumonia.

88. Similarly, the AALSD/IDSA, FBOP, CDC, and VA HCV protocols do not prescribe delay in HCV treatment until the onset of fibrosis, cirrhosis of the liver, or liver cancer for medical reasons.

89. Since the adoption of the 12-week, one-pill-a-day HCV standard of care by agencies of the United States, barriers that the Defendants, jointly and severally, have erected in fact and as a matter of policy, to screening and treatment of HCV that differ significantly from HIV/AIDS lack medical justification, and do not survive scrutiny on rational basis grounds.

90. Defendants must assume the constitutional obligations under U.S. Const. amend. VIII and XIV and Minn. Const. Art. I, §§ 2, 5, 7, and 8, and the statutory obligation under U.S. Const. Art. VI, cl. 2, 42 U.S.C. § 12131 et seq., and 29 U.S.C. § 791 et seq., to provide the safer, more effective, non-interferon-based medical care for HCV that evolving science and FBOP, FDA, and Surgeon General protocols have made the new professional medical community standard of care, to eradicate HCV infection from the MN DOC population.

91. In so doing, the Defendants reduce and then eliminate the likelihood of HCV reinfection of Plaintiffs, and increase the likelihood of reduction and ultimate eradication of HCV amongst the general public population as a result.

C. HCV AS A SERIOUS MEDICAL NEED, IN WHICH ASSERTED
FAILURE OR DELAY IN TREATMENT STATES CLAIMS FOR
DELIBERATE INDIFFERENCE TO PRISONERS' MEDICAL NEEDS
UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS

92. *Erickson v. Pardus,* 551 U.S. 89, 90, 127 S. Ct. 2197 (2007), holds that conscious

delay, conscious denial of access, or conscious interference in medical treatment of

hepatitis C for non-medical reasons  -- standing alone -- states a plausible claim for

deliberate indifference against prison doctors, prison guards, or prison officials to

the serious medical needs of a prisoner in violation of U.S. Const. amend. VIII

and XIV through 42 U.S.C. § 1983.

93. Minnesota Department of Health Regulations 4605.7030 and 4605.7040 subp.

B(22) require that all physicians, healthcare facilities, medical laboratories, and

every licensed healthcare provider *shall submit* clinical materials associated with

HCV positive cases to the Commissioner of Health within one working day of

diagnosis.

94. Said Minnesota regulations impose a duty to obtain knowledge, and to transmit

said knowledge to the Minnesota Department of Health, of all HCV cases within

the care and responsibility of all medical care providers, including medical care

providers employed by, or contracted by, the Minnesota Department of

Corrections.

95. In accordance with Minn. Stat. § 241.01 subd. 3(a)(1), Defendant MN DOC has

adopted "Blood borne Pathogen Policy" §105.170 *et seq.* with updates §105.170

FRB, 5/6/14, and §151.171, 9/2/14, which purport to adopt up-to-date U.S. Public Health Service (USPHS) and CDC treatment protocols for disabling, blood borne pathogens, including HCV.

96. At all times relevant to this lawsuit, Defendant MN DOC, its agents, employees, representatives, or contractors including CENTURION, provide free, routine screening for HIV/AIDS within 14 days of prisoners' intake, or in response to a "kite" written request to a facility health service, with treatment available at all MN DOC facilities, without the precondition of chemical dependency treatment.

97. In contrast, at all times relevant to this lawsuit, Defendant MN DOC, its agents, employees, representatives, or contractors including CENTURION,  provide NO routine screening for HCV during or after intake to identify sources of infection, or to protect inmates from sources of infection, despite the duties to know and transmit that the above regulations impose.

98. Upon information and belief, Defendants Medical Director Dr. Paulson, Director of Health Services Larson, Drs. Quiram, Hanson and other Defendants had actual knowledge, through personal mail from Plaintiff Ligons, professional journals, professional meetings in January 2014, FBOP publications and general media, of the new medications for HCV that are safer and more effective than MN DOC HCV treatment protocols.

99. Despite Defendants' knowledge of the new safer and more effective standard-of-care, the Defendants, jointly and severally, have not provided the current 12-week week one pill per day professional HCV-treatment community medical standard of

care described in the June 2014 FBOP Clinical Treatment Guidelines, and other peer-reviewed sources, to meet the individual needs of the Plaintiffs, and to screen and cure prisoners infected with the HCV virus for reasons unrelated to medical care.

100.     At all times relevant to this lawsuit, Defendant MN DOC, its agents, employees, representatives, or contractors including CENTURION, jointly and severally, have willfully denied, or, with manifest deliberate indifference to the serious medical needs of the plaintiffs, denied the current medical professional HCV-treatment community standard of individualized medical care to plaintiffs and similarly situated HCV positive inmates, specifically, the daily oral twelve week treatment protocols, for non-medical reasons.

101.     At all times relevant to this lawsuit, Defendant MN DOC, its agents, employees, representatives, or contractors including CENTURION, jointly and severally, have willfully delayed, denied, or interfered with plaintiffs' timely HCV treatment by requiring chemical dependency treatment as a medically unnecessary precondition for HCV treatment.

102.     At all times relevant to this lawsuit, Defendant MN DOC, its agents, employees, representatives, or contractors including CENTURION, have intentionally delayed, denied, or interfered with plaintiffs' timely HCV treatment by withholding HCV treatment until plaintiffs manifest symptoms of fibrosis, cirrhosis of the liver, or liver cancer, for non-medical reasons.

103.     The only HCV treatment available in the MN DOC--CENTURION system

consists of the forty-eight week course of daily toxic Interferon-based injections and monitoring of blood viral load in a clinical setting. The FBOP rejected this treatment in June 2014 as falling below the professional hepatitis-C medical treatment community standard of individualized care of inmates, specifically, the twelve week, one oral pill per day medication protocol available since December 2013 of Olysio, Sovaldi, and successor medicines that include Harvoni and Viekira Pak.

104. As described in written policy and in response to written requests from Plaintiffs, at all times relevant to this lawsuit, of the nine (9) facilities that MN DOC operates, Defendants MN DOC, ROY, CENTURION, LARSON, AND PAULSON, jointly and severally, offer forty-eight week, toxic Interferon-based HCV treatment only at specific facilities, and thus exclude inmates at all other facilities from receiving any HCV treatment at all.

105. Particularly in light of the efficacy of the FDA-"HVC breakthrough" drugs in curing *all levels of HCV viral infections all HCV genotypes (with minor variances),* and the relative simplicity of the treatment protocols associated with the 12-week oral medication, policies limiting treatment based on viral load, or relative progress of liver dysfunction, are matters of administrative convenience or cost saving, not the medical requirements of the patient.

106. For non-medical reasons of policy and practice, MN DOC and CENTURION, jointly and severally, at all times relevant to this lawsuit, have systematically denied, and continue to deny systematically, MN DOC inmates'

requests for the FDA-approved, one pill per day, twelve week treatment protocol of Olysio, Sovaldi, which the FBOP as of June 2014, the FDA, the CDC, the U.S. Public Health Service Surgeon General, and the VA have adopted as the safest, most effective professional HCV-treatment medical community standard of care for the treatment and *cure* of HCV virus infections at a 95% cure rate – a protocol to which Harvoni and Viekira Pak were added in late 2014.

107.     As a direct result of the Defendants' joint and several policies, practices, and actions that lack medical foundation or rational basis, and which substitute administrative convenience, caprice, and whim for individualized professional medical care and judgment for the Plaintiffs, each day the Defendants deny to Plaintiffs the FBOP Sovaldi/Harvoni equivalent of the non-Interferon twelve week, daily pill protocol to cure HCV, Defendants needlessly force Plaintiffs to suffer the progressive effects of the chronic, life-threatening disease of hepatitis C.

108.     The Defendants' joint and several willful, deliberate actions make progression of plaintiffs' cases of HCV foreseeable, and increased public expense inevitable.

109.     The Defendants' joint and several willful, deliberate actions make increased public expense to treat Plaintiffs' cases of HCV foreseeable and inevitable.

110.     The Defendants' joint and several willful, deliberate actions increase without medical reason or lawful purpose the likelihood of the Plaintiffs' deaths for reasons arising from HCV infection.

111.     Day by day, uninfected inmates, and the public at large, run increasing risks

of HCV infection which Defendants could "cure;" to these inmates' serious, medical needs of freedom from, and knowledge of, infection by HCV, the Defendants, jointly and severally, are deliberately indifferent, for reasons of non-medical policy and practice.

## D. CLASS ALLEGATIONS

112.    Plaintiffs brings this action on behalf of themselves, and others similarly situated, (the "Class") pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2).

113.    Plaintiffs seeks to represent the following Class and sub-classes on claims for declaratory and injunctive relief and damages:

(a) All persons (male and female) incarcerated in Minnesota Department of Corrections facilities with 12 weeks remaining on their sentence; who test HCV-positive and wish to participate in the 12-week oral-medication HCV treatment, equivalent to Federal Bureau of Prison Clinical Treatment Guidelines.

(b) All persons as in (a) who tested HCV positive before entering MN DOC facilities.

(c) All persons as in (a) who were not HCV-positive before entering   facilities and became infected while housed in Mn DOC facilities.

(d) All persons as in (a) in various stages of HCV infection who are not being treated at all because of the Chemical Dependency Treatment requirement, that is not required by the FBOP, CDC, AASLD/ASID, VA or other medical treatment guidelines.

(e) All persons as in (a) in various stages of HCV infection who are not being treated because of other limitations on access to medication unrelated to patient care, that are not required by the FBOP, CDC, AASLD/ASID, VA or other medical treatment guidelines.

(f) All persons as in (a) in various stages of HCV infection who are not being treated because they have refused toxic Interferon-based treatment, offered by MN DOC in contravention of current FBOP, CDC, AASLD/ASID, VA or other medical treatment guidelines.

(g) All persons as in (a) who are HCV-positive but have not been screened by MN DOC so have been unaware of the HCV-status and cannot request the 12-week oral medication.

(h) All persons as in (a) who are not aware of their HCV status, who are fearful of being exposed to HCV because of MN DOC policies and practices that make it impossible to know if any other inmates with whom they come in contact are HCV-positive, or not.

114. Plaintiff seeks to represent the following Class on claims for declaratory and injunctive relief from state-created danger of HCV infection: All persons (male and female) incarcerated in Minnesota Department of Corrections facilities as of January 1, 2014 who have been, are, and will be, exposed to risk of harm daily by the deliberate indifference of Defendants' failure to adopt the 12-week Federal Bureau of Prison Clinical HCV Treatment Guidelines – and successor non-Interferon therapies -- who were not HCV positive upon entering MN DOC

facilities, or do not know their HCV status and wish to be screened and treated, if testing positive.

115.    As a result of Defendants' joint and several deliberate indifference to the serious medical needs of the Class, the members of the Class are or will be subjected to cruel and unusual punishment and deprived of other constitutional and statutory rights, and will face ongoing, threatened, and imminent physical harm.

116.    Plaintiffs seek declaratory and injunctive relief to enjoin Defendants' actions, policies and practices that infringe on their rights.

117.    The requirements of Rules 23(a) and 23 (b) are met by this action.

(a) Numerosity under Fed. R. Civ. P. 23(a)(1): The precise number of inmates in the Class and their identity are within the control of Defendants. The names and locations of inmates testing positive for HCV and whether all inmates have even been screened for HCV are data controlled by Defendants. National averages predict the number would exceed 1,500, a size much too large to make joinder practicable.

(b) Commonality under Fed. R. Civ. P. 23(a)(2): Questions of law and fact are common to the Class, including but not limited to: (1) the nature and scope of the safer, more effective standard of care, exemplified by the Federal BOP Clinical Treatment Guidelines; (2)) The MN DOC policy for the treatment of HCV with toxic Interferon that is now outmoded for all patients, as less safe and less effective; (3) Whether the MN DOC use of an outmoded medical treatment

that is less safe and effective than the current standard of care violates the Eight Amendment; (4) Whether the MN DOC use of an outmoded medical treatment that is less safe and effective than the current standard of care violates Article II of the ADA as Amended; and (5) Whether the MN DOC use of an outmoded medical treatment that is less safe and effective than the current standard of care violates Section 504 of the Rehabilitation Act.

(c) Typicality - Fed. R. Civ. P. 23(a)(3): Plaintiff's claims are typical of the Class members because Plaintiff and all Class Members were injured by the same wrongful policy and practices of Defendants as described in this Complaint. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class Members and are based on the same legal theories.

(d) Representativeness - Fed. R. Civ. P. 23(a)(4): (1) Plaintiffs will fairly and adequately protect the interests of the Class. (2) Plaintiffs have no interests that are contrary to or in conflict with those of the Class they seek to represent. (3) Plaintiffs are represented by competent and skilled counsel whose interests are aligned with the interests of the Class. (4) Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the Class would be proper. (5) Defendants have acted or refused to act with respect to the Class, thereby making appropriate final injunctive relief or corresponding injunctive relief with regard to Class Members as a whole and certification of the Class under Rule 23(b)(2) proper.

(e) **SUPERIORITY** - Fed. R. Civ. P. 23(b)(3): (1) A class action is superior to other available methods for the fair and efficient adjudication of this litigation since joinder of all members of the class is impracticable. (2) The number would prove unduly burdensome and inefficient for the Court and parties. (3) Because a common set of facts, grievances and remedies predominate over individual issues, individual litigation increases expenses to all parties, and better management of consistent adjudication and relief by a single court is in the interest of all parties. (4) Conduct of this action as a class action will protect the rights of all class members and promote judicial efficiency and consistency. Notice can be provided to class members by United States mail.

118. On information and belief after reasonable, diligent inquiry by the Plaintiffs, Defendant **DAVID PAULSON, M.D.**, Medical Director of the Minnesota Department of Corrections, is superior to Defendant **NANETTE LARSON,** Minnesota Department of Corrections Director of Health Services.

## E. EXHAUSTION OF ADMINISTRATIVE REMEDIES

119. Defendant **DAVID PAULSON** has (a) actual notice of Plaintiff **LIGONS'** and **MICHAELSON**'s requests for the one Sovaldi oral pill per day, twelve week regimen that the **FBOP** has adopted as its hepatitis C treatment protocol, (b) actual notice of the availability of discounted Sovaldi pills, (c) actual notice of the availability of Harvoni and Viekira Pak as alternative medicines to Sovaldi in the one oral pill per day, twelve week regimen that eliminates toxic Interferon therapy, (d) has continued to condition hepatitis C treatment on completion of chemical

dependency first, (e) has actual notice that completion or failure of chemical dependency treatment in the Minnesota Department of Corrections system is a decision not made by the patient-specific professional judgment of a medical doctor, but rather an administrative decision by a non-medical professional, and (f) has rejected Plaintiffs LIGONS' and MICHAELSON's requests, without chemical dependency treatment completion precondition, for the one Sovaldi oral pill per day, twelve week regimen that the FBOP has adopted as its hepatitis C treatment protocol.

120.    At times relevant to this lawsuit, including calendar years 2014 and 2015, Defendant David Paulson, M.D. served as the Medical Director of the Minnesota Department of Human Services' Minnesota Sex Offender Program (MSOP). See https://edocs.dhs.state.mn.us/lfserver/Public/DHS-6359-ENG, Overview Organization Chart, 2015, Minnesota Department of Human Services (listing Minnesota Sex Offender Program, Medical Director, David Paulson, M.D., 651.431.5872.

121.    The Minnesota Department of Human Services established a closed formulary, known as the "Program HH Medication Program (ADAP) Formulary" for individuals whom the Department of Human Services serves who are suffering from HIV, and, amongst others, suffer from the comorbidity of hepatitis C virus (HCV).  As of 1 December 2014, the formulary included Ledipasvir/Sofosbuvir (Harvoni), Sofosbuvir (Sovaldi), and Simeprevir (Olysio) for individuals suffering from HIV and hepatitis C, use of which the Department of Human Services may

authorize for  prior-authorized "on-label" usage by contacting the Minnesota Health Care Program by phone.  At all times in which the formulary has existed, an individual may request the addition of a new medication to the formulary with the signed request of a patient's pharmacist or medical doctor.   See http://mn.gov/dhs/people-we-serve/adults/health-care/hiv-aids/programs-services/drug-formulary.jsp#

122.      At all times relevant to this lawsuit, the state of Minnesota has had access to, and the ability to authorize medications within the one pill per day, twelve week protocol cure for hepatitis C, specifically, Sovaldi, Harvoni, and Olysio.

123.      At all times relevant to this lawsuit, Defendant Paulson, as Medical Director for the for the Minnesota Sex Offender Program of the Minnesota Department of Human Services, has had the authority to authorize the use of Sovaldi, Harvoni, or Olysio by Minnesota Sex Offender Program patients suffering from hepatitis C.

124.      As Medical Director of the Minnesota Department of Corrections, Defendant Paulson, at times relevant to this lawsuit, has had actual knowledge of the serious medical needs of Plaintiffs LIGONS and MICHAELSON as hepatitis C sufferers.

125.      As Medical Director of the Minnesota Department of Corrections, Defendant Paulson, at times relevant to this lawsuit, has had actual knowledge of the requests of Plaintiffs LIGONS and MICHAELSON for the life-saving, 1 pill per day, twelve week protocol cure of Sovaldi or the alternative Harvoni.

126.      As Health Services Director of the Minnesota Department of Corrections,

Defendant Larson, at times relevant to this lawsuit, has had actual knowledge of the requests of Plaintiffs LIGONS and MICHAELSON for the life-saving, 1 pill per day, twelve week protocol of Sovaldi or the alternative Harvoni.

127.    At times relevant to this lawsuit, Defendant Centurion (through its agents, employees, representatives, or medical staff), has had actual knowledge of the serious medical needs of Plaintiffs LIGONS and MICHAELSON as hepatitis C sufferers, and the respective requests of Plaintiffs LIGONS and MICHAELSON for the life-saving, 1 pill per day, twelve week protocol cure of Sovaldi or the alternative Harvoni.

128.    At times relevant to this lawsuit, Defendants Larson, Paulson, and Centurion (through its agents, employees, representatives, or medical staff), jointly and severally, have denied to Plaintiffs LIGONS and MICHAELSON, with deliberate indifference to their serious medical needs as hepatitis C sufferers, their requests for the life-saving one pill per day, twelve week protocol cure of Sovaldi or the alternative Harvoni.

129.    Plaintiffs have exhausted their administrative remedies.

130.    The foregoing averments and assertions of Plaintiffs constitute averments that Plaintiffs face imminent danger of serious and continuing physical, medical injury.

## CLAIMS

### CLAIM I:
### TITLE II OF THE ADA
### AGAINST MINNESOTA DEPARTMENT OF CORRECTIONS

131.    Plaintiffs LIGONS, MICHAELSON, and all similarly situated plaintiffs,

reallege and reassert each and every claim and averment above and incorporate them herein.

132.     Defendant **MINNESOTA DEPARTMENT OF CORRECTIONS**, by and through Defendants **ROY, PAULSON, LARSON, QUIRAM, HANSON**, and **DOES A – J** in their respective official capacities, discriminated against Plaintiffs **LIGONS, MICHAELSON**, and all similarly situated Plaintiffs, and caused them to be excluded from participation in programs and denied access to services in the Minnesota Department of Corrections systems, specifically and without limitation MCF Stillwater and MCF Faribault, because of their disabilities – hepatitis C – in violation of Title II of the Americans with Disabilities Act as Amended.

## CLAIM II:

## § 504 OF THE REHABILITATION ACT OF 1973
## AGAINST MINNESOTA DEPARTMENT OF CORRECTIONS

133.     Plaintiffs **LIGONS, MICHAELSON**, and all similarly situated plaintiffs, reallege and reassert each and every claim and averment above and incorporate them herein.

134.     Defendant **MINNESOTA DEPARTMENT OF CORRECTIONS**, a federally funded entity, by and through Defendants **ROY, PAULSON, LARSON, QUIRAM, HANSON**, and **DOES A – J**, in their respective official capacities, discriminated against Plaintiffs **LIGONS, MICHAELSON**, and all similarly situated Plaintiffs, and caused them to be excluded from participation in programs and denied access to services in the Minnesota Department of Corrections systems,

specifically and without limitation MCF Stillwater and MCF Faribault, due to their

disabilities – hepatitis C – in violation of § 504 of the Rehabilitation Act of 1973, 29

U.S.C. §§ 791 – 794a.

## CLAIM III:

### § 504 OF THE
### REHABILITATION ACT OF 1973 AGAINST CENTURION
### OF MINNESOTA, L.L.C.

135.    Plaintiffs LIGONS, MICHAELSON, and all similarly situated plaintiffs,

reallege and reassert each and every claim and averment above and incorporate

them herein.

136.    Defendant CENTURION, a federally funded entity, by and through

Defendants QUIRAM, HANSON, and DOES A – J in their respective individual

and official capacities in the course of their activities as agents or representatives of

CENTURION, discriminated against Plaintiffs LIGONS, MICHAELSON, and all

similarly situated Plaintiffs, and caused them to be excluded from participation in

programs and denied access to services in the Minnesota Department of

Corrections systems, specifically and without limitation MCF Stillwater and MCF

Faribault, due to their disabilities – hepatitis C – in violation of § 504 of the

Rehabilitation Act of 1973, 29 U.S.C. §§ 791 – 794a.

## CLAIM IV:

### DEPRIVATION OF
### U.S. CONST. AMEND. VIII AND XIV RIGHT
### TO BE FREE FROM INFLICTION OF CRUEL AND UNUSUAL
### PUNISHMENT, FOR WHICH 42 U.S.C. § 1983 PROVIDES REMEDIES.

137.    Plaintiffs LIGONS, MICHAELSON, and all similarly situated plaintiffs, reallege and reassert each and every claim and averment above and incorporate them herein.

138.    Defendants THOMAS ROY, COMMISSIONER OF CORRECTIONS, DAVID PAULSON, M.D., Medical Director of the Minnesota Department of Corrections, NANETTE LARSON, Health Services Director of the Minnesota Department of Corrections, D. QUIRAM, M.D., R. HANSON, M.D., AND DOES A – J, in their respective official capacities, jointly and severally, have enforced the Minnesota Department of Corrections policy that (a) conditions treatment of hepatitis C on completion of chemical dependency treatment, and (b) contravenes the clearly established hepatitis-C  medical treatment community standard of care, with reference to *Erickson v. Pardus,* 551 U.S. 89, 90, 127 S. Ct. 2197 (2007), which constitutes a deliberate indifference to the serious medical needs of Plaintiffs LIGONS, MICHAELSON, and all similarly situated Plaintiffs suffering from hepatitis C, thereby establishing a violation of U.S. Const. amend. VIII and XIV, for which 42 U.S.C. § 1983 provides declaratory, equitable, mandamus, and legal remedies.

## CLAIM V:

### DEPRIVATION OF
### U.S. CONST. AMEND. VIII AND XIV RIGHT
### TO BE FREE FROM INFLICTION OF CRUEL AND UNUSUAL
### PUNISHMENT, FOR WHICH 42 U.S.C. § 1983 PROVIDES REMEDIES.

139.    Plaintiffs LIGONS, MICHAELSON, and all similarly situated Plaintiffs

reallege and reassert each and every claim and averment above.

140.    Defendants TOM ROY, MINNESOTA COMMISSIONER OF CORRECTIONS, DAVID PAULSON, MD., MINNESOTA DEPARTMENT OF CORRECTIONS MEDICAL DIRECTOR, NANETTE LARSON, Director of Health Services, Minnesota Department of Corrections, jointly and severally in their respective official capacities, have enforced a HCV treatment program based on toxic Interferon injections lasting some forty-eight (48) weeks, offered only at the Minnesota Correctional Facility at Rush City (MCF Rush City), and with serious side effects, for non-medical reasons.

141.    Defendants ROY, PAULSON, LARSON, other MN DOC agents, employees, or representatives and CENTURION CORPORATION through Centurion care staff, jointly and severally, have continued this policy for non-medical reasons, which constitutes deliberate indifference to the serious medical needs of the Plaintiffs, while intentionally and deliberately refusing to treat HCV patients with the simple twelve-week one-pill-a-day safer and more effective prevailing professional community standard of medical care that can be offered at any of the nine MN DOC facilities, in violation of Plaintiff's rights under U.S. Const. amend. VIII and XIV to be free from cruel and unusual punishment, for which 42 U.S.C. § 1983 provides declaratory, equitable, and legal remedies.

## CLAIM VI:

### DEPRIVATION OF
### MINN. CONST. ART. I, §§ 2, *5,* AND 7
### RIGHT TO BE FREE FROM INFLICTION

## OF CRUEL AND UNUSUAL PUNISHMENT, FOR
## WHICH MINN. CONST. ART. I, § 8 PROVIDES LEGAL REMEDIES.

142. The foregoing averments and assertions of Plaintiffs constitute averments that Plaintiffs face imminent danger of serious and continuing physical, medical injury.

143. Plaintiffs LIGONS, MICHAELSON, and all similarly situated plaintiffs, reallege and reassert each and every claim and averment above and incorporate them herein.

144. Defendants THOMAS ROY, COMMISSIONER OF CORRECTIONS, DAVID PAULSON, M.D., Medical Director of the Minnesota Department of Corrections, NANETTE LARSON, Health Services Director of the Minnesota Department of Corrections, D. QUIRAM, M.D., R. HANSON, M.D., AND DOES A – J, in their respective official capacities, jointly and severally, have enforced the Minnesota Department of Corrections policy that (a) conditions treatment of hepatitis C on completion of chemical dependency treatment, and (b) contravenes the clearly established hepatitis-C medical treatment community standard of care for inmates suffering from hepatitis that the AALSD/ASID, CDC, VA and FBOP established as of June 2014, which constitutes a deliberate indifference to the serious medical needs of Plaintiffs LIGONS, MICHAELSON, and all similarly situated Plaintiffs suffering from hepatitis C, thereby establishing a violation of Minn. Const. Art. I, §§ 2, 5, and 7, for which Minn. Const. Art. I, § 8 provides declaratory, equitable, mandamus, and legal remedies.

145. The foregoing averments and assertions of Plaintiffs constitute averments that

Plaintiffs face imminent danger of serious and continuing physical, medical injury.

## CLAIM VII:

### DEPRIVATION OF
### MINN. CONST. ART. I, §§ 2, 5, AND 7
### RIGHT TO BE FREE FROM INFLICTION
### OF CRUEL AND UNUSUAL PUNISHMENT, FOR
### WHICH MINN. CONST. ART. I, § 8 PROVIDES LEGAL REMEDIES.

146.    Plaintiffs LIGONS, MICHAELSON, and all similarly situated Plaintiffs reallege and reassert each and every claim and averment above.

147.    Defendants TOM ROY, MINNESOTA COMMISSIONER OF CORRECTIONS, DAVID PAULSON, MD., MINNESOTA DEPARTMENT OF CORRECTIONS MEDICAL DIRECTOR, NANETTE LARSON, Director of Health Services, Minnesota Department of Corrections, jointly and severally in their respective official capacities, have enforced a HCV treatment program based on toxic Interferon injections lasting some forty-eight (48) weeks, offered only at the Minnesota Correctional Facility at Rush City (MCF Rush City), and with serious side effects, for non-medical reasons.

148.    Defendants ROY, PAULSON, LARSON, other MN DOC agents, employees, or representatives and CENTURION CORPORATION through Centurion staff, jointly and severally, have continued this policy for non-medical reasons, which constitutes deliberate indifference to the serious medical needs of the Plaintiffs, while consciously, willfully, and deliberately refusing to treat HCV patients with the simple twelve-week one-pill-a-day safer and more effective prevailing professional community standard of medical care that can be offered at

any of the nine MN DOC facilities, in violation of Plaintiff's rights under Minn.

Const. Art. I, §§ 2, 5, and 7 to be free from cruel and unusual punishment, for

which Minn. Const. Art. I, § 8 provides declaratory, equitable, and legal remedies.

149.     The foregoing averments and assertions of Plaintiffs constitute averments that

Plaintiffs face imminent danger of serious and continuing physical, medical injury.

## CLAIM VIII:

### DEPRIVATION
**of the Clearly Established U.S. Const. amend. VIII and XIV
Right to Be Free from Cruel and Unusual Punishment By Private Sub-
Contractors *Under Farmer v. Brennan,* 511 U.S. 825 (1994), *Erickson v.
Pardus,* 551 U.S. 89 (2007), & *Kahle v. Leonard,* 477 F.3d 544 (8th Cir 2007)**

150.     Plaintiffs LIGONS, MICHAELSON, and all similarly situated Plaintiffs

reallege and reassert each and every claim and averment above.

151.     Defendant CENTURION, as a matter of non-medical corporate policy or

custom, has enforced the outdated "Interferon" 48-week HCV treatment-only

policy, thereby enforcing the deliberate indifference and cruel and unusual

punishment arising from failure to prescribe up-to-date, safer and more effective

treatment for HCV, in violation of Plaintiffs' clearly established right to be free

from cruel and unusual punishment under U.S. Const. amend. VIII and XIV.

152.     Medical staff employed by the private sub-contractors to MN DOC,

Defendants Quiram and Hanson, John and Jane Doe, are aware of the safer and

more effective standards of care for HCV and denial of treatment with the 12-week

one-pill-per-day treatment program for non-medical reasons.

153.    Failure to prescribe the safer, more effective 12-week oral treatment protocol adopted by the BOP is knowing and intentional, which further constitutes deliberate indifference to Mr. LIGONS' and Mr. MICHAELSON'S serious medical needs, thereby violating their right to be free from cruel and unusual punishment as proscribed by U.S. Const. amend. VIII and XIV, for which 42 U.S.C. § 1983 provides declaratory, equitable, and legal remedies.

154.    These allegations constitute averments of imminent danger of serious and continuing physical, medical injury.

## CLAIM IX:

## DEPRIVATION OF EIGHTH AMENDMENT
## RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT
(Against Defendants Paulson, Larson, Quiram, Hanson,
and Centurion in Their Joint and Several Respective Individual Capacities).

155.    Plaintiffs LIGONS, MICHAELSON, and all similarly situated Plaintiffs reallege and reassert each and every claim and averment above.

156.    Defendants PAULSON, LARSON, QUIRAM, HANSON, AND CENTURION, jointly and severally, through their decisions to deny Plaintiffs LIGONS and MICHAELSON the twelve-week, one pill per day regimen that is the hepatitis-C medical treatment community standard of care, demonstrate deliberate indifference to the serious medical needs of Plaintiffs LIGONS and MICHAELSON, and thereby violate their right to be free from cruel and unusual punishment under U.S. Const. amend. VIII and XIV, for which 42 U.S.C. § 1983 provides declaratory, equitable, and legal remedies.

157.    Defendants PAULSON, LARSON, QUIRAM, HANSON, AND CENTURION, jointly and severally, through their decisions to deny Plaintiffs the twelve-week, one pill per day regimen that is the hepatitis-C medical treatment community standard of care, demonstrate deliberate indifference to the serious medical needs of Plaintiffs and thereby violate their right to be free from cruel and unusual punishment under U.S. Const. amend. VIII and XIV, for which 42 U.S.C. § 1983 provides declaratory, equitable, and legal remedies.

158.    These allegations constitute averments of imminent danger of serious physical, medical injury.

## CLAIM X:

## DEPRIVATION OF EIGHTH AMENDMENT
## RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT

159.    Plaintiffs LIGONS, MICHAELSON, *et al,* reallege and reincorporate each and every claim and averment above and incorporate them below.

160.    Plaintiffs Roe, Miles, and Stiles assert the same foregoing causes of action from the perspective of inmates who were HCV free when entering MN DOC incarceration, or who have been cured of HCV, and who spend each day facing "imminent danger of serious physical injury" from being exposed to the debilitating and potentially fatal virus, HCV, from other inmates that Defendants could eradicate in three (3) months and decline to do so, for non-medical reasons.

161.    All new HCV infections in MN DOC facilities since January 1, 2014 are the direct and proximate consequence of the danger knowingly and intentionally

created by Defendants' refusal to adopt the FBOP, CDC and U.S. Public Health

Service protocols (required by MN DOC Policies §§151.170-171 et seq.).

162.     The joint and several actions of the Defendants in their official and

individual capacities demonstrate deliberate indifference to the serious medical

needs of Plaintiffs Roe, Miles, and Stiles to be free from infections by the blood

borne pathogen of HCV, and thus violates Plaintiffs' rights under U.S. Const.

amend. VIII and XIV to be free from cruel and unusual punishment, for which 42

U.S.C. § 1983 provides declaratory, equitable, and legal remedies.

163.     These allegations constitute averments of imminent danger of serious

physical, medical injury.

## CLAIM XI:

## DENIAL OF EQUAL PROTECTION OF THE LAW UNDER
## U.S. CONST. AMEND. V AND XIV, THROUGH 42 U.S.C. § 1983

164.     Plaintiffs LIGONS, MICHAELSON, *et al,* reallege and reincorporate each

and every claim and averment above and incorporate them below.

165.     Both HCV and HIV/AIDS are blood-borne viral diseases.

166.     Both diseases are transmitted by personal contact between individuals

167.     Preventive vaccines for HIV/AIDS and HCV do not exist at this time.

168.     The HIV/AIDS and HCV viruses can be suppressed to reduce or prevent

transmission of the viruses, but only HCV can be cured in 12-weeks of oral

medication.

169.     MN DOC screens for and treats HIV/AIDS in a manner that differs

significantly from HCV, without medical justification or rational basis for doing so.

170.      MN DOC withholds treatment for HCV in a manner that differs significantly from the treatment it provides for HIV/AIDS without medical justification, or a rational basis for doing so since the 12-week standard-of-care has been adopted.

171.      MN DOC protocols require that HCV infections progress to the point of causing cirrhosis or scarring of the liver, which cannot be reversed.

172.      This HCV policy is akin to a policy that permits HIV infection to become full-blown AIDS, or to manifest life-threatening conditions including pneumonia or Kaposi's Sarcoma, before approving anti-retroviral drug treatments,

173.      MN DOC treats inmates for HIV infection upon a positive test for HIV, and does not wait for acute conditions or life-threatening illnesses manifest by full-blown AIDS.

174.      The MN DOC policy of differential treatment for HCV, in comparison to HIV infection, lacks rational basis under prevailing science and medicine, and clearly established law.

175.      The MN DOC policy of refusal to treat HCV infection of inmates until manifesting in liver fibrosis, liver scarring, cirrhosis of the liver, or liver cancer lacks rational basis in violation of Plaintiffs' rights to equal protection of the laws under U.S. Const. amend. V and XIV, for which 42 U.S.C. § 1983 provides declaratory, equitable, and legal remedies.

176.      These allegations constitute averments of imminent danger of serious physical, medical injury.

## CLAIM XII:

## DENIAL OF EQUAL PROTECTION OF THE LAW UNDER
## U.S. CONST. AMEND. V AND XIV, THROUGH 42 U.S.C. § 1983

177.     Plaintiffs LIGONS, MICHAELSON, *et al,* reallege and reincorporate each

and every claim and averment above and incorporate them below.

178.     MN DOC protocols require that HCV infections progress to the point of

causing cirrhosis or scarring of the liver when the FDA-designated HCV

"breakthrough" drugs are equally effective for patients at all levels of viral

infections.

179.     AASLD/ASID, CDC, VA, U.S. Public Health Service and the FBOP June

2014 protocol do not differentiate between HCV patients with respect to viral load,

or those who have tested positive for HCV without fibrosis, cirrhosis, or liver

cancer, or those who have fibrosis, cirrhosis, or liver cancer.

180.     The MN DOC policy of differential treatment for HCV patients, waiting to

treat HCV sufferers when they reach a set viral load, or manifest liver fibrosis, liver

scarring, cirrhosis of the liver, or liver cancer, lacks rational basis under prevailing

science and medicine, and clearly established law.

181.     The MN DOC policy of refusal to treat HCV infection of inmates until

manifesting in liver fibrosis, liver scarring, cirrhosis of the liver, or liver cancer lacks

rational basis in violation of Plaintiffs' rights to equal protection of the laws under

U.S. Const. amend. V and XIV, for which 42 U.S.C. § 1983 provides declaratory,

equitable, and legal remedies.

182.     These allegations constitute averments of imminent danger of serious physical, medical injury.

## CLAIM XIII

### DENIAL OF EQUAL PROTECTION OF THE LAW AND CRUEL AND UNUSUAL PUNISHMENT IN DELIBERATE INDIFFERENCE TO THE SERIOUS MEDICAL NEEDS OF PLAINTIFFS, IN VIOLATION OF U.S. CONST. AMEND V, VIII, AND XIV, PROTECTED THROUGH 42 U.S.C. § 1983.

183.     Plaintiffs LIGONS, MICHAELSON, *et al,* reallege and reincorporate each and every claim and averment above and incorporate them below.

184.     MN DOC protocols require that HCV infections progress to the point of causing cirrhosis or scarring of the liver when the FDA-designated HCV "breakthrough" drugs are equally effective for patients at all levels of viral infections.

185.     AASLD/ASID, CDC, VA, U.S. Public Health Service and the FBOP June 2014 protocol do not differentiate between HCV patients with respect to viral load, or those who have tested positive for HCV without fibrosis, cirrhosis, or liver cancer, or those who have fibrosis, cirrhosis, or liver cancer.

186.     The State of Minnesota Department of Human Services (MDHS) authorizes use of the one pill per day, twelve week protocol cure of Sovaldi or Harvoni to MDHS patients and clients who suffer the comorbidities of HIV and HCV, without requiring as a precondition chemical dependency treatment, a set viral

load, or manifest liver fibrosis, liver scarring, cirrhosis of the liver, or liver cancer.

187.     The MN DOC policy of differential treatment for HCV patients, waiting to

treat HCV sufferers when they reach a set viral load, or manifest liver fibrosis, liver

scarring, cirrhosis, or liver cancer, lacks rational basis under prevailing

science and medicine, and manifests deliberate indifference to the serious medical

needs of Plaintiffs LIGONS and MICHAELSON, and all other similarly situated

plaintiffs suffering from HCV, in defiance of clearly established law.

188.     The MN DOC policy of refusal to treat HCV infection of inmates until

manifesting in liver fibrosis, liver scarring, cirrhosis of the liver, or liver cancer lacks

rational basis in violation of Plaintiffs' rights to equal protection of the laws under

U.S. Const. amend. V and XIV, and right to freedom from cruel and unusual

punishment under U.S. Const. amend. VIII and XIV, for which 42 U.S.C. § 1983

provides declaratory, equitable, and legal remedies.

189.     These allegations constitute averments of imminent danger of serious

physical, medical injury.

CLAIM XIV

TITLE II OF THE ADA AS AMENDEND

AGAINST MINNESOTA DEPARTMENT OF CORRECTIONS

190.     Plaintiffs reallege and reassert each and every claim and averment above.

191.     The MINNESOTA DEPARTMENT OF CORRECTIONS, by and

through Defendants ROY, PAULSON, LARSON, QUIRAM, HANSON,

DOES A – J in their respective official capacities, and through the actions of the

agents, employees, representatives, or medical staff of CENTURION, discriminated against Plaintiffs LIGONS, MICHAELSON, and all similarly situated Plaintiffs, and caused them to be excluded from participation in programs and denied access to services in the Minnesota Department of Corrections systems, specifically and without limitation MCF Stillwater and MCF Faribault, because of their disabilities – hepatitis C – in violation of Title II of the Americans with Disabilities Act as Amended, more especially in view of the availability of the life-saving one pill per day twelve week protocol cure of Sovaldi or Harvoni to patients or benefit recipients of the Minnesota Department of Human Services.

192.    These allegations constitute averments of imminent danger of serious physical, medical injury.

193.

## CLAIM XV

### § 504 OF THE REHABILITATION ACT OF 1973
### AGAINST MINNESOTA DEPARTMENT OF CORRECTIONS
### AND CENTURION, JOINTLY AND SEVERALLY

194.    Plaintiffs reallege and reassert each and every claim and averment above.

195.    The MINNESOTA DEPARTMENT OF CORRECTIONS, by and through Defendants ROY, PAULSON, LARSON, QUIRAM, HANSON, DOES A – J in their respective official capacities, and Defendant CENTURION, through the actions of its agents, employees, representatives, or medical staff, jointly and severally, discriminated against Plaintiffs LIGONS, MICHAELSON, and all similarly situated Plaintiffs, and caused them to be excluded from participation in

federally subsidized programs and denied access to services in the Minnesota Department of Corrections systems, specifically and without limitation MCF Stillwater and MCF Faribault, because of their disabilities – hepatitis C – in violation of § 504 of the Rehabilitation Act of 1973, more especially in view of the availability of the life-saving one pill per day twelve week protocol cure of Sovaldi or Harvoni to patients or benefit recipients of the Minnesota Department of Human Services.

## CLAIM XVI

### U.CONST. AMEND. VIII AND XIV

196.     Plaintiffs LIGONS, MICHAELSON, and all similarly situated Plaintiffs reallege and reassert each and every claim and averment above.

197.     Defendants PAULSON, LARSON, QUIRAM, HANSON, AND CENTURION, jointly and severally, through their (a) decisions to deny Plaintiffs LIGONS and MICHAELSON the twelve-week, one pill per day regimen that is the hepatitis-C medical treatment community standard of care, (b) their decisions to deny lifesaving, curative care of Plaintiffs' hepatitis C infections for administrative convenience by imposition of irrational, not medically based criteria limiting lifesaving twelve-week, one pill per day regimen, and (c) their decisions to deny lifesaving, curative, one pill per day, twelve week regimen that is the hepatitis C medical treatment community standard of care on the basis of cost and not the serious medical needs of the plaintiffs and the foreseeable needs of the community at large to be protected from exposure to hepatitis-C-infected blood, demonstrate

deliberate indifference to the serious medical needs of Plaintiffs **LIGONS** and **MICHAELSON**, and thereby violate their right to be free from cruel and unusual punishment under U.S. Const. amend. VIII and XIV, for which 42 U.S.C. § 1983 provides declaratory, equitable, and legal remedies.

198.    Defendants **PAULSON, LARSON, QUIRAM, HANSON, AND CENTURION**, jointly and severally, through their decisions to deny Plaintiffs the twelve-week, one pill per day regimen that is the hepatitis-C medical treatment community standard of care, demonstrate deliberate indifference to the serious medical needs of Plaintiffs and thereby violate their right to be free from cruel and unusual punishment under U.S. Const. amend. VIII and XIV, for which 42 U.S.C. § 1983 provides declaratory, equitable, and legal remedies.

199.    These allegations constitute averments of imminent danger of serious physical, medical injury.

## CLAIM XVII

### § 504 OF THE REHABILITATION ACT OF 1973

### AGAINST MINNESOTA DEPARTMENT OF CORRECTIONS

### AND CENTURION OF MINNESOTA, L.L.C., JOINTLY AND SEVERALLY

200.    Plaintiffs **LIGONS, MICHAELSON**, and all similarly situated Plaintiffs reallege and reassert each and every claim and averment above.

201.    Defendants **MINNESOTA DEPARTMENT OF CORRECTIONS AND CENTURION**, jointly and severally, through their (a) decisions to deny Plaintiffs **LIGONS** and **MICHAELSON** the twelve-week, one pill per day regimen that is

the hepatitis-C medical treatment community standard of care, (b) their decisions to deny lifesaving, curative care of Plaintiffs' hepatitis C infections for administrative convenience by imposition of irrational, not medically based criteria limiting lifesaving twelve-week, one pill per day regimen, and (c) their decisions to deny lifesaving, curative, one pill per day, twelve week regimen that is the hepatitis C medical treatment community standard of care on the basis of cost and not the serious medical needs of the plaintiffs and the foreseeable needs of the community at large to be protected from exposure to hepatitis-C-infected blood, demonstrate discriminatory exclusion of plaintiffs from the benefits of federally funded services because of their disabilities, in violation of § 504 of the Rehabilitation Act of 1973.

202.    These allegations constitute averments of imminent danger of serious physical, medical injury.

## CLAIM XVIII

## TITLE II OF THE ADA

### V. MINNESOTA DEPARTMENT OF CORRECTIONS

203.    Plaintiffs LIGONS, MICHAELSON, and all similarly situated Plaintiffs reallege and reassert each and every claim and averment above.

204.    Defendant MINNESOTA DEPARTMENT OF CORRECTIONS through the decisions of its agents, employees, representatives, or officers, (a) to deny Plaintiffs LIGONS and MICHAELSON the twelve-week, one pill per day regimen that is the hepatitis-C medical treatment community standard of care, (b) to deny lifesaving, curative care of Plaintiffs' hepatitis C infections for administrative

convenience by imposition of irrational, not medically based criteria limiting lifesaving twelve-week, one pill per day regimen, and (c) to deny lifesaving, curative, one pill per day, twelve week regimen that is the hepatitis C medical treatment community standard of care on the basis of cost and not the serious medical needs of the plaintiffs and the foreseeable needs of the community at large to be protected from exposure to hepatitis-C-infected blood, demonstrate discriminatory exclusion of plaintiffs from the benefits of public services because of their disabilities, in violation of Title II of the ADA.

205.    These allegations constitute averments of imminent danger of serious physical, medical injury.

## RELIEF DEMANDED

WHEREFORE Plaintiffs LIGONS, MICHAELSON, and all similarly situated Plaintiffs pray for the following relief:

1.  Judgment against the Defendants, jointly and severally;

2.  Certification of the classes and subclasses of Plaintiffs named above;

3.  For the named Plaintiffs and members of the Plaintiff classes and subclasses, Declaratory Judgment that the Defendant MINNESOTA DEPARTMENT OF CORRECTIONS hepatitis C policy violates Title II of the Americans with Disabilities Act as Amended, § 504 of the Rehabilitation Act of 1973, U.S. Const. amend. VIII and XIV through 42 U.S.C. § 1983, and Minn. Const. Art. I, §§ 2, 5, and 7, through Minn. Const. Art. I, § 8;

4.  For the named Plaintiffs and members of the Plaintiff classes and subclasses,

a. Permanent injunction against the perpetuation of the MN DOC forty-eight week hepatitis C treatment protocol using toxic Interferon injections;

b. Permanent injunction against the perpetuation of the MN DOC hepatitis C treatment protocol that conditions hepatitis C treatment on prior completion of chemical dependency treatment;

c. Permanent injunction against the perpetuation of the MN DOC hepatitis C treatment protocol that withholds anti-viral medication treatment for inmates until the inmate presents evidence of liver fibrosis, liver scarring, cirrhosis of the liver, or liver cancer;

d. Permanent injunction against the perpetuation of the MN DOC hepatitis C treatment protocol that does not administer anti-viral hepatitis C medication to inmates with twelve or more weeks in MN DOC custody immediately upon a positive test for HCV; and

e. Permanent injunction against any MN DOC policy that does not test inmates upon intake for HCV, as MN DOC does for HIV/AIDS;

5. For Plaintiffs LIGONS and MICHAELSON, equitable relief to order the immediate commencement of the one pill per day, twelve week hepatitis C treatment that uses the medication Sovaldi in accordance with the Federal Bureau of Prisons June 2014 hepatitis C treatment protocol – or with other one pill per day medications that the Federal Bureau of Prisons, the FDA, the CDC, the Surgeon General of the United States Public Health Service has approved for treatment of hepatitis C since June 2014, WITHOUT first requiring plaintiffs to undergo

chemical dependency treatment;

6.  For Plaintiffs ROE, MILES, AND STILES, (a) identification of all MN DOC inmates with twelve or more weeks remaining in their sentences who where denied hepatitis C treatment since December 2013 with the one pill per day, twelve week protocol which the Federal Bureau of Prisons approved in June 2014, (b) identification of all MN DOC inmates with twelve or more weeks remaining in their sentences who where denied hepatitis C treatment since December 2013 for non-completion of chemical dependency treatment, (c) provision of the one pill per day, twelve week hepatitis C treatment protocol which the Federal Bureau of Prisons approved in June 2014 to all inmates with twelve or more weeks left in their sentences who test positive for hepatitis C, (d) screening of all current MN DOC inmates for hepatitis C immediately, (e) immediate screening of all newly admitted MN DOC inmates for hepatitis C, consistent with the screening protocols for HIV/AIDS virus;

7.  For Plaintiffs LIGONS and MICHAELSON, an award of appropriate compensatory damages against Defendants, jointly and severally, for all claims for which compensatory damages are available, in an amount to be determined by jury;

8.  For Plaintiffs LIGONS and MICHAELSON, an award of punitive damages against the Defendants sued in their respective individual capacities, and CENTURION OF MINNESOTA, L.L.C. for claims arising under U.S. Const. amend. VIII and XIV, in an amount to be determined at trial by jury;

9.  Prejudgment interest;

10. Postverdict interest;

11. Costs and disbursements;

12. Reasonable attorney fees in accordance with 42 U.S.C. § 1988; and

13. Such other relief as the court deems just and equitable.

**PLAINTIFFS DEMAND JURY TRIAL ON ALL CLAIMS TRIABLE TO THE JURY.**

Date: 3 June 2015      Respectfully submitted:

PETER J. NICKITAS LAW OFFICE, L.L.C.

/s/ *Peter J. Nickitas*

_____
Peter J. Nickitas, MN Att'y #212313
Attorney for the Plaintiffs
431 S. 7th St., Suite 2446
P.O. Box 15221
Minneapolis, MN 55415-0221
612.440.7285 (o)/651.238.3445 (m)/1.888.389.7890 (f)
peterjnickitaslawllc@gmail.com

*AS AMICUS CURIAE:*

INTERNATIONAL HUMANITARIAN LAW INSTITUTE
/s/ *Peter J. Nickitas*

Date: 3 June 2015     _____
Peter J. Nickitas, MN Att'y #212313
Litigation Director, Int'l Humanitarian Law Institute
C. Peter Erlinder, Prof. (Ret.), Founding Director
325 Cedar St., Suite 308
St. Paul, MN 55101
651.340.1271/FAX 651.340.0357/proferlinder@gmail.com
IL Att'y #3124291/8th Cir. Adm'n: 11/06/1984
*Pro* bono post-conviction counsel for Ronaldo Ligons,
*State v. Ligons*, 9200218, A06-2371, and A07-0957; and
*Ligons v. King*, 11-1630 (8th Cir. 2011)