## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

RONALDO LIGONS,  File No. 15-CV-2210, PJS/BT
BARRY MICHAELSON,
JOHN ROE, and JANE ROE,
JOHN MILES AND JANE MILES,
JOHN STILES AND JANE STILES,
individually, and on behalf of those similarly situated,

      Plaintiffs,

v.  **SECOND AMENDED**

MINNESOTA DEPARTMENT OF CORRECTIONS,  **COMPLAINT**

THOMAS ROY,  JURY DEMANDED
Minnesota Commissioner of Corrections,  for all claims triable to
in his official capacity,  the jury;

DR. DAVID A. PAULSON, M.D.,  EQUITABLE RELIEF
in his individual and his official capacities for actions
under color of law as Medical Director,  AND DECLARATORY
Minnesota Department of Corrections,
   RELIEF DEMANDED

NANETTE LARSON,  FOR CLASS CLAIMS
in her individual and her official capacities
for actions under color of law as Health Services Director,  AND INDIVIDUAL
Minnesota Department of Corrections,
   CLAIMS AMENABLE

Dr. D. QUIRAM, M.D.,  TO DECLARATORY
in his individual and his official capacities for
actions under color of law as Plaintiffs' treating physician  AND EQUITABLE
at Minnesota Correctional Facility, Stillwater,

Dr. R. HANSON, M.D.,  RELIEF
in his individual and his official capacities
for actions under color of law as Plaintiffs' treating physician
at Minnesota Correctional Facility, Stillwater,

JOHN and JANE DOES A - J,
in their respective individual and official capacities
for actions under color of law as staff of
Minnesota Correctional Facilities, Stillwater and Faribault,

and

CENTURION OF MINNESOTA, L.L.C.,

     Defendants,

## INTRODUCTION

Plaintiffs are inmates of the Minnesota Department of Corrections.  The plaintiff class representatives, RONALDO LIGONS and BARRY MICHAELSON, suffer from the serious medical need, disability, and life-threatening viral disease known as hepatitis-C (HCV for "hepatitis-C virus").  Hepatitis C infects nearly four million Americans and kills more people than HIV/AIDS, according to the Center for Disease Control and Prevention (CDC).

HCV was a "silent epidemic," growing by the year in and out of prisons, infecting entire families.  Prior to late 2013, HCV treatment consisted of "chemo-like", toxic Interferon injections, which lasted nearly a year, yielding ~~with~~ low levels of success and serious, debilitating flu-like side effects.  See CDC publication recognizing the 25th Anniversary of the discovery of HCV, June 17, 2014 (Exhibit 1).

In October 2013, the Food and Drug Administration's (FDA's) announcement of new "breakthrough" direct-acting antiviral (DAA) drugs to cure HCV caused the American Association for the Study of Liver Disease (AASLD) and the Infectious Disease Society of America (IDSA), the two relevant professional medical associations concerned with the treatment and cure of HCV, to convene the AASLD/IDSA "HCV Guidance Panel." Thirty national experts, including gastroenterologists and hepatologists with experience in

treating HCV, comprise he HCV Guidance Panel.

Rapidly changing science required HCV practitioners to have professional guidance on the new community standard of professional medical care for treatment of HCV with the new FDA-approved breakthrough DAA drugs that did, in fact, cure all stages and levels of HCV infection with twelve weeks of oral medication.  Physicians who prescribed older treatments that did not cure HCV could no longer justify such medically outmoded practice.[1]

The purpose of the HCV Guidance Panel remains keeping practitioners abreast of rapidly changing HCV treatments, evaluating new drugs and treatment regimes through publishing: "Recommendations for the Testing, Managing and Treating Hepatitis C.  See http://www.hcvguidelines.org)," which states that the AALSD/IDSA HCV Guidance Panel website is to provide:

> "...up to date recommendations for HCV practitioners on optimal screening, management and treatment for adults with HCV infection in the United States, using a rigorous review process to evaluate the best available evidence....This (website) was conceived as a living document that would reside online and undergo real-time revisions as the field evolved."

Both Plaintiffs began requesting that Defendants provide treatment with the FDA "breakthrough" DAA new medications in late 2013, under the trade names *Sovaldi* and *Olysio*.

*Jan. 2014: "FDA breakthrough" #1 Sovaldi/Olysio* Standard-of-Care

---

[1]  See AASLD/IDSA HCV Guidance Panel, "Hepatitis C Guidance: AASLD-IDSA Recommendations for Testing, Managing, and Treating Adults Infected with Hepatitis C Virus," accepted for publication in *Hepatology* magazine, June 3, 2015, http://www.hcvguidelines.org/June 29, 2015 (Ex. 2).

The AASLD/IDSA adopted the "breakthrough" drug 12-week daily oral medication protocol with the 95% cure rate, as the HCV medical treatment community medical standard of care in January 2014, consistent with the medical treatment community standard of medical care definition of *U.S. v. Kubrick*, 444 U.S. 111 (1979). This process for the HCV Standard of Care is explained in the article by the HCV Guidance Panel published on the www.hcvguidelines.org website on June 29, 2015 *infra* and *supra*.

By June 2014, the Federal Bureau of Prisons (FBOP), the Center for Disease Control, the United States Public Health Service, the Food and Drug Administration, and the United States Department of Veterans Affairs had all recognized the changed standard of care within the hepatitis-C medical treatment community for HCV patients in their approval and implementation of one-pill-per-day, 12-week protocols for the treatment of HCV patients, as the up-to-date standard of care in the hepatitis-C treatment community.

June 2015: FDA "Breakthrough #2 – Harvoni/Viekira-Pak Standard of Care

In October 2014, the FDA approved more advanced HCV breakthrough direct-acting antiviral (DAA) drugs that cure at a 95% rate, and eliminate Interferon injections completely.  Under the trade names Harvoni and Viekira-Pak, the AASLD/IDSA website www.hcvguidelines.org identified these as important advances in HCV treatment in January 2015.

During the next six months the AASLD/IDSA "HCV Guidance Panel" considered whether the elimination of *Interferon* and better tolerance of the new medication changed previous (January 2014) "Standard-of-Care" recommendations.  On June 29, 2015, the

AASLD/IDSA updated www.hcvguidelines.org to establish the HCV standard of care, which requires that treatment providers eliminate Interferon in any form as a recommended treatment for HCV.  This means that *only* the October 2014 non-*Interferon* "breakthrough" DAA drugs, trade-named *Harvoni* and *Viekira-Pak*, now meet the undisputed community standard of care for all HCV treatment providers.

The current AASLD/IDSA Standard-of-Care also requires that HCV treatment providers treat all HCV-infected patients as soon as possible with the most-recently approved Direct Acting Anti-viral (DAA) drugs to remove the HCV infection, no matter what the level of infection.  Chemical dependency testing and treatment are not relevant, nor is a correction facility's claim of lack of resources to justify treating some more severely symptomatic patients, and not others.

### *AASLD/IDSA Standard of HCV Care: "*Mandatory for All M.D.'s"

As of June 29, 2015, Medical Doctors and other HCV treatment providers are professionally obligated to prescribe non-Interferon Direct Acting Anti-virals (DAA) (currently Harvoni or Viekira-Pak), to any patient presenting HCV positive, with recommended treatment to begin immediately at any level of infection, no matter how recent or low the level of the infection. This is the case for all M.D.'s irrespective of their employment situation, including Defendant MN DOC and its contractors.

In light of the "Recommendations for HCV Practitioners" available on the website: www.hcvguidelines.org, there are *no medically justifiable reasons* for licensed medical doctors (M.D.'s) practicing in the state of Minnesota, or elsewhere with access to the Internet, to refuse or decline to prescribe either *Harvoni* or *Viekira-Pak* *to every patient*

_who presents with an HCV-positive diagnosis._   The HCV community standard of professional medical care requiring the prescribing of DAA's has been clearly established since January 2014,  Non-Interferon DAA treatment has been the clearly established community standard of professional medical care for HCV since June 2015.

The plaintiffs, individually and as a class, sue the Defendants in their respective, specified individual and official capacities for their joint and several actions that constitute deliberate indifference to their serious medical needs as Hepatitis C patients, in violation of their clearly established Eighth and Fourteenth Amendment rights under the United States Constitution, for which 42 U.S.C. §1983 provides declaratory, equitable, and legal remedies.  Defendants have refused Plantiffs' repeated requests to be treated with the up-to-date medications that cure all stages of HCV infection, irrespective of viral load, and, with minor variations, irrespective of genotype of HCV, for non-medical reasons of administrative convenience or cost, which are not related to the individual medical needs of Plaintiffs.

Plaintiffs represent a subclass of inmates who:

- are infected with HCV but do not know it, or
-  fear infection or reinfection with HCV because of the Defendants' joint and several deliberate indifference to the foreseeability of HCV infection, because of the absence of HCV testing, in contrast to HIV screening and prison practices including bunking non-infected inmates with known HCV-infected inmates.

The plaintiffs, individually and as a class, sue the Minnesota Department of Corrections, a recipient of federal monies, Commissioner Tom Roy, Centurion of

Minnesota, L.L.C., a recipient of federal monies, and other named Defendants in their official capacities for acts constituting discrimination because of their disability of Hepatitis C under Title II of the Americans with Disabilities Act as Amended and § 504 of the Rehabilitation Act of 1973, in the defendants' deliberate indifference in refusing to accommodate reasonably their disability of HCV infection by (a) knowing of their disabilities, (b) knowing of their requests for DAA's that are the community standard of professional medical care for HCV, (c) knowing that the AASLD/IDSA established DAA's as the community standard of professional medical care for HCV, and (d) refusing to provide the DAA's to the Plaintiffs. The Eleventh Amendment is no bar to declaratory, prospective equitable, or legal relief under Title II or the Rehabilitation Act.

The plaintiff class representatives have exhausted their administrative remedies under governing national and state laws. The plaintiffs demand jury trial for all claims triable to the jury.

## JURISDICTION AND VENUE

1. Plaintiffs set forth claims under U.S. Const. amend. VIII and XIV, 42 U.S.C. § 12131 et seq., and 29 U.S.C. § 791 et seq. 28 U.S.C. §§ 1331 (federal question) and 1343(a)(4) (federal civil rights question) confer subject matter jurisdiction on this court.

2. The substantial number of events in this lawsuit took place in Washington and Ramsey Counties, state of Minnesota. Plaintiffs lay venue in this court per 28 U.S.C. §1391 and LR D. Minn. 83.11.

**PLAINTIFFS**

3. Plaintiff RONALDO LIGONS (LIGONS) has been an inmate of MN DOC and its correctional facilities since 1992, and is now lodged at MCF Faribault.  Ligons was not informed by Defendant MN DOC agents until 1998 that he was HCV positive.

4. The 48-week, toxic Interferon injection treatment MN DOC provided to Mr. Ligons failed in 2006, despite Mr. Ligons' enduring nearly a year of side effects.

5. Mr. Ligons is to be released from MN DOC custody in more than three months, viz., more than twelve weeks from the date of suit.

6. As the direct result of the policy and practice of MN DOC and CENTURION OF MINNESOTA, L.L.C., and individual Defendants' conduct, Mr. LIGONS has been denied the current standard-of-care one-pill per day, non-Interferon twelve week HCV treatment that cures HCV at a 95% rate, in deliberate indifference to his serious medical needs as a Hepatitis C sufferer, and because of his disability as a hepatitis C sufferer.

7. Mr. Ligons has been denied HCV curative medication because of non-medical MNDOC policies designed to ration medication to a limited number of inmates, for administrative convenience or money, without regard to Mr. Ligons' individual medical needs, his disabling case of HCV, and the current community standard of professional medical care for HCV.

8. Plaintiff BARRY MICHAELSON (Michaelson) is an inmate of the MN DOC at MCF Stillwater. Defendant MN DOC agents, representatives, or employees informed Mr. Michaelson that he was HCV-negative in October 2009, when he

entered MN DOC custody.

9. Mr. Michaelson tested HCV positive in 2010, only *after* being double-bunked with a bleeding, HCV-positive cellmate and his exposure to other sources of HCV *in MN DOC facilities*. Mr. Michaelson is to be released in more than three (3) months, viz., more than twelve weeks, from the date of suit.

10. ~~8.~~ As the direct result of the policy and practice of MN DOC and CENTURION OF MINNESOTA, L.L.C., and individual Defendants' conduct, Mr. LIGONS and Mr. MICHAELSON have been denied the current standard-of-care one-pill per day, twelve week HCV treatment that cures HCV at a 95% rate, in deliberate indifference to their serious medical needs as Hepatitis C sufferers, and because of their disabilities as hepatitis C sufferers.

11. Mr. Michaelson has been denied HCV curative medication because of non-medical MNDOC policies designed to ration medication to a limited number of inmates for administrative convenience or money, without regard to Mr. Michaelson's individual medical needs and disabling case of HCV.

12. In the cases of Mr. Ligons and Mr. Michaelson, HCV is a disability and disease of the digestive and circulatory systems that substantially and materially impairs their respective major life activities of (a) self-caring, (b) social interaction with other persons, (c) manual tasks particularly those involving knives, scissors, pins, needles, toothbrushes, eating utensils, or shaving razors, (d) reproduction, and (e) life itself.

13. Each day that MN DOC delays treatment of Mr. Ligons' and Mr. Michaelson's cases of HCV, the likelihood of cirrhosis of the liver, liver cancer, a liver transplant,

and death from HCV grow for each of them, as well as each member of the Class, as does the likelihood of infection for those with whom they come in contact in MN DOC facilities and, after their respective release, with whom they make contact in the general public.

14. The Plaintiffs' liver, digestive system, and circulatory systems continue to deteriorate, as do those of other members of the named class, the subclass of plaintiffs with known cases of HCV that are not treated, and the subclass of plaintiffs with unknown and untreated cases of HCV.

15. Mr. Ligons and Mr. Michaelson have demanded HCV treatment in accordance with the one-pill a day, twelve week treatment protocol for Sovaldi that the FDA, U.S. Public Health Service, and Center for Disease Control have approved, and which the Federal Bureau of Prisons (FBOP) has approved for administration to HCV-positive federal inmates.

16. The Defendants jointly and severally have denied treatment to plaintiffs Ligons and Michaelson because of the Defendants' respective polic(y/ies) and acts designed to limit or ration anti-HCV medication for non-medical reasons of administrative convenience or cost, unrelated to the individual medical needs of Plaintiffs, or the medical benefits they would derive from being cured of HCV.

17. Plaintiffs Ligons, Michaelson and those similarly situated, are that portion of the approximately 9,000 inmates at the nine Minnesota Department of Correction (MnDOC or MN DOC) facilities who have tested positive, or will test positive, for HCV (15% would be 1350 inmates).  MN DOC admits conservatively that 15% of

9,000 inmates, or 1,350 inmates, are infected with HCV.

17. Plaintiffs Ligons and Michaelson have requested the up-to-date 12-week HCV treatment which the FDA has approved since December 2013 ~~and~~ confirmed since December 2014, and which the AASLD/IDSA established at the community standard of professional medical care in January 2014, and confirmed in June 2015, with the added prohibition against inferferon.

18. The Federal Bureau of Prisons (FBOP) adopted the FDA-approved 12-week HCV treatment no later than June 2014.

19. Plaintiffs Ligons and Michaelson reported their respective requests for the FDA-approved 12 week treatment to MN DOC Medical Director David Paulson, M.D., and MN DOC Health Services Director Nanette Larson, the official who has final authority to approve or deny medical grievances of Minnesota Department of Corrections inmates.

20. Medical Director Dr. Paulson and Health Services Director Larson, jointly and severally, individually and officially, have denied Ligons' and Michaelson's respective requests for the FDA-approved 12 week treatment, although both Ligons and Michaelson both meet the AASLD/IDSA requirements for <u>immediate Direct Acting Antiviral (DAA), non-Interferon treatment</u>.

21. Plaintiffs Ligons and Michaels have exhausted their respective administrative remedies under governing ~~federal and state~~ law.

<u>Other Class Members</u>

22. Plaintiffs JOHN ROE and JANE ROE are the estimated 50-80% of male and

female inmates of MN DOC institutions who have not been screened for HCV, as they were for HIV, and do not know their HCV status.

23. Plaintiffs **JOHN MILES AND JANE MILES** are the respective male and female inmates of MN DOC institutions who have tested positive for HCV, and have not received treatment for HCV, in compliance with the professional standard of medical care for HCV-positive individuals that the FDA, FBOP, CDC, U.S. Public Health Service, and U.S. Department of Veterans Affairs approved since December 2013.

24. Plaintiffs **JOHN STILES AND JANE STILES** are the respective male and female inmates of MN DOC institutions who are HCV-positive, do not know that they are HCV-positive, and have not received treatment for HCV, in compliance with the professional standard of medical care for HCV-positive individuals that the FDA, FBOP, CDC, U.S. Public Health Service, and U.S. Department of Veterans Affairs approved since December 2013, and which the AASLD/IDSA established in January 2014 and confirmed in June 2015, with the added prohibition against interferon.

25. All Plaintiffs are daily exposed to HCV infection, or re-infection while incarcerated, due to the deliberate indifference of Defendants who have not adopted the safer, more effective treatment protocols for HCV treatment adopted by the CDC, U.S. Public Health Service, and Federal BOP to prevent infection and re-infection of inmates.

26. Plaintiffs Ligons and Michaelson reported the FBOP adoption of the FDA-approved 12 week protocol to Dr. Paulson.

27. Dr. Paulson denied Messrs. Ligons' and Michaelson's respective requests.

28. Defendants' knowing refusal to make available the safer and more effective cure for Plaintiffs' HCV infection, and continuing a policy of refusing to make the 12-week treatment and cure available for non-medical reasons of administrative convenience and cost, are prolonging the harm HCV is causing to named Plaintiffs' bodies and life expectancies, and those of other MN DOC inmate class member and other MN DOC inmate subclass members, and demonstrate deliberate indifference to the plaintiffs' respective serious medical needs.

Defendants

29. Defendant **MINNESOTA DEPARTMENT OF CORRECTIONS (MN DOC, MnDoc, MnDOC)** is an agency of the state of Minnesota, with its principal place of business and headquarters in the city of St. Paul, Ramsey County, state of Minnesota, and is a recipient of federal funds.

30. Plaintiffs sue Defendant MN DOC for creation and implementation of policies that

(a) have directly inflicted harm and demonstrated deliberate indifference to the disability, disease, and serious medical needs of plaintiffs, in defiance of the Plaintiffs' clearly established rights under U.S. Const. amend. VIII and XIV through 42 U.S.C. § 1983, and

(b) discriminated against Plaintiffs on the basis of their disability in defiance of Title II of the Americans with Disabilities Act as Amended at 42 U.S.C. § 12131 et seq., § 504 of the Rehabilitation Act of 1973 at 29 U.S.C. § 791 et seq.

31. Defendant **THOMAS ROY**, an adult individual, (Roy, Commissioner Roy, Commissioner) is the Commissioner of Corrections of the **MINNESOTA DEPARTMENT OF CORRECTIONS (MN DOC)**, whom Minnesota Governor Mark Dayton appointed as Commissioner of Corrections, is responsible for policy, administration and supervision of staff within MN DOC during all times relevant to this action, and is sued in his official capacity.

32. Defendant **DAVID A. PAULSON, M.D.** is an adult individual and the Medical Director of MN DOC, with his office in the Central Office of MN DOC, responsible for medical services within the MN DOC system.

33. Dr. Paulson admitted in correspondence on March 3, 2015 that he is aware of the AASLD/IDSA guidelines, and that he has declined to prescribe DAA medications as such guidelines require in MN DOC Hepatitis C treatment protocols.

34. Plaintiffs sue Defendant David Paulson in his respective individual and official capacities for actions taken under color of law as Medical Director, MN DOC.

35. Defendant **NANETTE LARSON, R.N.** is an adult individual and the Director of Health Services in the Central Office of MN DOC.

36. Grievances arising from the denial of medical care, and the denial of Plaintiffs' requested medical care, by MN DOC staff that are appealed to the Central Office are reviewed and ruled upon by **NANETTE LARSON** in accordance with governing federal law, state law, and applicable MN DOC regulations having the force of law.

14

37. On information and belief after reasonable inquiry by the plaintiffs, grievances arising from the denial of medical care, and the denial of Plaintiffs' requested medical care, by MN DOC staff that are appealed to the Central Office are reviewed and ruled upon by NANETTE LARSON, after consultation with Defendant PAULSON.

38. Plaintiffs sue Defendant LARSON in her individual and official capacities for her actions taken under color of law as Director of Health Services, MN DOC.

39. DR. D. QUIRAM, M.D., and DR. R. HANSON, M.D., adult individuals, are treating physicians of Plaintiffs respectively.

40. DR. QUIRAM and DR. HANSON provide medical services to Plaintiffs, pursuant to contract with MN DOC.

41. DR. QUIRAM and DR. HANSON have the obligation to provide independent, individualized, safe, effective medical care to each Plaintiff, consistent with current AASLD/IDSA community standards of professional medical care applicable to all HCV medical care providers, per *U.S. v. Kubrick*, 444 U.S. 111 (1979).

42. Plaintiffs sue DR. QUIRAM and DR. HANSON in individual and official capacities for action taken under color of law as Plaintiffs' treating physicians under contract to MN DOC through Defendant CENTURION OF MINNESOTA, L.L.C., for their deliberately indifferent failure to treat Plaintiffs' disability, disease, and serious medical needs of hepatitis C in compliance with current standards of individualized professional medical care.

15

43. Defendants **JOHN** and **JANE DOES A – J**, adult individuals, are male and female doctors, nurses, case managers, correctional officers, supervisors, and **MN DOC** employees, agents, or representatives, whose work places are **MCF Stillwater** or **MCF Faribault**, charged with responding to requests for medical care for hepatitis C from named Plaintiffs, or responding to requests for medical care for hepatitis C from now-unknown inmates of the **MN DOC**.

44. Plaintiffs sue **DEFENDANTS JOHN AND JANE DOE A – J** in their respective individual and official capacities for actions taken under color of law for their deliberately indifferent failure to treat Plaintiffs' disability, disease, and serious medical needs of hepatitis C in compliance with current standards of individualized professional medical care.

45. Defendant **CENTURION OF MINNESOTA, L.L.C. (CENTURION)**, is a for-profit limited liability company with its principal business and headquarters in Minnesota, doing business in Minnesota.

46. Defendant **CENTURION OF MINNESOTA, L.L.C. (CENTURION)**, previously misnamed **CENTENE CORPORATION**, is a recipient of federal funds.

47. Defendant **CENTURION** contracted with **MN DOC** to provide medical treatment services to **MN DOC** inmates for sixty-seven million dollars ($67,000,000), beginning on 1 January 2014.

48. Plaintiffs sue Defendant **CENTURION** for creation and implementation of

policies, pursuant to contract with MN DOC, that have directly inflicted harm and demonstrated deliberate indifference to the disability, disease, and serious medical needs of plaintiffs, in defiance of U.S. Const. amend. VIII and XIV through 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act as Amended at 42 U.S.C. § 12131 et seq., and § 504 of the Rehabilitation Act of 1973 at 29 U.S.C. § 791 et seq.

**49.**      Because of the "silent epidemic" of HCV-positive inmates entering the MNDOC system, and the high-costs of treating HVC infections, the Defendants MNDOC and Centurion have instituted a policy of rationing anti-HCV medication to as few inmates as possible, for reasons of administrative convenience and cost, unrelated to the medical needs of individual inmates, who are the Plaintiffs.

Documents Provided to Plaintiffs by
MN DOC and Dr. Paulson, M.D. in 2015
Admit Multiple Breaches of the AASLD/IDSA Community
Standardof Professional Medical Care from January 2014 to the Present.

50. As recently as March 3, 2015, Dr. Paulson has falsely claimed in writing that the protocols for the treatment of HCV-infected MN DOC prisoners under his charge are based on the AASLD/IDSA "Recommendations for Testing, Managing and Treating Hepatitis C" (http://www.hcvguidelines.org) in response to an inmate's request for HCV treatment, which require immediate treatment DAA treatment at all levels of HCV infection.

51. As recently as June 2015, Dr. Paulson authorized distribution to Plaintiffs and unnamed class members of MN DOC Health Services Unit "Chronic Hepatitis C

Management & Procedures," dated 5/9/2012, that describes HCV and HCV treatment in terms that reference year-long *Interferon* treatment and describe barriers to treatment that completely contradict the AALSD/IDSA standard-of-care that apply to medical care providers such as Dr. Paulson, himself.

52. As recently as June 2015, Dr. Paulson authorized distribution to Plaintiffs and unnamed class members of "consent for HCV treatment" forms that contradict the AALSD/IDSA standards-of-care for HCV treatment providers, including Dr. Paulson.

Facts

Hepatitis C Virus (HCV): A Silent, Deadly Epidemic

53. HCV was not discovered until 1989. Blood screening was not possible until the mid-1990's.  According to the CDC, everyone born between 1945 and 1965 is at risk and should undergo testing for hepatitis C; a 12 week cure was not possible until late 2013 with FDA approval of direct acting antiviral (DAA) drugs; and a twelve week oral cure without toxic Interferon injections was not possible until late 2014, with FDA approval of Harvoni and Viekira-Pak.

54. The Centers for Disease Control (CDC) estimate the potentially fatal blood-borne Hepatitis-C Virus (HCV) infects some 4 million Americans of all ages and walks of life (about 2% of the population) and causes more deaths than HIV/AIDS.

55. Between 20 - 50% of America's 2.3 million inmates are HCV-positive. According

to the CDC, therefore most prisoners and 98% of the general population are at risk from unscreened, untreated inmates.

56. Eliminating HCV from corrections facilities filters HCV from the entire nation's blood pool by making prisons and jails sites where treatment is readily available to at-risk populations to stop transmission of the virus outside of prisons and jails.

### How HCV Infects and Debilitates Unknowing Victims

57. HCV is a chronic, potentially fatal blood-borne viral disease that substantially and materially degrades the liver's ability to purify blood and to convert substances in the blood to glucose, inflicting progressive damage on the liver, which substantially and materially impairs the body's digestive and circulatory systems each day.

58. HCV can be spread by mere contact with an infected individual's blood, under such circumstances as:  (a) physical activity in sports,  (b) tattooing, (c) use of a needle not properly cleaned and sterilized, (d) exposure to an infected person's blood in the course of medical care, (e) barber and cosmetology care, (f) sexual activity, (g) sharing of eating utensils and food, (h) sharing razors or other personal grooming supplies, (i) sharing bathrooms or shower facilities, (j) sharing living quarters, or (k) physical violence between inmates or involving staff.

59. If left untreated, even asymptomatic HCV causes cirrhosis, or destructive scarring of the liver, liver cancer, and may require a liver transplant, and eventually cause other symptoms to those it afflicts.  As a communicable disease, HCV poses an unreasonable and substantial risk of serious present and future medical and

physical harm to the Plaintiffs, and the general public after Plaintiffs' release from prison. *Roe v. Elyea*, 631 F.3d 843 (7th Cir. 2011).

60. HCV substantially and materially impairs the individual's, and these plaintiffs', major life activities of (a) self-caring, (b) social interaction with other persons, (c) manual tasks particularly those involving knives, scissors, pins, needles, toothbrushes, eating utensils, or shaving razors, (d) reproduction, and (e) life itself.

61. Each day treatment is postponed, the likelihoods of: cirrhosis of the liver, liver cancer, a liver transplant, and death from HCV grow for each member of the Class, as does the likelihood of infection for those with whom they come in contact in MN DOC facilities and for members of the general public after they are released into the general population outside prison.

### Defendant M.D.'s Deliberately Ignored the AASLD/IDSA Professional Medical Standard of Care HCV Cure from January 2014 to the Present Date, thus Proving Deliberate Indifference to the Plaintiffs' Known, HCV Infection Harms and Their Serious Medical Needs.

62. In January 2014, the Infectious Disease Society of America (IDSA) and the American Association for the Study of Liver Disease (AASLD) issued guidelines recommending *sofosbuvir* (*Sovaldi*) and similar new drugs as *first-line therapy* to replace year-long Interferon-based injections entirely. *See*, www.hcvguidelines.org.

63. In June 2014 the Federal Bureau of Prisons (FBOP) issued "Clinical Practice Guidelines" (Guidelines, or Protocol) for HCV treatment of inmates. The FBOP

*specifically* rejected the more dangerous, less effective 48-week toxic Interferon-based injection treatment regimen.

64. The protocol specifically lists the **ASSLD/IDSA** *sofosbuvir* twelve week, one pill per day regimen as the safer, more effective, standard-of-care in all **FBOP** facilities.

65. Other agencies of the United States, including the Centers for Disease Control (CDC), the United States Department of Veterans Affairs (VA), and the Surgeon General of the United States Public Health Service (Surgeon General) adopted the one pill per day, twelve-week protocol as the standard of care for treatment of HCV, and specifically rejected the forty-eight week toxic Interferon injection regimen, as has: the CDC, the Veterans Administration (VA), and the Surgeon General of the US. Public Health Service.    Private insurers that include UnitedHealth, Anthem, and Aetna cover the non-interferon anti-viral oral pill treatments.

66. As set forth in the FBOP June 14, 2014 Clinical Practice Guidelines for HCV, the above protocols' only medical criteria are that the patient; (a) not be pregnant; (b) have sufficient time in custody to complete treatment; and, (c) "demonstrate willingness and ability to adhere to rigorous treatment and to abstain from high risk activities."

67. In October 2014, the FDA approved two additional "breakthrough" drugs that eliminated weekly interferon injections from the 12-week daily oral medication treatment regimen approved only a year earlier.   *Harvoni* and *Viekira-Pak* were

also approved in January, 2015 by the AASLD/IDSA, with posting on www.hcvguidelines.org.

68. On June 29, 2015, the AASLD/IDSA established non-Interferon Harvoni and Viekira-Pak as the recommended standard-of-care for HCV-infected patients, to the exclusion of all other medications for patients and all levels of infection.

69. The new AASLD/IDSA medical standard-of-care: (a) specifically rejects Interferon treatments; (b) recommends *immediate* treatment with the new medication for all HCV-infected patients without pre-condition to reach sustained SVR (Sustained Viral Response) as soon as possible; and, (c) permits "rationing" of treatment to patients with more serious symptoms *only* for health care providers for whom cost is a lawful justification, per www.hcvguidelines.org, June 29, 2015.

70. According to the AASLLSD/IDSA, FBOP, CDC, and VA protocols, chemical dependency treatment is not a medically required precondition for the twelve week HCV treatment, contrary to MN DOC.

71. Cost of providing the professional standard of medical care, after an HCV diagnosis, is not a lawful defense for delaying or refusing to treat prisoners under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976).

Delays in Treating
*Known HCV* Infection Is
Deliberate Indifference to the Serious Illnesses
and Medical Needs of the Plaintiffs, *Erickson v. Pardus*,
550 U.S. 89 (2007), and the AASLD/IDSA Standard of Professional
Medical Care for Treatment and Cure of HCV Applies to Medical Doctors
Who Treat Patients *in or out of Prison*, per *U.S. v. Kubrick*, 444 U.S. 111 (1979).

72. *Erickson v. Pardus,* 551 U.S. 89, 90, (2007), acknowledges that conscious delay, denial, or interference in medical treatment of hepatitis C for non-medical reasons -- standing alone -- states a plausible claim against prison officials for deliberate indifference to the serious medical needs of a prisoner in violation of U.S. Const. amend. VIII and XIV through 42 U.S.C. §§ 1983 and 1988.

73. Upon information and belief, Defendants Medical Director Dr. Paulson, M.D. Director of Health Services Larson, Drs. D. Quiram, M.D,, R. Hanson, M.D. and other Defendant MN DOC, agents or contractors, including CENTURION, jointly and severally, had actual knowledge of the AASLD/IDSA HCV Guidance Panel website *www.hcvguidelines.org,* (specifically referenced by Dr. Paulson in his March 3, 2015 correspondence), professional journals, professional meetings, FBOP publications and general media as the Standard-of-Care for HCV infected patients. See *United States v. Kubrick*, 444 U.S. 111 (1979

74. At all times relevant to this lawsuit, Defendant MN DOC, its agents or contractors including CENTURION, jointly and severally, have willfully denied, or, with deliberate indifference to the serious medical needs of the plaintiffs, denied the AASLD/IDSA current medical professional HCV-treatment community standard of individualized medical care to plaintiffs and similarly situated HCV positive inmates, specifically, the daily oral twelve week, non-*Interferon* treatment protocols, for non-medical reasons.

75. At all times relevant to this lawsuit, Defendant MN DOC, its agents or contractors including CENTURION, jointly and severally, have willfully delayed, denied, or

interfered with plaintiffs' timely HCV treatment by:

(a) requiring chemical dependency treatment as a medically unnecessary precondition for HCV treatment, unrelated to www.hcvguidelines.org standards-of care.

(b) withholding HCV treatment until plaintiffs manifest symptoms of fibrosis, cirrhosis of the liver, or liver cancer, for non-medical reasons and contrary to the AASLD/IDSA medical standard-of-care, contrary to *www.hcvguidelines.org.*

76. The Defendants' joint and several willful, deliberate indifference to the AASLD/IDSA Profession Medical Standard-of-Care and serious medical needs of the plaintiffs make increased public expense to treat Plaintiffs' cases of HCV foreseeable and inevitable, including their long-term illness and death, as well as the costs associated with the infection of others.

### E. Unequal Treatment and Deliberate Indifference to HCV-Infected Inmates as Compare to HIV/AIDS-Infected Inmates

77. Contract #70449 ("the Contract") governing the business relationship between Defendant MN DOC and Centurion, signed on October 17, 2013 requires that Defendant Centurion provide "infectious disease screenings" upon inmates' intake. Upon information and belief, such screening for HIV/AIDS takes place regularly, but such screening does not include HCV infections.

78. Contract #70449 obligates Centurion to provide "all treatment for HIV/AIDS in a manner consistent with applicable standards of medical care, *including CDC guidelines and the Twin Cities' area community standard of care.* The

CONTRACTOR shall be responsible for all medical costs associated with the screening and treatment of HIV/AIDS." (emphasis added)

79. However, with respect to "Hepatitis C Treatment" Contract #70449 requires *only*: "services for the diagnosis and treatment of Hepatitis C <u>within the then current treatment guidelines and *then current Hepatitis C treatment protocols established by the DOC,* as incorporated herein.</u>"

80. Contract #70449, on its face, specifically instructs Defendant Centurion that it *must* treat inmates with the life-threatening blood-borne infection HIV/AIDS according to the current professional medical community standard-of-care, but discriminates against inmates with the life-threatening, blood-borne HCV infection by <u>not</u> requiring treatment according to the current professional medical community standard-of-care, but limiting treatment to internal protocols of  Defendant MN DOC.

HCV AS A SERIOUS MEDICAL NEED, IN WHICH ASSERTED FAILURE OR DELAY IN TREATMENT STATES CLAIMS FOR DELIBERATE INDIFFERENCE TO PRISONERS' MEDICAL NEEDS UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS

81. *Erickson v. Pardus,* 551 U.S. 89, 90, 127 S. Ct. 2197 (2007), holds that conscious delay, conscious denial of access, or conscious interference in medical treatment of hepatitis C for non-medical reasons  -- standing alone -- states a plausible claim for deliberate indifference against prison doctors, prison guards, or prison officials to

the serious medical needs of a prisoner in violation of U.S. Const. amend. VIII and XIV through 42 U.S.C. § 1983.

82. Minnesota Department of Health Regulations 4605.7030 and 4605.7040 subp. B(22) require that all physicians, healthcare facilities, medical laboratories, and every licensed healthcare provider *shall submit* clinical materials associated with HCV positive cases to the Commissioner of Health within one working day of diagnosis.

83. Said Minnesota regulations impose a duty to obtain knowledge, and to transmit said knowledge to the Minnesota Department of Health, of all HCV cases within the care and responsibility of all medical care providers, including medical care providers employed by, or contracted by, the Minnesota Department of Corrections.

84. In accordance with Minn. Stat. § 241.01 subd. 3(a)(1), Defendant MN DOC has adopted "Blood borne Pathogen Policy" §105.170 *et seq.* with updates §105.170 FRB, 5/6/14, and §151.171, 9/2/14, which purport to adopt up-to-date U.S. Public Health Service (USPHS) and CDC treatment protocols for disabling, blood borne pathogens, including HCV.

85. At all times relevant to this lawsuit, Defendant MN DOC, its agents, employees, representatives, or contractors including CENTURION, provide free, routine screening for HIV/AIDS within 14 days of prisoners' intake, or in response to a "kite" written request to a facility health service, with treatment available at all MN DOC facilities, without the precondition of chemical dependency treatment.

86. In contrast, at all times relevant to this lawsuit, Defendant MN DOC, its agents, employees, representatives, or contractors including CENTURION, provide NO routine screening for HCV during or after intake to identify sources of infection, or to protect inmates from sources of infection, despite the duties to know and transmit that the above regulations impose.

87. Upon information and belief, Defendants Medical Director Dr. Paulson, Director of Health Services Larson, Defendant Nanette Larson, R.N., Drs. Quiram, Hanson and other Defendants had actual knowledge of the AASLD/IDSA HCV Guidance Panel website, www.hcvguidelines.org (specifically referenced by Dr. Paulson in his March 3, 2015 correspondence), professional journals, professional meetings, FBOP publications, and general media as the community standard of professional medical care for HCV-infected patients, since January 2014, as community standard of professional medical care is defined in *U.S. v. Kubrick*, 444 U.S. 111 (1979).

88. Despite Defendants' knowledge of the new safer and more effective standard-of-care, the Defendants, jointly and severally, have not provided the current 12-week week one pill per day professional HCV-treatment community medical standard of care described in the AASLD/IDSA HCV Guidance Panel, www.hcvguidelines.org, the June 2014 FBOP Clinical Treatment Guidelines, and other peer-reviewed sources, to meet the individual needs of the Plaintiffs, and to screen and cure prisoners infected with the HCV virus for reasons unrelated to medical care.

89. At all times relevant to this lawsuit, Defendant MN DOC, its agents, employees, representatives, or contractors including CENTURION, jointly and severally, have willfully denied, or, with manifest deliberate indifference to the serious medical needs of the plaintiffs, denied the current medical professional HCV-treatment community standard of individualized medical care to plaintiffs and similarly situated HCV positive inmates, specifically, the daily oral twelve week non-interferon DAA treatment protocols, for non-medical reasons.

90. At all times relevant to this lawsuit, Defendant MN DOC, its agents, employees, representatives, or contractors including CENTURION, jointly and severally, have willfully delayed, denied, or interfered with plaintiffs' timely HCV treatment by requiring chemical dependency treatment as a medically unnecessary precondition for HCV treatment.

91. At all times relevant to this lawsuit, Defendant MN DOC, its agents, employees, representatives, or contractors including CENTURION, have intentionally delayed, denied, or interfered with plaintiffs' timely HCV treatment by withholding HCV treatment until plaintiffs manifest symptoms of fibrosis, cirrhosis of the liver, or liver cancer, for non-medical reasons.

92. The only HCV treatment available in the MN DOC–CENTURION system consists of the forty-eight week course of daily toxic Interferon-based injections and monitoring of blood viral load in a clinical setting.  The FBOP rejected this treatment in June 2014 as falling below the professional hepatitis-C medical treatment community standard of individualized care of inmates, specifically, the

twelve week, one oral pill per day medication protocol available since December 2013 of Olysio, Sovaldi, and successor medicines that include Harvoni and Viekira Pak.  The AASLD/IDSA rejected HCV treatment with interferon in June 2015.

93. As described in written policy and in response to written requests from Plaintiffs, at all times relevant to this lawsuit, of the nine (9) facilities that MN DOC operates, Defendants MN DOC, ROY, CENTURION, LARSON, AND PAULSON, jointly and severally, offer forty-eight week, toxic Interferon-based HCV treatment only at specific facilities, and thus exclude inmates at all other facilities from receiving any HCV treatment at all.

94. Particularly in light of the efficacy of the FDA-"HVC breakthrough" drugs in curing *all levels of HCV viral infections all HCV genotypes (with minor variances),* and the relative simplicity of the treatment protocols associated with the 12-week oral medication, policies limiting treatment based on viral load, or relative progress of liver dysfunction, are matters of administrative convenience or cost saving, not the medical requirements of the patient.

95. For non-medical reasons of policy and practice, MN DOC and CENTURION, jointly and severally, at all times relevant to this lawsuit, have systematically denied, and continue to deny systematically, MN DOC inmates' requests for the FDA-approved, one pill per day, twelve week treatment protocol of Olysio, Sovaldi, which the FBOP as of June 2014, the FDA, the CDC, the U.S. Public Health Service Surgeon General, and the VA have adopted as the safest, most effective professional HCV-treatment medical community standard of care for the treatment

and *cure* of HCV virus infections at a 95% cure rate – a protocol to which Harvoni and Viekira Pak were added in late 2014, and from which interferon was deleted in June 2015.

96. As a direct result of the Defendants' joint and several policies, practices, and actions that lack medical foundation or rational basis, and which substitute administrative convenience, caprice, and whim for individualized professional medical care and judgment for the Plaintiffs, each day the Defendants deny to Plaintiffs the FBOP Sovaldi/Harvoni equivalent of the non-Interferon twelve week, daily pill protocol to cure HCV, Defendants needlessly force Plaintiffs to suffer the progressive effects of the chronic, life-threatening disease of hepatitis C.

97. The Defendants' joint and several willful, deliberate actions make progression of plaintiffs' cases of HCV foreseeable, and increased public expense inevitable.

98. The Defendants' joint and several willful, deliberate actions make increased public expense to treat Plaintiffs' cases of HCV foreseeable and inevitable.

99. The Defendants' joint and several willful, deliberate actions increase without medical reason or lawful purpose the likelihood of the Plaintiffs' deaths for reasons arising from HCV infection.

100.    Day by day, uninfected inmates, and the public at large, run increasing risks of HCV infection which Defendants could "cure;" to these inmates' serious, medical needs of freedom from, and knowledge of, infection by HCV, the Defendants, jointly and severally, are deliberately indifferent, for reasons of non-medical policy and practice.

## Class Allegations

101.    Plaintiffs brings this action on behalf of themselves, and others similarly situated, (the "Class") pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2).

102.    Plaintiffs seeks to represent the following Class and sub-classes on claims for declaratory and injunctive relief and damages:

(a) All persons (male and female) incarcerated in Minnesota Department of Corrections facilities with 12 weeks remaining on their sentence; who test HCV-positive and wish to participate in the 12-week oral-medication HCV treatment, equivalent to AASLD/IDSA Community Standard of Professional Medical Care Guidelines of June 29, 2015.

(b) All persons as in (a) who tested HCV positive before entering MN DOC facilities, but who have not been screened by MN DOC, and are thus unaware of their HCV infection and cannot request the 12 week oral, non-interferon medication.

(c) All persons as in (a) who were not HCV-positive before entering  facilities and became infected while housed in Mn DOC facilities.

(d) All persons as in (a) who are not aware of their HCV status, who are fearful of being exposed to HCV because of MN DOC policies and practices that make it impossible to know if any other inmates with whom they come in contact are HCV-positive, or not.

103.    As a result of Defendants' joint and several deliberate indifference to the serious medical needs of the Class, the members of the Class are or will be

subjected to cruel and unusual punishment and deprived of other constitutional and statutory rights, and will face ongoing, threatened, and imminent physical harm.

104.    Plaintiffs seek declaratory and injunctive relief to enjoin Defendants' actions, policies and practices that infringe on their rights, and seek prospective, equitable relief of the 12 week DAA cure per the AASLD/IDSA professional community standard of medical care, and ongoing screeing for HCV.

105.    The requirements of Rules 23(a) are met by this action:

106.    <u>Numerosity</u> - under Fed. R. Civ. P. 23(a)(1): The precise number of inmates in the Class and their identity are within the control of Defendants, and estimated by the Defendants at between 10% and 35% of the general prison population of 9,000. (See, *Health Services Unit, Chronic Hepatitis C Management and Procedures*, 5/9/2012). para. 1.   All inmates face the danger of imminent infection from untreated fellow inmates.

107.    <u>Commonality</u> - under Fed. R. Civ. P. 23(a)(2): Questions of law and fact are common to the Class, including but not limited to: (1) the nature and scope of the safer, more effective AASLD/IDSA Standard-of-Care is common to all class members; (2)) whether the MN DOC policy preventing HCV treatment using non-medical barriers such as CD treatment must be replaced with the AASLD/IDSA Standard-of-Care is common to the class; (3) whether the MN DOC refusal to adhere to the AASLD/IDSA Standard-of-Care use of an outmoded medical treatment that is less safe and effective than the current

Standard-of-Care violates the Eight Amendment is common to the class; (4) whether the MN DOC refusal to adhere to the AASLD/IDSA Standard-of-Care violates Title II of the ADA as Amended is common to the class; and (5) whether the MN DOC refusal to adhere to the AASLD/IDSA Standard-of-Care violates Section 504 of the Rehabilitation Act is common to the class; and (5) the commonality of declaratory and prospective equitable relief in mandatory treatment of HCV infection with DAA medications and continuing HCV screening predominate over any unique relief demands of plaintiffs, class members, or subclass members.

108.  <u>Typicality</u> - Fed. R. Civ. P. 23(a)(3): Plaintiff's claims are typical of the Class members because Plaintiff and all Class Members were injured by the same wrongful policy and practices of Defendants as described in this Complaint. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class Members and are based on the same legal theories and factual question relating to the AASLD/IDSA standard-of-care.

109.  <u>Representativeness</u> - Fed. R. Civ. P. 23(a)(4): (1) Plaintiffs will fairly and adequately protect the interests of the Class.  (2) Plaintiffs have no interests that are contrary to or in conflict with those of the Class they seek to represent. (3) Plaintiffs are represented by competent and skilled counsel whose interests are aligned with the interests of the Class. (4) Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the Class would be proper. (5) Defendants have acted or refused to act with respect to the Class, thereby

making appropriate final injunctive relief or corresponding injunctive relief with regard to Class Members as a whole and certification of the Class under Rule 23(b)(2) proper; and (6) Counsel for Plaintiffs have developed a particular expertise in the rapidly changing science underlying the changes in the AASLD/IDSA standard-of-care and changing protocols in federal agencies and other private and public institutions.   This research has resulted in the first articles published on this issue, and this suit, which is the first in the nation.

110.   <u>Superiority</u> - Fed. R. Civ. P. 23(b)(3): (1) A class action is superior to other available methods for the fair and efficient adjudication of this litigation since joinder of all members of the class is impracticable.   (2) The number would prove unduly burdensome and inefficient for the Court and parties.   (3) Because a common set of facts, grievances and remedies predominate over individual issues, individual litigation increases expenses to all parties, and better management of consistent adjudication and relief by a single court is in the interest of all parties.   (4) Conduct of this action as a class action will protect the rights of all class members and promote judicial efficiency and consistency. Notice can be provided to class members by United States mail.

<u>Exhaustion</u>

111.   Named Plaintiffs have exhausted their administrative remedies.

112.   The foregoing averments and assertions of Plaintiffs constitute averments that Plaintiffs face imminent danger of serious and continuing physical, medical injury.

CLAIMS

**CLAIM I: U.S. CONST. AMEND. VIII AND XIV, THROUGH 42 U.S.C. §1983; NAMED PLAINTIFFS AND ALL PERSONS SIMILARLY SITUATED, AGAINST DEFENDANTS D. QUIRAM, M.D., and R. HANSON, M.D., IN THEIR RESPECTIVE INDIVIDUAL CAPACITIES.**

113.     Plaintiffs reallege every claim and incorporated exhibit, which constitute averments of imminent danger of serious physical, medical injury.

114.     First, Plaintiffs Ligons and Michaelson, and all persons similarly situated, have a serious medical need, specifically, treatment with the nationally recognized professional standard of medical care of the AASLD/IDSA HCV Guidance Panel. See, www.hcvguidance.org (currently Harvoni or Viekira-Pak) to cure their respective disabling hepatitis C infections.

115.     Second, DR. D. QUIRAM, M.D., and DR. R. HANSON, M.D., were aware of the named Plaintiffs' respective serious medical needs to cure their cases of Hepatitis C, in accordance with the nationally recognized professional standard of medical care of the AASLD/IDSA HCV Guidance Panel. See, www.hcvguidance.org.

116.     Third, DR. D. QUIRAM, M.D., and. DR. R. HANSON, M.D. as prison physicians at Minnesota Corrections Facilities of the Minnesota Department of Corrections, in the course and scope of their respective employment by defendant Centurion of Minnesota, L.L.C., had the responsibilities to care for the Plaintiffs as their patients, according to the above standards of care for HCV Practitioners established by www.hcvguidelines.org, which are regularly updated with new developments in medicines and treatments.

117.     Fourth, Defendants Quiram and Hanson, respectively, jointly, or severally, had actual knowledge of a substantial risk that, by delay of treatment with non-Interferon Direct Acting Anti-virals, the respective named Plaintiffs would suffer progression of their respective disabling hepatitis C infections that foreseeably would lead to aggravated or exacerbated serious medical harms including liver malfunction, liver fibrosis, liver cirrhosis, liver cancer, expensive liver transplant, or even death by liver malfunction.

118.     Fifth, Defendants Quiram and Hanson, respectively, jointly, or severally, have actual knowledge of the www.hcvguidance.org website for HCV practitioners and disregarded both (a) the professional recommendations provided by the website and (b) the substantial risk of progression of the hepatitis C infection of Plaintiffs by intentionally failing to treat them with non-Interferon Direct Acting Anti-virals as required by the www.hcvguidelines.org national community standard of professional medical care for ALL M.D.'s treating Hepatitis C.

119.     Sixth, the named Plaintiffs, and all similarly situated persons suffering from Hepatitis C infection, are suffering injuries that include progression of his and their respective infections, increased symptoms, pain, suffering, fear, diminished enjoyment of life, and decreased life expectancy as a direct consequence of the failures of Defendants DR. D. QUIRAM, M.D., and DR. R. HANSON, M.D., to follow the national community professional standard of medical care for Hepatitis C medical providers described at www.hcvguidelines.org, which sets the Hepatitis community standard of care of expert medical doctors, in accordance with United

States v. Kubrick, 444 U.S. 111 (1979).

120.      Seventh, Defendants DR. D. QUIRAM, M.D. and DR. R. HANSON, M.D., respectively, jointly, or severally acted under color of law as Minnesota Department of Corrections physicians, in the employ of Minnesota Department of Corrections medical services contractor, Centurion of Minnesota, L.L.C.

## CLAIM II: U.S. CONST. AMEND. VIII AND XIV, THRU 42 U.S.C. §1983; PLAINTIFFS LIGONS, MICHAELSON, AND ALL PERSONS SIMILARLY SITUATED AGAINST DEFENDANTS NANETTE LARSON, R.N., AND D. PAULSON, M.D., IN THEIR RESPECTIVE INDIVIDUAL CAPACITIES.

121.      Plaintiffs reallege and reassert every claim and incorporated exhibit, which constitute averments of imminent danger of serious physical, medical injury.

122.      First, Defendants Dr. D. Paulson, M.D, as Medical Director of the Minnesota Department of Corrections, and Nanette Larson, R.N., as the Minnesota Department of Corrections Director of Health Services, were as aware of named Plaintiffs respective serious medical needs, specifically, treatment with Harvoni or Viekira-Pak, in accordance with the national, community standard of professional medical care for hepatitis C established by www.hcvguidance.org and AASLD/IDSA on June 29, 2015.

123.      Second, Defendants Larson and Paulson, in the respective course and scope of their employment by defendant Minnesota Department of Corrections had respective responsibilities to assure Hepatitis C medical treatment for Plaintiffs at least at the level of the AASLD/IDSA national community standard of professional medical care for Plaintiffs Ligons, Michaelson, and all other persons similarly

situated.

124.    Third, Defendants Paulson and Larson had respective actual knowledge of a substantial risk that Plaintiffs would suffer progression of their respective Hepatitis C infections that foreseeably would lead to aggravated or exacerbated serious medical harms, including liver malfunction, liver fibrosis, liver cirrhosis, liver cancer, expensive liver transplant, or even death by liver malfunction.

125.    Fourth, Defendants Larson and Paulson disregarded the substantial risk of progression of the hepatitis C infections of Plaintiffs Ligons and Michaelson, and all persons similarly infected with the hepatitis C virus, by failing to provide the 12-week cure of Harvoni or Viekira-Pak, which is the current Hepatitis C national community standard of professional medical care established by the AASLD/IDSA.

126.    Fifth, Plaintiffs suffered injuries that included progression of their respective infections, increased symptoms, pain, suffering, fear, diminished enjoyment of life, and decreased life expectancy.

127.    Sixth, Defendants Dr. David Paulson, M.D. and Nanette Larson, R.N. acted under color of law as employees and the respective Medical Director and Health Services Director of the Minnesota Department of Corrections.

**CLAIM III. U.S. CONST. AMEND. VIII AND XIV, THRU 42 U.S.C. §1983; NAMED PLAINTIFFS AND ALL PERSONS SIMILARLY SITUATED, AGAINST DEFENDANT CENTURION OF MINNESOTA,**

**L.L.C.**

128.     Plaintiffs reallege and reassert every claim and incorporated exhibit, which constitute averments of imminent danger of serious physical, medical injury.

129.     First, Plaintiffs Ligons, Michaelson, and all persons similarly situated, had a serious medical need, specifically, treatment with Harvoni, Viekira-Pak, or other direct-acting, antiviral, lifesaving, curative medicines for their respective hepatitis C virus infections, in accordance with the national, community standard of professional medical care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA.

130.     Second, Defendant Centurion of Minnesota, L.L.C., through the actions of its agents, employees, or representatives, and the kites and grievances of Plaintiffs, was aware of plaintiffs Ligons' and Michaelson's, and all other persons' similarly situated to them, respective serious medical needs, specifically, treatment with Harvoni, Viekira-Pak, or other direct-acting, antiviral, lifesaving, curative medicines for his and their respective hepatitis C virus infections, in accordance with the national, community standard of care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA for their respective hepatitis C infections.

131.     Third, defendant Centurion of Minnesota, L.L.C., had a responsibility to assure proper care for Plaintiffs Ligons, Michaelson, and all other persons similarly situated.

132.     Fourth, Defendant Centurion of Minnesota, L.L.C., through the actions of

its agents, employees, or representatives, had actual knowledge of a substantial risk that Plaintiff Michaelson, and all persons similarly infected with the hepatitis C virus, as a direct result of delay in treatment with Harvoni or Viekira Pak, would suffer progression of their respective hepatitis C infections that foreseeably would lead to aggravated or exacerbated serious medical harms including liver malfunction, liver fibrosis, liver cirrhosis, liver cancer, expensive liver transplant, or even death by liver malfunction.

133.    Fifth, defendant Centurion of Minnesota, L.L.C., through its agents, employees, or representatives, disregarded the substantial risk of progression of the hepatitis C infection of Plaintiff Ligons, and all persons similarly infected with the hepatitis C virus, by

• failing to provide medical care; or

• failing to direct that medical care be provided; or

• failing to enact policies to assure that LIGONS, MICHAELSON, and each and every respective class member would obtain the medical care needed, specifically, treatment of them respectively, with Harvoni, Viekira-Pak, or other direct-acting, antiviral, lifesaving, curative medicines for their respective hepatitis C virus infections, in accordance with the national, community standard of care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA; or

• failing to allow each and every respective plaintiff to obtain the medical care needed, specifically, treatment of them respectively, with Harvoni, Viekira-Pak, or other

direct-acting, antiviral, lifesaving, curative medicines for their respective hepatitis C virus infections, in accordance with the national, community standard of care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA;

134.     Sixth, Plaintiffs Ligons, Michaelson, and all other similarly situated persons afflicted with the hepatitis C virus, as the direct result of the failures and policy decisions of Centurion of Minnesota, L.L.C., suffered injuries that included progression of their respective infections, increased symptoms, pain, suffering, fear, diminished enjoyment of life, and decreased life expectancy.

135.     Seventh, defendant Centurion of Minnesota, L.L.C., as the contracted medical care provider of the Minnesota Department of Corrections, through its agents, employees, or representatives, acted with deliberate, reckless, knowing, or intentional disregard for the rights, health, and safety of the plaintiffs.

136.     Eighth, defendant Centurion of Minnesota, L.L.C., as the contracted medical care provider of the Minnesota Department of Corrections, through its agents, employees, or representatives, acted under color of law.

## CLAIM IV: U.S. CONST. AMEND. VIII AND XIV, THROUGH 42 U.S.C. §1983; PLAINTIFFS LIGONS AND MICHAELSON, AND ALL PERSONS SIMILARLY SITUATED, AGAINST DEFENDANT MINNESOTA DEPARTMENT OF CORRECTIONS AND COMMISSIONER TOM ROY IN HIS OFFICIAL CAPACITY

137.     Plaintiffs reallege and reassert each and every claim and incorporated exhibit which constitute averments of imminent danger of serious physical, medical injury.

138.     First, Plaintiffs Ligons, Michaelson, and all persons similarly situated, had a

serious medical need, specifically, treatment with Harvoni, Viekira-Pak, or other direct-acting, antiviral, lifesaving, curative medicines for their respective hepatitis C virus infections, in accordance with the national, community standard of care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA.

139.     Second, Defendants Minnesota Department of Corrections and Commissioner Tom Roy, through the actions of their agents, employees, or representatives, were aware of Plaintiffs Ligons' and Michaelson's, and all other persons' similarly situated to them, respective serious medical needs, specifically, treatment with Harvoni, Viekira-Pak, or other direct-acting, antiviral, lifesaving, curative medicines for his and their respective hepatitis C virus infections, in accordance with the national, community standard of professional care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA for his and their respective hepatitis C infections.

140.     Third, defendants Minnesota Department of Corrections and Commissioner Roy had a responsibility to assure proper care for Plaintiffs Ligons, Michaelson, and all other persons similarly situated.

141.     Fourth, defendants Minnesota Department of Corrections and Commissioner Roy, through the actions of their agents, employees, or representatives, and the kites and grievances of the plaintiffs, had actual knowledge of a substantial risk that Plaintiffs Ligons, Michaelson, and all persons similarly infected with the hepatitis C virus, by delay of treatment with Harvoni or Viekira

Pak, would suffer progression of the hepatitis C infection that foreseeably would lead to aggravated or exacerbated serious medical harms including liver malfunction, liver fibrosis, liver cirrhosis, liver cancer, expensive liver transplant, or even death by liver malfunction.

142.    Fifth, Defendants Minnesota Department of Corrections and Commissioner Roy, through the actions of their agents, employees, or representatives, disregarded the substantial risk of progression of the hepatitis C infection of Plaintiffs Ligons, Michaelson, and all persons similarly infected with the hepatitis C virus, by

• failing to provide medical care; or

• failing to direct that medical care be provided; or

• failing to enact policies to assure that LIGONS, MICHAELSON, and each and every respective class member would obtain the medical care needed, specifically, treatment of them respectively, with Harvoni, Viekira-Pak, or other direct-acting, antiviral, lifesaving, curative medicines for their respective hepatitis C virus infections, in accordance with the national, community standard of care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA; or

• failing to allow each and every respective plaintiff to obtain the medical care needed, specifically, treatment of them respectively, with Harvoni, Viekira-Pak, or other direct-acting, antiviral, lifesaving, curative medicines for their respective hepatitis C virus infections, in accordance with the national, community standard of care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of

the AASLD/IDSA;

143.    Sixth, Plaintiffs Ligons, Michaelson, and all other similarly situated persons afflicted with the hepatitis C virus, as the direct result of the failures and the policy decisions of defendants Minnesota Department of Corrections and Commissioner Roy, suffered injuries that included progression of their respective infections, increased symptoms, pain, suffering, fear, diminished enjoyment of life, and decreased life expectancy.

144.    Seventh, defendants Minnesota Department of Corrections and Commissioner Roy, through through their agents, employees, or representatives, jointly and severally, acted under color of law.

## CLAIM V: U.S. CONST. AMEND. VIII AND XIV, THROUGH 42 U.S.C. §1983; PLAINTIFFS ROE, MILES, AND STILES, AGAINST DEFENDANT MINNESOTA DEPARTMENT OF CORRECTIONS AND COMMISSIONER TOM ROY IN HIS OFFICIAL CAPACITY

145.    Plaintiffs reallege and reassert every claim and incorporated exhibit which constitute averments of imminent danger of serious physical, medical injury.

146.    First, Plaintiffs Roe, Miles, and Stiles, and all persons similarly situated who were HCV-free when entering Minnesota Department of Corrections incarceration, or who have been cured of HCV, have a serious medical need, specifically, spending each day facing "imminent danger of serious physical injury" from being exposed to the debilitating and potentially fatal virus, HCV, from other inmates, that Defendants could eradicate in three (3) months (a) by universal testing of all inmates upon intake for HCV, (b) by frequent, periodic testing of all inmates

for HCV after intake, and (c)  treatment of HCV-infected inmates with Harvoni, Viekira-Pak, or other direct-acting, antiviral, lifesaving, curative medicines for their respective hepatitis C virus infections, in accordance with the national, community standard of care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA for his and their respective hepatitis C infections, and decline to do so, for non-medical reasons.

147.    Second, defendants Minnesota Department of Corrections and Commissioner Tom Roy, through the actions of their agents, employees, or representatives, defendant Paulson, defendant Larson, and defendant Centurion of Minnesota, L.L.C., through the actions of its employees, representatives, or agents, were aware of plaintiffs Roe's, Miles', and Stiles', and all other persons' similarly situated to them, respective serious medical needs, specifically, spending each day facing "imminent danger of serious physical injury" from being exposed to the debilitating and potentially fatal virus, HCV, from other inmates.

148.    Third, defendants Minnesota Department of Corrections and Commissioner Roy, defendant Paulson, defendant Larson, and defendant Centurion of Minnesota, L.L.C. had a responsibility to assure proper care for Plaintiffs Roe, Miles, and Stiles, and all other persons similarly situated.

149.    Fourth, defendants Minnesota Department of Corrections and Commissioner Roy, through the actions of their agents, employees, or representatives, defendant Paulson, defendant Larson, and defendant Centurion of Minnesota, L.L.C. through the actions of its agents, representatives, and

employees, and the kites and grievances of the plaintiffs, had actual knowledge of a substantial risk that Plaintiffs Roe, Miles, and Stiles, and all others similarly situated who were HCV-free when entering Minnesota Department of Corrections incarceration, or who have been cured of HCV, have a serious medical need, specifically, spending each day facing "imminent danger of serious physical injury" from being exposed to the debilitating and potentially fatal virus, HCV, from other inmates, infected with the hepatitis C virus, would foreseeably become infected with HCV, and would suffer serious medical harms including liver malfunction, liver fibrosis, liver cirrhosis, liver cancer, expensive liver transplant, or even death by liver malfunction.

150.    Fifth, defendants Minnesota Department of Corrections and Commissioner Roy, through the actions of their agents, employees, or representatives, defendant Paulson, defendant Larson, and defendant Centurion of Minnesota, L.L.C. through the actions of its agents, representatives, and employees, disregarded the substantial risk of "imminent danger of serious physical injury" from being exposed to the debilitating and potentially fatal virus, HCV, from other inmates, infected with the hepatitis C virus, and subsequent progression of the hepatitis C infection, by

- failing to provide HCV testing of inmates on intake into the Minnesota Department of Corrections system; or

- failing to provide frequent testing of inmates after intake; or

- failing to provide medical care; or

46

- failing to direct that medical care be provided; or

- failing to enact policies to assure that Roe, Miles, and Stiles, and each and every respective plaintiff would obtain the medical care needed, specifically, (a) universal testing of all inmates for HCV upon intaking; (b) frequent, periodic testing of all inmates for HCV after intake, (c) minimization of all risks of HCV infection, and (d) treatment of inmates infected with HCV with Harvoni, Viekira-Pak, or other direct-acting, antiviral, lifesaving, curative medicines for their respective hepatitis C virus infections, in accordance with the national, community standard of care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA.

151.    Sixth, Plaintiffs Roe, Miles, and Stiles, and all other similarly situated persons, as the direct result of the failures and the policy decisions of defendants Minnesota Department of Corrections and Commissioner Roy, suffered injuries, specifically, spending each day facing "imminent danger of serious physical injury" from being exposed to the debilitating and potentially fatal virus, HCV, from other inmates, progression of their respective infections, increased symptoms, pain, suffering, fear, diminished enjoyment of life, and decreased life expectancy.

152.    Seventh, defendants Minnesota Department of Corrections and Commissioner Roy, through through their agents, employees, or representatives, defendant Paulson, defendant Larson, and Defendant Centurion of Minnesota, L.L.C., jointly and severally, acted under color of law.

## CLAIM VI: §504 OF THE REHAB. ACT OF 1973, 29 U.S.C. §§791-794a;

## NAMED PLAINTIFFS AND ALL PERSONS SIMILARLY SITUATED, AGAINST DEFENDANT CENTURION OF MINNESOTA, L.L.C.

153.    Plaintiffs reallege and reassert every claim and incorporated exhibit which constitute averments of imminent danger of serious physical, medical injury.

154.    First, Plaintiffs Ligons, Michaelson, and all persons similarly situated, are individuals with a disability, specifically, HCV infection, a physical impairment that substantially affects the major life activities of digestive systems, circulatory systems, and life itself.

155.    Second, Defendant Centurion of Minnesota, L.L.C., through the actions of its agents, employees, or representatives, and the kites and grievances of Plaintiffs, was actually aware of plaintiffs Ligons' and Michaelson's, and all other persons' similarly situated to them, respective disabilities.

156.    Third, Defendant Centurion of Minnesota, L.L.C. is a recipient of federal monies for its program of providing medical services to the Minnesota Department of Corrections.

157.    Fourth, Defendant Centurion of Minnesota, L.L.C., had a responsibility to assure proper care for Plaintiffs Ligons, Michaelson, and all other disabled persons similarly situated.

158.    Fifth, Defendant Centurion of Minnesota, L.L.C. could have reasonably accommodated plaintiffs' disabilities, so as not to exclude them from participation in, deny them the benefits of the federally funded services, programs, or activities of defendant Centurion of Minnesota, L.L.C., by reasonably accommodating

plaintiffs' disabilities, by treatment with Harvoni, Viekira-Pak, or other direct-acting, antiviral, lifesaving, curative medicines for their respective hepatitis C virus infections, in accordance with the national, community standard of professional care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA for {laintiffs' respective hepatitis C infections.

159.     Sixth, Defendant Centurion of Minnesota, L.L.C., through the actions of its agents, employees, or representatives, had actual knowledge of a substantial risk that Plaintiff Michaelson, and all persons similarly infected with the hepatitis C virus, by delay of treatment with Harvoni or Viekira Pak, would suffer progression of the disability of hepatitis C infection that foreseeably would lead to aggravated or exacerbated serious medical harms including liver malfunction, liver fibrosis, liver cirrhosis, liver cancer, expensive liver transplant, or even death by liver malfunction.

160.     Seventh, Defendant Centurion of Minnesota, L.L.C., through its agents, employees, or representatives, failed to accommodate reasonably plaintiffs' known disabilities, notwithstanding that compliance with the national, community standard of care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA is, by medicine and law, not an undue hardship.

161.     Eighth, defendant Centurion of Minnesota, L.L.C., through its agents, employees, or representatives, disregarded the substantial risk of progression of the hepatitis C infection of Plaintiffs Ligons and Michaelson, and all persons similarly

infected with the hepatitis C virus, by

- failing to provide medical care; or

- failing to direct that medical care be provided; or

- failing to enact policies to assure that LIGONS, MICHAELSON, and each and every respective class member would obtain the medical care needed, specifically, treatment of them respectively, with Harvoni, Viekira-Pak, or other direct-acting, antiviral, lifesaving, curative medicines for their respective hepatitis C virus infections, in accordance with the national, community standard of care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA; or

- failing to allow each and every respective plaintiff to obtain the medical care needed, specifically, treatment of them respectively, with Harvoni, Viekira-Pak, or other direct-acting, antiviral, lifesaving, curative medicines for their respective hepatitis C virus infections, in accordance with the national, community standard of care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA;

162.    Ninth, Plaintiffs Ligons, Michaelson, and all other similarly situated qualified disabled persons afflicted with the hepatitis C virus, as the direct result of the failures, delayed treatment, and policy decisions of Centurion of Minnesota, L.L.C., suffered injuries that included progression of their respective infections, increased symptoms, pain, suffering, fear, diminished enjoyment of life, and decreased life expectancy.

163.     Tenth, defendant Centurion of Minnesota, L.L.C., as the contracted medical care provider of the Minnesota Department of Corrections, through its agents, employees, or representatives, acted with deliberate, reckless, knowing, or intentional disregard for the rights, health, and safety of the plaintiffs.

## CLAIM VII: §504 OF THE REHAB. ACT OF 1973, 29 U.S.C. §§791-794a; PLAINTIFFS LIGONS AND MICHAELSON, AND ALL PERSONS SIMILARLY SITUATED, AGAINST DEFENDANTS MINNESOTA DEPARTMENT OF CORRECTIONS AND COMM'R TOM ROY IN HIS OFFICIAL CAPACITY

164.     Plaintiffs reallege and reassert every claim and incorporated exhibit which constitute averments of imminent danger of serious physical, medical injury.

165.     First, Plaintiffs Ligons, Michaelson, and all persons similarly situated, are individuals with a disability, specifically, HCV infection, a physical impairment that substantially affects the major life activities of digestive systems, circulatory systems, and life itself.

166.     Second, defendants Minnesota Department of Corrections and Commissioner Tom Roy, through the actions of their agents, employees, or representatives, and the kites and grievances of Plaintiffs, were aware of plaintiffs Ligons' and Michaelson's, and all other persons' similarly situated to them, respective disabilities.

167.     Third, defendant Minnesota Department of Corrections is a recipient of federal monies for its incarceration programs.

168.     Fourth, defendants Minnesota Department of Corrections and Commissioner Tom Roy had a responsibility to assure proper care for Plaintiffs

Ligons, Michaelson, and all other disabled persons similarly situated.

169.     Fifth, defendants Minnesota Department of Corrections and Commissioner Tom Roy could have reasonably accommodated plaintiffs' disabilities, so as not to exclude them from participation in, or deny them the benefits of the federally funded services, programs, or activities of defendant Minnesota Department of Corrections, by reasonably accommodating plaintiffs' disabilities, by treatment with Harvoni, Viekira-Pak, or other direct-acting, antiviral, lifesaving, curative medicines for their respective hepatitis C virus infections, in accordance with the national, community standard of care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA for plaintiffs' respective hepatitis C infections.

170.     Sixth, defendants Minnesota Department of Corrections and Commissioner Tom Roy, through the actions of their agents, employees, or representatives, had actual knowledge of a substantial risk that Plaintiff Michaelson, and all persons similarly infected with the hepatitis C virus, would suffer progression of the disability of hepatitis C infection that foreseeably would lead to aggravated or exacerbated serious medical harms including liver malfunction, liver fibrosis, liver cirrhosis, liver cancer, expensive liver transplant, or even death by liver malfunction.

171.     Seventh, defendants Minnesota Department of Corrections and Commissioner Tom Roy, through their agents, employees, or representatives, failed to accommodate reasonably plaintiffs' known disabilities, notwithstanding

that compliance with the national, community standard of professional medical care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA is, by medicine and law, not an undue hardship.

172.     Eighth, defendants Minnesota Department of Corrections and Commissioner Tom Roy, through their agents, employees, or representatives, disregarded the substantial risk of progression of the hepatitis C infection of Plaintiffs Ligons and Michaelson, and all persons similarly infected with the hepatitis C virus, by

- failing to provide medical care; or

- failing to direct that medical care be provided; or

- failing to enact policies to assure that LIGONS, MICHAELSON, and each and every respective class member would obtain the medical care needed, specifically, treatment of them respectively, with Harvoni, Viekira-Pak, or other direct-acting, antiviral, lifesaving, curative medicines for their respective hepatitis C virus infections, in accordance with the national, community standard of care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA; or

- failing to allow each and every respective class member to obtain the medical care needed, specifically, treatment of them respectively, with Harvoni, Viekira-Pak, or other direct-acting, antiviral, lifesaving, curative medicines for their respective hepatitis C virus infections, in accordance with the national, community standard of

care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA;

173.     Ninth, Plaintiffs Ligons, Michaelson, and all other similarly situated qualified disabled persons afflicted with the hepatitis C virus, as the direct result of the failures and policy decisions of defendants Minnesota Department of Corrections and Commissioner Tom Roy, suffered injuries that included progression of their respective infections, increased symptoms, pain, suffering, fear, diminished enjoyment of life, and decreased life expectancy.

174.     Tenth, defendants Minnesota Department of Corrections and Commissioner Tom Roy, through their agents, employees, or representatives, acted with deliberate, reckless, knowing, or intentional disregard for the rights, health, and safety of the plaintiffs.

## CLAIM VIII: TITLE II OF THE ADAA, 42 U.S.C. §§12131-12132; PLAINTIFFS LIGONS, MICHAELSON, AND ALL PERSONS SIMILARLY SITUATED, AGAINST DEFENDANTS MINNESOTA DEPARTMENT OF CORRECTIONS AND COMM'R TOM ROY IN HIS OFFICIAL CAPACITY

175.     Plaintiffs reallege and reassert every claim and incorporated exhibit which constitute averments of imminent danger of serious physical, medical injury.

176.     First, Plaintiffs Ligons, Michaelson, and all persons similarly situated, are individuals with a disability, specifically, HCV infection, a physical impairment that substantially affects the major life activities of digestive systems, circulatory systems, and life itself.

177.     Second, Defendants Minnesota Department of Corrections and

Commissioner Tom Roy, through the actions of their agents, employees, or representatives, and the kites and grievances of Plaintiffs, were aware of plaintiffs Ligons' and Michaelson's, and all other persons' similarly situated to them, respective disabilities.

178.    Third, Defendants Minnesota Department of Corrections and Commissioner Tom Roy had a responsibility to assure proper care for Plaintiffs Ligons, Michaelson, and all other disabled persons similarly situated.

179.    Fourth, Defendants Minnesota Department of Corrections and Commissioner Tom Roy could have reasonably accommodated Plaintiffs' disabilities, so as not to exclude them from participation in, or deny them the benefits of the federally funded services, programs, or activities of defendant Minnesota Department of Corrections, by reasonably accommodating plaintiffs' disabilities, by treatment with Harvoni, Viekira-Pak, or other direct-acting, antiviral, lifesaving, curative medicines for their respective hepatitis C virus infections, in accordance with the national, community standard of professional medical care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA for Plaintiffs' respective hepatitis C infections.

180.    Fifth, defendants Minnesota Department of Corrections and Commissioner Tom Roy, through the actions of their agents, employees, or representatives, had actual knowledge of a substantial risk that Plaintiffs Ligons and Michaelson, and all persons similarly infected with the hepatitis C virus, would suffer progression of the disability of hepatitis C infection that foreseeably would lead to aggravated or

exacerbated serious medical harms including liver malfunction, liver fibrosis, liver cirrhosis, liver cancer, expensive liver transplant, or even death by liver malfunction.

181. Sixth, defendants Minnesota Department of Corrections and Commissioner Tom Roy, through their agents, employees, or representatives, failed to accommodate reasonably plaintiffs' known disabilities, notwithstanding that compliance with the national, community standard of care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA is, by medicine and law, not an undue hardship, nor does it constitute an unreasonable modification of the Minnesota Department of Corrections program.

182. Seventh, defendants Minnesota Department of Corrections and Commissioner Tom Roy, through their agents, employees, or representatives, disregarded the substantial risk of progression of the hepatitis C infection of Plaintiffs Ligons an Michaelson, and all persons similarly infected with the hepatitis C virus, by

- failing to provide medical care; or

- failing to direct that medical care be provided; or

- failing to enact policies to assure that LIGONS, MICHAELSON, and each and every respective class member would obtain the medical care needed, specifically, treatment of them respectively, with Harvoni, Viekira-Pak, or other direct-acting, antiviral, lifesaving, curative medicines for their respective hepatitis C virus

infections, in accordance with the national, community standard of care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA; or

- failing to allow each and every respective class member to obtain the medical care needed, specifically, treatment of them respectively, with Harvoni, Viekira-Pak, or other direct-acting, antiviral, lifesaving, curative medicines for their respective hepatitis C virus infections, in accordance with the national, community standard of care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA;

183.    Eighth, Plaintiffs Ligons, Michaelson, and all other similarly situated qualified disabled persons afflicted with the hepatitis C virus, as the direct result of the failures and policy decisions of defendants Minnesota Department of Corrections and Commissioner Tom Roy, suffered injuries that included progression of their respective infections, increased symptoms, pain, suffering, fear, diminished enjoyment of life, and decreased life expectancy.

184.    Ninth, defendants Minnesota Department of Corrections and Commissioner Tom Roy, through their agents, employees, or representatives, acted with deliberate, reckless, knowing, or intentional disregard and indifference for the federally rights, health, and safety of the plaintiffs.

## RELIEF DEMANDED

WHEREFORE Plaintiffs LIGONS, MICHAELSON, and all similarly situated Plaintiffs pray for the following relief:

1. Judgment against the Defendants, jointly and severally;

2. Certification of the classes and subclasses of Plaintiffs named above;

3. For named Plaintiffs Ligons and Michaelson, and members of the Plaintiff classes and subclasses, Declaratory Judgment that the Defendant **MINNESOTA DEPARTMENT OF CORRECTIONS** hepatitis C policy violates Title II of the Americans with Disabilities Act as Amended, §504 of the Rehabilitation Act of 1973, and U.S. Const. amend. VIII and XIV through 42 U.S.C. § 1983;

4. For named Plaintiffs Ligons and Michaelson, and members of the Plaintiff classes and subclasses,

   a. Permanent injunction against the perpetuation of the **MINNESOTA DEPARTMENT OF CORRECTIONS** forty-eight week hepatitis C treatment protocol using toxic Interferon injections;

   b. Permanent injunction against the perpetuation of the **MINNESOTA DEPARTMENT OF CORRECTIONS** hepatitis C treatment protocol that conditions hepatitis C treatment on prior completion of chemical dependency treatment;

   c. Permanent injunction against the perpetuation of the **MINNESOTA DEPARTMENT OF CORRECTIONS** hepatitis C treatment protocol that withholds anti-viral medication treatment for inmates until the inmate presents evidence of liver fibrosis, liver scarring, cirrhosis of the liver, or liver cancer;

   d. Permanent injunction against the perpetuation of the **MINNESOTA DEPARTMENT OF CORRECTIONS** hepatitis C treatment protocol that

does not administer anti-viral hepatitis C medication to inmates with twelve or more weeks in **MINNESOTA DEPARTMENT OF CORRECTIONS** custody immediately upon a positive test for **HCV**; and

e. Permanent injunction against any **MINNESOTA DEPARTMENT OF CORRECTIONS** policy that does not test inmates upon intake for **HCV**, as **MINNESOTA DEPARTMENT OF CORRECTIONS** does for **HIV/AIDS**;

5. For Plaintiffs **LIGONS** and **MICHAELSON**, equitable relief to order the immediate commencement of the one pill per day, twelve week hepatitis C treatment in accordance with the June 29, 2015 **AASLD/IDSA** standard of care, **WITHOUT** first requiring plaintiffs to undergo chemical dependency treatment;

6. For Plaintiffs **ROE, MILES, AND STILES,** (a) identification of all **MINNESOTA DEPARTMENT OF CORRECTIONS** inmates with twelve or more weeks remaining in their sentences who where denied hepatitis C treatment in accordance with the June 29, 2015 **AASLD/IDSA** standard of care, **WITHOUT** first requiring plaintiffs to undergo chemical dependency treatment, (b) identification of all **MINNESOTA DEPARTMENT OF CORRECTIONS** inmates with twelve or more weeks remaining in their sentences who where denied hepatitis C treatment since December 2013 for non-completion of chemical dependency treatment, (c) provision of the one pill per day, twelve week **DAA** medication treatment in accordance with the June 29, 2015 **AASLD/IDSA** standard of care, **WITHOUT** first requiring plaintiffs to undergo chemical dependency treatment;

7. to all inmates with twelve or more weeks left in their sentences who test positive for

hepatitis C, (d) screening of all current **MINNESOTA DEPARTMENT OF CORRECTIONS** inmates for hepatitis C immediately, (e) immediate screening of all newly admitted **MINNESOTA DEPARTMENT OF CORRECTIONS** inmates for hepatitis C, consistent with the screening protocols for **HIV/AIDS** virus;

8. For Plaintiffs **LIGONS** and **MICHAELSON**, an award of appropriate compensatory damages against Defendants Quiram, Hanson, Larson, Paulson, and Centurion of Minnesota, L.L.C., jointly and severally, for all claims for which compensatory damages are available, in an amount to be determined by jury;

9. For Plaintiffs **LIGONS** and **MICHAELSON**, an award of punitive damages against Defendants Quiram, Hanson, Larson, and Paulson, sued in their respective individual capacities, and **CENTURION OF MINNESOTA, L.L.C.**, jointly and severally, for claims arising under U.S. Const. amend. VIII and XIV, in an amount to be determined at trial by jury;

10. Prejudgment interest;

11. Postverdict interest;

12. Costs and disbursements;

13. Reasonable attorney fees in accordance with 42 U.S.C. § 1988; and

14. Such other relief as the court deems just and equitable.

PLAINTIFFS DEMAND JURY TRIAL ON ALL CLAIMS TRIABLE TO THE JURY.

Date:29 Octoer 2015 Respectfully submitted:

PETER J. NICKITAS LAW OFFICE, L.L.C.

/s/ *Peter J. Nickitas*

_____
Peter J. Nickitas, MN Att'y #212313
Attorney for the Plaintiffs
431 S. 7th St., Suite 2446
P.O. Box 15221
Minneapolis, MN 55415-0221
612.440.7285 (o)/651.238.3445 (m)/1.888.389.7890 (f)
peterjnickitaslawllc@gmail.com

*AS AMICUS CURIAE:*

INTERNATIONAL HUMANITARIAN LAW INSTITUTE

/s/ *Peter J. Nickitas*

Date: 29 October 2015

_____
Peter J. Nickitas, MN Att'y #212313
Litigation Director, Int'l Humanitarian Law Institute
C. Peter Erlinder, Prof. (Ret.), Founding Director
325 Cedar St., Suite 308
St. Paul, MN 55101
651.340.1271/FAX 651.340.0357/proferlinder@gmail.com
IL Att'y #3124291/8th Cir. Adm'n: 11/06/1984
*Pro* bono post-conviction counsel for Ronaldo Ligons,
*State v. Ligons*, 9200218, A06-2371, and A07-0957; and
*Ligons v. King*, 11-1630 (8th Cir. 2011)