# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

RONALDO LIGONS,                                   File No. 15-CV-2210 PJS/BT
BARRY MICHAELSON,
JOHN ROE, and JANE ROE,
JOHN MILES AND JANE MILES,
JOHN STILES AND JANE STILES,
individually, and on behalf of those similarly situated,


      Plaintiffs,

v.


MINNESOTA DEPARTMENT OF CORRECTIONS,

THOMAS ROY,
Minnesota Commissioner of Corrections,
in his official capacity,

DR. DAVID A. PAULSON, M.D.,
in his individual and his official capacities for actions
under color of law as Medical Director,
Minnesota Department of Corrections,


NANETTE LARSON,
in her individual and her official capacities
for actions under color of law as Health Services Director,
Minnesota Department of Corrections,

Dr. D. QUIRAM, M.D.,
in his individual and his official capacities for
actions under color of law as Plaintiffs' treating physician
at Minnesota Correctional Facility, Stillwater,


JOHN and JANE DOES A - J,
in their respective individual and official capacities
for actions under color of law as staff of
Minnesota Correctional Facilities, Stillwater and Faribault,

      and

CENTURION OF MINNESOTA, L.L.C.,

Defendants,

## NAMED PLAINTIFFS'
## ANSWERS TO MN DOC DEFENDANTS'
## FIRST SET OF INTERROGATORIES

Named Plaintiffs, through counsel, respond to the MN DOC Defendant's first set of interrogatories in accordance with Fed. R. Civ. P. 33.

General objections: Plaintiffs object to the defendants' interrogatories as vague, overbroad, compound, redundant, invasive of the attorney-client privilege, invasive of the attorney work product privilege, and not reasonably calculated to elicit admissible evidence at trial. Subject to these objections, Plaintiffs answer as follows.

INTERROGATORY NO. 1:

State in detail the factual basis for each legal claim asserted in your Second Amended Complaint against the DOC Defendants.

ANSWER TO INTERROGATORY NO. 1

Plaintiffs object to this interrogatory as vague, overbroad, and not reasonably calculated to elicit admissible evidence at trial.

Plaintiffs answer as follows.

Claim I.  Dr. Quiram, in his personal capacity, was aware that Plaintiffs Ligons and Michaelson were HCV-positive no later than January

2014, when the FDA-approved 12-week oral cure for HCV became the standard-of-care for the cure of the disease, was promulgated by the HCV Guidance Panel, created by the American Society for the Study of Liver Disease/Infectious Disease Society of America/International Anti-viral Society-USA (AALSD/IDSA/IAS-USA/HCV Guidance Panel).

Between January 2014 and the present, Dr. Quiram has refused to prescribe the direct-acting anti-viral (DAA) drugs that would cure Plaintiffs' life-threatening HCV infections contrary to the standard-of-care for the disease, which requires prescribing these DAA drugs. Dr. Quiram has refused to refer Plaintiffs to a specialist, specifically, a gastroenterologist or hepatologist, notwithstanding Plaintiffs' demands and Dr. Quiram's own admission that he is not a specialist in the treatment of liver diseases, and that, if he were to refer Plaintiffs to an expert, "Dr. Paulson is my expert."

Dr. Paulson, the MN DOC Medical Director, has refused to prescribe, or or authorize the dispensation, of direct-acting antiviral medications that would cure Plaintiffs of HCV.

Refusal to prescribe these curative drugs, irrespective of level of infection or damage to the liver falls below the medical standard-of-care and is deliberate indifference to the serious medical needs of inmates with a curable life-threatening illness. *Erickson v. Pardus*, 551 U.S. 89, 90 (2007). And, by exposing uninfected inmates to life-threatening disease has

demonstrated another form of deliberate indifference. *Helling v. McKinney*, 509 U.S. 25, 33 (1993).  In so doing, Defendant violated the 8th and 14th Amendments through 42 U.S.C §1983.

Claim II. Dr. Paulson and Nanette Larson, in their personal capacities, were aware that Plaintiffs Ligons and Michaelson were HCV-positive no later than January 2014, when the FDA-approved 12-week oral cure for HCV became the standard-of-care for the cure of the disease, was promulgated by the HCV Guidance Panel, created by the American Society for the Study of Liver Disease/Infectious Disease Society of America/International Anti-viral Society-USA (AALSD/IDSA/IAS-USA/HCV Guidance Panel).

Between January 2014 and the present, Dr. Paulson and Nanette Larson  failed to prescribe, provide or approve the direct-acting anti-viral (DAA) drugs that would cure Plaintiffs' life-threatening HCV infections contrary to the standard-of-care for the disease, which requires prescribing these DAA drugs.  Failure to prescribe these curative drugs, irrespective of level of infection or damage to the liver falls below the medical standard-of-care and is deliberate indifference to the serious medical needs of inmates with a curable life-threatening illness. *Erickson v. Pardus*, 551 U.S. 89, 90 (2007). And, by exposing uninfected inmates to life-threatening disease has demonstrated another form of deliberate indifference. *Helling v. McKinney*,

509 U.S. 25, 33 (1993). In so doing, Defendant violated the 8th and 14th Amendments through 42 U.S.C §1983.

CLAIM III Centurion of Minnesota, LLC, through its agents and employees, was aware that Plaintiffs Ligons and Michaelson were HCV-positive no later than January 2014, when the FDA-approved 12-week oral cure for HCV became the standard-of-care for the cure of the disease, was promulgated by the HCV Guidance Panel, created by the American Society for the Study of Liver Disease/Infectious Disease Society of America/International Anti-viral Society-USA.

Between January 2014 and the present, Centurion of Minnesota, LLC has failed to prescribe, provide or approve the direct-acting anti-viral (DAA) drugs that would cure Plaintiffs' life-threatening HCV infections contrary to the standard-of-care for the disease, which requires prescribing these DAA drugs. Failure to prescribe these curative drugs, irrespective of level of infection or damage to the liver falls below the medical standard-of-care and is deliberate indifference to the serious medical needs of inmates with a curable life-threatening illness. *Erickson v. Pardus*, 551 U.S. 89, 90 (2007). And, by exposing uninfected inmates to life-threatening disease has demonstrated another form of deliberate indifference. *Helling v. McKinney*, 509 U.S. 25, 33 (1993). In so doing, Defendant violated the 8th and 14th Amendments through 42 U.S.C §1983.

CLAIM IV. Between January 2014 and the present, MnDOC and MnDOC Commissioner Tom Roy has failed to prescribe, provide or approve the direct-acting anti-viral (DAA) drugs that would cure Plaintiffs' life-threatening HCV infections contrary to the standard-of-care for the disease, which requires prescribing these DAA drugs. Failure to prescribe these curative drugs, irrespective of level of infection or damage to the liver falls below the medical standard-of- care and is deliberate indifference to the serious medical needs of inmates with a curable life-threatening illness. *Erickson v. Pardus*, 551 U.S. 89, 90 (2007). And, by exposing uninfected inmates to life-threatening disease has demonstrated another form of deliberate indifference. *Helling v. McKinney*, 509 U.S. 25, 33 (1993). In so doing, Defendant violated the 8th and 14th Amendments through 42 U.S.C §1983.

Between January 2014 and the present date, MnDOC and MnDOC Commissioner Tom Roy has failed to prescribe, provide or approve the direct-acting anti-viral (DAA) drugs that would cure Plaintiffs' life-threatening HCV infections contrary to the standard-of-care for the disease, which requires prescribing these DAA drugs. Failure to prescribe these curative drugs, irrespective of level of infection or damage to the liver falls below the medical standard-of- care and is deliberate indifference to the serious medical needs of inmates with a curable life-threatening illness.

*Erickson v. Pardus*, 551 U.S. 89, 90 (2007).  And, by exposing uninfected inmates to life-threatening disease has demonstrated another form of deliberate indifference. *Helling v. McKinney*, 509 U.S. 25, 33 (1993). In so doing, Defendant violated the 8th and 14th Amendments through 42 U.S.C §1983.

CLAIM V -  CLASS CLAIMS

By admissions of MN DOC Health Services Director Nanette Larson and MN DOC Medical Director Dr. David Paulson, M.D. on 11 March 2016, Defendant MN DOC refuses to treat any HCV positive inmate with direct-acting antiviral medicines (DAAs), as the HCV Guidance Panel requires; as a matter of policy, MN DOC will treat HCV positive inmates with DAAs only with a Fib4 score of 3 or more.

CLAIMS VI,VII and VIII.

Between January 2014, when a complete cure for HCV and its symptoms has been possible and the present. Recipients of federal funds MN DOC and Centurion have been obligated to accommodate reasonably HCV-positive inmates, disabled with HCV infection, by treating them with the standard-of-care that will eliminate the virus and stop any further deterioration of their physical or emotional condition(s).  Pursuant to §504 of the Rehabilitation Act of 1973, 29 U.S.C. §§791-794a, and Title II of the ADA, 42 U.S.C. §§12131-12132, named Plaintiffs, and those similarly

situated, including inmates with Fibrosis scores of three (3) and four (4), are entitled to benefit fully from the programs offered by Defendants and funded with federal monies.

Both named Plaintiffs, and those subject to infection from failure to treat infected inmates suffer imminent danger of physical injury. *Helling v. McKinney*, 509 U.S. 25, 33 (1993). Other symptoms include progression of deterioration of internal organs, infections, heart disease, other secondary diseases, pain, diminished enjoyment of daily life, decreased life expectancy.  All of which are curable with one pill a day for 12 weeks. Plaintiffs allege the failure to provide medical care to eliminate damage done by the virus and infections to others is a failure to provide reasonable accommodation for a disability by curing it.

INTERROGATORY NO. 2:

Identify all persons who you believe have knowledge of the facts and circumstances alleged in your Second Amended Complaint, including all witnesses you anticipate will support the claims alleged in your Second Amended Complaint, and state the facts known to each person.

ANSWER TO INTERROGATORY NO. 2:

Ronaldo Ligons

Barry Michaelson

David Paulson

<u>Nanette Larson</u>

<u>Dr. Cecil Bennet (No. 3)</u>

<u>Dr. Martin Gordon (No. 3)</u>

<u>Dr. Greg Filice (No. 3)</u>

<u>Dr. Julie Thompson (No.3)</u>

<u>Discovery continues.</u>

INTERROGATORY NO. 3:

Identify all experts you plan to call as an expert witness at trial, stating the subject matter on which each expert is expected to testify, the substance of the facts and opinions to which you expect the expert to testify, and a summary of the grounds for each opinion.

<u>ANSWER TO INTERROGATORY NUMBER 3:</u>

<u>Dr. Bennet Cecil:  Dr. Cecil is an HCV expert who has submitted an affidavit in this proceeding that speaks for itself.  The attachments to the affidavit provide the basis for the grounds therein.</u>

<u>Dr. Martin Gordon: Dr. Gordon is an HCV expert who has submitted an affidavit in this proceed that speaks for itself.  The attachments to the affidavit provide the basis for the grounds therein.</u>

<u>Dr. Greg Filice: Dr. Filice is an infectious disease specialist employed at the Veteran's Administration Hospital in Minneapolis and a member of IDSA.  He will testify on the VA adoption of the HCV Guidance Panel</u>

standard-of-care for the treatment of HCV and his professional opinion regarding the DOC/Centurion contract that required the Twin Cities community standard-of-care for the treatment of HIV, but not for the treatment of HCV.

Dr. Julie Thompson:  Dr. Julie Thompson is the chief of Hepatology at the U. of Minnesota Hospitals and will testify about the HCV Guidance Panel standard-of-care being that all HCV-positive patients must be prescribed the DAA drugs, irrespective of Fibrosis level, to prevent infection of others.  She will also examine the two Plaintiffs, subject to cooperation from Defense Counsel.

Discovery continues.

## INTERROGATORY NO. 4:

Excluding this litigation, identify all civil, criminal, and administrative cases to which you have been a party, including the name of the case, the presiding court or agency, the case number, the nature of the case, the outcome of the case, and any relief, including money damages, that you obtained as a result of the case.

PLAINTIFFS' ANSWER TO INTERROGATORY NUMBER 4:

**LIGONS' ANSWER**

1.   Criminal litigation is a matter of public record.

2.   *Ligons v. King, Ligons v. Moore*, etc.

**MICHAELSON'S ANSWER:**

1.    Civil litigation pursuant to my sexual abuse is not relevant and is private under  John Doe. Fed. R. Civ. P. 37(a)(9)(B).

2.    Criminal is public information. See: D.O.C. website.

## INTERROGATORY NO. 5:

State in detail how you were damaged by the conduct alleged in your  Second Amended  Complaint  and itemize  the amount  of damages sought for each claim.

PLAINTIFFS' ANSWER TO INTERROGATORY NUMBER 5:

**LIGONS' ANSWER**

1. Deterioration of internal organs, including circulatory system and liver.

2. Exacerbation of insulin dependent diabetes mellitus.

3. Joint pain, neuralgia, fatigue.

4. Monetary damage?  Let the jury decide that.

**MICHAELSON'S ANSWER:**

H.C.V. Symptoms that I have experienced

1.  Deterioration of internal organs, including circulatory system and liver.

Sjögrens Syndrome: Dry eyes all the time, and I have drops to put in eyes.

2.    Lichen Planus: Characterized by white lesions or clear hard bumps that itch for days that bleed. Note: Dr. Quiram has refused to document all of these symptoms related to H.C.V.

4.    Fatigue. Tired a lot, that precludes me from studying so I can have a meaningful career and life.

5.    Borderline diabetes score: 5.4 Hgb-A1C.

6.    I have also experienced: Porphyria-Cutanea tarda: Sun sensitive rash.

7.    Nail fungus on toes.

8.    Money damages: No amount of money can ever replace, restore the loss and pain that I have suffered at the inimical hands and sadistic nature of the D.O.C. Persōna-inter-alia.  Plaintiff leaves it to the jury, in excess of $75,000.

## INTERROGATORY NO. 6:

State in detail the medical conditions and/or symptoms you have experienced related to your diagnosis of Hepatitis C. Include the dates of the symptoms, the frequency of the symptoms, what you were doing when the symptoms occurred, the duration of the symptoms, and what you did in response to the symptoms.

PLAINTIFFS' ANSWER TO INTERROGATORY NUMBER 6:

LIGONS' ANSWER

Symptoms are progressive. I sought treatment with direct acting anti-viral drugs (DAAs) which are the only cure for HCV and its symptoms. See above.

### MICHAELSON'S ANSWER:

Symptoms see above:

From late 2010 to Present 2016. Duration lasts weeks or days or months, depending upon the time of year. I sought treatment with direct acting anti-viral drugs (DAAs) which are the only cure for HCV and its symptoms.

## INTERROGATORY NO. 7:

Identify all medical and mental health practitioners who you have seen for Hepatitis C and any medical condition(s) or symptom(s) identified in your response to Interrogatory No. 6. Include the name of the clinic, hospital or practice group, if any, that the practitioner was associated with when you saw the practitioner.

PLAINTIFFS' ANSWER TO INTERROGATORY NUMBER 7:

**LIGONS' ANSWER**

DOC Medical Staff at MCF Stillwater and MCF Faribault

1.  Stanley Quanbeck

2.  Darryl Quiram

3.  David Paulson

**MICHAELSON'S ANSWER:**

D.O.C. Medical Staff (Contracted)

1.  2010 Stanley Quanbeck.

2.  2013 Mark Zimmerman.

3.  Darryl Quiram was the Primary Source as symptoms progressed in 2015.

4.  David Paulson has ordered bloodwork 2015. See Kites.

**INTERROGATORY NO. 8:**

Excluding conversations with legal counsel, identify all persons with whom you have discussed Hepatitis C, Hepatitis C treatments, and/or the medical condition(s) identified in your response to Interrogatory No. 6, whether the discussions took place in person or through correspondence, the dates of the discussions, and the contents of the discussions. Identify any documents that memorialize the discussions including, but not limited to, handwritten or typed notes, kites, letters, diaries, and logs.

PLAINTIFFS' ANSWER TO INTERROGATORY NUMBER 8:

LIGONS ANSWER:

Albert Ligons - Albert Ligons is my brother. I speak with him on the phone periodically but do not take notes.

Brigita Knickenberg – Correspondent in Europe, no copies of letters sent.

MICHAELSON ANSWER: See Interrogatory #7.

Discovery continues.

**INTERROGATORY NO. 9:**

Identify all inmates known to you at this time who you believe are members of any of the three putative classes you wish to represent in this action. For each inmate, state the inmate's full name, offender identification

number ("OID"), the facility where the inmate is currently housed, and the putative class or classes of which the inmate should be a member.

PLAINTIFFS' ANSWER TO INTERROGATORY NUMBER 9:

**LIGONS' ANSWER:**

My understanding is that 15 to 20% of the DOC population may be HCV positive and I know only a few of them at places I have been incarcerated. Some people prefer not to let others know they are infected. These are some I can mention:

Barry Michaelson # 203279

Freddie Prewitt # 137814

**MICHAELSON'S ANSWER:**

My understanding is that 15 to 20% of the DOC population may be HCV positive and I know only a few of at places I have been incarcerated. Some people prefer not to let others know they are infected. These are some I can mention:

1.   Ronaldo Ligons # 171203

2.   Barry Michaelson # 203279

3.   Michael DeCorsey # 226627

4.   Dave Pidgeon OID unknown

5.   Freddie Prewitt # 137814

6.   Peter Ryan # 102340

7.     Brent Anderson # 101341

8.     JayDee Kaufman # 132278

9.     Keneth Robinson # OID unknown

10.    Willey Nelson # OID unknown

11.    Mr. Bradley Purdy # 128143

INTERROGATORY NO. 10:

State the factual basis for your assertions in Paragraphs 7 and 11 of the Second Amended Complaint that the DOC Defendants have denied Hepatitis C treatments to Plaintiffs based on policies designed to ration medication to a limited number of inmates for administrative convenience or money and without regard to Plaintiffs' individual medical needs.

PLAINTIFFS' ANSWER TO INTERROGATORY NUMBER 10:

JOINT ANSWER:

Dr. Paulson admitted previous barriers to treatment such as chemical dependency treatment requirements served no medical purpose and the current limitation to fibrosis levels three (3) and four (4) do not have a medical basis either.  Inmates with fibrosis levels of 0 to 2 are far more numerous and just as infectious to other inmates as the higher fibrosis levels. The current HCV Guidelines Panel standard-of-care is to treat all patients at all fibrosis levels to stop the progress of the degradation of the internal organs of the individual patient, and to prevent infection of others.  The only

justification for treating a small number of inmates, rather than all HCV infected inmates is cost not medicine.

INTERROGATORY NO. 11:

Identify in detail, and state the factual basis for, the alleged medical standard of care applicable to the treatment of Hepatitis C as of March 2016.

PLAINTIFFS' ANSWER TO INTERROGATORY NUMBER 11:

JOINT RESPONSE:

According to the Federal Bureau of Prisons, the VA, the CDC and all other government agencies, the source for the most up-to-date information for HCV practitioners regarding the standard-of-care for the treatment of HCV is the website created in January 2014 by the HCV Guidance Panel, shortly after the approval of the first 12-week cure for HCV by the FDA:

> "A new era in the treatment of HCV infection began in 2013 and 2014, with the approval of new direct-acting antiviral (DAA) oral medications that act directly against HCV without the use of interferon. These newer regimes are very effective in eliminating HCV infection, achieving cure rates of greater than 90% in many patient populations....
>
> The preferred treatment regimens have changed as each new DAA has been approved--resulting in rapidly changing clinical guidelines and treatment recommendations.  In the midst of this evolving treatment landscape, the most recently published guidance on HCV treatment (*i.e. HCV Guidance Panel Guidelines* June 29, 2015) stresses the importance of referring regularly to the AASLD/IDSA/ISA-USA website for new updates (*http://www.hcvguidelines.org*)
>
> **Federal Bureau of Prisons July 2015 *Clinical Practice Guidelines* [1]**

---

[1] http://www.bop.gov/resources/pdfs/hepatitis_c.pdf.

Before the "new era" in HCV treatment began in late 2013 (to which the foregoing Bureau of Prisons *July 2015 Clinical Practice Guidelines* refer) HCV treatment consisted of highly individualized drug "cocktails" combined with weekly toxic *Interferon* injections that lasted nearly a year.[2] *Interferon* side-effects included debilitating flu-like symptoms; "cure"-rates were under 50%; and, lacked a single "standard-of-care" protocol because treatment varied significantly. See, *Roe v. Elyea*, 631 F.3d 843 (7th Cir. 2011).

### October 2013--FDA "Breakthrough" Cure for HCV

The bleak prognosis for a single "standard-of-care" to *cure*, HCV-infected patients changed completely in October 2013 when the Food and Drug Administration (FDA) announced new "breakthrough" DAA drugs (originally Sovaldi and Olysio) that *cured* HCV in only 12-weeks with daily oral medication, at a 95% rate, still in combination with weekly toxic *Interferon* injections..

By late 2013, the three relevant medical societies, the American Association for the Study of Liver Disease (AALSD); the Infectious Disease Society of America (IDSA); and, the International Anti-viral Society--USA (IAS--USA) convened thirty experts in gastroenterology; hepatology; and, infectious diseases *in an* "HCV Guidance Panel" to advise *all* HCV practitioners, for the first time in history.

---

[2] http://www.hcvguidelines.org/January 2014.

The "AASLD/IDSA/IAS-USA/ HCV Guidance Panel" was convened to advise *all* HCV treating medical practitioners in the up-to-date HCV standard-of-care for the new FDA "breakthrough" medications[3] by creating the website (to which the previously cited Federal BOP Clinical Practice Guidelines refer), to provide:

> "...up to date recommendations for HCV practitioners on optimal screening, management and treatment for adults with HCV infection in the United States, using a rigorous review process to evaluate the best available evidence....This [website] was conceived as a living document that would reside online and undergo real-time revisions as the field evolved."[4]

On February 24, 2016, the HCV Guidance Panel issued its most recent advisory making clear that all HCV-positive patients, irrespective of fibrosis level, were to be treated with the FDA-approved DAA drugs, which now include Zapetira, as well as Harvoni and Viekira-Pak.

INTERROGATORY NO. 12:

State the factual basis for your assertion that only treatment with non-interferon direct-acting antiviral agents ("DAA"), Harvoni and Viekira-Pak, meets the applicable medical standard of care for the treatment of Hepatitis C, including but not limited to the treatment of all DOC inmates infected

---

[3] The origins of the HCV Guidance Panel are explained in the article describing its origins and purpose on site http://www.hcvguidelines.org published on June 29, 2015, a copy of the article is appended. (See Exhibit #2. Published online: Hepatology, Vol.62, Issue 3, Nov. 3, 2015 (accepted for publication June 3, 2015).

[4] http://www.hcvguidelines.org/June/2015)

with Hepatitis C, as alleged at pages 4-5 of the Second Amended Complaint.

**PLAINTIFFS' ANSWER TO INTERROGATORY NUMBER 12:**

JOINT ANSWER: See Affidavits of Dr. Bennett Cecil and Dr. Martin Gordon filed in this matter for detailed responses to this question. Interferon is a poisonous drug with serious negative side-effects that is no longer approved for the treatment of HCV, after October 2014 when non-Interferon DAAs were FDA approved, making Interferon obsolete.

INTERROGATORY NO. 13

State the factual basis for your assertion in Paragraph 9 of the Second Amended Complaint that Plaintiff Michaelson first tested positive for Hepatitis C only after being double-bunked with a cellmate who had Hepatitis C or after being exposed to other sources of Hepatitis C in DOC facilities.

PLAINTIFFS' ANSWER TO INTERROGATORY NUMBER 13:

MICHAELSON ANSWER: Michaelson submitted to a blood test in 2009 at MCF St. Cloud. He was informed in writing that he was HCV negative in 2009.

Plaintiff Michaelson was exposed to the blood spilt by HCV positive cellmate James DeCoursey, OID 226627, in the cell in July 2010, and

Michaelson was compelled by the corrections officer to clean up the blood in t-shirt, shorts, and open-toed shower shoes while his feet bore open cuts, and while the correction officer gave Plaintiff only a green-liquid spray bottle and paper towels to clean up the blood.

Details of this incident were explained and documented at the time of the occurrence in 2010.  Following the exposure, Plaintiff tested positive for HCV; an HCV RNA blood test in September 2010 revealed Plaintiff was HCV positive; this was the first HCV RNA test that revealed Plaintiff Michaelson to be HCV positive.

Kites and reports are available for inspection along with other documents as described in the Request for Production of Documents, below.

INTERROGATORY NO.14:

State the factual basis for your assertion in Paragraphs 165 and 176 of the Second Amended Complaint that you have a disability and that your major life activities have been substantially impaired by that disability.

PLAINTIFF   LIGONS'   AND   MICHAELSON'S   ANSWERS   to INTERROGATORY #14:

1. See Second Amended Complaint ¶¶165-184, reproduced and set forth below:

165.    First, Plaintiffs Ligons, Michaelson, and all persons similarly

situated, are individuals with a disability, specifically, HCV infection, a physical impairment that substantially affects the major life activities of digestive systems, circulatory systems, and life itself.

166.    Second, defendants Minnesota Department of Corrections and Commissioner Tom Roy, through the actions of their agents, employees, or representatives, and the kites and grievances of Plaintiffs, were aware of plaintiffs Ligons' and Michaelson's, and all other persons' similarly situated to them, respective disabilities.

167.    Third, defendant Minnesota Department of Corrections is a recipient of federal monies for its incarceration programs.

168.    Fourth, defendants Minnesota Department of Corrections and Commissioner Tom Roy had a responsibility to assure proper care for Plaintiffs Ligons, Michaelson, and all other disabled persons similarly situated.

169.    Fifth, defendants Minnesota Department of Corrections and Commissioner Tom Roy could have reasonably accommodated plaintiffs' disabilities, so as not to exclude them from participation in, or deny them the benefits of the federally funded services, programs, or activities of defendant Minnesota Department of Corrections, by reasonably accommodating plaintiffs' disabilities, by treatment with Harvoni, Viekira-Pak, or other direct-acting, antiviral, lifesaving, curative

medicines for their respective hepatitis C virus infections, in accordance with the national, community standard of care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA for plaintiffs' respective hepatitis C infections.

170.   Sixth, defendants Minnesota Department of Corrections and Commissioner Tom Roy, through the actions of their agents, employees, or representatives, had actual knowledge of a substantial risk that Plaintiff Michaelson, and all persons similarly infected with the hepatitis C virus, would suffer progression of the disability of hepatitis C infection that foreseeably would lead to aggravated or exacerbated serious medical harms including liver malfunction, liver fibrosis, liver cirrhosis, liver cancer, expensive liver transplant, or even death by liver malfunction.

171.   Seventh, defendants Minnesota Department of Corrections and Commissioner Tom Roy, through their agents, employees, or representatives, failed to accommodate reasonably plaintiffs' known disabilities, notwithstanding that compliance with the national, community standard of professional medical care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA is, by medicine and law, not an undue hardship.

172.   Eighth, defendants Minnesota Department of Corrections and

Commissioner Tom Roy, through their agents, employees, or representatives, disregarded the substantial risk of progression of the hepatitis C infection of Plaintiffs Ligons and Michaelson, and all persons similarly infected with the hepatitis C virus, by

- failing to provide medical care; or

- failing to direct that medical care be provided; or

- failing to enact policies to assure that LIGONS, MICHAELSON, and each and every respective class member would obtain the medical care needed, specifically, treatment of them respectively, with Harvoni, Viekira-Pak, or other direct-acting, antiviral, lifesaving, curative medicines for their respective hepatitis C virus infections, in accordance with the national, community standard of care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA; or

- failing to allow each and every respective class member to obtain the medical care needed, specifically, treatment of them respectively, with Harvoni, Viekira-Pak, or other direct-acting, antiviral, lifesaving, curative medicines for their respective hepatitis C virus infections, in accordance with the national, community standard of care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA;

173.    Ninth, Plaintiffs Ligons, Michaelson, and all other similarly

situated qualified disabled persons afflicted with the hepatitis C virus, as the direct result of the failures and policy decisions of defendants Minnesota Department of Corrections and Commissioner Tom Roy, suffered injuries that included progression of their respective infections, increased symptoms, pain, suffering, fear, diminished enjoyment of life, and decreased life expectancy.

174.  Tenth, defendants Minnesota Department of Corrections and Commissioner Tom Roy, through their agents, employees, or representatives, acted with deliberate, reckless, knowing, or intentional disregard for the rights, health, and safety of the plaintiffs.

**CLAIM VIII: TITLE II OF THE ADAA, 42 U.S.C. §§12131-12132; PLAINTIFFS LIGONS, MICHAELSON, AND ALL PERSONS SIMILARLY SITUATED, AGAINST DEFENDANTS MINNESOTA DEPARTMENT OF CORRECTIONS AND COMM'R TOM ROY IN HIS OFFICIAL CAPACITY**

175.  Plaintiffs reallege and reassert every claim and incorporated exhibit which constitute averments of imminent danger of serious physical, medical injury.

176.  First, Plaintiffs Ligons, Michaelson, and all persons similarly situated, are individuals with a disability, specifically, HCV infection, a physical impairment that substantially affects the major life activities of digestive systems, circulatory systems, and life itself.

177.  Second, Defendants Minnesota Department of Corrections and

Commissioner Tom Roy, through the actions of their agents, employees, or representatives, and the kites and grievances of Plaintiffs, were aware of plaintiffs Ligons' and Michaelson's, and all other persons' similarly situated to them, respective disabilities.

178.    Third, Defendants Minnesota Department of Corrections and Commissioner Tom Roy had a responsibility to assure proper care for Plaintiffs Ligons, Michaelson, and all other disabled persons similarly situated.

179.    Fourth, Defendants Minnesota Department of Corrections and Commissioner Tom Roy could have reasonably accommodated Plaintiffs' disabilities, so as not to exclude them from participation in, or deny them the benefits of the federally funded services, programs, or activities of defendant Minnesota Department of Corrections, by reasonably accommodating plaintiffs' disabilities, by treatment with Harvoni, Viekira-Pak, or other direct-acting, antiviral, lifesaving, curative medicines for their respective hepatitis C virus infections, in accordance with the national, community standard of professional medical care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA for Plaintiffs' respective hepatitis C infections.

180.    Fifth, defendants Minnesota Department of Corrections and

Commissioner Tom Roy, through the actions of their agents, employees, or representatives, had actual knowledge of a substantial risk that Plaintiffs Ligons and Michaelson, and all persons similarly infected with the hepatitis C virus, would suffer progression of the disability of hepatitis C infection that foreseeably would lead to aggravated or exacerbated serious medical harms including liver malfunction, liver fibrosis, liver cirrhosis, liver cancer, expensive liver transplant, or even death by liver malfunction.

181.    Sixth, defendants Minnesota Department of Corrections and Commissioner Tom Roy, through their agents, employees, or representatives, failed to accommodate reasonably plaintiffs' known disabilities, notwithstanding that compliance with the national, community standard of care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA is, by medicine and law, not an undue hardship, nor does it constitute an unreasonable modification of the Minnesota Department of Corrections program.

182.    Seventh, defendants Minnesota Department of Corrections and Commissioner Tom Roy, through their agents, employees, or representatives, disregarded the substantial risk of progression of the hepatitis C infection of Plaintiffs Ligons an Michaelson, and all persons

similarly infected with the hepatitis C virus, by

- failing to provide medical care; or

- failing to direct that medical care be provided; or

- failing to enact policies to assure that LIGONS, MICHAELSON, and each and every respective class member would obtain the medical care needed, specifically, treatment of them respectively, with Harvoni, Viekira-Pak, or other direct-acting, antiviral, lifesaving, curative medicines for their respective hepatitis C virus infections, in accordance with the national, community standard of care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA; or

- failing to allow each and every respective class member to obtain the medical care needed, specifically, treatment of them respectively, with Harvoni, Viekira-Pak, or other direct-acting, antiviral, lifesaving, curative medicines for their respective hepatitis C virus infections, in accordance with the national, community standard of care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA;

183.    Eighth, Plaintiffs Ligons, Michaelson, and all other similarly situated qualified disabled persons afflicted with the hepatitis C virus,

as the direct result of the failures and policy decisions of defendants Minnesota Department of Corrections and Commissioner Tom Roy, suffered injuries that included progression of their respective infections, increased symptoms, pain, suffering, fear, diminished enjoyment of life, and decreased life expectancy.

184. Ninth, defendants Minnesota Department of Corrections and Commissioner Tom Roy, through their agents, employees, or representatives, acted with deliberate, reckless, knowing, or intentional disregard and indifference for the federally rights, health, and safety of the plaintiffs.

**INTERROGATORY NO. 15:**

Identify any benefits of a program or activity that were denied to you based on your disability and state the factual basis for such denial(s).

PLAINTIFFS' ANSWER TO INTERROGATORY NUMBER 15:

MICHAELSON'S RESPONSE:

I was denied the Standard of Care, that is, the international Standard of Medical Care that all Physicians have, shall, must follow and are not a matter of individual opinion or individual Medical Judgment and all doctors that fail this standard are being indifferent to those who suffer from H.C.V.

I was denied Medical treatment based on financial incentives, and to give any medical to only those who are in the near stage of comorbidity, which

is discrimination and limits my ability to function in a program or activity. *Sutton v. United Airlines* S. Ct. 99, Murphy v. United Parcel Service 119 S. Ct. 99. Which in turn obviates my ability to exercise and to keep my weight down to a normal and body mass size. Based on such denial, in-short I'm handicapped.

Based upon Case Law and Title 42 U.S.C. 12131 of the A.D.A.: to be clear, I was denied a Health Program of the State of MN and the benefits of the Standard of Care (viz) (Harvoni-Viekira Pak).

LIGONS' ANSWER:

1. Deterioration of internal organs, including circulatory system and liver.

2. Exacerbation of insulin dependent diabetes mellitus.

3. Joint pain, neuralgia, fatigue.

4. Joint pain, neuralgia, and fatigue compromise Ligons' ability to concentrate and to work in prison industries.

5. Exacerbation of diabetes compromise Ligons' ability to work, eat, and concentrate.

6. Plaintiff Ronaldo Ligons attaches and incorporates his May 10, 2016 affidavit to these answers.

INTERROGATORY NO.16:

    Identify all people and documents consulted in responding to these interrogatories.

## PLAINTIFF'S ANSWER TO INTERROGATORY NUMBER 16:

Plaintiffs object to this interrogatory as vague, overbroad, invasive of the attorney-client privilege, and not reasonably calculated to elicit admissible evidence at trial.

- Plaintiffs refer Defendants to previous answers to interrogatories and documents available for inspection.
- Plaintiffs refer Defendants to the depositions of Dr. Paulson and Ms. Nanette Larson.
- Plaintiffs refer Defendants to www.hcvguidelines.org.

Signed and declared in accordance with 28 U.S.C. §1746:

Date: 8-26-16

Signed and declared in accordance with 28 U.S.C. §1746.

Date: 5 — 21 - 16

Reviewed and signed.


Date: 18 May 2016                    Respectfully:

                                     PETER J. NICKITAS LAW OFFICE, LLC

                                     /s/ *Peter J. Nickitas* (electronically signed)

                                     _____

                                     Peter J. Nickitas, MN Att'y #212313
                                     Attorney for Plaintiffs
                                     431 S. 7th St., Suite 2446
                                     Minneapolis, MN 55415
                                     651.238.3445/FAX 1.888.389.7890
                                     peterjnickitaslawllc@gmail.com

TO ALL STATE AND FEDERAL COURTS
MINNESOTA DEPARTMENT OF CORRECTIONS
WARDEN EDDIE MILES
MCF-FARIBAULT
ALL MEDICAL AND DENTAL STAFF
AND TO WHOM IT MAY CONCERN

)

RONALDO S. LIGONS
PLAINTIFF/PETITIONER
VS.
MN DEPT. OF CORRECTIONS,
WARDEN EDDIE MILES,
MCF-FARIBAULT MEDICAL STAFF,
MCF-FARIBAULT DENTAL STAFF,
ET AL.
DEFENDANT/RESPONDENTS.

AFFIDAVIT OF
RONALDO S. LIGONS
MAY 10, 2016

RONALDO S. LIGONS, BEING DULY SWORN ON OATH, DEPOSES AND SAYS:

1. THAT AT ALL TIMES RELEVANT TO THIS AFFIDAVIT AFFIANT HAS BEEN IN THE CUSTODY OF THE MINNESOTA DEPARTMENT OF CORRECTIONS.
2. THAT AFFIANT HAS BEEN INCARCERATED AT MCF-FARIBAULT, SINCE FEBUARY, 2015.
3. THAT AFFIANT HAS SEVERAL SERIOUS MEDICAL CONDITIONS, SOME OF THEM LIFE-THREATENING.
4. THAT AFFIANT HAS DISCOVERED THAT IF AN ONGOING RECORD OF MEDICAL CONDITIONS, AND PAINS ARE NOT DOCUMENTED, THAT MN DOC MEDICAL STAFF BEGIN TO ENTER INTO AFFIANTS RECORD WORDING THAT THESE ISSUES ARE NO LONGER OF CONCERN.
5. THAT MN DOC MEDICAL STAFF THEN BEGIN TO DENY AFFIANTS CONDITIONS AND CONCERNS.
6. THAT AFFIANTS LIMITED TIME WITH MEDICAL STAFF LIMITS DISCUSSIONS OF VARIOUS MEDICAL ISSUES, AS DOES APPARENTLY, "POLICY" LIMIT ISSUES OF DISCUSSION.
7. THAT AFFIANT IS NOT ABLE TO AFFORD REPEATED MEDICAL, OR DENTAL CO-PAYS.
8. THAT AFFIANT IS DISABLED FROM THE FEDERAL GOVERNMENT, R.S.D.I. 1998.

9.  THAT AFFIANT IS UNABLE TO WORK IN THE PRISON.

10. THAT AFFIANT IS HEPITITIS-C POSITIVE SINCE DISCOVERY IN 1998.

11. THAT AFFIANT HAS NOT BEEN CURED OF THIS LIFE-THREATENING DISEASE DESPITE REPEATED REQUESTS, AND CURRENT LITIGATION.

12. THAT AFFIANT DISCOVERED THAT HE HAD BEEN GIVEN TWO DIFFERENT USED NEEDLES WITH LIQUID IN THEM, IN APPROXIMATELY 1994 TO 1996.

13. THAT THE RECORD OF THESE DIRTY NEEDLES IS IN THE FILES OF ATTORNEY JOHN STOCKMAN, JENSEN & STOCKMAN LAW FIRM. (RET.?)

14. THAT AFFIANT SUFFERS FROM THE EFFECTS OF HEP-C.

15. THAT AFFIANT SUFFERS SEVERE FATIGUE AND IS UNABLE TO FUNCTION IN "WORK, AND WORK-LIKE SETTINGS." AFFIANT CANNOT WORK IN THE PRISON. (SEE ALSO, SAME AS, R.S.D.I.)

16. THAT AFFIANT SUFFERS FROM BLOATING, CRAMPS, JOINT, AND MUSCLE PAINS.

17. *THAT THE ABOVE AFFECTS ARE IN AFFIANTS JAW MUSCLES, BACK, SIDES, ARMS, HANDS, LEGS, AND FEET.*

18. AFFIANT SUFFERS FROM SCIATICA ON THE RIGHT SIDE OF HIS SPINE.

19. THAT AFFIANT HAS SCOLIOSIS OF THE SPINE.

20. THAT AFFIANT IS AN INSULIN DEPENDENT DIABETIC SINCE 1994.

21. THAT AFFIANT HAS BEEN SUBJECTED TO POOR QUALITY, HIGH CARBOHYDRATE FOODS FOR 24 YEARS.

22. THAT AFFIANT SUFFERS FROM THE COMMON EFFECTS OF DIABETES, INCLUDING FATIGUE.

23. THAT AFFIANT HAS SUFFERED FROM THE EFFECTS OF " BELL'S PALSEY" SINCE APPROXIMATELY 2000.

24. THAT AFFIANT HAS NO TEARS, (DRY EYES) OR SALIVA, (DRY MOUTH) ON THE LEFT SIDE OF HIS FACE.

25. THAT AFFIANT SUFFERS FROM CHRONIC ALLERGIC REACTIONS OF ITCHING OF EYES, AND ITCHING AND CRAWLING OF THE SKIN, FOR WHICH MEDICATIONS IS TAKEN DAILY.

26. THAT AFFIANT SUFFERS FROM RASHES, ITCHING FROM HEAD TO LEGS.

27. THAT AFFIANT SUFFERS FROM PAINFUL UNTREATED HAND AND NAIL FUNGUS WITH NAIL LOSSES.

28. THAT AFFIANT SUFFERS FROM CONSTANT "JOCK-ITCH," FROM YEAST INFECTIONS.

29. THAT AFFIANT SUFFERS REGULARLY FROM *VERY SORE THROAT*, FLU-LIKE SYMPTOMS NIGHT AND DAY, WITH RUNNY NOSE, FROM DISEASE AND MEDICATIONS.

2.

30. THAT AFFIANT SUFFERS FROM BALANCE AND EQUILIBRIUM ISSUES WHEN WALKING AND MOVING ABOUT.

31. THAT AFFIANT SUFFERS FROM DEPTH-PERCEPTION, AND DIFFICULTY READING AND WRITING, THE RESULT OF REFUSAL FOR MN DOC TO REMOVE CATARACT IN AFFIANTS LEFT EYE.

32. THAT AFFIANT HAS ONGOING DENTAL ISSUES, AND TOOTH LOSS, PAIN, SUFFERING, AND INABILITY TO CHEW DUE TO POOR QUALITY DENTAL CARE. NOW AT MCF-FARIBAULT.

33. THAT MEDICAL AND DENTAL STAFF ENTER INTO AFFIANTS FILES CLAIMS THAT ATTEMPT TO MINIMIZE AFFIANTS SERIOUS CONCERNS, AND TO SHIFT THE BLAME.

34. THAT MN-DOC MEDICAL STAFF, HAVE PLACE CLEARLY FALSE ENTRIES INTO AFFIANTS MEDICAL FILES FILES THAT ARE CONTRADICTED BY EXISTING ENTRIES INTO TO FILES, INCLUDING CURRENT PRESCRIPTIONS FOR CONDITIONS DENIED TO EXIST.

35. THAT AFFIANT HAS ATTEMPTED TO PLACE INTO HIS FILES CORRECTIONS AND ADDITIONAL INFORMATION.

36. THAT AFFIANT HAS OBSERVED A DISTINCT ADVERSARIAL POSTURE ON THE PART OF MN DOC MEDICAL POLICIES, AND FROM SOME MEDICAL STAFF.

FURTHER AFFIANT SAYS NOTHING.

I SWEAR UNDER PENALTY OF PURGERY THAT ALL OF THE ABOVE ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE/INFORMATION.

*Ronaldo S. Ligons* (signature)

RONALDO S. LIGONS
1101 LINDEN LN.
FARIBAULT, MN 55021

SUBSCRIBED AND SWORN TO BEFORE ME THIS_____DAY OF MAY, 2016

_____

NOTARY PUBLIC

3.



**Minnesota Department of Corrections**
**Minnesota Correctional Facility - Faribault**
**Grievance Report - 5283**

OID    171203                                    **Living Assignment**  MCF-FRB K2 C Tier 1 109 02 Lower Bunk

Name  Ligons, Ronaldo Sylvester           **Case Worker**        Haffely, Jeffrey J

---

**Appeal:**

MCF - FRB has not resolved the issue of altering original 'meals to living unit.' The alteration of failing to place appellant in MCF - Linden where meals are delivered has resulted in a year of conflicts, harassment, threats to personal safety from prisoners and staff. Affidavits have documented incidents only to be dined by MCF - FRB administration, with no basis to deny the singling out of one individual as 'special' causing conflicts from the serving lines to the living unit. A carrying case solves nothing, but it was never provided for a full year. The result has been discriminatory and is actionable under ADA and other laws governing treatment of the disabled and is being pursued for resolution. Appellant has not eaten meals since 1/28/16 for safety reasons.

**Appeal File Date:**             04/20/2016

**Appeal Response:**

Since your arrival at MCF-FRB you were notified of the ADA accommodations put in place to facilitate your needs.   On 03-07-16, you met with Dr. E. Shaman and were notified at that time that the fact that you are taking a regular diet for the most part, does not necessarily indicate that your stricture is causing a problem. Also, the Dr. informed you that based on your weight fluctuation over the last three years it does not seem to indicate that your stricture is interfering with mastication, deglution or absorption and that would eliminate you from being transferred to Linden on a medical basis.

In regard to threats to your personal safety, the only documented incident in which you informed staff of threats from offenders was investigated by CPD Doeden. In that investigation you informed CPD Doeden that you had been threatened by an unknown offender, that you were unable to identify that offender because it was dark and also noted that offender did not reside in the unit in which you were housed. Based on that information, there was no way to substantiate your claims of harassment or threatening behavior. Additionally, there have been no further reports of harassment or threats of physical harm reported to staff. If there are incidents that create concern for your personal safety or incidents of harassment, please notify staff immediately. It is our expectation that offenders be allowed to complete their sentences in a safe and secure environment that promotes change through positive behavior.

Initially, your request for a carrying case was denied due to a lack of options. Since that time additional research was done and carrying case is now available for your use. On 1-28-16, it was reported by Corrections Chief Cook Thompson that you were observed asking for items that you were not allowed or authorized to have. Further, Cook Thompson also noted that this has happened in the past as well. The safety reasons you mentioned were investigated and due to a lack of information were unable to be substantiated.

**Appeal Response Type:**       Dismiss
**Appeal Response Person:**     Reiser, Bruce
**Appeal Response Date:**       05/03/2016

Signature                                      5-4-16    Date

Grievance Appeal

5283

Date: 4-13-16

Offender: RONALDO LIGONS OID: 171203 Living Unit: K2C 109-2

Instruction to offender: The grievance must be attached to this form in order to process. You may add one 8 1/2 x 11 inch sheet of paper to expand upon your grievance appeal information. Please include one copy of all exhibits for this grievance appeal.

Reason for Appeal: MCF-FRB HAS NOT RESOLVED THE ISSUE OF ALTERING APPELLANT'S ORIGINAL "MEALS TO LIVING UNIT." THE ALTERATION OF FAILING TO PLACE APPELLANT IN MCF-LINDEN WHERE MEALS ARE DELIVERED HAS RESULTED IN A YEAR OF CONFLICTS, HARASSMENT, THREATS TO PERSONAL SAFETY FROM PRISONERS, AND STAFF. AFFIDAVITS HAVE DOCUMENTED INCIDENTS ONLY TO BE DENIED BY MCF-FRB ADMINISTRATION, WITH NO BASIS TO DENY THE SINGLING OUT OF ONE INDIVIDUAL AS "SPECIAL" CAUSING CONFLICTS FROM THE SERVING LINES TO THE LIVING UNIT. A CARRYING CASE SOLVES NOTHING, BUT IT WAS NEVER PROVIDED FOR A FULL YEAR. THE RESULT HAS BEEN DISCRIMINATORY AND IS ACTIONABLE UNDER (ADA) AND OTHER LAWS GOVERNING TREATMENT OF THE DIS- ABLED AND IS BEING PURSUED FOR RESOLUTION. APPELLANT HAS NOT EATEN MEALS SINCE 1-28-16, FOR SAFETY REASONS. RETURN ALL DOCUMENTS

Dist:

Original – Central Office Grievance Appeal Coordinator

Copies – Facility Grievance Coordinator
Offender

Date Entered _____

Grievance Number _____

303.100C    9/02



**Minnesota Department of Corrections**
**Minnesota Correctional Facility - Faribault**
**Grievance Report - 5283**

**OID** 171203                      **Living Assignment** MCF-FRB K2 C Tier 1 109 02 Lower Bunk

**Name** Ligons, Ronaldo Sylvester       **Case Worker**     Haffely, Jeffrey J

| | |
|---|---|
| **Grievance Facility:** | Faribault |
| **Group:** | Dietary |
| **Type:** | Environmental Conditions - Kitchen or Dining Hall |

**Grievance:**

Grievant is entitled to meals, DOC is responsible for providing meals according to original ADA reasonable accommodation, meals to unit, meals on wheels in the Linden building, where meals are delivered. The unrequested alteration of meal delivery by requiring grievant to carry trays to and fro without any carrying case has proved dangerous due to threats from prison kitchen worker, harassment from prisoners throughout the campus and harassment by DOC staff and has been documented by sworn affidavits. Grievant is singled out as special and this creates hostilities, threats, and is a violation of ADA as a discriminatory practice. It is actionable under federal laws.

**Institution File Date:** 03/25/2016

**Institution Response:**

Food Services Director was able to find a food carrier for you to use. This resolves your issue and provides you with what you requested. Your claims that staff have threatened or harassed you is unfounded. You are not being singled out or discriminated against.

**Institution Response Type:**     Dismiss with Modifications

**Institution Response Person:**     Miles, Eddie

**Institution Response Date:**     04/07/2016

Signature                                           Date



RECEIVED
APR 18 2016
POLICY & LEGAL SERVICES



**Minnesota Department of Corrections**
**Minnesota Correctional Facility - Faribault**
Grievance Report - 5283

| | | | |
|---|---|---|---|
| OID  171203 | | **Living Assignment**  MCF-FRB K4 D Tier 1 113 02 Lower Bunk | |
| Name  Ligons, Ronaldo Sylvester | | **Case Worker**  Haffely, Jeffrey J | |

| | |
|---|---|
| **Grievance Facility:** | Faribault |
| **Group:** | Dietary |
| **Type:** | Environmental Conditions - Kitchen or Dining Hall |

**Grievance:**

Grievant is entitled to meals, DOC is responsible for providing meals according to original ADA reasonable accommodation, meals to unit, meals on wheels in the Linden building, where meals are delivered. The unrequested alteration of meal delivery by requiring grievant to carry trays to and fro without any carrying case has proved dangerous due to threats from prison kitchen worker, harassment from prisoners throughout the campus and harassment by DOC staff and has been documented by sworn affidavits. Grievant is singled out as special and this creates hostilities, threats, and is a violation of ADA as a discriminatory practice. It is actionable under federal laws.

**Institution File Date:**   03/25/2016

**Institution Response:**

YOU WILL RECEIVE A WRITTEN
RESPONSE WITHIN 20 WORKING DAYS
**Institution Response Type:**

**Institution Response Person:**

**Institution Response Date:**

J. Moravec, Grievance Coord.                    3-25-16
Signature                                                              Date


1 OF 8

**Minnesota Department of Corrections**
**Offender Grievance**

Date: 3-24-16

~~Offender~~ R. LIGONS   OID: 171203   Living Unit/Cell/Room#: K4D113-2

Casemanager: _____

Instruction to offender – You may add one 8½ X 11 inch sheet of paper to expand your grievance information.  You must attach kites, including staff response, showing your attempt to resolve the issue informally and one copy of all supporting exhibits for this grievance.  Your grievance will be returned if you do not attach kites.

Grievance:
GRIEVANT IS ENTITLED TO MEALS, DOC IS RESPONSIBLE FOR PROVIDING MEALS ACCORDING TO ORIGINAL "(ADA) REASONABLE ACCOMMODATION, MEALS TO UNIT, MEALS ON WHEELS)" IN THE LINDEN BLDG., WHERE MEALS ARE DELIVERED. THE UNREQUESTED ALTERATION OF MEAL DELIVERY BY REQUIRING GRIEVANT TO CARRY TRAYS TO AND FRO WITHOUT ANY CARRYING CASE HAS PROVED DANGEROUS DUE TO THREATS FROM PRISON KITCHEN WORKER, HARASSMENT FROM PRISONERS THROUGHOUT THE "CAMPUS," AND HARASSMENT BY DOC STAFF AND HAS BEEN DOCUMENTED BY SWORN AFFIDAVITS. GRIEVANT IS SINGLED OUT AS "SPECIAL" AND THUS CREATES HOSTILITIES, THREATS AND IS A VIOLATION OF (ADA) AS A DISCRIMINATORY PRACTICE. IT IS ACTIONABLE UNDER FEDERAL LAWS.

Dist.   Original - Facility Grievance Coordinator
        Copy - Offender

Date entered   3-25-16
Grievance number   5283

303.100B   (6/2009)



**MCF-Faribault**

# OFFICE
# MEMORANDUM

**DATE:**     February 19, 2016

**TO:**       Mr. R. Ligons 171203 K2A 122-2

**FROM:**     AWO J. Titus

**SUBJECT:**  Kite

Warden Miles responded to a kite you wrote dated 2/3/16 regarding similar issues. This response was sent on 2/18/16. Health Services Administrator RN Ohnstad also responded to you on 2/18/16 regarding a kite you submitted to her dated 2/13/16. I will not re-address these issues, as you have already been responded to on your request to reside in Linden Unit. This request is denied per RN Ohnstad, as you do not meet criteria.

Your medical concerns regarding "carpel tunnel syndrome" will need to be addressed through the medical provider. HSA Ohnstad notified you on 2/18/16 that an appointment will be scheduled during the week of February 22nd to discuss you medical concerns.

With regards to your eligibility to work, your ADA accommodations can be met based on your specific ADA plan, and do not interfere with your ability to work while at MCF-FRB. You are required to follow the work assignment expectations of your job as a K2 janitor in accordance with the position requirements, or you will be held accountable in accordance with DOC Division Directive 204.010 Offender Assignment and Compensation Plan.

*social*
*security*
*(R.S.D.I.)*

ATTN:

**Minnesota Department of Corrections**
## OFFENDER KITE FORM

Offenders are encouraged to communicate with staff at all levels, but it is expected that the chain of command will be used.  Your kite should be directed to the staff who can best answer your question.  If you send a kite requiring an answer to the wrong staff, it will be returned to you.  Kites are to be used for offender to staff correspondence only.  If your kite is not specific, it will be returned for additional information.  If you want your kite reviewed further up the chain of command, you must attach all previous kites to show the previous responses.

5 WORKING DAYS

To: LT. RAMSEY                          Date: 3-7-16
From: R. WEONS                         OID# 191203
Facility/Unit K40   Room/Cell 113-2   Casemanager: _____

Other staff you have contacted regarding this issue and the outcome/decision (attach responses):
GRIEVANCE "CHAIN"

Issue: THIS KITE TO YOU IS CLEARLY REDUNDANT, BUT I GUESS YOU NEED TO REPLY TO THE CONTENT OF THIS GRIEVANCE, EVEN THOUGH TITUS HAS REPLIED -

THANX

Response from: Lt. Ramsey        Date: 3-14-16
Your accomodation is for "extra time" to eat. Since the RR the dining room has a set schedule that needs to be followed you are allowed to take your meals back to your unit so that you can eat at your own pace.
If you are having difficulty with other offenders you need to report that to staff at the time of the incident.

Return to: _____   OID#: _____   Unit: _____   Room/Cell: _____

Distribution upon completion of response:  Original to offender; copy to respondent  303.101A  (5/2009)

**TIME SENSITIVE**

**ATTN.**

**Minnesota Department of Corrections**

**OFFENDER KITE FORM**

( 1 OF 8 ) 

Offenders are encouraged to communicate with staff at all levels, but it is expected that the chain of command will be used.  Your kite should be directed to the staff who can best answer your question.  If you send a kite requiring an answer to the wrong staff, it will be returned to you.  Kites are to be used for offender to staff correspondence only.  If your kite is not specific, it will be returned for additional information.  If you want your kite reviewed further up the chain of command, you must attach all previous kites to show the previous responses.

To: A/W/O TITUS                          Date: 2-13-16

From: R'LIGONS                           OID# 171203

Facility/Unit K2A  Room/Cell 122-2  Casemanager: _____

Other staff you have contacted regarding this issue and the outcome/decision (attach responses):

SIR:   **(PLEASE RETURN DOCUMENTS.)**

Issue: ① I MEET THE CRITERIA FOR I MEDEN-MCF
PLACEMENT INCLUDING, BUT NOT LIMITED
TO: ACTIVITIES OF DAILY LIVING, (ADL) "EATING"
FROM DIV. DIR 500 180 (ALSO TO JODY ONYSTER PER
CM DOLHEN). (I HAD TO READ THE POLICY TO KNOW FOR SURE)
② INCLUDING MY R.S.D.I. DISABILITY, I WAS
CONFINED PRIOR TO THE "DISCIPLINARY CONFINE-
MENT LEGISLATION", THIS IS A PART OF MY
DOC FILES, IS ON FILE AT THE LAW OFFICE,
AND I HAVE ASKED THAT ANY RETALIATION
AGAINST ME I.E., RLU, ETC BE TREATED AS
VIOLATIONS ACTIONABLE IN A COURT OF LAW

Response from: _____   Date: _____

UNDER MN LEGISLATION, DOC POLICIES, SOCIAL
SECURITY, AMERICAN'S WITH DISABILITIES (ADA)
AND, RLUIPA (THAT IMPOSE HEAVY PENALTIES IN COURTS.)
③ I HAVE CARPERAL TUNNEL SYNDROME IN MY
THUMB AND FOREARM, AND TREATING IS ON +
GOING WITH M.D.
④ I WILL NOT BE ABLE TO COMPLETE YOUR
WORK ASSIGNMENT AS JANITOR K2A
                                        CONT.
**PLEASE COPY + RETURN SWORN AFFIDAVIT**

Return to: _____  OID#: _____  Unit: _____  Room/Cell: _____

Distribution upon completion of response:  Original to offender; copy to respondent  303.101A  (5/2009)

P 2.OF 2 ETC
(5)

## Minnesota Department of Corrections
## OFFENDER KITE FORM

Offenders are encouraged to communicate with staff at all levels, but it is expected that the chain of command will be used. Your kite should be directed to the staff who can best answer your question. If you send a kite requiring an answer to the wrong staff, it will be returned to you. Kites are to be used for offender to staff correspondence only. If your kite is not specific, it will be returned for additional information. If you want your kite reviewed further up the chain of command, you must attach all previous kites to show the previous responses.

To: _____   Date: _____

From: _____   OID# _____

Facility/Unit _____   Room/Cell _____   Casemanager: _____

Other staff you have contacted regarding this issue and the outcome/decision (attach responses):

_____

Issue: (5) LASTLY, I REGRET THAT THESE DIFFI-
CULTIES ARE ARISING AS A RESULT OF
FAILING TO PLACE ME IN MCF-LINDEN
THAT WOULD HAVE ELIMINATED EACH ISSUE.
I TRIED FOR AN ENTIRE YEAR TO COMPLY WITH
MY ALTERED ACCOMMODATION. MY SAFETY
FROM UNKNOWN HOSTILE PARTIES CANNOT BE
MONITORED. AND YOU OF ALL PEOPLE KNOW
YOUR STAFF AS WELL AS PETTY PRISONERS
WHO GRIPE, AND HYPE EACH OTHER. I CANNOT
PUT MY SAFETY AT RISK CARRYING FOODTRAYS.

Response from: _____   Date: _____

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Return to: _____   OID#: _____   Unit: _____   Room/Cell: _____

Distribution upon completion of response: Original to offender; copy to respondent   303.101A  (5/2009)

PLEASE ADVISE   RETURN KITE

TO ALL STATE AND FEDERAL COURTS

THE AMERICANS WITH DISABILITIES

WARDEN MILES

CPD JAMIE DOEDEN

AND TO WHOM IT MAY CONCERN

| | |
|---|---|
| RONALDO S. LIGONS, | **AFFIDAVIT** |
| AFFIANT/PETITIONER, | **RONALDO S. LIGONS** |
| V. | **FEBRUARY 3, 2016** |
| MINNESOTA DEPARTMENT OF | |
| CORRECTIONS, ET AL. | |

RONALDO S. LIGONS, BEING DULY SWORN ON OATH, DEPOSES AND SAYS:

1. THAT AT ALL TIMES RELEVANT TO THIS AFFIDAVIT, AFFIANT HAS BEEN IMPRISONED AT EITHER MCF-STILLWATER, OR PRESENTLY AT MCF-FARIBAULT.
2. THAT AFFIANT *FEARS FOR HIS SAFETY* DUE TO HOSTILITIES (IN THE PREPARATION, PICKING UP, AND CARRYING TO AND FRO OF HIS MEALS) FROM PRISON STAFF, AND PRISON "INMATES."
3. THAT AFFIANT BELIEVES THAT HE IS BEING *SINGLED OUT*, AND HARASSED, AND RETALIATED AGAINST BY PRISON STAFF, AND PRISON "INMATES DUE TO HIS DISABILITY.
4. THAT AFFIANT CAME TO MCF-FARIBAULT (FRB), IN FEBRUARY 2015 WITH AN (ADA) ACCOMMODATION FOR "MEALS DELIVERED TO THE (LIVING) UNIT."
5. THAT (FRB) CHANGED THE ACCOMMODATION TO REQUIRE AFFIANT TO CARRY FOOD TRAYS ¼ MILE EACH WAY THREE TIMES DAILY, IN ALL WEATHER WITHOUT A PROPER CARRYING CASE.
6. THAT FROM FEB. 2015, STAFF IN THE KITCHEN, IN THE DINING ROOM, TO AND FROM THE DINING ROOM, AND IN THE LIVING UNIT, HAVE DISPLAYED HOSTILITIES TOWARD AFFIANT, CALLING HIM "SPECIAL" AND MUCH WORSE.
7. THAT AFFIANT HAS DOCUMENTED THESE HOSTILITIES OVER THE PAST YEAR INCLUDING BEING CURSED BY A SECURITY STAFF IN THE DINING ROOM ON OR ABOUT DECEMBER 27, 2015, DURING THE TIME OF AFFIANT'S MOTHER'S DEATH.

8. THAT ON JANUARY 28, 2016 AFFIANT RECEIVED ONE OF MANY IMPROPERLY PREPARED FOOD TRAYS AND SENT IT BACK FOR CORRECTION.

9. THAT THE "INMATE" SERVER MADE LOUD AND FALSE STATEMENTS REGARDING THE TRAY CAUSING STAFF MEMBER KAYWEL TO COME TO THE SERVING WINDOW.

10. THAT KITCHEN STAFF, MS. KAYWEL HAS BEEN HOSTILE TOWARD AFFIANT SINCE FEBRUARY 2015.

11. THAT THE BEST WAY TO DESCRIBE ONE OF THE PROBLEMS CAUSING DANGEROUS HOSTILITIES IN THE DINING ROOM IS AS FOLLOWS: THE "INMATE" SERVERS HAVE TO FILL *IDENTICAL* TRAYS ALONG A SERVING LINE.

12. THAT REGULARLY THE SERVERS MAKE ERRORS AND "INMATES" COME BACK REQUESTING CORRECTIONS TO THEIR TRAYS.

13. THAT THE SERVERS ALSO HAVE TO DISRUPT THEIR REGULARY ROUTINE TO FILL AFFIANTS DIFFERENT (BLUE TRAYS WITH TOPS) AND THE ERRORS ARE MORE COMMON AND IDENTIFIABLE AS TO AFFIANT. (STAFF DO NOT PREPARE THE TRAYS.)

14. THAT THIS DISRUPTION OF THE PROCESS FOR FILLING OF THE FOOD TRAYS CAUSES SOME "INMATE" SERVERS TO SPEAK WITH HOSTILITIES, EVEN WHEN THERE IS NO ERROR.

15. THAT OFTEN THESE HOSTILE AND BOISTEROUS "INMATE" SERVERS CAUSE HOSTILE COMMENTARY FROM THE "INMATES" IN LINE WAITING FOR THEIR TRAYS BECAUSE AFFIANT IS SINGLED OUT AS THE ONE CAUSING DELAYS IN THEIR FOOD.

16. THAT THIS SORT OF COMMOTION HAS CAUSED SECURITY STAFF TO GET INVOLVED.

17. THAT DUE TO THE MANIPULATIONS OF "INMATE" SERVERS, KITCHEN STAFF, AND DINING ROOM SECURITY STAFF, AS WELL AS FALSE STATEMENTS CLAIMING THAT AFFIANT WAS "ASKING FOR EXTRA FOOD" AFFIANT LEFT HIS EVENING MEAL IN THE DINING ROOM AND LEFT STATING THAT HE WOULD NO LONGER COME TO PICK UP THE TRAYS.

18. THAT IN THE DARKENESS OF THE EARLY MORNING OF JANUARY 30, 2016 WHILE GOING TO THE INSULIN RUN AT HEALTH SERVICES, AN "INMATE" KITCHEN WORKER WALKED UP BEHIND AFFIANT WHILE PASSING IN FRONT OF THE DINING HALL, AND SAID: "I OUGHT TO BUST YOU IN THE BACK OF YOUR HEAD."

19. THAT ALL OF THESE PROBLEMS WOULD NEVER HAVE ARISEN IF (FRB) HAD FOLLOWED THE ORIGINAL ACCOMMODATION AND PLACED AFFIANT IN THE "LINDEN" BUILDING WHERE MEALS ARE DELIVERED.

FURTHER AFFIANT SAYS NOT.



RONALDO S. LIGONS

SUBSCRIBED AND SWORN TO BEFORE ME THIS _10th_ DAY OF _February_ 2016



SHANE R. ZELLER
NOTARY PUBLIC - MINNESOTA
My Commission Expires
January 31. 2019



**MCF-Faribault**

# OFFICE
# MEMORANDUM

**DATE:** January 4, 2016

**TO:** Mr. Ronaldo Ligons #171203
K2D, 123-2

**FROM:** Eddie Miles, Jr.
Warden

**SUBJECT:** Living Unit Placement

You wrote to me regarding placement in the Linden Unit, an ADA request and interactions with offenders and staff.

Placement in the Linden Unit requires offenders to meet certain medical criteria.

My understanding is you have been reviewed for placement, but do not meet the criteria needed.

If you are receiving harassing comments due to your disability, please report it to your unit lieutenant. Harassing comments will not be tolerated, and offenders or staff making these comments will be held accountable.

If you feel you need ADA accommodations, you need to contact CPD Doeden and/or Lt. Ramsay. Make your request clear and give reasons for the ADA accommodation. Please state why you are unable to carry food trays back and forth to your unit, as arranged.

/jm

C: File



**Minnesota Department of Corrections**
**Minnesota Correctional Facility - Faribault**
**Grievance Report - 5283**

| | | | |
|---|---|---|---|
| **OID** 171203 | | **Living Assignment** | MCF-FRB K2 C Tier 1 109 02 Lower Bunk |
| **Name** Ligons, Ronaldo Sylvester | | **Case Worker** | Haffely, Jeffrey J |

| | |
|---|---|
| **Grievance Facility:** | Faribault |
| **Group:** | Dietary |
| **Type:** | Environmental Conditions - Kitchen or Dining Hall |

**Grievance:**

Grievant is entitled to meals, DOC is responsible for providing meals according to original ADA reasonable accommodation, meals to unit, meals on wheels in the Linden building, where meals are delivered. The unrequested alteration of meal delivery by requiring grievant to carry trays to and fro without any carrying case has proved dangerous due to threats from prison kitchen worker, harassment from prisoners throughout the campus and harassment by DOC staff and has been documented by sworn affidavits. Grievant is singled out as special and this creates hostilities, threats, and is a violation of ADA as a discriminatory practice. It is actionable under federal laws.

**Institution File Date:** 03/25/2016

**Institution Response:**

Food Services Director was able to find a food carrier for you to use. This resolves your issue and provides you with what you requested. Your claims that staff have threatened or harassed you is unfounded. You are not being singled out or discriminated against.

**Institution Response Type:** Dismiss with Modifications

**Institution Response Person:** Miles, Eddie

**Institution Response Date:** 04/07/2016

**BioReference**
LABORATORIES

[2474]     104993628-7  MICHAELSON, BARRY

| D O C I O R | CMS M<br>2305 MN BLVD. SE<br>ST. CLOUD  MN  56304<br>(320) 240-7032   (MN307-4) | MICHAELSON, BARRY     MICHAELSON, BARRY<br><br>MICHAELSON, BARRY     MICHAELSON, BARRY<br><br>-FINAL- Original Report 10/23/2009 |

| NAME | PATIENT I.D./ROOM NO. | DOCTOR/GROUP NAME |
|------|----------------------|-------------------|
| MICHAELSON, BARRY | 203279 | KALLA, IMO |

| LAB I.D. NO. | DATE COLLECTED | DATE RECEIVED | DATE OF REPORT | AGE | SEX |
|---|---|---|---|---|---|
| 104993628 | 10/22/2009 | 10/22/2009 01:46 | 10/23/2009 16:34 | 45 | M |

| Test Description | Result | Abnormal | Reference Range |
|---|---|---|---|

-------------------------* CARDIOVASCULAR/LIPIDS *-------------------------

| Cholesterol | 149 | | < 200 | mg/dl |

-------------------------* MISCELLANEOUS *-------------------------

RPR                          NON-REACT                NON-REACTIVE
GLUCOSE, NON-FASTING         83                       60-125 mg/dl
HIV 1/0/2 ANTIBODY           Non-Reactive  *memo sent 10-26-09 JS* Non-Reactive
NOTE: Patients nonreactive for HIV antibody MAY BE infected but have not yet
      seroconverted. If a nonreactive result seems inconsistent with the
      clinical setting, RESUBMIT a new specimen for retest in 1-3 months.
ASSAY INFORMATION: Assay for the Detection of Antibodies to Human
      Immunodeficiency Virus Type 1, including Group
      O (HIV-1 + "O") and/or Type 2 (HIV-2) Manufactured by
      Siemens Healthcare Diagnostics.

**************************************************************************
NOTICE: IF the result of the RPR is reported as reactive with a titer
of up to 1:8 please note that this level of reactivity can be caused
by other, non-specific constituents and may not be related to syphilis.
Confirmation of positive RPRs can only be made via performance of the
T. Pallidum confirmation test.

                          Final Report

*10/26/09*

James Weisberger, M.D.
LABORATORY DIRECTOR

481 EDWARD H. ROSS DR
ELMWOOD PARK, NJ 07407
1-800-229-LABS

**BioReference** LABORATORIES    [2475]    106506407-6   MICHAELSON, BARRY

| DOCTOR | | |
|---|---|---|
| CMS M | MICHAELSON, BARRY | MICHAELSON, BARRY |
| 1101 LINDEN LANE | | |
| FARIBAULT MN 55021 | MICHAELSON, BARRY | MICHAELSON, BARRY |
| (507) 334-0832 (MN300-9) | | |

-FINAL- Original Report 03/04/2010

| NAME | PATIENT I.D. / ROOM NO. | DOCTOR / GROUP NAME |
|---|---|---|
| MICHAELSON, BARRY | 203279 | HARDRICT |

| LAB I.D. NO. | DATE COLLECTED | DATE RECEIVED | DATE OF REPORT | AGE | SEX |
|---|---|---|---|---|---|
| 106506407 | 02/26/2010 | 02/27/2010 12:37 | 03/04/2010 13:15 | 45 Y | M |

| Test Description | Result | Abnormal | Reference Range |
|---|---|---|---|

Comment :
     NON FASTING

-------------------------* MISCELLANEOUS *--------------------------

LAMOTRIGINE (12)           1.6 LO    2.0 - 20.0    ug/ml
Current clinical information suggests the recommended
     concentrations for lamotrigine during chronic therapy
     are 2 - 20 ug/ml.
Lamotrigine analysis performed by high performance liquid
chromatography (HPLC).


*************************************************************************
(12) &NOTE: Drug screen AND confirmation, where necessary, performed by:
            Medtox Laboratories, Inc.
            402 West County Road D
            St. Paul, MN 55112

                 Final Report

James Weinberger, M.D.
LABORATORY DIRECTOR

Minnesota Department of Corrections
Behavioral Health
MCF-Stillwater
**Mental Health Record**

*Transferred from MCF-Faribault*
*Late June or 2010*

Name: Michaelson, Barry     OID: 203279     Date: 7/20/10

Nature of Contact, Observations, Diagnosis, Recommendations, Plans, etc.

| Session Type:<br>Brief Assmt<br><br>Time: 30<br><br>B-West<br>Cell#<br>106<br><br>Mr.<br>DeCorsey | (S) Met with Mr. Michaelson for routine follow up after he transferred from MCF-FRB. He said he is irritable because he was transferred into a cell hall that was on an extended lockdown. He said "Dogs get treated better, were people. The CO's aren't better than me." He gets irritable with the immaturity of the younger offenders. He went on about the disrespectful conditions in prison and identified this as the main source of his irritability. He is focused on getting out of BW. He has applied to participate in higher education, as he believes this is the fastest route to moving cell halls. He values working and worked while in the community and throughout his life. He verbalized that venting his thoughts about prison conditions was beneficial to him and he felt better.<br><br>He said he is on a lower dose of Lamictal than previously. This is not reflected in psychiatric notes in his mental health file, so I will review his medical file for information on this. He said he requested this decrease because he thought he was experiencing an irregular heartbeat as a side effect. However, medical testing did not reveal any problems so he would like the dose to be increased back to 100 mg twice per day.<br><br>We discussed the differences between Axis I and Axis II disorders and the most effective treatment approaches for these. He expressed interest in engaging in therapy. I explained that therapy time is not used simply to vent as this strategy does not produce any long-term change in problems. He accepted this. I explained that in order to receive therapy he needs to have treatment goals related to what he wants to work on improving or changing about himself or his symptoms. He was willing to do this. He will consider possible goals and send a kite if he has ideas on this. If I receive a kite I will meet with him to discuss treatment goals further. Otherwise, I will follow up in approximately three months for medication monitoring.<br><br>(O) Euthymic affect. Irritable mood.<br><br>(A) Mood Disorder NOS, Borderline Personality Disorder. Although he was very angry about the conditions in prison and particularly BW, he also recognized that he can take steps to improve his situation and get out of this cell hall. *BW = B. West Cell hall# 106*<br><br>(P) Check medical chart for current dose of Lamictal. Follow up in approximately three months unless he sends a kite with ideas for treatment goals and then I will meet with him sooner. |

Name:  Michaelson, Barry      OID:  203279      Date:  7/20/10

Kathryn Lockie, MA, LPCC
Clinician

Mental Health Record

Minnesota Department of Corrections – Stillwater
Behavioral Health Services
**Psychiatric Assessment**

Name: MICHAELSON, Barry          OID#203279          Date: 11/04/2010

**Subjective:** He was seen for follow-up. He is diagnosed to have Bipolar Disorder type II, history of Attention Deficit Hyperactivity Disorder and Polysubstance dependence in a controlled environment. He is currently on Lamictal 150 mg at h.s. which was increased this dose when he saw Dr. MacNeil on 08/10/2010 and also he is on Zoloft 200 mg once daily. Before that though he was on Risperdal 2 mg at h.s., but it was tapered, and this continued on account that he did have an elevated liver function test, and Dr. MacNeil thought that that could be a big factor. He did have a hepatitis screening, and he was found out to have hepatitis C as a cause of the elevation of the liver enzymes. Since then, he claims that he has not been quite right. He tends to be quite more moody. He has problems with his sleep. He does have also some subtle depressive symptoms, which consist of being sad and depressed is 5-6/10. Concentration and interest in things are fair. His energy is low. He denies of any problems of anxiety as mentioned. He has been quite moody. He denies paranoid ideations, hallucinations, or delusions.

**Objective:** His appearance is adequately groomed and dressed Caucasian male. He was moderately overweight. His speech is within normal limits. It is of normal tone and volume. His affect is appropriate. He has very good eye contact. His mood is cooperative and pleasant. His thought processes are logical and clear.

**Assessment:** At this time, there has been some increase in lability of mood as well as some subtle depressive symptoms.

**Diagnostic Impression:**
Axis I:        1.    Bipolar Disorder type II versus Mood Disorder, Not Otherwise Specified.
               2.    Polysubstance dependence.
               3.    History of Attention Deficit Hyperactivity Disorder.

**Plan:** Plan at this time is we will increase the Zoloft to 250 mg once daily. Also increase the Lamictal to 200 mg at h.s. He will have a Lamictal level in two weeks and then he will be seen in two months or p.r.n.

Virginia Mandac, M.D./Rrp/230/Dictated, but not reviewed.

# Minnesota Department of Corrections
## Chemical Dependency Rating Form

This information has been disclosed to you from records protected by federal confidentiality rules (42 CFR Part 2). The federal rules prohibit you from making any further disclosure of this information unless further disclosure is expressly permitted by the written consent of the person to whom it pertains or as otherwise permitted by 42 CFR Part 2. A general authorization for the release of medical or other information is NOT sufficient for this purpose. The federal rules restrict any use of the information to criminally investigate or prosecute any alcohol or drug abuse patient.

Name (Last, First Middle) Michaelson, Barry            OID 203279        Date: 6/27/06
Assessor Name:  Debbie Barron MA, LADC, CPT 2

**I.     TCU Drug Screen Results**  Number endorsed (possible 12) = 0

**II.    Assessment Results**
Offender Meets DSM IV Criteria for (See Assessment Part 2):

☒ Dependence     ☐ Abuse     ☐ Does not meet DSM IV Criteria for dependence or abuse

Diagnostic Impression:
|       |       |
|-------|-------|
| Primary | Alcohol Dependence  (303.90) |
| Secondary | Cocaine Dependence  (304.20) |
| Tertiary | Cannabis Dependence  (304.30)  (In Remission) |

*No ?? drug use history.*

**III.   Level of Need Recommendations**
Based on DSM IV criteria, offender's chemical use history, offender's CD program intervention history, relationship of offender's chemical use to the commitment offense, offender's relapse/remission history, and criminogenic factors as determined by the LSI-R, the following is recommended:

### CD Level of Need 2:  Intensive Primary Treatment

Justification, if necessary:     **Offender endorsed current symptoms of dependence on cocaine and alcohol. He endorsed past symptoms for cannabis with dependency symptoms currently in remission. Offender reports that he completed treatment at Cedar Ridge and has been sober since that time. 6/16/04 offender was terminated from MCF-LL Transitional Prg.  Since release offender was placed in 2 CD programs from which he absconded not completing either program.**

**IV.    Collateral information used to document this assessment (include date of document or contact)**
Source #1     **PSI dated 3/24/06**
Source #2

**V.     Subjects current attitude about the need for alcohol/drug treatment?  Positive**
**VI.    Comments**
         **Probation Violation for non-contact.**

_____
Assessor Signature

## THIS PAGE MAY BE COPIED AND DISTRIBUTED WITH PROPER RELEASE

7/7/2006

**Genito Urinary System**
- ☑ No problems identified
- ☐ Incontinence
- ☐ Frequency
- ☐ Burning
- ☐ Hematuria
- ☐ Other _____

Hx. of disease or infection _QO_

- ☐ Prostatitis
- ☐ Menopausal
- ☐ Menses
- ☐ STD

**Females only**
- Last menses _____
- Usual length _____
- Last pap smear _____
- Last mammogram _____
- No. full term pregnancies _____
- No. abortions _____
- No. miscarriages _____
- Contraceptive method _____

**Nervous System**
- ☑ No problems identified
- ☐ Fainting
- ☐ Seizures
- ☐ Disorientation
- ☐ Poor Balance
- ☐ Other
- ☐ Aphasia
- ☐ Dizziness
- ☐ Paralysis
- ☐ Headaches

Hx. of disease/surgery _None_

**Psychological History**
- ☐ No problems identified
- ☐ Alcoholism
- ☐ Other
- ☑ Depression
- ☐ Behavior problem
- ☐ Suicidal history
- ☐ Psychosis/mental illness

Years of education _12_

**Plan of Care**
- ☐ Dental referral
- ☐ Physician's Clinic referral
- ☐ Mental health Clinic referral
- ☐ Follow up scheduled with nurse
- ☐ Return per Kite if needs
- ☐ Educational Materials provided (specify) _____

Notes: _Wants to get back on Celexa._

_____ Nurse's Signature

_11/24/08_ Date

Rev 3/2007

DOB: 9/16/64

# Mental Health Evaluation

| Have you been here before? | ☒ Yes ☐ No | Did you have any problems in the jail when you were here before? | ☐ Yes ☒ No |
|---|---|---|---|
| Emotional response to incarceration: | | about as well as any one else. | |
| Are you on probation? | ☒ Yes ☐ No | Next court date: | 12/11/08 |

| Current Housing: | ☒ Private Home/Apt | ☐ With Friends | ☐ Shelter | ☐ On Streets |
|---|---|---|---|---|
| Do you currently have contact with family members, someone who cares about you? | | | ☒ Yes | ☐ No |

| Education: | Do you feel you can read and write adequately? | | ☒ Yes | ☐ No |
|---|---|---|---|---|
| Last grade completed: 12 | Were you ever in special education? | | ☐ Yes | ☐ No |

| Employment: | Where do you work? | | For how long? | |
|---|---|---|---|---|
| Are you currently employed? | ☐ Yes ☐ No | Occupation? | housing. | |

## Psychiatric History

| | | | |
|---|---|---|---|
| Are you receiving current medical care? | ☐ Yes ☒ No | With whom? | |
| Have you ever had head injury or seizures? | ☐ Yes ☒ No | When/How? | |
| Have you been hospitalized for mental illness or emotional problems? | ☐ Yes ☒ No | Where/When? | |
| Have you ever received outpatient treatment or counseling? | ☐ Yes ☒ No | Where/When? | |
| Have you ever attempted suicide? | ☐ Yes ☒ No | When/How? | |
| Are you having suicidal thoughts now? | ☐ Yes ☒ No | Do you have a plan? | |
| Have you ever been abused or a victim of criminal violence? | ☒ Yes ☐ No | | |
| Have you ever behaved violently? | ☐ Yes ☒ No | Hurt a person? | ☐ Yes ☐ No |
| Have you ever been charged/convicted Of a sexual offense? | ☐ Yes ☒ No | | |
| Are you currently taking psychotropic medications? | ☐ Yes ☒ No | | |

| Psychotropic Medications | Dose | Frequency | Routes | Pharmacy |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| Appearance | ☑ Appropriate | ☐ Meticulous | ☐ Unkept | ☐ Body Odor | |
|---|---|---|---|---|---|
| Activity | ☑ Appropriate | ☐ Mannerisms | ☐ Restless | ☐ Uncoordinated | ☐ Hyperactive |
| Affect | ☑ Appropriate | ☐ Elated | ☐ Flat | ☐ Labile | ☐ Angry |
| Eye Contact | ☑ Appropriate | ☐ Fixed Start | ☐ Avoiding | ☐ Darting | ☐ Closed Eyes |
| Speech | ☑ Appropriate | ☐ Slow/Fast | ☐ Loud/Soft | ☐ Clear/Slurred | ☐ Disorganized |
| Thought Content | ☑ Appropriate | ☐ Delusional | ☐ Obsessions | ☐ Physical Concerns | ☐ Hallucinating |
| Thought Process | ☑ Appropriate | ☐ Flight of Ideas | ☐ Denial | ☐ Confused | ☐ Loose |
| Orientation | ☑ Appropriate | Disoriented to: ☐ Person | | ☐ Place | ☐ Time |
| Memory | ☑ Appropriate | ☐ Loss of Recent Memory | | ☐ Loss of Remote Memory | |
| Insight | ☑ Appropriate | ☐ Poor Insight | ☐ Unrealistic | ☐ Poor Judgement | |

## Substance Abuse History

Frequency of Use Codes
1 No Use  3 1-2 x/wk  5 Daily  7 Binge Patterns
2 1-3 x/mo  4 3-6 x/wk  6 Several x/day  8 Less than q wk

| Drugs | Current Use | Frequency Code | Amount | Longest Period of Abstinence | Hx of Past Use |
|---|---|---|---|---|---|
| Alcohol | Yes/(No) | | alcal. | | ✗ |
| Marijuana | Yes/(No) | | | | |
| Opiates | Yes/(No) | | | | |
| Tranquilizers | Yes/(No) | | | | |
| Amphetamines | Yes/(No) | | | | |
| Other | Yes/(No) | | | | |

Have you ever received treatment for substance abuse? ☐ Yes  ☒ No  When/Where?

| Plan | ☒ No Further Action | ☐ Sick Call | ☒ Referred to Psychiatrist | ☐ Referred to Physician |
|---|---|---|---|---|
| Discharge Plan | ☐ Self Care | ☐ Community Health | ☐ Psychiatry Appointment | ☐ Community Resources |
| | ☐ MSW Referral | ☐ Referral to AA/NA | ☐ Chem Dep Referral | ☐ D/C with Medications |
| Notes | | | | |

_RN Signature/Title_     11/21/08 _Date_

Mental Health Evaluation Reviewed by:

_Physcian_     _Date_

KL

Minnesota Department of Corrections – **Stillwater**
Behavioral Health Services
**Psychiatric Assessment**

Name: MICHAELSON, Barry          OID#203279          Date: 08/10/2010

**Current Psychiatric Medications:** Lamictal 100 mg q.a.m., Risperdal 2 mg q.h.s., and Zoloft 200 mg q.a.m.

**Subjective:** Mr. Michaelson was last seen at MCF Faribault on 05/12/10 by Dr. Hardrict and was given a diagnosis of Bipolar Disorder Type 2 and ADHD. He has been on Risperdal and Zoloft since prior to being in the DOC and said Risperdal had been started in the Anoka County Jail and this was to help to maintain his mood stability. He has been bothered by what he describes as like heart fluttering, but had a normal EKG on 03/10, but said it still happens. We discussed the issue with his elevated liver functions, which were done on 05/19/10. At that time, his lipids were normal and his CBC was normal. He stated that he had no history of hepatitis, but at one point in his life was an IV drug user and that he could possibly have hepatitis from that. He was agreeable with repeating his liver functions, doing a hepatitis screen and having me refer him to Health Services. We also reviewed the side effects of Risperdal and the fact that it could elevate his liver functions and he chose to taper off this. We will increase his Lamictal as he felt that that was helpful for him.

**Objective: Labs:** As the above. AIMS was zero on 01/18/10. **Allergies:** Penicillin.

**Mental Status Exam:** Appearance: Caucasian male with glasses. He is heavyset. His mood was "pretty good." His affect appeared mildly anxious. His speech was normal. His psychomotor activity was normal. Thoughts were logical and coherent. His insight appeared to be good. No manic symptoms were noted. He did agree he primarily had issues with depression and that he was very reactive to circumstances and was familiar with the borderline personality disorder diagnosis. He denied any suicidal thoughts. He verbalized no thoughts of harm to others. His main issue was having his health taking care of and making sure there is no problems with his liver. His insight was good. His judgment appeared good at this time.

**Assessment:**
Axis I:      1.      _____ Mood Disorder, not otherwise specified.
             2.      Polysubstance dependence.
Axis II:     Borderline Personality Disorder.
Axis III:    1.      History of tinnitus.
             2.      Elevated liver functions noted on 05/19/10.

MICHAELSON, Barry          OID#203279
Page 2 of 2
August 10, 2010


**Plan:** 1.    Repeat LFTs, hepatitis screen, and refer to Health Services.
       2.    Decrease Risperdal to 1 mg q.h.s. x7 days and stop.
       3.    Increase Lamictal to 150 mg q.a.m.
       4.    Follow-up in eight weeks.


Deborah MacNeill, M.D./Rrp/448/Dictated, but not reviewed.

## AUTHORIZATION FOR USE AND DISCLOSURE OF INFORMATION

Name of Patient _____Barry Michaelson_____

Date of Birth __09/16/1964_____   OID # ____203279_____

Chart No. *Medical only*

Social Security # _____

*Private Info. Not Public*

I authorize:

_____

_____

_____

To release to:

Minnesota Department of Corrections and their

counsel

### SPECIFIC DESCRIPTION OF INFORMATION TO BE USED AND DISCLOSED
(specify dates for each, unless "entire medical record" is selected)

_____ _____ treatment from _____ (date) to _____ (date)

| | |
|---|---|
| _____ Hospital Admission Summary | _____ Lab Reports |
| _____ Hospital Discharge Summary | _____ X-ray Reports |
| _____ Operative Report | _____ X-ray Films |
| _____ Progress Notes | _____ Psychiatric Intake |
| __X__ Entire Medical or Treatment Record | _____ Immunizations |
| _____ Billing Information | _____ Pathology Report |
| _____ Other (please specify) *No Mental Health Records: Confidential* | |
| __X__ I authorize verbal and/or written exchange about my medical information | |

*as agreed on: Dec 15, 2015   Protective order*

### PURPOSE OF THE USE AND DISCLOSURE

| | |
|---|---|
| _____ Further Treatment (Date of Appointment _____) | |
| _____ Insurance Application | _____ Personal Records |
| _____ Disability Determination | _____ Education |
| _____ Vocational Rehabilitation Evaluation | _____ Payment of Insurance Claims |
| _____ At my request | __X__ Legal |
| _____ Other | _____ |

I authorize the use and disclosure of my individually identifiable health information as described above. I further authorize the Minnesota Attorney General's Office to release the records received pursuant to this authorization to the court, court staff, expert witnesses, and counsel for any co-defendants in the pending case of *Ligons et al. v. Minnesota Department of Corrections, et. al.*, United States District Court No. 15-cv-2210, as well as to the staff of the Minnesota Department of Corrections. I understand that this authorization is voluntary. I understand that if the person or organization I authorize to receive the information is not a health plan or health care provider, the released information may no longer be protected by federal privacy regulations and could be re-disclosed. I understand that my health care and payment for my health care will not be affected if I do not sign this form.

I understand that I may revoke this authorization in writing at any time, except to the extent action has already been taken in reliance on it. I understand that this authorization will expire on *Feb 17, 2016* (specify date or event) or, if no date or event is specified, 24 months from the date of signing. *will need new H.I.P.P.A. Release after this date*

A photocopy or fax of this authorization will be treated in the same manner as the original.

_____
Signature of Patient/Guardian/Representative

*April 6, 2016*
Date

*Protected under Titel 42 U.S.C § 10801 Mental Health Act: Subd (a)(b)  Vulnerable Adult. Inter-alia: U.S. Supreme Court Ruling*

**Clinical Record**
Department of Corrections
State of Minnesota

Michaelson Barry                                      Case# 203279

| DATE | State Observation: Doctors, Nurses' Notes, signature and title |
|------|---------------------------------------------------------------|
| 4/5/00 1530 | Offender present c̄ L shoulder discomfort. States he was |
| | lifting weights yesterday, did not s̄/o yesterday or come to sick |
| 43.00 | call today. Approx 50% ROM, instructed to use ice, ibuprofen |
| | Used. Deformity or displacement noted. Returned to the |
| | unit. ~ Carol Zimmerman RN |
| 6/2/00 2200 | Unit staff called to unit offender c̄/o severe pain - requests |
| | shoulder immobilizer provided. ~ Carol Zimmerman RN |
| 6-8-00 | Sick Call. 8: F/m states he has no problem c̄ L |
| | shoulder, stated had been lifting weights & caused |
| | acute injury but has no pain or problem @ present |
| | P̄ F/m signed Refusal of Tx & cancelled no gym |
| | activities, as this is F/m ultimate reasoning |
| | ~ R. McQueen RN |
| 8/21/00 | Sick call: Concerned he is Hepatitis positive. States |
| | he was reading a book from the library on |
| | Hepatitis C and feels he has the symptoms listed |
| | in the book. Offender relates symptoms as follows: |
| | itching on bottom of feet and palms, dark urination, |
| | dark stools, restlessness, persistent HA, bloating and |
| | gas, ringing in ears and occasionally sees spots. |
| | Offender states he eats dry cereal c̄ milk and toast |
| | in am and salad and vegetables in evening. States |
| | he doesn't buy food items from canteen. Also |
| | reports he drinks only 3-4 glasses of fluids per |
| | day. Reports H/o unprotected sex c̄ multiple |
| | partners, also reports IV drug use c̄ shared |
| | needles. Discussed possibility symptoms are |
| | related to poor diet and fluid intake. Given |
| | handouts on nutrition and fluids. Offender |
| | denies current flu-like symptoms. Will place |
| | on list for Hepatitis screening. ~ J. Peck RN |
| 9/27/00 | TO C.O. -- ⟨RD⟩ EXP  PRD  WORK RELEASE |
| | SENT  X MEDICAL  X DENTAL  X PSYCH |
| | NO X @ MOOSE LAKE |
| Form#45 Rev. | JWARPULA, OASI |

MEDICAL AND NURSING PROGRESS NOTE

Confidential – Private Government Data

DOC Ligons.Michaelson 0000728

# Clinical Record
### Department of Corrections
### State of Minnesota

Name _____   Case# _____

| DATE | State Observation: Doctor's, Nurses' Notes, signature and title |
|------|------------------------------------------------------------------|
| 2-17-00 | Intake PE, see physical form  Forsythe RN, FNPC - |

Michaelson, Barry 203279
Connaught Mantoux .1ml PPD
Given L forearm on 4-4-00
PPD read on 4-6-00 by Steve Jankowski RN
Results Ømm   LOT #004HAEXP 8-16-01

| 9-15-00 | WT 205# TEMP 98.8  BP 130/76  P 77 |
|---------|------------------------------------|

Medical Consult MCF-WR/ML - MICHAELSON, Barry OID # 203279 - September 15, 2000

S:   Discussion regarding hepatitis C.
O:   205, 98.8, 130/76.  He is hepatitis C positive.
A/P:  Hepatitis C positive.  Advised when released on 09/27/00 to seek further evaluation from family
physician.
A. Hertsel Zackai, M.D./EM 108
Dictated but not reviewed
D: 09/15/00        T: 09/18/00          Job #183382

Form#45  Rev. 5-93

MEDICAL AND NURSING PROGRESS NOTE

Confidential – Private Government Data

## MEDICATION ORDERS

### MINNESOTA CORRECTIONAL FACILITY - ST. CLOUD

| Name | Number | Date | Name | Number | Date |
|------|--------|------|------|--------|------|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | Midnelson Bury | 203279 | 8/21/00 |

Hepatitis B, C screening
V.O. *[illegible]*

9/10/04

Confidential – Private Government Data        DOC Ligons Michaelson 0000882

## STATE OF MINNESOTA
### Department of Corrections



| DATE & TIME | |
|---|---|
| 2-13-02 | ADMITTED TO MCF/SCL No current problems — W John RN |
| 2/20/02 | SRD      C Thompson |

NAME Michaelson, Barry        OID 203279

**PROGRESS NOTES**

5070020043

Confidential – Private Government Data        DOC Ligons.Michaelson 0000672

MINNCOR

## STATE OF MINNESOTA
### Department of Corrections

| DATE & TIME | |
|---|---|
| 9-10-05 1415 | RV mt less than 90 days. Was on Molift and said it was very helpful but the jail didn't give it to him. Requested an appoint to be scheduled c̄ psychiatrist. No other concerns at this time. Did complain of dry itchy feet. Advised to sign up for sick call. Montoux given.  ⟶ ᴼᴮᵉʳˢᵒⁿ ⁿ |
| Addm: | Bee sting allergy. Med Alert signed, and stickers given. ⟶ ᴼᴮᵉʳˢᵒⁿ ⁿ |

Inmate __Michaelson__   OID __203279__
Release Date __9-18-05__   Chart Review __9-10-05__
Medications Ordered __KOP__
Waiver Signed/Instructed on pick-up __9-11-05__
Medical Summary completed _____
Prescriptions written __Prozac__
Date Delivered to B control __9-15-05__ By __Quellier__

| 9-22-05: 1330 | Chart to central office.  ✗ McConn OASI MCFU ——— |



NAME __Michaelson, Barry__                          OID __203279__

**PROGRESS NOTES**                    Ⓜ MINNCOR

Confidential – Private Government Data                    DOC Ligons.Michaelson 0000869

**Minnesota Department of Corrections**
MCF- _SCL_

| Name Michaelson, Barry | Date 6/14/06 | Time | County Hennepin |
| | OID 203279 | | Date of Birth 9.16.64 |

| ☐ New | ☐ Release Violator | ☐ Escape | ☐ Temporary Out Out how long | ☐ Transfer Here Previously? FRB When? '04 |

| **ADMISSION** | General appearance/behavior: good/calm |
| | Temp: 97.8  B.P.: 118/80  Pulse: 64  Resp.: 16  Wt.: 198  Ht.: 5'7" |

Physical Handicap?    ☐ Yes ☑ No

Evidence of physical abuse?    ☐ Yes ☑ No

Alcohol/drug abuse?    Type: Alcohol - Weed    Mode:    Last Used: '03

Withdrawal problems anticipated:
needscat?    Rx: m

Check all that apply: ☑ Trauma markings ☑ Bruises ☐ Lesions ☐ Jaundice ☐ Rashes
☐ Infections ☐ Weight loss > 10 lb. ☐ Cough >3 weeks ☐ Night sweats ☐ Hepatitis when? Ø
ently had: ☐ Scabies ☐ Crabs ☐ Body/head lice...when? Ø
Exposure to communicable disease: Ø

| **MEDICAL** | Allergics (medications, insects, foods, etc.): ?PCN |

Current Medications: Wellbutrin 3 Am ER 200 mg
Lexapro 3 AM 10 mg

Currently under medical/dental care? ☐ Yes ☑ No

Medical/dental action required now: Ø

History of asthma:    ☐ Yes ☑ No.................Cell restriction: ☐ Yes ☑ No
History of seizures?    ☐ Yes ☑ No.................Cell restriction: ☐ Yes ☑ No
PPD history: ☐ Mantoux reactive ☑ Mantoux non-reactive  6.14.06
Immunizations: Hepatitis A Series: ☐ Yes ☑ No  Hepatitis B series? ☐ Yes ☑ No
Influenza: ☐ Yes ☑ No

5070020036

**Health Screening**

⊛ MINNCOR
industries

500.030 6/01

Confidential – Private Government Data

DOC Ligons.Michaelson 0000951

203279     9/16/1964

# PHYSICAL EXAMINATION

MICHAELSON, BARRY SCOTT

OID No.

| Temp. | Resp. 16 | Pulse 64 | B.P. 118/80 | Height 5'7" | Weight 198 |

**System Review:** Eyes Ø

Ears, Ø Nose Ø  Throat Ø

Cardio respiratory Ø

Gastrointestinal Ø

Reproductive Ø
LMP N/A          Contraceptive N/A

Neuromuscular (R) Knee occ pain probably due to
Skin & skeletal      injury - problems for last
6 months

**Physical Examination: General Appearances** NAD

Head nml

Eyes nml

Ears nml

Nose, Throat & Neck nml

Breast / Breasts nml

Heart RRR -s w

Abdomen Round ø hepatomegaly

Rectal N/A Due to age

Pelvic / Genitalia Circ ø hernia

Trunk & Extremities
wnl

Neurological
intact

Skin
clear

Scars & Tattoos

### FAMILY HISTORY

|  | AGE | HEALTH HISTORY |
|---|---|---|
| Father | 70 | A/W |
| Mother | 63 | A/W |
| Brother | X | A/W |
| Sister | X | A/W |
| Children | | |

ILLNESSES/INJURIES Give Age and/or Year

Age/Year          Age/Year

| | YEAR | | YEAR |
|---|---|---|---|
| Head | '05 | Herpes | — |
| Seizures | — | Syphilis | — |
| Fractures Donkee | '99 | Gonorrhea | — |
| Ear, Hearing Problem | — | Chlamydia | — |
| Rheumatic Fever | — | Venereal Warts | — |
| Diabetes | — | Hepatitis | — |
| Kidney Disease | — | Infectious Mono | — |
| Asthma | — | Tuberculosis | — |
| Emphysema | — | Measles | — |
| Bronchitis | — | Mumps | — |
| Cancer | — | Chicken Pox | '03 chyll |
| Heart Disease | — | HIV Test | |
| Hypertension | — | Tet. Toxoid | '07 |
| Ulcers | — | | |
| Last Dental Examination | '05 | | |

Vision Screening     (Snellen Chart)

R 20   L 20   With Glasses
  20     20   Without Glasses

Color Vision nml

Hearing (Gross Screening) nml

Work Status Limitations none

Activity Restrictions none

Treatment Recommended
occ Knee pain (R)
Ibuprofen PRN

Signature: Amo Powell Rn NP   Title   Date 6/19/06

5070020030

MINNCOR

Confidential – Private Government Data          DOC Ligons Michaelson 0000945

# Transfer Summary Form

Name: Michaelson Barry 9/14/09.                  Date: 10/16/09

AKA: _____

                                                  X  Male  ____ Female

### Current/Chronic Health Problems             ### Restrictions
_____ 1. None                                  _____ Lower Bunk
_____ 2. Asthma                                _____ No Stairs
_____ 3. Diabetes .                            _____ Crutches
_____ 4. Cardiovascular                        _____ Cane
_____ 5. Hypertension                          _____ Wheelchair
_____ 6. Seizures                              _____ Prosthesis (specify)
_____ 7. Pregnancy
_____ 8. Vulnerable                            *Allergies*  NKA
__X__ 9. Mental Illness (specify)
_____ 10. Other (specify)                      *Diet*  __X__ Regular

MDD, ADHD, OCD, PTSD, GAD, no Bi-Polar                 _____ Special Diet (specify)

### Tuberculosis Status
Skin Test:   Date Given: 11/24/08 Date Read: 11/26/08 Results Ø mm

X-Ray:   Date: _____   Results: _____

### Current Medications

| Start Date | Stop Date | Medication | Dosage | Frequency | Route |
|---|---|---|---|---|---|
| 10/7/09 | 1/6/10 | Risperidone 1mg | 1mg | BID | po |
| 10/7/09 | 1/5/10 | Sertraline 100mg | 200mg | daily | po |
| 9/17/09 | 12/16/09 | fiber-lax 625mg | 2tabs | TID | po |
| 9/3/09 | 12/2/09 | Doxepin 100mg | 100mg | prn HS | po |
| 9/3/09 | 9/3/09 | Lamotrigine 150mg (75 mg) | ½ tab | daily | po |

Narrative: No suicidal ideations at this time _____

_____

_____

_____

Date: 10/16/09        Signature/Title: _____ RN

**Circle Facility**
Anoka County Jail          Anoka County Medium Security     Anoka County Workhouse
325 East Jackson Street     7545 Fourth Avenue              3300 4th Avenue
Anoka, MN 55303             Lino Lakes, MN 55014            Anoka, MN 55303
Phone: 763-323-5085         Phone: 651-783-7633             Phone: 763-712-2229
Fax: 763-323-5024           Fax: 651-783-7540               Fax: 763-712-2709

Confidential – Private Government Data                    DOC Ligons.Michaelson 0000949

## Minnesota Department of Corrections

| Age | 45 | Institution | MCF/SCL | Approximate SRD | ? |
|-----|----|-------------|---------|-----------------|---|

**FAMILY HISTORY:** Indicate illness or cause of death (i.e. cancer, diabetes, stroke, heart, lung, HTN, epilepsy, TB, mental illness)

| Family member | Age | Deceased | Illness/cause of death | Family member | Illness/cause of death |
|---------------|-----|----------|------------------------|---------------|------------------------|
| Birth mother | 66 | Yes No | ∅ | Children X 3 | ∅ |
| Birth father | 73 | Yes No | HTN | | |
| | # living | # deceased | | | |
| Brother(s) | X 1 | | ∅ | | |
| Sister(s) | X 1 | | ∅ | | |

**OFFENDER PAST MEDICAL HISTORY & REVIEW OF SYSTEMS; CHECK IF HAS OR HAS HAD ANY OF THE FOLLOWING**

Past medical history:
1. ✓ Head injury with LOC briefly only
2. ✓ Fractures
3. ___ Thyroid problems
4. ___ Asthma or difficulty breathing
5. ___ Emphysema/COPD
6. ___ TB or lived with anyone with
7. ___ Hypertension
8. ___ Heart disease
9. ___ Stroke
10. ___ GERD or ulcers
11. ___ Hernia or rupture
12. ___ Hepatitis, liver problem
13. ___ Kidney disease
14. ___ HIV or AIDS
15. ✓ Sexually transmitted disease — chlar
16. ___ Diabetes
17. ___ Seizures
18. ___ Cancer
19. ___ Bleeding disorder or sickle cell
20. ___ Attempted suicide

Review of systems (current or recent problem):
21. ___ Excessive fatigue or weakness
22. ___ Abnormal weight gain or loss
23. ___ Chronic cough or hemoptysis
24. ___ Night sweats
25. ✓ Ear, nose, throat problems ® tinnitus
26. ___ Dentures or partials
27. ___ Swollen lymph nodes
28. ___ Chest pain or shortness of breath
29. ___ Stomach problems
30. ___ Constipation or diarrhea
31. ✓ Hemorrhoids, black or bloody stools
32. ✓ Muscle, bone or joint problems
33. ___ Penile discharge
34. ___ Dysuria or trouble voiding
35. ___ Skin problems
36. ___ Unusual Bleeding

| Last TB Skin test ___ Date | ☐ Positive | ☑ Negative | Last Tetanus Date < 10 yrs |
|---|---|---|---|

| Current medications | Allergies (food, medication, insects) NKDA   Bees |
|---|---|

Chemical use: 1-2/dy
Tobacco: Occas. PPD  25  Years      Problems with alcohol abuse: ☑ Yes ☐ No     Past CD Treatment ☑ Yes ☐ No
Drugs (list): Cocaine, MJ                                                        History of IV Drug use: ☐ Yes ☑ No

| Nurse's ___ W ___ RN signature/title | Date 10-21-09 |
|---|---|

**Comments on positive responses from PMH and ROS (identify by number)**
① Construction accident Inc. to head, brief LOC
② Rt ankle fx
㉕ Ringing in Rt ear (2 yrs ago noticed noise — sound ↑) reports exposure to loud noise/construction (now hissing) Lt starting.
㉛ Hemorrhoids noted prev. rectal exam    (wants ROI Anoka Cty).
㉜ Rt leg/Lt knee crepitus

| Past surgeries (Year and procedure) ∅ | Hospitalizations (Year and reason) Lac repair/tendon repair — age 16 2nd digit on Rt. |
|---|---|

| | Offender Name, OID, DOB |
|---|---|
| Practitioner C. ___ rns signature/title 10/26/09 | 203279          9/16/1964   MICHAELSON, BARRY SCOTT |

Ⓜ MINNCOR  INDUSTRIES   5070020030

**HISTORY & PHYSICAL - MALE**

500 050
REVISED 9-08

Confidential – Private Government Data

DOC Ligons Michaelson 0000942

# PHYSICAL EXAMINATION – Male

| Temp G | BP | Pulse | Resp | Height | Weight | Visual acuity | | Conversational hearing |
|---|---|---|---|---|---|---|---|---|
| 96 | 118/77 | 61 | 16 | 5'7" | 198 | Uncorrected | L 20/25 R 20/25 | (Normal)  Abnormal |
| | | | | | | Corrected | | |

**Physical Exam:** (Check appropriate box, provide explanation for abnormal findings below)

| | NL | ABN | | | NL | ABN | |
|---|---|---|---|---|---|---|---|
| Head | ☑ | ☐ | Atraumatic | Rectal | ☐ | ☐ | Masses |
| Eyes | ☑ | ☐ | Pupils, EOM | | ☐ | ☐ | Prostate |
| | ☑ | ☐ | Conjunctiva | Not done/reason | | | *done at cty* |
| Ears | ☑ | ☐ | TM's, external ear canal | | | | Hemocult (if done) |
| Nose | ☑ | ☐ | Inspection | | | | |
| Mouth | ☑ | ☐ | Inspection | Genito/Urinary | ☐ | ☐ | Penis |
| Throat | ☑ | ☐ | Inspection | | ☐ | ☐ | Testicles |
| | | | | *done at* | ☐ | ☐ | Scrotum |
| Neck | ☑ | ☐ | Non-Tender | *cty* | ☐ | ☐ | Inguinal Hernia |
| | ☑ | ☐ | Range of Motion | | | | |
| | ☑ | ☐ | Thyroid | Extremities | ☑ | ☐ | Inspection |
| | ☑ | ☐ | Lymph nodes | | | | Joints |
| Breasts | ☑ | ☐ | Inspection | *Lt knee* | ☑ | ☐ | Strength |
| | | | | *crepitus* | ☑ | ☐ | Feet |
| Respiratory | ☑ | ☐ | Breath sounds | Neurologic | ☑ | ☐ | Orientation |
| | ☑ | ☐ | Chest wall symmetry | | ☑ | ☐ | Mood |
| | ☑ | ☐ | A/P diameter | | ☑ | ☐ | Gait |
| Cardiac | ☑ | ☐ | Rate and rhythm | | ☑ | ☐ | Cranial nerves II-XII grossly intact |
| | ☑ | ☐ | Heart sounds | | | | |
| | ☐ | ☐ | Carotids if over 50 | | ☑ | ☐ | Reflexes Achilles/patellar |
| | ☑ | ☐ | Peripheral pulses | | ☑ | ☐ | Gross motor |
| Abdomen | ☑ | ☐ | Bowel Sounds | Skin | ☑ | ☐ | Inspection |
| | ☑ | ☐ | Non-Tender | | | | |
| | ☑ | ☐ | Masses/hernia | Back | ☑ | ☐ | Inspection |
| | ☑ | ☐ | Organomegaly (no change) | | ☑ | ☐ | Range of Motion |
| | ☑ | ☐ | Ventral hernia | | | | |

**Describe abnormal findings from physical examination:**

Lt knee crepitus

Tinnitus R1 > Lt

Refused - genital exam "done at cty"

(also requests labs from cty - RPI signed)

**Current Medical Problems and Treatment Recommended:**

Arthritic changes - knees
Shoulders, advised NSAIDs

RoI - Anoka Cty for labs/ PE of rectal

**Work/Activity restrictions:**

Ø

**Practitioner** _C. Ness, MD_  Signature/Title:

**Date:** 10/26/09

Offender's Name, OID, DOB

203279   9/16/1964

MICHAELSON, BARRY SCOTT

**STATE OF MINNESOTA**
**Department of Corrections**

| DATE & TIME | |
|---|---|
| ?-09/1040 | ADMITTED TO MCF/SCL - On several meds for multiple stated diagnosis. No immediate concerns. ——— WGH—— W |
| 0-30-09/1200 | No Chart? Received from CO. ——— ✗ Pettias JASI |
| 1F-12-09 | SRD___ TRF_X_ EXP___ WR___ 1F13-09 to MCF-FRB ——— |
| 1106 | vol 2 of 2 only. ——— S. Thompson CRST |
| 1-13-09 1535 | Intake Health Screening Completed. No medical concerns. Concerned on getting his Zoloft + Lamictal medications. States he was dx. c̄ bi-polar, ADHD + PTSD and has personality disorder. Discussed c̄ offender how to contact Psych Services via kite. States he has no problems on these medications and feels good. Offender here before in 2004. Given info packet on Health Services. ——— R.Dryn R |
| 11/16/09 0700 | Signed up for sick call @ RLU but declined when I asked him. —— Frank RN |
| ?-09 1400 | Offender had continued to receive risperidone medication after expiration date. On call Dr. Krueger notified and stated due to offender's diagnoses it was ok to continue current meds until offender can be seen by psych services. Meds ordered from local pharmacy. —— C. Bradley RN |
| 1-18-10 | 0900: AIMS screen complete. Rated "0". ∅ ERs. Nofel VMG— |

Name Michaelson OID 203279
Draw Date: 2-26-10
Labs Lamictal

Signature Flynn MG

Name Michaelson OID 203279
Draw Date: 3-24-10
Labs EKG done

Signature Flynn MG

---

N.ME _____     OID _____
203279        9/16/1964

MICHAELSON, BARRY SCOTT          **PROGRESS NOTES**          Ⓜ **MINNCOR**

Confidential – Private Government Data          DOC Ligons.Michaelson 0000841

**STATE OF MINNESOTA**
**Department of Corrections**

**PRACTITIONER ORDER**

NAME: Michaelson   Barry                    OID   203279

DATE: 8-10-10      TIME:          ☐ AM ☐ PM

START:  ① D/C Risperdal 2mg qhs.

② Risperdal 1mg qhs x 9d, then d/c.

③ Lab: LFT's, Hepatitis Screen

④ Referral Va Health Services re: ↑LFT's 5-10

⑤ D/C Camictal 100mg qAM

⑥ Camictal 150mg po q AM x 180d.          DO NOT USE
                                          IF NO NUMBER

**PRACTITIONER ORDER**

NAME: Michaelson   Barry                    OID   203279

DATE: 6/17/10      TIME:          ☐ AM ☐ PM

START:

Referral to Psych re ZOLOFT usage — not taking
                                      suboxone.

                                          DO NOT USE
                                          IF NO NUMBER

**PRACTITIONER ORDER**

NAME: Michaelson   Barry                    OID   203279

DATE: 6/14/10      TIME:          ☐ AM ☐ PM

START:  ① Decrease LAMICTAL TO 100 mg po
            q AM x 120 DAYS

mathias RN 06/14/10  11600          DO NOT USE
                                    IF NO NUMBER

**WRITE ORDER FROM BOTTOM TO TOP**

Confidential – Private Government Data          DOC Ligons.Michaelson 0000892

Department of Corrections

| DATE OF ONSET | PROBLEM LIST | DATE RESOLVED |
|---|---|---|
| 9/01/10 | Hepatitis C, Genotype 1; Viral load 206,020 FU/ML | |
| | TBI - LOC | |
| | (12/may/2013) Hep C F:3 score | |
| | Tinnitus Rt > Lt. (hx of exposure to loud noises) | |
| | Arthritis - Knees / shoulders | |
| | crepitus Lt Knee | |
| | Fx Rt ankle | |
| | hemorrhoids | |

NAME: _____ OID: _____ DOB: _/_/_

ALLERGIES: PCN, Bee Stings.

PROBLEM LIST

203279          9/16/1964

MICHAELSON, BARRY SCOTT

Confidential – Private Government Data          DOC Ligons.Michaelson 0000783

**STATE OF MINNESOTA**
**Department of Corrections**

**CTITIONER ORDER**

NAME: McCHAELSON, ABBAY          OID 803279

DATE: 09/08/10      TIME: _____    ☐ AM ☐ PM

START:

Rte F/u on Hep c - next WK

_Transcriber_

DO NOT USE
IF NO NUMBER

**PRACTITIONER ORDER**

NAME: Michaelson, Bonny          OID 203279

DATE: 08/30/10      TIME: _____    ☐ AM ☐ PM

START:

Hepatitis c Viral load & Genotype

Referral to Physn - DHAP - requests to go

back on DISPOSAL

_Transcriber_

(phone message left @ 12⁵⁵ ox 2780 : Dr. Jorgenson)
(sec. officer also notified @ 12⁵⁵ @ x 2651)

DO NOT USE
IF NO NUMBER

**PRACTITIONER ORDER**

NAME: MICHAELSON, BARAY          OID 203279

DATE: 08/23/10      TIME: _____    ☐ AM ☐ PM

START:

Rte F/u on hepatitis screen - 1-2 wks

_Transcriber_

DO NOT USE
IF NO NUMBER

**WRITE ORDER FROM BOTTOM TO TOP**

Confidential – Private Government Data          DOC Ligons.Michaelson 0000891

**STATE OF MINNESOTA**
Department of Corrections

**DATE & TIME**

8/30/10
1040   WT ___ TEMP ___ BP 81 P 71 R 16

↑ LFTs

h: HCV AB⊕ — pt not aware, had done IV drugs
in FLORIDA in the '80s;
Had discontinued RISPERDAL, but now went
to go back on RISPERDAL

Δ: MHCV AB ⊕ ; ↑ LFT

P: HCV viral load & GenoType
referral to psych

9/7/10   WT 203 TEMP 96.3 BP 68 P 86 R 14

MVignorapen

**Progress Note MCF-STW        MICHAELSON, Barry Scott        OID#203279        09/03/2010**
S:  The patient returns to clinic today for a follow-up on recent blood draw, which was for hepatitis C viral load and genotype. This blood draw was apparently done two days ago and the results have not yet been returned. Thus the patient is informed that he will be called again to clinic when the results have come in.
Stanley Quanbeck, M.D./Rrp/3270/Dictated, but not reviewed.

9/23/10   WT 200   BP 120/82   P 97   R 16
105   W) FU HepC

**Progress Note MCF-STW        MICHAELSON, Barry Scott        OID#203279        09/23/2010**
S:  The patient has returned for a follow-up on hepatitis C and that he was previously informed that the HCV antibody test was positive. This was followed with a HCV viral load and genotype, and he is now informed that the HCV viral load is in fact active with a count of 206,000 International Units per mL and that his type is 1B. The patient reports today that he is now beginning to have pain in the right upper quadrant with bloating and occasional pain into the right shoulder. He states that he has been reading up on hepatitis C and has been reading up on the various symptoms that may be associated with hepatitis C. He notes that before he had been told that he had hepatitis C, he had had no such complaints.
A:      Hepatitis C with active viral load and type I genotype. Recent right upper quadrant pain.
P:  Ultrasound of the liver and gallbladder to assess for possible gallbladder disease but more likely this is psychosomatic given his reading of possible symptoms of hepatitis C. Referral to nurse practitioner, Mariam for follow-up of the hepatitis C and as much as this patient is desirous of going ahead with treatment if possible.
Stanley Quanbeck, M.D./ss/5455/Dictated, but not reviewed.

203279        9/16/1964        OID

MICHAELSON, BARRY SCOTT

PRACTITIONERS NOTES

MINNCOR

Confidential – Private Government Data        DOC Ligons.Michaelson 0000826

## STATE OF MINNESOTA
### Department of Corrections

CTITIONER ORDER

NAME: Michaelson Barry                          OID  203279.

DATE:  10/15/10     TIME:    1210     ☐ AM ☒ PM

START: 1) Start  HAV & HBV  vaccines
    2) Obtain  TSH
    3) RTC in February 2011.                     10/15/10
                                              1310
                                              C Callow

                                                         DO NOT USE
                                                         IF NO NUMBER

PRACTITIONER ORDER

NAME: Michaelson, Barry                         OID  203279

DATE:  10/10/10     TIME:           ☐ AM ☐ PM

START:
    RTC f/u on US of abdomen - next wk.
10-10
1542
E Fuller pen

                                                           DO NOT USE
                                                         IF NO NUMBER

PRACTITIONER ORDER

NAME: Michaelson, Barry                         OID  203279.

DATE:  09/23/10     TIME:           ☐ AM ☐ PM

START:
    in nurse  US of  G.B.
    referral to K.P. Miriam - Hep C
9/24/10
@ 745
C Callow

                                                           DO NOT USE
                                                          IF NO NUMBER

**WRITE ORDER FROM BOTTOM TO TOP**

MINNCOR
industries

Confidential – Private Government Data

DOC Lioons Michaelson 0000890

STATE OF MINNESOTA
Department of Corrections

| ATE & TIME | | |
|---|---|---|
| 10-22-10 | WT 98 TEMP 1.7 BP 1/P8-R 18 | |
| 1630 | F/U US of abdomen | Λʌʌ ʃʌ Λ ʌʌʌ |

**Progress Note MCF-STW**          **MICHAELSON, Barry**          **OID#203279**          **10/22/2010**

S: The patient returns to clinic today for a follow-up on an ultrasound of the abdomen, which was ordered to assess for possible gallbladder stones. The report of the ultrasound shows that he does have gallstones without gallbladder wall thickening with the impression being cholelithiasis with possible cholecystitis, prominence of the spleen and possible fatty infiltration. The patient continues to complain of bloating and recurrent right upper quadrant pains. Given the ultrasound report that he has cholelithiasis with only possibility of cholecystitis I think at this time it would be prudent to refer him to gastroenterologist to evaluate whether he should proceed with a cholecystectomy.

A:      Cholelithiasis with possible cholecystitis because of a positive Murphy sign, possible fatty infiltration of the liver, prominence of the spleen, hepatitis C genotype I with a viral load of 206,000 International Units per milliliter.

P:  Offsite referral to gastroenterology for evaluation of the cholelithiasis with possible cholecystitis and continued symptoms.

Stanley Quanbeck, M.D./ss/8807/Dictated, but not reviewed.

8/10/11          Note dictated          1254          Ellerbusch CNP

**Progress Note MCF-STW   MICHAELSON, Barry**          **OID#203279**          **08/10/2011**

S:  The patient came to the Health Services. He evidently came from one of the shops and he had cut his left forearm approximately 3 inches above the wrist on the medial side. He evidently was lifting and caught his arm on an uncovered metal pipe causing a three-cornered tear in his skin. This will not stop bleeding. It has been bleeding quite a bit. The area was cleansed using Hibiclens and sterile water. The patient agreed to have sutures placed. Using sterile technique, the area was cleansed. Using 1% Xylocaine in a Tuberculin syringe, the area was injected. Using 4-0 Ethilon suture, four interrupted sutures were placed to close the laceration. The patient's tetanus diphtheria booster is current as of 2007. The patient was given Band-Aids to keep the area covered and that we would have him return in 10 days for suture removal. The patient did sign an approval to have the suturing done.

Judy Ellerbusch, CNP/isjn/1254/Dictated, but not reviewed

| 8-23-11 | 1405 | WT | TEMP | BP | P | R | 10d RTC - F/u suture |
|---|---|---|---|---|---|---|---|
| | | | | | | | removal. — (A Stevens CPN) |

"I'm rea cancel of appt. "I'm removed sutures d hisself, stating "My mom told me to d she's a doctor." I'm advised the wound needs to be seen for proper healing. Four pinpoint O/As noted along wound d which were scabbed. Ø s/sx inf. Conferred c NP. Ø need to be seen. —
— A Stevens CPN

203279          9/16/1964          OID

MICHAELSON, BARRY SCOTT          PRACTITIONERS NOTES

Confidential – Private Government Data          DOC Ligons.Michaelson 0000825