State in detail how you were damaged by the conduct alleged in your Second Amended Complaint and itemize the amount of damages sought for each claim.

PLAINTIFFS' ANSWER TO INTERROGATORY NUMBER 5:

**LIGONS'ANSWER**

1. Deterioration of internal organs, including circulatory system and liver.

2. Exacerbation of insulin dependent diabetes mellitus.

3. Joint pain, neuralgia, fatigue.

4. Ronaldo Ligons attaches and incorporates his May 10, 2016 affidavit to this answer.

5. Monetary damage? Let the jury decide that, in excess of $75,000.

**MICHAELSON'S ANSWER:**

H.C.V. Symptoms that I have experienced

1. Deterioration of internal organs, including circulatory system and liver.

Sjögrens Syndrome: Dry eyes all the time, and I have drops to put in eyes.

2.   Lichen Planus: Characterized by white lesions or clear hard bumps that itch for days that bleed. Note: Dr. Quiram has refused to document all of these symptoms related to H.C.V.

3.   Types of arthritis. Inflammation (arthralgia). Joint pain in my wrists, elbows, knees, shoulders, that don't allow me to participate in the activities that I like.

4.    Fatigue. Tired a lot, that precludes me from studying so I can have a meaningful career and life.

5.    Borderline diabetes score: 5.4 Hgb-A1C.

6.    I have also experienced: Porphyria-Cutanea tarda: Sun sensitive rash.

7.    Nail fungus on toes.

8.    Money damages: No amount of money can ever replace, restore the loss and pain that I have suffered at the inimical hands and sadistic nature of the D.O.C. Persōna-inter-alia.  Plaintiff leaves it to the jury, in excess of $75,000.

## INTERROGATORY NO. 6:

State in detail the medical conditions and/or symptoms you have experienced related to your diagnosis of Hepatitis C. Include the dates of the symptoms, the frequency of the symptoms, what you were doing when the symptoms occurred, the duration of the symptoms, and what you did in response to the symptoms.

PLAINTIFFS' ANSWER TO INTERROGATORY NUMBER 6:

LIGONS' ANSWER

Symptoms are progressive. I sought treatment with direct acting anti-viral drugs (DAAs) which are the only cure for HCV and its symptoms. See above.

**MICHAELSON'S ANSWER:**

Symptoms see above:

From late 2010 to Present 2016. Duration lasts weeks or days or months, depending upon the time of year. I sought treatment with direct acting anti-viral drugs (DAAs) which are the only cure for HCV and its symptoms.

**INTERROGATORY NO. 7:**

Identify all medical and mental health practitioners who you have seen for Hepatitis C and any medical condition(s) or symptom(s) identified in your response to Interrogatory No. 6. Include the name of the clinic, hospital or practice group, if any, that the practitioner was associated with when you saw the practitioner.

PLAINTIFFS' ANSWER TO INTERROGATORY NUMBER 7:

**LIGONS' ANSWER**

DOC Medical Staff at MCF Stillwater and MCF Faribault

1. Stanley Quanbeck

2. Darryl Quiram

3. David Paulson

**MICHAELSON'S ANSWER:**

D.O.C. Medical Staff (Contracted)

1. 2010 Stanley Quanbeck.

2. 2013 Mark Zimmerman.

3. Darryl Quiram was the Primary Source as symptoms progressed in 2015.

4. David Paulson has ordered bloodwork 2015. See Kites.

**INTERROGATORY NO. 8:**

Excluding conversations with legal counsel, identify all persons with whom you have discussed Hepatitis C, Hepatitis C treatments, and/or the medical condition(s) identified in your response to Interrogatory No. 6, whether the discussions took place in person or through correspondence, the dates of the discussions, and the contents of the discussions. Identify any documents that memorialize the discussions including, but not limited to, handwritten or typed notes, kites, letters, diaries, and logs.

PLAINTIFFS' ANSWER TO INTERROGATORY NUMBER 8:

LIGONS ANSWER:

Albert Ligons - Albert Ligons is my brother.  I speak with him on the phone periodically but do not take notes.

Brigita Knickenberg — Correspondent in Europe, no copies of letters sent.

MICHAELSON ANSWER: See Interrogatory #7.

Discovery continues.

**INTERROGATORY NO. 9:**

Identify all inmates known to you at this time who you believe are members of any of the three putative classes you wish to represent in this action. For each inmate, state the inmate's full name, offender identification

number ("OID"), the facility where the inmate is currently housed, and the putative class or classes of which the inmate should be a member.

PLAINTIFFS' ANSWER TO INTERROGATORY NUMBER 9:

LIGONS' ANSWER:

My understanding is that 15 to 20% of the DOC population may be HCV positive and I know only a few of them at places I have been incarcerated. Some people prefer not to let others know they are infected.  These are some I can mention:

Barry Michaelson # 203279

Freddie Prewitt # 137814

MICHAELSON'S ANSWER:

My understanding is that 15 to 20% of the DOC population may be HCV positive and I know only a few of at places I have been incarcerated.  Some people prefer not to let others know they are infected.  These are some I can mention:

1. Ronaldo Ligons # 171203

2. Barry Michaelson # 203279

3. Michael DeCorsey # 226627

4. Dave Pidgeon OID unknown

5. Freddie Prewitt # 137814

6. Peter Ryan # 102340

7.     Brent Anderson # 101341

8.     JayDee Kaufman # 132278

9.     Keneth Robinson # OID unknown

10.    Willey Nelson # OID unknown

11.    Mr. Bradley Purdy # 128143

INTERROGATORY NO. 10:

State the factual basis for your assertions in Paragraphs 7 and 11 of the Second Amended Complaint that the DOC Defendants have denied Hepatitis C treatments to Plaintiffs based on policies designed to ration medication to a limited number of inmates for administrative convenience or money and without regard to Plaintiffs' individual medical needs.

PLAINTIFFS' ANSWER TO INTERROGATORY NUMBER 10:

JOINT ANSWER:

Dr. Paulson admitted previous barriers to treatment such as chemical dependency treatment requirements served no medical purpose and the current limitation to fibrosis levels three (3) and four (4) do not have a medical basis either.  Inmates with fibrosis levels of 0 to 2 are far more numerous and just as infectious to other inmates as the higher fibrosis levels. The current HCV Guidelines Panel standard-of-care is to treat all patients at all fibrosis levels to stop the progress of the degradation of the internal organs of the individual patient, and to prevent infection of others.   The only

justification for treating a small number of inmates, rather than all HCV infected inmates is cost not medicine.

INTERROGATORY NO. 11:

Identify in detail, and state the factual basis for, the alleged medical standard of care applicable to the treatment of Hepatitis C as of March 2016.

PLAINTIFFS' ANSWER TO INTERROGATORY NUMBER 11:

JOINT RESPONSE:

According to the Federal Bureau of Prisons, the VA, the CDC and all other government agencies, the source for the most up-to-date information for HCV practitioners regarding the standard-of-care for the treatment of HCV is the website created in January 2014 by the HCV Guidance Panel, shortly after the approval of the first 12-week cure for HCV by the FDA:

> "A new era in the treatment of HCV infection began in 2013 and 2014, with the approval of new direct-acting antiviral (DAA) oral medications that act directly against HCV without the use of interferon. These newer regimes are very effective in eliminating HCV infection, achieving cure rates of greater than 90% in many patient populations....
>
> The preferred treatment regimens have changed as each new DAA has been approved--resulting in rapidly changing clinical guidelines and treatment recommendations. In the midst of this evolving treatment landscape, the most recently published guidance on HCV treatment (*i.e.* *HCV Guidance Panel Guidelines* June 29, 2015) stresses the importance of referring regularly to the AASLD/IDSA/ISA-USA website for new updates (*http://www.hcvguidelines.org*)
>
> Federal Bureau of Prisons
> July 2015 *Clinical Practice Guidelines* [1]

---

[1] http://www.bop.gov/resources/pdfs/hepatitis_c.pdf.

Before the "new era" in HCV treatment began in late 2013 (to which the foregoing Bureau of Prisons *July 2015 Clinical Practice Guidelines* refer) HCV treatment consisted of highly individualized drug "cocktails" combined with weekly toxic *Interferon* injections that lasted nearly a year.[2] *Interferon* side-effects included debilitating flu-like symptoms; "cure"-rates were under 50%; and, lacked a single "standard-of-care" protocol because treatment varied significantly. See, *Roe v. Elyea*, 631 F.3d 843 (7th Cir. 2011).

### October 2013--FDA "Breakthrough" Cure for HCV

The bleak prognosis for a single "standard-of-care" to *cure*, HCV-infected patients changed completely in October 2013 when the Food and Drug Administration (FDA) announced new "breakthrough" DAA drugs (originally Sovaldi and Olysio) that *cured*  HCV in only 12-weeks with daily oral medication, at a 95% rate, still in combination with weekly toxic *Interferon* injections..

By late 2013, the three relevant medical societies, the American Association for the Study of Liver Disease (AALSD); the Infectious Disease Society of America (IDSA); and, the International Anti-viral Society--USA (IAS--USA) convened thirty experts in gastroenterology; hepatology; and, infectious diseases *in an* "HCV Guidance Panel" to advise *all* HCV practitioners, for the first time in history.

---

[2] http://www.hcvguidelines.org/January 2014.

The "AASLD/IDSA/IAS-USA/ HCV Guidance Panel" was convened to advise *all* HCV treating medical practitioners in the up-to-date HCV standard-of-care for the new FDA "breakthrough" medications[3] by creating the website (to which the previously cited Federal BOP Clinical Practice Guidelines refer), to provide:

> "...up to date recommendations for HCV practitioners on optimal screening, management and treatment for adults with HCV infection in the United States, using a rigorous review process to evaluate the best available evidence....This [website] was conceived as a living document that would reside online and undergo real-time revisions as the field evolved."[4]

On February 24, 2016, the HCV Guidance Panel issued its most recent advisory making clear that all HCV-positive patients, irrespective of fibrosis level, were to be treated with the FDA-approved DAA drugs, which now include Zapetira, as well as Harvoni and Viekira-Pak.

INTERROGATORY NO. 12:

State the factual basis for your assertion that only treatment with non-interferon direct-acting antiviral agents ("DAA"), Harvoni and Viekira-Pak, meets the applicable medical standard of care for the treatment of Hepatitis C, including but not limited to the treatment of all DOC inmates infected

---

[3] The origins of the HCV Guidance Panel are explained in the article describing its origins and purpose on site http://www.hcvguidelines.org published on June 29, 2015, a copy of the article is appended. (See Exhibit #2. Published online: Hepatology, Vol.62, Issue 3, Nov. 3, 2015 (accepted for publication June 3, 2015).

[4] http://www.hcvguidelines.org/June/2015)

with Hepatitis C, as alleged at pages 4-5 of the Second Amended Complaint.

PLAINTIFFS' ANSWER TO INTERROGATORY NUMBER 12:

JOINT ANSWER: See Affidavits of Dr. Bennett Cecil and Dr. Martin Gordon filed in this matter for detailed responses to this question. Interferon is a poisonous drug with serious negative side-effects that is no longer approved for the treatment of HCV, after October 2014 when non-Interferon DAAs were FDA approved, making Interferon obsolete.

INTERROGATORY NO. 13

State the factual basis for your assertion in Paragraph 9 of the Second Amended Complaint that Plaintiff Michaelson first tested positive for Hepatitis C only after being double-bunked with a cellmate who had Hepatitis C or after being exposed to other sources of Hepatitis C in DOC facilities.

PLAINTIFFS' ANSWER TO INTERROGATORY NUMBER 13:

MICHAELSON ANSWER: Michaelson submitted to a blood test in 2009 at MCF St. Cloud. He was informed in writing that he was HCV negative in 2009.

Plaintiff Michaelson was exposed to the blood spilt by HCV positive cellmate James DeCoursey, OID 226627, in the cell in July 2010, and

Michaelson was compelled by the corrections officer to clean up the blood in t-shirt, shorts, and open-toed shower shoes while his feet bore open cuts, and while the correction officer gave Plaintiff only a green-liquid spray bottle and paper towels to clean up the blood.

Details of this incident were explained and documented at the time of the occurrence in 2010.  Following the exposure, Plaintiff tested positive for HCV; an HCV RNA blood test in September 2010 revealed Plaintiff was HCV positive; this was the first HCV RNA test that revealed Plaintiff Michaelson to be HCV positive.

Kites and reports are available for inspection along with other documents as described in the Request for Production of Documents, below.

INTERROGATORY NO.14:

State the factual basis for your assertion in Paragraphs 165 and 176 of the Second Amended Complaint that you have a disability and that your major life activities have been substantially impaired by that disability.

PLAINTIFF  LIGONS'  AND  MICHAELSON'S  ANSWERS  to INTERROGATORY #14:

1. See Second Amended Complaint ¶¶165-184, reproduced and set forth below:

165.    First, Plaintiffs Ligons, Michaelson, and all persons similarly

situated, are individuals with a disability, specifically, HCV infection, a physical impairment that substantially affects the major life activities of digestive systems, circulatory systems, and life itself.

166.   Second, defendants Minnesota Department of Corrections and Commissioner Tom Roy, through the actions of their agents, employees, or representatives, and the kites and grievances of Plaintiffs, were aware of plaintiffs Ligons' and Michaelson's, and all other persons' similarly situated to them, respective disabilities.

167.   Third, defendant Minnesota Department of Corrections is a recipient of federal monies for its incarceration programs.

168.   Fourth, defendants Minnesota Department of Corrections and Commissioner Tom Roy had a responsibility to assure proper care for Plaintiffs Ligons, Michaelson, and all other disabled persons similarly situated.

169.   Fifth, defendants Minnesota Department of Corrections and Commissioner Tom Roy could have reasonably accommodated plaintiffs' disabilities, so as not to exclude them from participation in, or deny them the benefits of the federally funded services, programs, or activities of defendant Minnesota Department of Corrections, by reasonably accommodating plaintiffs' disabilities, by treatment with Harvoni, Viekira-Pak, or other direct-acting, antiviral, lifesaving, curative

medicines for their respective hepatitis C virus infections, in accordance with the national, community standard of care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA for plaintiffs' respective hepatitis C infections.

170.   Sixth, defendants Minnesota Department of Corrections and Commissioner Tom Roy, through the actions of their agents, employees, or representatives, had actual knowledge of a substantial risk that Plaintiff Michaelson, and all persons similarly infected with the hepatitis C virus, would suffer progression of the disability of hepatitis C infection that foreseeably would lead to aggravated or exacerbated serious medical harms including liver malfunction, liver fibrosis, liver cirrhosis, liver cancer, expensive liver transplant, or even death by liver malfunction.

171.   Seventh, defendants Minnesota Department of Corrections and Commissioner Tom Roy, through their agents, employees, or representatives, failed to accommodate reasonably plaintiffs' known disabilities, notwithstanding that compliance with the national, community standard of professional medical care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA is, by medicine and law, not an undue hardship.

172.   Eighth, defendants Minnesota Department of Corrections and

Commissioner Tom Roy, through their agents, employees, or representatives, disregarded the substantial risk of progression of the hepatitis C infection of Plaintiffs Ligons and Michaelson, and all persons similarly infected with the hepatitis C virus, by

- failing to provide medical care; or

- failing to direct that medical care be provided; or

- failing to enact policies to assure that LIGONS, MICHAELSON, and each and every respective class member would obtain the medical care needed, specifically, treatment of them respectively, with Harvoni, Viekira-Pak, or other direct-acting, antiviral, lifesaving, curative medicines for their respective hepatitis C virus infections, in accordance with the national, community standard of care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA; or

- failing to allow each and every respective class member to obtain the medical care needed, specifically, treatment of them respectively, with Harvoni, Viekira-Pak, or other direct-acting, antiviral, lifesaving, curative medicines for their respective hepatitis C virus infections, in accordance with the national, community standard of care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA;

173.   Ninth, Plaintiffs Ligons, Michaelson, and all other similarly

situated qualified disabled persons afflicted with the hepatitis C virus, as the direct result of the failures and policy decisions of defendants Minnesota Department of Corrections and Commissioner Tom Roy, suffered injuries that included progression of their respective infections, increased symptoms, pain, suffering, fear, diminished enjoyment of life, and decreased life expectancy.

174.  Tenth, defendants Minnesota Department of Corrections and Commissioner Tom Roy, through their agents, employees, or representatives, acted with deliberate, reckless, knowing, or intentional disregard for the rights, health, and safety of the plaintiffs.

## CLAIM VIII: TITLE II OF THE ADAA, 42 U.S.C. §§12131-12132; PLAINTIFFS LIGONS, MICHAELSON, AND ALL PERSONS SIMILARLY SITUATED, AGAINST DEFENDANTS MINNESOTA DEPARTMENT OF CORRECTIONS AND COMM'R TOM ROY IN HIS OFFICIAL CAPACITY

175.  Plaintiffs reallege and reassert every claim and incorporated exhibit which constitute averments of imminent danger of serious physical, medical injury.

176.  First, Plaintiffs Ligons, Michaelson, and all persons similarly situated, are individuals with a disability, specifically, HCV infection, a physical impairment that substantially affects the major life activities of digestive systems, circulatory systems, and life itself.

177.  Second, Defendants Minnesota Department of Corrections and

Commissioner Tom Roy, through the actions of their agents, employees, or representatives, and the kites and grievances of Plaintiffs, were aware of plaintiffs Ligons' and Michaelson's, and all other persons' similarly situated to them, respective disabilities.

178.   Third, Defendants Minnesota Department of Corrections and Commissioner Tom Roy had a responsibility to assure proper care for Plaintiffs Ligons, Michaelson, and all other disabled persons similarly situated.

179.   Fourth, Defendants Minnesota Department of Corrections and Commissioner Tom Roy could have reasonably accommodated Plaintiffs' disabilities, so as not to exclude them from participation in, or deny them the benefits of the federally funded services, programs, or activities of defendant Minnesota Department of Corrections, by reasonably accommodating plaintiffs' disabilities, by treatment with Harvoni, Viekira-Pak, or other direct-acting, antiviral, lifesaving, curative medicines for their respective hepatitis C virus infections, in accordance with the national, community standard of professional medical care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA for Plaintiffs' respective hepatitis C infections.

180.   Fifth, defendants Minnesota Department of Corrections and

Commissioner Tom Roy, through the actions of their agents, employees, or representatives, had actual knowledge of a substantial risk that Plaintiffs Ligons and Michaelson, and all persons similarly infected with the hepatitis C virus, would suffer progression of the disability of hepatitis C infection that foreseeably would lead to aggravated or exacerbated serious medical harms including liver malfunction, liver fibrosis, liver cirrhosis, liver cancer, expensive liver transplant, or even death by liver malfunction.

181.    Sixth, defendants Minnesota Department of Corrections and Commissioner Tom Roy, through their agents, employees, or representatives, failed to accommodate reasonably plaintiffs' known disabilities, notwithstanding that compliance with the national, community standard of care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA is, by medicine and law, not an undue hardship, nor does it constitute an unreasonable modification of the Minnesota Department of Corrections program.

182.    Seventh, defendants Minnesota Department of Corrections and Commissioner Tom Roy, through their agents, employees, or representatives, disregarded the substantial risk of progression of the hepatitis C infection of Plaintiffs Ligons an Michaelson, and all persons

similarly infected with the hepatitis C virus, by

- failing to provide medical care; or

- failing to direct that medical care be provided; or

- failing to enact policies to assure that LIGONS, MICHAELSON, and each and every respective class member would obtain the medical care needed, specifically, treatment of them respectively, with Harvoni, Viekira-Pak, or other direct-acting, antiviral, lifesaving, curative medicines for their respective hepatitis C virus infections, in accordance with the national, community standard of care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA; or

- failing to allow each and every respective class member to obtain the medical care needed, specifically, treatment of them respectively, with Harvoni, Viekira-Pak, or other direct-acting, antiviral, lifesaving, curative medicines for their respective hepatitis C virus infections, in accordance with the national, community standard of care for hepatitis C established by expert, specialist gastroenterologists and hepatologists of the AASLD/IDSA;

183. Eighth, Plaintiffs Ligons, Michaelson, and all other similarly situated qualified disabled persons afflicted with the hepatitis C virus,

as the direct result of the failures and policy decisions of defendants Minnesota Department of Corrections and Commissioner Tom Roy, suffered injuries that included progression of their respective infections, increased symptoms, pain, suffering, fear, diminished enjoyment of life, and decreased life expectancy.

184.    Ninth, defendants Minnesota Department of Corrections and Commissioner Tom Roy, through their agents, employees, or representatives, acted with deliberate, reckless, knowing, or intentional disregard and indifference for the federally rights, health, and safety of the plaintiffs.

**INTERROGATORY NO. 15:**

Identify any benefits of a program or activity that were denied to you based on your disability and state the factual basis for such denial(s).

PLAINTIFFS' ANSWER TO INTERROGATORY NUMBER 15:

MICHAELSON'S RESPONSE:

I was denied the Standard of Care, that is, the international Standard of Medical Care that all Physicians have, shall, must follow and are not a matter of individual opinion or individual Medical Judgment and all doctors that fail this standard are being indifferent to those who suffer from H.C.V.

I was denied Medical treatment based on financial incentives, and to give any medical to only those who are in the near stage of comorbidity, which

is discrimination and limits my ability to function in a program or activity. *Sutton v. United Airlines* S. Ct. 99, Murphy v. United Parcel Service 119 S. Ct. 99. Which in turn obviates my ability to exercise and to keep my weight down to a normal and body mass size. Based on such denial, in-short I'm handicapped.

Based upon Case Law and Title 42 U.S.C. 12131 of the A.D.A.: to be clear, I was denied a Health Program of the State of MN and the benefits of the Standard of Care (viz) (Harvoni-Viekira Pak).

LIGONS' ANSWER:

1.Deterioration of internal organs, including circulatory system and liver.

2. Exacerbation of insulin dependent diabetes mellitus.

3. Joint pain, neuralgia, fatigue.

4. Joint pain, neuralgia, and fatigue compromise Ligons' ability to concentrate and to work in prison industries.

5. Exacerbation of diabetes compromise Ligons' ability to work, eat, and concentrate.

6. Plaintiff Ronaldo Ligons attaches and incorporates his May 10, 2016 affidavit to these answers.

INTERROGATORY NO.16:

Identify all people and documents consulted in responding to these interrogatories.

## PLAINTIFF'S ANSWER TO INTERROGATORY NUMBER 16:

Plaintiffs object to this interrogatory as vague, overbroad, invasive of the attorney-client privilege, and not reasonably calculated to elicit admissible evidence at trial.

- Plaintiffs refer Defendants to previous answers to interrogatories and documents available for inspection.

- Plaintiffs refer Defendants to the depositions of Dr. Paulson and Ms. Nanette Larson.

- Plaintiffs refer Defendants to www.hcvguidelines.org.

Signed and declared in accordance with 28 U.S.C. §1746:

Date: 8-26-16

Signed and declared in accordance with 28 U.S.C. §1746.

Date: 8-26-16

Reviewed and signed.


Date: 18 May 2016          Respectfully:

                           PETER J. NICKITAS LAW OFFICE, LLC

                           /s/ *Peter J. Nickitas* (electronically signed)

                           _____

                           Peter J. Nickitas, MN Att'y #212313
                           Attorney for Plaintiffs
                           431 S. 7th St., Suite 2446
                           Minneapolis, MN 55415
                           651.238.3445/FAX 1.888.389.7890
                           peterjnickitaslawllc@gmail.com

**TO ALL STATE AND FEDERAL COURTS**
**MINNESOTA DEPARTMENT OF CORRECTIONS**
**WARDEN EDDIE MILES**
**MCF-FARIBAULT**
**ALL MEDICAL AND DENTAL STAFF**
**AND TO WHOM IT MAY CONCERN**

RONALDO S. LIGONS                        **AFFIDAVIT OF**
PLAINTIFF/PETITIONER             **RONALDO S. LIGONS**
VS.                                      MAY 10, 2016
MN DEPT. OF CORRECTIONS,
WARDEN EDDIE MILES,
MCF-FARIBAULT MEDICAL STAFF,
MCF-FARIBAULT DENTAL STAFF,
ET AL.
DEFENDANT/RESPONDENTS.

RONALDO S. LIGONS, BEING DULY SWORN ON OATH, DEPOSES AND SAYS:

1. THAT AT ALL TIMES RELEVANT TO THIS AFFIDAVIT AFFIANT HAS BEEN IN THE CUSTODY OF THE MINNESOTA DEPARTMENT OF CORRECTIONS.
2. THAT AFFIANT HAS BEEN INCARCERATED AT MCF-FARIBAULT, SINCE FEBUARY, 2015.
3. THAT AFFIANT HAS SEVERAL SERIOUS MEDICAL CONDITIONS, SOME OF THEM LIFE-THREATENING.
4. THAT AFFIANT HAS DISCOVERED THAT IF AN ONGOING RECORD OF MEDICAL CONDITIONS, AND PAINS ARE NOT DOCUMENTED, THAT MN DOC MEDICAL STAFF BEGIN TO ENTER INTO AFFIANTS RECORD WORDING THAT THESE ISSUES ARE NO LONGER OF CONCERN.
5. THAT MN DOC MEDICAL STAFF THEN BEGIN TO DENY AFFIANTS CONDITIONS AND CONCERNS.
6. THAT AFFIANTS LIMITED TIME WITH MEDICAL STAFF LIMITS DISCUSSIONS OF VARIOUS MEDICAL ISSUES, AS DOES APPARENTLY, "POLICY " LIMIT ISSUES OF DISCUSSION.
7. THAT AFFIANT IS NOT ABLE TO AFFORD REPEATED MEDICAL, OR DENTAL CO-PAYS.
8. THAT AFFIANT IS DISABLED FROM THE FEDERAL GOVERNMENT, R.S.D.I. 1998.

9.  THAT AFFIANT IS UNABLE TO WORK IN THE PRISON.

10. THAT AFFIANT IS HEPITITIS-C POSITIVE SINCE DISCOVERY IN 1998.

11. THAT AFFIANT HAS NOT BEEN CURED OF THIS LIFE-THREATENING DISEASE DESPITE REPEATED REQUESTS, AND CURRENT LITIGATION.

12. THAT AFFIANT DISCOVERED THAT HE HAD BEEN GIVEN TWO DIFFERENT USED NEEDLES WITH LIQUID IN THEM, IN APPROXIMATELY 1994 TO 1996.

13. THAT THE RECORD OF THESE DIRTY NEEDLES IS IN THE FILES OF ATTORNEY JOHN STOCKMAN, JENSEN & STOCKMAN LAW FIRM. (RET.?)

14. THAT AFFIANT SUFFERS FROM THE EFFECTS OF HEP-C.

15. THAT AFFIANT SUFFERS SEVERE FATIGUE AND IS UNABLE TO FUNCTION IN "WORK, AND WORK-LIKE SETTINGS." AFFIANT CANNOT WORK IN THE PRISON. (SEE ALSO, SAME AS, R.S.D.I.)

16. THAT AFFIANT SUFFERS FROM BLOATING, CRAMPS, JOINT, AND MUSCLE PAINS.

17. *THAT THE ABOVE AFFECTS ARE IN AFFIANTS JAW MUSCLES, BACK, SIDES, ARMS, HANDS, LEGS, AND FEET.*

18. AFFIANT SUFFERS FROM SCIATICA ON THE RIGHT SIDE OF HIS SPINE.

19. THAT AFFIANT HAS SCOLIOSIS OF THE SPINE.

20. THAT AFFIANT IS AN INSULIN DEPENDENT DIABETIC SINCE 1994.

21. THAT AFFIANT HAS BEEN SUBJECTED TO POOR QUALITY, HIGH CARBOHYDRATE FOODS FOR 24 YEARS.

22. THAT AFFIANT SUFFERS FROM THE COMMON EFFECTS OF DIABETES, INCLUDING FATIGUE.

23. THAT AFFIANT HAS SUFFERED FROM THE EFFECTS OF " BELL'S PALSEY" SINCE APPROXIMATELY 2000.

24. THAT AFFIANT HAS NO TEARS, (DRY EYES) OR SALIVA, (DRY MOUTH) ON THE LEFT SIDE OF HIS FACE.

25. THAT AFFIANT SUFFERS FROM CHRONIC ALLERGIC REACTIONS OF ITCHING OF EYES, AND ITCHING AND CRAWLING OF THE SKIN, FOR WHICH MEDICATIONS IS TAKEN DAILY.

26. THAT AFFIANT SUFFERS FROM RASHES, ITCHING FROM HEAD TO LEGS.

27. THAT AFFIANT SUFFERS FROM PAINFUL UNTREATED HAND AND NAIL FUNGUS WITH NAIL LOSSES.

28. THAT AFFIANT SUFFERS FROM CONSTANT "JOCK-ITCH," FROM YEAST INFECTIONS.

29. THAT AFFIANT SUFFERS REGULARLY FROM *VERY SORE THROAT*, FLU-LIKE SYMPTOMS NIGHT AND DAY, WITH RUNNY NOSE, FROM DISEASE AND MEDICATIONS.

2.

30. THAT AFFIANT SUFFERS FROM BALANCE AND EQUILIBRIUM ISSUES WHEN WALKING AND MOVING ABOUT.

31. THAT AFFIANT SUFFERS FROM DEPTH-PERCEPTION, AND DIFFICULTY READING AND WRITING, THE RESULT OF REFUSAL FOR MN DOC TO REMOVE CATARACT IN AFFIANTS LEFT EYE.

32. THAT AFFIANT HAS ONGOING DENTAL ISSUES, AND TOOTH LOSS, PAIN, SUFFERING, AND INABILITY TO CHEW DUE TO POOR QUALITY DENTAL CARE. NOW AT MCF-FARIBAULT.

33. THAT MEDICAL AND DENTAL STAFF ENTER INTO AFFIANTS FILES CLAIMS THAT ATTEMPT TO MINIMIZE AFFIANTS SERIOUS CONCERNS, AND TO SHIFT THE BLAME.

34. THAT MN-DOC MEDICAL STAFF, HAVE PLACE CLEARLY FALSE ENTRIES INTO AFFIANTS MEDICAL FILES FILES THAT ARE CONTRADICTED BY EXISTING ENTRIES INTO TO FILES, INCLUDING CURRENT PRESCRIPTIONS FOR CONDITIONS DENIED TO EXIST.

35. THAT AFFIANT HAS ATTEMPTED TO PLACE INTO HIS FILES CORRECTIONS AND ADDITIONAL INFORMATION.

36. THAT AFFIANT HAS OBSERVED A DISTINCT ADVERSARIAL POSTURE ON THE PART OF MN DOC MEDICAL POLICIES, AND FROM SOME MEDICAL STAFF.


FURTHER AFFIANT SAYS NOTHING.

I SWEAR UNDER PENALTY OF PURGERY THAT ALL OF THE ABOVE ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE/INFORMATION.

*Ronaldo S. Ligons*

RONALDO S. LIGONS
1101 LINDEN LN.
FARIBAULT, MN 55021


SUBSCRIBED AND SWORN TO BEFORE ME THIS_____DAY OF MAY, 2016


_____

NOTARY PUBLIC


3.



**Minnesota Department of Corrections**

**Minnesota Correctional Facility - Faribault**

**Grievance Report - 5283**

| | | | |
|---|---|---|---|
| OID | 171203 | **Living Assignment** | MCF-FRB K2 C Tier 1 109 02 Lower Bunk |
| Name | Ligons, Ronaldo Sylvester | **Case Worker** | Haffely, Jeffrey J |

---

**Appeal:**

MCF - FRB has not resolved the issue of altering original 'meals to living unit.' The alteration of failing to place appellant in MCF - Linden where meals are delivered has resulted in a year of conflicts, harassment, threats to personal safety from prisoners and staff. Affidavits have documented incidents only to be dined by MCF - FRB administration, with no basis to deny the singling out of one individual as 'special' causing conflicts from the serving lines to the living unit. A carrying case solves nothing, but it was never provided for a full year. The result has been discriminatory and is actionable under ADA and other laws governing treatment of the disabled and is being pursued for resolution. Appellant has not eaten meals since 1/28/16 for safety reasons.

**Appeal File Date:**          04/20/2016

**Appeal Response:**

Since your arrival at MCF-FRB you were notified of the ADA accommodations put in place to facilitate your needs.   On 03-07-16, you met with Dr. E. Shaman and were notified at that time that the fact that you are taking a regular diet for the most part, does not necessarily indicate that your stricture is causing a problem. Also, the Dr. informed you that based on your weight fluctuation over the last three years it does not seem to indicate that your stricture is interfering with mastication, deglution or absorption and that would eliminate you from being transferred to Linden on a medical basis.

In regard to threats to your personal safety, the only documented incident in which you informed staff of threats from offenders was investigated by CPD Doeden. In that investigation you informed CPD Doeden that you had been threatened by an unknown offender, that you were unable to identify that offender because it was dark and also noted that offender did not reside in the unit in which you were housed. Based on that information, there was no way to substantiate your claims of harassment or threatening behavior. Additionally, there have been no further reports of harassment or threats of physical harm reported to staff. If there are incidents that create concern for your personal safety or incidents of harassment, please notify staff immediately. It is our expectation that offenders be allowed to complete their sentences in a safe and secure environment that promotes change through positive behavior.

Initially, your request for a carrying case was denied due to a lack of options. Since that time additional research was done and carrying case is now available for your use. On 1-28-16, it was reported by Corrections Chief Cook Thompson that you were observed asking for items that you were not allowed or authorized to have. Further, Cook Thompson also noted that this has happened in the past as well. The safety reasons you mentioned were investigated and due to a lack of information were unable to be substantiated.

| | |
|---|---|
| **Appeal Response Type:** | Dismiss |
| **Appeal Response Person:** | Reiser, Bruce |
| **Appeal Response Date:** | 05/03/2016 |

*[signature: Bruce Reiser]*          5-4-16

Signature          Date

Grievance Appeal

5283

Date: 4-13-16

Offender: RONALDO LIGONS OID: 171203 Living Unit: K2C 109-Z

Instruction to offender: The grievance must be attached to this form in order to process. You may add one 8 1/2 x 11 inch sheet of paper to expand upon your grievance appeal information. Please include one copy of all exhibits for this grievance appeal.

Reason for Appeal: MCF-FRB HAS NOT RESOLVED THE ISSUE OF ALTERING APPELLANTS ORIGINAL "MEALS TO LIVING UNIT". THE ALTERATION OF FAILING TO PLACE APPELLANT IN MCF-LINDEN WHERE MEALS ARE DELIVERED HAS RESULTED IN A YEAR OF CONFLICTS, HARASSMENT, THREATS TO PERSONAL SAFETY FROM PRISONERS, AND STAFF. AFFIDAVITS HAVE DOCUMENTED INCIDENTS ONLY TO BE DENIED BY MCF-FRB ADMINISTRATION, WITH NO BASIS TO DENY THE SINGLING OUT OF ONE INDIVIDUAL AS "SPECIAL" CAUSING CONFLICTS FROM THE SERVING LINES TO THE LIVING UNIT. A CARRYING CASE SOLVES NOTHING, BUT IT WAS NEVER PROVIDED FOR A FULL YEAR. THE RESULT HAS BEEN DISCRIMINATORY AND IS ACTIONABLE UNDER (ADA) AND OTHER LAWS GOVERNING TREATMENT OF THE DIS- ABLED AND IS BEING PURSUED FOR RESOLUTION. APPELLANT HAS NOT EATEN MEALS SINCE 1-28-16, FOR SAFETY REASONS. RETURN ALL DOCUMENTS

Dist:

Original – Central Office Grievance Appeal Coordinator

Copies – Facility Grievance Coordinator
Offender

Date Entered _____

Grievance Number _____

303.100C    9/02



**Minnesota Department of Corrections**
**Minnesota Correctional Facility - Faribault**
Grievance Report - 5283

OID   171203

Name  Ligons, Ronaldo Sylvester

Living Assignment   MCF-FRB K2 C Tier 1 109 02 Lower Bunk

Case Worker   Haffely, Jeffrey J

| | |
|---|---|
| Grievance Facility: | Faribault |
| Group: | Dietary |
| Type: | Environmental Conditions - Kitchen or Dining Hall |

**Grievance:**

Grievant is entitled to meals, DOC is responsible for providing meals according to original ADA reasonable accommodation, meals to unit, meals on wheels in the Linden building, where meals are delivered. The unrequested alteration of meal delivery by requiring grievant to carry trays to and fro without any carrying case has proved dangerous due to threats from prison kitchen worker, harassment from prisoners throughout the campus and harassment by DOC staff and has been documented by sworn affidavits. Grievant is singled out as special and this creates hostilities, threats, and is a violation of ADA as a discriminatory practice. It is actionable under federal laws.

**Institution File Date:** 03/25/2016

**Institution Response:**

Food Services Director was able to find a food carrier for you to use. This resolves your issue and provides you with what you requested. Your claims that staff have threatened or harassed you is unfounded. You are not being singled out or discriminated against.

**Institution Response Type:** Dismiss with Modifications

**Institution Response Person:** Miles, Eddie

**Institution Response Date:** 04/07/2016

Signature _____

Date   4/8/16



RECEIVED
APR 18 2016
POLICY & LEGAL SERVICES



**Minnesota Department of Corrections**
**Minnesota Correctional Facility - Faribault**
Grievance Report - 5283

OID   171203                                    Living Assignment   MCF-FRB K4 D Tier 1 113 02 Lower Bunk
Name  Ligons, Ronaldo Sylvester                 Case Worker         Haffely, Jeffrey J

| | |
|---|---|
| **Grievance Facility:** | Faribault |
| **Group:** | Dietary |
| **Type:** | Environmental Conditions - Kitchen or Dining Hall |

**Grievance:**

Grievant is entitled to meals, DOC is responsible for providing meals according to original ADA reasonable accommodation, meals to unit, meals on wheels in the Linden building, where meals are delivered. The unrequested alteration of meal delivery by requiring grievant to carry trays to and fro without any carrying case has proved dangerous due to threats from prison kitchen worker, harassment from prisoners throughout the campus and harassment by DOC staff and has been documented by sworn affidavits. Grievant is singled out as special and this creates hostilities, threats, and is a violation of ADA as a discriminatory practice. It is actionable under federal laws.

**Institution File Date:**   03/25/2016

**Institution Response:**
              YOU WILL RECEIVE A WRITTEN
              RESPONSE WITHIN 20 WORKING DAYS
**Institution Response Type:**

**Institution Response Person:**

**Institution Response Date:**


*J. Moravec, Grievance Coord.*                          3-25-16
Signature                                                Date



**Minnesota Department of Corrections**
**Offender Grievance**

Date: 3-~~24~~-16

~~Offender~~ R. LIGONS   OID: 171203   Living Unit/Cell/Room#: K4D113-2

Casemanager: _____

Instruction to offender – You may add one 8½ X 11 inch sheet of paper to expand your grievance information.  You must attach kites, including staff response, showing your attempt to resolve the issue informally and one copy of all supporting exhibits for this grievance.  Your grievance will be returned if you do not attach kites.

Grievance:

GRIEVANT IS ENTITLED TO MEALS, DOC IS RESPONSIBLE FOR PROVIDING MEALS ACCORDING TO ORIGINAL "(ADA) REASONABLE ACCOMMODATION, MEALS TO UNIT, MEALS ON WHEELS)" IN THE LINDEN BULDG, WHERE MEALS ARE DELIVERED. THE UNREQUESTED ALTERATION OF MEAL DELIVERY BY REQUIRING GRIEVANT TO CARRY TRAYS TO AND FRO WITHOUT ANY CARRYING CASE HAS PROVED DANGEROUS DUE TO THREATS FROM PRISON KITCHEN WORKER, HARASSMENT FROM PRISONERS THROUGHOUT THE "CAMPUS," AND HARASSMENT BY DOC STAFF AND HAS BEEN DOCUMENTED BY SWORN AFFIDAVITS. GRIEVANT IS SINGLED OUT AS "SPECIAL" AND THIS CREATES HOSTILITIES, THREATS AND IS A VIOLATION OF (ADA) AS A DISCRIMINATORY PRACTICE. IT IS ACTIONABLE UNDER FEDERAL LAWS.

Dist.   Original - Facility Grievance Coordinator
        Copy - Offender

Date entered   3-25-16
Grievance number   5283

303.100B   (6/2009)



**MCF-Faribault**

# OFFICE
# MEMORANDUM

**DATE:**     February 19, 2016

**TO:**       Mr. R, Ligons 171203 K2A 122-2

**FROM:**     AWO J. Titus

**SUBJECT:**  Kite

Warden Miles responded to a kite you wrote dated 2/3/16 regarding similar issues. This response was sent on 2/18/16. Health Services Administrator RN Ohnstad also responded to you on 2/18/16 regarding a kite you submitted to her dated 2/13/16. I will not re-address these issues, as you have already been responded to on your request to reside in Linden Unit. This request is denied per RN Ohnstad, as you do not meet criteria.

Your medical concerns regarding "carpel tunnel syndrome" will need to be addressed through the medical provider. HSA Ohnstad notified you on 2/18/16 that an appointment will be scheduled during the week of February 22nd to discuss you medical concerns.

With regards to your eligibility to work, your ADA accommodations can be met based on your specific ADA plan, and do not interfere with your ability to work while at MCF-FRB. You are required to follow the work assignment expectations of your job as a K2 janitor in accordance with the position requirements, or you will be held accountable in accordance with DOC Division Directive 204.010 Offender Assignment and Compensation Plan.

*social*
*security*
*(R.S.D.I.)*

**Minnesota Department of Corrections**

## OFFENDER KITE FORM

Offenders are encouraged to communicate with staff at all levels, but it is expected that the chain of command will be used. Your kite should be directed to the staff who can best answer your question. If you send a kite requiring an answer to the wrong staff, it will be returned to you. Kites are to be used for offender to staff correspondence only. If your kite is not specific, it will be returned for additional information. If you want your kite reviewed further up the chain of command, you must attach all previous kites to show the previous responses.

*ATTN:*
*5 WORKING DAYS*

To: LT. RAMSEY                     Date: 3-7-16

From: R. WEONS                     OID# 191203

Facility/Unit: K4D   Room/Cell: 113-2   Casemanager: _____

Other staff you have contacted regarding this issue and the outcome/decision (attach responses):
GRIEVANCE "CHAIN"

Issue: THIS KITE TO YOU IS CLEARLY REDUNDANT, BUT I GUESS YOU NEED TO REPLY TO THE CONTENT OF THIS GRIEVANCE, EVEN THOUGH TITUS HAS REPLIED -

THANX

Response from: Lt. Ramsey                     Date: 3-14-16

Your accomodation is for "extra time" to eat. Since the RR dining room has a set schedule that needs to be followed, you are allowed to take your meals back to your unit so that you can eat at your own pace.
If you are having difficulty with other offenders you need to report that to staff at the time of the incident.

Return to: _____   OID#: _____   Unit: _____   Room/Cell: _____

Distribution upon completion of response: Original to offender; copy to respondent   303.101A  (5/2009)

**TIME SENSITIVE**

**ATTN.**

Minnesota Department of Corrections

**OFFENDER KITE FORM**

( 1 OF 8 )

Offenders are encouraged to communicate with staff at all levels, but it is expected that the chain of command will be used. Your kite should be directed to the staff who can best answer your question. If you send a kite requiring an answer to the wrong staff, it will be returned to you. Kites are to be used for offender to staff correspondence only. If your kite is not specific, it will be returned for additional information. If you want your kite reviewed further up the chain of command, you must attach all previous kites to show the previous responses.

To: A/W/O TITUS                              Date: 2-13-16

From: R. LIGONS                             OID# 171203

Facility/Unit K2A  Room/Cell 122-2 Casemanager: ____

Other staff you have contacted regarding this issue and the outcome/decision (attach responses):

SIR:   **(PLEASE RETURN DOCUMENTS.)**

Issue: (1) I MEET THE CRITERIA FOR I MBEN-MCF PLACEMENT INCLUDING, BUT NOT LIMITED TO: ACTIVITIES OF DAILY LIVING (ADL) "EATING" FROM DIV. DIR 500 180 (ALSO TO JODY ONASTER PER ADA DOCMEN). (I HAD TO READ THE POLICY TO KNOW FOR SURE)

(2) INCLUDING MY R.S.D.I. DISABILITY, I WAS CONFINED PRIOR TO THE "DISCIPLINARY CONFINEMENT LEGISLATION". THIS IS A PART OF MY DOC FILES, IS ON FILE AT THE LAW OFFICE, AND I HAVE ASKED THAT ANY RETALIATION AGAINST ME i.e., RLU, ETC BE TREATED AS VIOLATIONS ACTIONABLE IN A COURT OF LAW

Response from: ____                         Date: ____

UNDER MN LEGISLATION, DOC POLICIES, SOCIAL SECURITY, AMERICANS WITH DISABILITES (ADA) AND RLUIPA (THAT IMPOSE HEAVY PENALTIES IN COURTS.)

(3.) I HAVE CARPERAL TUNNEL SYNDROME IN MY THUMB AND FOREARM, AND TREATING IS ON + GOING WITH M.D.

(4.) I WILL NOT BE ABLE TO COMPLETE YOUR WORK ASSIGNMENT AS JANITOR K2A

CONT.

**PLEASE COPY + RETURN SWORN AFFIDAVIT**

Return to: ____  OID#: ____  Unit: ____  Room/Cell: ____

Distribution upon completion of response: Original to offender; copy to respondent  303.101A  (5/2009)

P 2. OF 2 ETC
(5)

## Minnesota Department of Corrections
## OFFENDER KITE FORM

Offenders are encouraged to communicate with staff at all levels, but it is expected that the chain of command will be used. Your kite should be directed to the staff who can best answer your question. If you send a kite requiring an answer to the wrong staff, it will be returned to you. Kites are to be used for offender to staff correspondence only. If your kite is not specific, it will be returned for additional information. If you want your kite reviewed further up the chain of command, you must attach all previous kites to show the previous responses.

To: _____   Date: _____

From: _____   OID# _____

Facility/Unit _____   Room/Cell _____   Casemanager: _____

Other staff you have contacted regarding this issue and the outcome/decision (attach responses):

_____

_____

Issue: (5) LASTLY, I REGRET THAT THESE DIFFI-
CULTIES ARE ARISING AS A RESULT OF
FAILING TO PLACE ME IN MCF-LINDEN
THAT WOULD HAVE ELIMINATED EACH ISSUE.
I TRIED FOR AN ENTIRE YEAR TO COMPLY WITH
MY ALTERED ACCOMMODATION. MY SAFETY
FROM UNKNOWN HOSTILE PARTIES CANNOT BE
MONITORED. AND YOU OF ALL PEOPLE KNOW
YOUR STAFF AS WELL AS PETTY PRISONERS
WHO GRIPE, AND HYPE EACH OTHER. I CANNOT
PUT MY SAFETY AT RISK CARRYING FOOD TRAYS.

Response from: _____   Date: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Return to: _____   OID#: _____   Unit: _____   Room/Cell: _____

Distribution upon completion of response: Original to offender; copy to respondent   303.101A (5/2009)

PLEASE ADVISE   RETURN KITE

TO ALL STATE AND FEDERAL COURTS

THE AMERICANS WITH DISABILITIES

WARDEN MILES

CPD JAMIE DOEDEN

AND TO WHOM IT MAY CONCERN

RONALDO S. LIGONS,                                    **AFFIDAVIT**

AFFIANT/PETITIONER,                                   **RONALDO S. LIGONS**

V.                                                   **FEBRUARY 3, 2016**

MINNESOTA DEPARTMENT OF

CORRECTIONS, ET AL.

RONALDO S. LIGONS, BEING DULY SWORN ON OATH, DEPOSES AND SAYS:

1. THAT AT ALL TIMES RELEVANT TO THIS AFFIDAVIT, AFFIANT HAS BEEN IMPRISONED AT EITHER MCF-STILLWATER, OR PRESENTLY AT MCF-FARIBAULT.

2. THAT AFFIANT *FEARS FOR HIS SAFETY* DUE TO HOSTILITIES (IN THE PREPARATION, PICKING UP, AND CARRYING TO AND FRO OF HIS MEALS) FROM PRISON STAFF, AND PRISON "INMATES."

3. THAT AFFIANT BELIEVES THAT HE IS BEING *SINGLED OUT*, AND HARASSED, AND RETALIATED AGAINST BY PRISON STAFF, AND PRISON "INMATES DUE TO HIS DISABILITY.

4. THAT AFFIANT CAME TO MCF-FARIBAULT (FRB), IN FEBRUARY 2015 WITH AN (ADA) ACCOMMODATION FOR "MEALS DELIVERED TO THE (LIVING) UNIT."

5. THAT (FRB) CHANGED THE ACCOMMODATION TO REQUIRE AFFIANT TO CARRY FOOD TRAYS ¼ MILE EACH WAY THREE TIMES DAILY, IN ALL WEATHER WITHOUT A PROPER CARRYING CASE.

6. THAT FROM FEB. 2015, STAFF IN THE KITCHEN, IN THE DINING ROOM, TO AND FROM THE DINING ROOM, AND IN THE LIVING UNIT, HAVE DISPLAYED HOSTILITIES TOWARD AFFIANT, CALLING HIM "SPECIAL" AND MUCH WORSE.

7. THAT AFFIANT HAS DOCUMENTED THESE HOSTILITIES OVER THE PAST YEAR INCLUDING BEING CURSED BY A SECURITY STAFF IN THE DINING ROOM ON OR ABOUT DECEMBER 27, 2015, DURING THE TIME OF AFFIANT'S MOTHER'S DEATH.

8.  THAT ON JANUARY 28, 2016 AFFIANT RECEIVED ONE OF MANY IMPROPERLY PREPARED FOOD TRAYS AND SENT IT BACK FOR CORRECTION.

9.  THAT THE "INMATE" SERVER MADE LOUD AND FALSE STATEMENTS REGARDING THE TRAY CAUSING STAFF MEMBER KAYWEL TO COME TO THE SERVING WINDOW.

10. THAT KITCHEN STAFF, MS. KAYWEL HAS BEEN HOSTILE TOWARD AFFIANT SINCE FEBRUARY 2015.

11. THAT THE BEST WAY TO DESCRIBE ONE OF THE PROBLEMS CAUSING DANGEROUS HOSTILITIES IN THE DINING ROOM IS AS FOLLOWS:  THE "INMATE" SERVERS HAVE TO FILL *IDENTICAL* TRAYS ALONG A SERVING LINE.

12. THAT REGULARLY THE SERVERS MAKE ERRORS AND "INMATES" COME BACK REQUESTING CORRECTIONS TO THEIR TRAYS.

13. THAT THE SERVERS ALSO HAVE TO DISRUPT THEIR REGULARY ROUTINE TO FILL AFFIANTS DIFFERENT (BLUE TRAYS WITH TOPS) AND THE ERRORS ARE MORE COMMON AND IDENTIFIABLE AS TO AFFIANT. (STAFF DO NOT PREPARE THE TRAYS.)

14. THAT THIS DISRUPTION OF THE PROCESS FOR FILLING OF THE FOOD TRAYS CAUSES SOME "INMATE" SERVERS TO SPEAK WITH HOSTILITIES, EVEN WHEN THERE IS NO ERROR.

15. THAT OFTEN THESE HOSTILE AND BOISTEROUS "INMATE" SERVERS CAUSE HOSTILE COMMENTARY FROM THE "INMATES" IN LINE WAITING FOR THEIR TRAYS BECAUSE AFFIANT IS SINGLED OUT AS THE ONE CAUSING DELAYS IN THEIR FOOD.

16. THAT THIS SORT OF COMMOTION HAS CAUSED SECURITY STAFF TO GET INVOLVED.

17. THAT DUE TO THE MANIPULATIONS OF "INMATE" SERVERS, KITCHEN STAFF, AND DINING ROOM SECURITY STAFF, AS WELL AS FALSE STATEMENTS CLAIMING THAT AFFIANT WAS "ASKING FOR EXTRA FOOD" AFFIANT LEFT HIS EVENING MEAL IN THE DINING ROOM AND LEFT STATING THAT HE WOULD NO LONGER COME TO PICK UP THE TRAYS.

18. THAT IN THE DARKNESS OF THE EARLY MORNING OF JANUARY 30, 2016 WHILE GOING TO THE INSULIN RUN AT HEALTH SERVICES, AN "INMATE" KITCHEN WORKER WALKED UP BEHIND AFFIANT WHILE PASSING IN FRONT OF THE DINING HALL, AND SAID: "I OUGHT TO BUST YOU IN THE BACK OF YOUR HEAD."

19. THAT ALL OF THESE PROBLEMS WOULD NEVER HAVE ARISEN IF (FRB) HAD FOLLOWED THE ORIGINAL ACCOMMODATION AND PLACED AFFIANT IN THE "LINDEN" BUILDING WHERE MEALS ARE DELIVERED.

FURTHER AFFIANT SAYS NOT.

RONALDO S. LIGONS

SUBSCRIBED AND SWORN TO BEFORE ME THIS 16th DAY OF February, 2016

SHANE R. ZELLER
NOTARY PUBLIC - MINNESOTA
My Commission Expires
January 31, 2019



## MCF-Faribault

## OFFICE
## MEMORANDUM

**DATE:** January 4, 2016

**TO:** Mr. Ronaldo Ligons #171203
K2D, 123-2

**FROM:** Eddie Miles, Jr.
Warden

**SUBJECT:** Living Unit Placement

You wrote to me regarding placement in the Linden Unit, an ADA request and interactions with offenders and staff.

Placement in the Linden Unit requires offenders to meet certain medical criteria.

My understanding is you have been reviewed for placement, but do not meet the criteria needed.

If you are receiving harassing comments due to your disability, please report it to your unit lieutenant. Harassing comments will not be tolerated, and offenders or staff making these comments will be held accountable.

If you feel you need ADA accommodations, you need to contact CPD Doeden and/or Lt. Ramsay. Make your request clear and give reasons for the ADA accommodation. Please state why you are unable to carry food trays back and forth to your unit, as arranged.

/jm

C: File

*Contributing to a safer Minnesota*
*EQUAL OPPORTUNITY EMPLOYER*



**Minnesota Department of Corrections**
**Minnesota Correctional Facility - Faribault**
**Grievance Report - 5283**

| | | | |
|---|---|---|---|
| **OID** 171203 | | **Living Assignment** | MCF-FRB K2 C Tier 1 109 02 Lower Bunk |
| **Name** Ligons, Ronaldo Sylvester | | **Case Worker** | Haffaly, Jeffrey J |

| | |
|---|---|
| **Grievance Facility:** | Faribault |
| **Group:** | Dietary |
| **Type:** | Environmental Conditions - Kitchen or Dining Hall |

**Grievance:**

Grievant is entitled to meals, DOC is responsible for providing meals according to original ADA reasonable accommodation, meals to unit, meals on wheels in the Linden building, where meals are delivered. The unrequested alteration of meal delivery by requiring grievant to carry trays to and fro without any carrying case has proved dangerous due to threats from prison kitchen worker, harassment from prisoners throughout the campus and harassment by DOC staff and has been documented by sworn affidavits. Grievant is singled out as special and this creates hostilities, threats, and is a violation of ADA as a discriminatory practice. It is actionable under federal laws.

**Institution File Date:** 03/25/2016

**Institution Response:**

Food Services Director was able to find a food carrier for you to use. This resolves your issue and provides you with what you requested. Your claims that staff have threatened or harassed you is unfounded. You are not being singled out or discriminated against.

| | |
|---|---|
| **Institution Response Type:** | Dismiss with Modifications |
| **Institution Response Person:** | Miles, Eddie |
| **Institution Response Date:** | 04/07/2016 |

**BioReference**
LABORATORIES
[2474]    104993628-7  MICHAELSON, BARRY

| D O C I O R | CMS M<br>2305 MN BLVD. SE<br>ST. CLOUD  MN  56304<br>(320) 240-7032    (MN307-4) | MICHAELSON, BARRY<br><br>MICHAELSON, BARRY | MICHAELSON, BARRY<br><br>MICHAELSON, BARRY |
|---|---|---|---|

-FINAL- Original Report 10/23/2009

| NAME<br>MICHAELSON, BARRY | PATIENT I.D. / ROOM NO.<br>203279 | DOCTOR / GROUP NAME<br>KALLA, IMO | | |
|---|---|---|---|---|
| LAB I.D. NO.<br>104993628 | DATE COLLECTED<br>10/22/2009 | DATE RECEIVED<br>10/22/2009 01:46 | DATE OF REPORT<br>10/23/2009 16:34 | AGE 45  SEX M |

| Test Description | Result | Abnormal | Reference Range |
|---|---|---|---|

---------------------* CARDIOVASCULAR/LIPIDS *-------------------------

Cholesterol                  149              < 200        mg/dl

-------------------------* MISCELLANEOUS *-----------------------------

RPR                          NON-REACT                NON-REACTIVE
GLUCOSE,NON-FASTING          83                       60-125 mg/dl
HIV 1/0/2 ANTIBODY           Non-Reactive  *memo sent 10-26-09 JB* Non-Reactive
NOTE: Patients nonreactive for HIV antibody MAY BE infected but have not yet
      seroconverted. If a nonreactive result seems inconsistent with the
      clinical setting, RESUBMIT a new specimen for retest in 1-3 months.
ASSAY INFORMATION: Assay for the Detection of Antibodies to Human
                   Immunodeficiency Virus Type 1, including Group
                   O (HIV-1 + "O") and/or Type 2 (HIV-2) Manufactured by
                   Siemens Healthcare Diagnostics.

****************************************************************************
NOTICE: IF the result of the RPR is reported as reactive with a titer
of up to 1:8 please note that this level of reactivity can be caused
by other, non-specific constituents and may not be related to syphilis.
Confirmation of positive RPRs can only be made via performance of the
T. Pallidum confirmation test.

                          Final Report

*10/26/09 CBN*

James Weisberger, M.D.
LABORATORY DIRECTOR

481 EDWARD H. ROSS DR
ELMWOOD PARK, NJ 07407
1-800-229-LABS

**B:R** BioReference LABORATORIES  [2475]  106506407-6  MICHAELSON, BARRY

| D O C T O R | CMS M<br>1101 LINDEN LANE<br>FARIBAULT  MN  55021<br>(507) 334-0832    (MN300-9) | MICHAELSON, BARRY | MICHAELSON, BARRY |
|---|---|---|---|
| | | MICHAELSON, BARRY | MICHAELSON, BARRY |
| | | -FINAL- Original Report 03/04/2010 | |

| NAME<br>MICHAELSON, BARRY | PATIENT I.D. / ROOM NO.<br>203279 | DOCTOR / GROUP NAME<br>HARDRICT | | |
|---|---|---|---|---|
| LAB I.D. NO.<br>106506407 | DATE COLLECTED<br>02/26/2010 | DATE RECEIVED<br>02/27/2010 12:37 | DATE OF REPORT<br>03/04/2010 13:15 | AGE<br>45 Y | SEX<br>M |

| Test Description | Result | Abnormal | Reference Range |
|---|---|---|---|

Comment :
        NON FASTING

--------------------------* MISCELLANEOUS *---------------------------

LAMOTRIGINE (12)                          1.6 LO      2.0 - 20.0      ug/ml
Current clinical information suggests the recommended
        concentrations for lamotrigine during chronic therapy
        are 2 - 20 ug/ml.
Lamotrigine analysis performed by high performance liquid
chromatography (HPLC).


*****************************************************************************
(12) &NOTE: Drug screen AND confirmation, where necessary, performed by:
                Medtox Laboratories, Inc.
                402 West County Road D
                St. Paul, MN  55112

                        Final Report

James Weisberger, M.D.
LABORATORY DIRECTOR

481 EDWARD H. ROSS DR.
ELMWOOD PARK, NJ 07407
1-800-229-LABS

Minnesota Department of Corrections
Behavioral Health
MCF-Stillwater
**Mental Health Record**

*Transford from MCF-Farrbault*
*Late June of 2010*

Name:  Michaelson, Barry        OID:  203279        Date: 7/20/10

Nature of Contact, Observations, Diagnosis, Recommendations, Plans, etc.

| | |
|---|---|
| Session Type:<br>Brief Assmt<br><br>Time: 30<br><br>B-West<br>Cell# 106<br><br>Mr.<br>DeCorsey | (S)  Met with Mr. Michaelson for routine follow up after he transferred from MCF-FRB. He said he is irritable because he was transferred into a cell hall that was on an extended lockdown. He said "Dogs get treated better, were people. The CO's aren't better than me." He gets irritable with the immaturity of the younger offenders. He went on about the disrespectful conditions in prison and identified this as the main source of his irritability. He is focused on getting out of BW. He has applied to participate in higher education, as he believes this is the fastest route to moving cell halls. He values working and worked while in the community and throughout his life. He verbalized that venting his thoughts about prison conditions was beneficial to him and he felt better.<br><br>He said he is on a lower dose of Lamictal than previously. This is not reflected in psychiatric notes in his mental health file, so I will review his medical file for information on this. He said he requested this decrease because he thought he was experiencing an irregular heartbeat as a side effect. However, medical testing did not reveal any problems so he would like the dose to be increased back to 100 mg twice per day.<br><br>We discussed the differences between Axis I and Axis II disorders and the most effective treatment approaches for these. He expressed interest in engaging in therapy. I explained that therapy time is not used simply to vent as this strategy does not produce any long-term change in problems. He accepted this. I explained that in order to receive therapy he needs to have treatment goals related to what he wants to work on improving or changing about himself or his symptoms. He was willing to do this. He will consider possible goals and send a kite if he has ideas on this. If I receive a kite I will meet with him to discuss treatment goals further. Otherwise, I will follow up in approximately three months for medication monitoring.<br><br>(O)  Euthymic affect. Irritable mood.<br><br>(A)  Mood Disorder NOS, Borderline Personality Disorder. Although he was very angry about the conditions in prison and particularly BW, he also recognized that he can take steps to improve his situation and get out of this cell hall.  BW = B. West Cell hall # 106<br><br>(P)  Check medical chart for current dose of Lamictal. Follow up in approximately three months unless he sends a kite with ideas for treatment goals and then I will meet with him sooner. |

Name:   Michaelson, Barry        OID: 203279        Date: 7/20/10

Kathryn Lockie, MA, LPCC
Clinician

Mental Health Record

VENLAFAXINE HCL 75 MG TABS   203279
0276-   9160   12/09/12   RX#24883655
DISP  06/25/12

**Minnesota Department of Corrections – Stillwater**
**Behavioral Health Services**
**Psychiatric Assessment**

Name: MICHAELSON, Barry          OID#203279          Date: 11/04/2010

**Subjective:**  He was seen for follow-up.  He is diagnosed to have Bipolar Disorder type II, history of Attention Deficit Hyperactivity Disorder and Polysubstance dependence in a controlled environment.  He is currently on Lamictal 150 mg at h.s. which was increased this dose when he saw Dr. MacNeil on 08/10/2010 and also he is on Zoloft 200 mg once daily. Before that though he was on Risperdal 2 mg at h.s., but it was tapered, and this continued on account that he did have an elevated liver function test, and Dr. MacNeil thought that that could be a big factor.  He did have a hepatitis screening, and he was found out to have hepatitis C as a cause of the elevation of the liver enzymes.  Since then, he claims that he has not been quite right.  He tends to be quite more moody.  He has problems with his sleep.  He does have also some subtle depressive symptoms, which consist of being sad and depressed is 5-6/10. Concentration and interest in things are fair.  His energy is low.  He denies of any problems of anxiety as mentioned.  He has been quite moody.  He denies paranoid ideations, hallucinations, or delusions.

**Objective:**  His appearance is adequately groomed and dressed Caucasian male.  He was moderately overweight.  His speech is within normal limits.  It is of normal tone and volume. His affect is appropriate.  He has very good eye contact.  His mood is cooperative and pleasant. His thought processes are logical and clear.

**Assessment:**  At this time, there has been some increase in lability of mood as well as some subtle depressive symptoms.

**Diagnostic Impression:**
Axis I:          1.     Bipolar Disorder type II versus Mood Disorder, Not Otherwise Specified.
                 2.     Polysubstance dependence.
                 3.     History of Attention Deficit Hyperactivity Disorder.

**Plan:**  Plan at this time is we will increase the Zoloft to 250 mg once daily.  Also increase the Lamictal to 200 mg at h.s.  He will have a Lamictal level in two weeks and then he will be seen in two months or p.r.n.

Virginia Mandac, M.D./Rrp/230/Dictated, but not reviewed.

## Minnesota Department of Corrections
## Chemical Dependency Rating Form

This information has been disclosed to you from records protected by federal confidentiality rules (42 CFR Part 2). The federal rules prohibit you from making any further disclosure of this information unless further disclosure is expressly permitted by the written consent of the person to whom it pertains or as otherwise permitted by 42 CFR Part 2. A general authorization for the release of medical or other information is NOT sufficient for this purpose. The federal rules restrict any use of the information to criminally investigate or prosecute any alcohol or drug abuse patient.

Name (Last, First Middle) Michaelson, Barry          OID 203279          Date: 6/27/06
Assessor Name:   Debbie Barron MA, LADC, CPT 2

I.      **TCU Drug Screen Results**  Number endorsed (possible 12) = 0

II.     **Assessment Results**
Offender Meets DSM IV Criteria for (See Assessment Part 2):

☒ Dependence      ☐ Abuse      ☐ Does not meet DSM IV Criteria for dependence or abuse

Diagnostic Impression:
    Primary      **Alcohol Dependence (303.90)**
    Secondary    **Cocaine Dependence (304.20)**
    Tertiary     **Cannabis Dependence (304.30)  (In Remission)**   *No HP drug use history.*

III.    **Level of Need Recommendations**
Based on DSM IV criteria, offender's chemical use history, offender's CD program intervention history, relationship of offender's chemical use to the commitment offense, offender's relapse/remission history, and criminogenic factors as determined by the LSI-R, the following is recommended:

            **CD Level of Need 2:  Intensive Primary Treatment**

Justification, if necessary:     **Offender endorsed current symptoms of dependence on cocaine and alcohol. He endorsed past symptoms for cannabis with dependency symptoms currently in remission. Offender reports that he completed treatment at Cedar Ridge and has been sober since that time. 6/16/04 offender was terminated from MCF-LL Transitional Prg.  Since release offender was placed in 2 CD programs from which he absconded not completing either program.**

IV.     **Collateral information used to document this assessment (include date of document or contact)**
Source #1    **PSI dated 3/24/06**
Source #2

V.      **Subjects current attitude about the need for alcohol/drug treatment?  Positive**
VI.     **Comments**
        **Probation Violation for non-contact.**

                                                    _____
                                                    Assessor Signature


## THIS PAGE MAY BE COPIED AND DISTRIBUTED WITH PROPER RELEASE
7/1/2006

**Genito Urinary System**
- ☑ No problems identified
- ☐ Incontinence
- ☐ Frequency
- ☐ Burning
- ☐ Hematuria
- ☐ Other _____

Hx. of disease or infection ___ 00 _____

- ☐ Prostatitis
- ☐ Menopausal
- ☐ Menses
- ☐ STD

**Females only**
- Last menses _____
- Usual length _____ NA
- Last pap smear _____
- Last mammogram _____
- No. full term pregnancies _____
- No. abortions _____
- No. miscarriages _____
- Contraceptive method _____

**Nervous System**
- ☑ No problems identified
- ☐ Fainting
- ☐ Seizures
- ☐ Disorientation
- ☐ Poor Balance
- ☐ Other
- ☐ Aphasia
- ☐ Dizziness
- ☐ Paralysis
- ☐ Headaches

Hx. of disease/surgery ___ None _____

**Psychological History**
- ☐ No problems identified
- ☐ Alcoholism
- ☐ Other
- ☑ Depression
- ☐ Behavior problem
- ☐ Suicidal history
- ☐ Psychosis/mental illness

Years of education ___ 12 _____

**Plan of Care**
- ☐ Dental referral
- ☐ Physician's Clinic referral
- ☐ Mental health Clinic referral
- ☐ Follow up scheduled with nurse
- ☐ Return per Kite if needs
- ☐ Educational Materials provided
  (specify)_____

Notes: ___ Wants to get back on Cerexa. _____

_____
Nurse's Signature

___ 11/24/08 _____
Date

Rev 3/2007

DOB: 9/16/64

# Mental Health Evaluation

| Have you been here before? | ☒ Yes ☐ No | Did you have any problems in the jail when you were here before? | ☐ Yes ☒ No |
|---|---|---|---|
| Emotional response to incarceration: | | about as well as any one else. | |
| Are you on probation? | ☒ Yes ☐ No | Next court date: | 12/11/08 |

| Current Housing | ☒ Private Home/Apt | ☐ With Friends | ☐ Shelter | ☐ On Streets |
|---|---|---|---|---|
| Do you currently have contact with family members, someone who cares about you? | | | ☒ Yes ☐ No | |

| Education | Do you feel you can read and write adequately? | ☒ Yes ☐ No |
|---|---|---|
| Last grade completed: 12 | Were you ever in special education? | ☐ Yes ☐ No |

| Employment | Where do you work? | | For how long? | |
|---|---|---|---|---|
| Are you currently employed? | ☐ Yes ☐ No | Occupation? | housing. | |

## Psychiatric History

| | | | |
|---|---|---|---|
| Are you receiving current medical care? | ☐ Yes ☒ No | With whom? | |
| Have you ever had head injury or seizures? | ☐ Yes ☒ No | When/How? | |
| Have you been hospitalized for mental illness or emotional problems? | ☐ Yes ☒ No | Where/When? | |
| Have you ever received outpatient treatment or counseling? | ☐ Yes ☒ No | Where/When? | |
| Have you ever attempted suicide? | ☐ Yes ☒ No | When/How? | |
| Are you having suicidal thoughts now? | ☐ Yes ☒ No | Do you have a plan? | |
| Have you ever been abused or a victim of criminal violence? | ☒ Yes ☐ No | | |
| Have you ever behaved violently? | ☐ Yes ☒ No | Hurt a person? | ☐ Yes ☐ No |
| Have you ever been charged/convicted Of a sexual offense? | ☐ Yes ☒ No | | |
| Are you currently taking psychotropic medications? | ☐ Yes ☒ No | | |

| Psychotropic Medications | Dose | Frequency | Routes | Pharmacy |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| Appearance | ☐ Appropriate | ☐ Meticulous | ☐ Unkept | ☐ Body Odor | |
|---|---|---|---|---|---|
| Activity | ☐ Appropriate | ☐ Mannerisms | ☐ Restless | ☐ Uncoordinated | ☐ Hyperactive |
| Affect | ☐ Appropriate | ☐ Elated | ☐ Flat | ☐ Labile | ☐ Angry |
| Eye Contact | ☐ Appropriate | ☐ Fixed Start | ☐ Avoiding | ☐ Darting | ☐ Closed Eyes |
| Speech | ☐ Appropriate | ☐ Slow/Fast | ☐ Loud/Soft | ☐ Clear/Slurred | ☐ Disorganized |
| Thought Content | ☐ Appropriate | ☐ Delusional | ☐ Obsessions | ☐ Physical Concerns | ☐ Hallucinating |
| Thought Process | ☐ Appropriate | ☐ Flight of Ideas ☐ Denial | | ☐ Confused | ☐ Loose |
| Orientation | ☐ Appropriate | Disoriented to: ☐ Person | | ☐ Place | ☐ Time |
| Memory | ☐ Appropriate | ☐ Loss of Recent Memory | | ☐ Loss of Remote Memory | |
| Insight | ☐ Appropriate | ☐ Poor Insight | ☐ Unrealistic | ☐ Poor Judgement | |

## Substance Abuse History

| Frequency of Use Codes | 1 No Use | 3 1-2 x/wk | 5 Daily | 7 Binge Patterns |
|---|---|---|---|---|
| | 2 1-3 x/mo | 4 3-6 x/wk | 6 Several x/day | 8 Less than q wk |

| Drugs | Current Use | Frequency Code | Amount | Longest Period of Abstinence | Hx of Past Use |
|---|---|---|---|---|---|
| Alcohol | Yes/No | | oral. | | ✗ |
| Marijuana | Yes/No | | | | |
| Opiates | Yes/No | | | | |
| Tranquilizers | Yes/No | | | | |
| Amphetamines | Yes/No | | | | |
| Other | Yes/No | | | | |

Have you ever received treatment for substance abuse?  ☐ Yes  ☒ No  When/Where?

| Plan: | ☒ No Further Action | ☐ Sick Call | ☒ Referred to Psychiatrist | ☐ Referred to Physician |
|---|---|---|---|---|
| Discharge Plan | ☐ Self Care | ☐ Community Health | ☐ Psychiatry Appointment | ☐ Community Resources |
| | ☐ MSW Referral | ☐ Referral to AA/NA | ☐ Chem Dep Referral | ☐ D/C with Medications |
| Notes | | | | |

_____ DW   11/21/08
RN Signature/Title                    Date

Mental Health Evaluation Reviewed by:

_____ 12/14/08
Physician                             Date

Minnesota Department of Corrections – **Stillwater**
Behavioral Health Services
**Psychiatric Assessment**

Name:  MICHAELSON, Barry                OID#203279                Date:  08/10/2010

**Current Psychiatric Medications:**  Lamictal 100 mg q.a.m., Risperdal 2 mg q.h.s., and Zoloft 200 mg q.a.m.

**Subjective:**  Mr. Michaelson was last seen at MCF Faribault on 05/12/10 by Dr. Hardrict and was given a diagnosis of Bipolar Disorder Type 2 and ADHD.  He has been on Risperdal and Zoloft since prior to being in the DOC and said Risperdal had been started in the Anoka County Jail and this was to help to maintain his mood stability.  He has been bothered by what he describes as like heart fluttering, but had a normal EKG on 03/10, but said it still happens.  We discussed the issue with his elevated liver functions, which were done on 05/19/10.  At that time, his lipids were normal and his CBC was normal.  He stated that he had no history of hepatitis, but at one point in his life was an IV drug user and that he could possibly have hepatitis from that.  He was agreeable with repeating his liver functions, doing a hepatitis screen and having me refer him to Health Services.  We also reviewed the side effects of Risperdal and the fact that it could elevate his liver functions and he chose to taper off this.  We will increase his Lamictal as he felt that that was helpful for him.

**Objective: Labs:**  As the above.  AIMS was zero on 01/18/10.  **Allergies:**  Penicillin.

**Mental Status Exam:**  Appearance: Caucasian male with glasses.  He is heavyset.  His mood was "pretty good."  His affect appeared mildly anxious.  His speech was normal.  His psychomotor activity was normal.  Thoughts were logical and coherent.  His insight appeared to be good.  No manic symptoms were noted.  He did agree he primarily had issues with depression and that he was very reactive to circumstances and was familiar with the borderline personality disorder diagnosis.  He denied any suicidal thoughts.  He verbalized no thoughts of harm to others.  His main issue was having his health taking care of and making sure there is no problems with his liver.  His insight was good.  His judgment appeared good at this time.

**Assessment:**

| | | |
|---|---|---|
| Axis I: | 1. | _____ Mood Disorder, not otherwise specified. |
| | 2. | Polysubstance dependence. |
| Axis II: | | Borderline Personality Disorder. |
| Axis III: | 1. | History of tinnitus. |
| | 2. | Elevated liver functions noted on 05/19/10. |

MICHAELSON, Barry          OID#203279
Page 2 of 2
August 10, 2010

**Plan:**
1. Repeat LFTs, hepatitis screen, and refer to Health Services.
2. Decrease Risperdal to 1 mg q.h.s. x7 days and stop.
3. Increase Lamictal to 150 mg q.a.m.
4. Follow-up in eight weeks.

Deborah MacNeill, M.D./Rrp/448/Dictated, but not reviewed.

## AUTHORIZATION FOR USE AND DISCLOSURE OF INFORMATION

Name of Patient ___Barry Michaelson_____   Chart No. *Medical only*

Date of Birth __09/16/1964____  OID # ___203279_____   Social Security # _____-___-_____
*Private Info. Not Public*

I authorize:                                        To release to:

_____        Minnesota Department of Corrections and their

_____        counsel _____

_____        _____

### SPECIFIC DESCRIPTION OF INFORMATION TO BE USED AND DISCLOSED
(specify dates for each, unless "entire medical record" is selected)

_____ treatment from _____ (date) to _____ (date)

| | |
|---|---|
| _____ Hospital Admission Summary | _____ Lab Reports |
| _____ Hospital Discharge Summary | _____ X-ray Reports |
| _____ Operative Report | _____ X-ray Films |
| _____ Progress Notes | _____ Psychiatric Intake |
| __X__ Entire Medical or Treatment Record | _____ Immunizations |
| _____ Billing Information | _____ Pathology Report |

_____ Other (please specify) *No Mental Health Records: Confidential*

__X__ I authorize verbal and/or written exchange about my medical information
*as agreed on: Dec 15, 2015   Protective order*

### PURPOSE OF THE USE AND DISCLOSURE

| | |
|---|---|
| _____ Further Treatment (Date of Appointment _____) | |
| _____ Insurance Application | _____ Personal Records |
| _____ Disability Determination | _____ Education |
| _____ Vocational Rehabilitation Evaluation | _____ Payment of Insurance Claims |
| _____ At my request | __X__ Legal |
| _____ Other | _____ |

I authorize the use and disclosure of my individually identifiable health information as described above. I further authorize the Minnesota Attorney General's Office to release the records received pursuant to this authorization to the court, court staff, expert witnesses, and counsel for any co-defendants in the pending case of *Ligons et al. v. Minnesota Department of Corrections, et. al.*, United States District Court No. 15-cv-2210, as well as to the staff of the Minnesota Department of Corrections. I understand that this authorization is voluntary. I understand that if the person or organization I authorize to receive the information is not a health plan or health care provider, the released information may no longer be protected by federal privacy regulations and could be re-disclosed. I understand that my health care and payment for my health care will not be affected if I do not sign this form.

I understand that I may revoke this authorization in writing at any time, except to the extent action has already been taken in reliance on it. I understand that this authorization will expire on *Feb 17, 2016* (specify date or event) or, if no date or event is specified, 24 months from the date of signing. *Will need new H.I.P.P.A Release after this date*

A photocopy or fax of this authorization will be treated in the same manner as the original.

_____          *April 6, 2016*
Signature of Patient/Guardian/Representative          Date

*Protected under Titel 42 U.S.C § 10801 Mental Health Act: Subd (a)(b)  Vulnerable Adult. Inter-alia: U.S. Supreme Court Ruling*

## Clinical Record
### Department of Corrections
### State of Minnesota

Michaelson Barry                                           Case# 203279

| DATE | State Observation: Doctors, Nurses' Notes, signature and title |
|------|---------------------------------------------------------------|
| 4/5/00 1530 4300 | Offender present c̄ c/o L shoulder discomfort. State he was lifting weights yesterday, did not s/o yesterday or come to sick call today. Approx 50% ROM, instructed to use ice, ibuprofen. Great. O Deformity or Displacement noted. Returned to his unit. ⟶ Carol Zimmerman RN |
| 6/2/00 2300 | Unit staff called to unit offender c/o severe pain — requested shoulder immobilizer provided. Carol Zimmerman RN |
| 6-8-00 | Sick Call. 8: F/m states he has no problem c̄ L shoulder, stated had been lifting weights & caused acute injury but has no pain or problem @ present. P F/m signed Refusal of Tx + cancelled no gym activities, as this is F/m ultimate reasoning ⟶ R. Mullen RN |
| 8/21/00 | Sick call: Concerned he is Hepatitis positive. States he was reading a book from the Library on Hepatitis C and feels he has the symptoms listed in the book. Offender relates symptoms as follows: itching on bottom of feet and palms, dark urination, dark stools, restlessness, persistent HA, bloating and gas, ringing in ears and occasionally sees spots. Offender states he eats dry cereal c̄ milk and toast in am and salad and vegetables in evening. States he doesn't buy food items from canteen. Also reports he drinks only 3-4 glasses of fluid per day. Reports H/o unprotected sex c̄ multiple partners, also reports IV drug use c̄ shared needles. Discussed possibility symptoms are related to poor diet and fluid intake. Given handouts on nutrition and fluids. Offender denies current flu-like symptoms. Will place on list for Hepatitis screening. ⟶ J. Pet RN |
| 9/27/00 | TO C.O. -- SRD EXP PRD WORK RELEASE<br>SENT X MEDICAL X DENTAL X PSYCH<br>NO X @ MOOSE LAKE |

Form#45 Rev.      JWARPULA, OASI

MEDICAL AND NURSING PROGRESS NOTE

DOC Ligons.Michaelson 0000728

**Clinical Record**
Department of Corrections
State of Minnesota

Name _____   Case# _____

| DATE | State Observation: Doctor's, Nurses' Notes, signature and title |
|---|---|
| 2-17-00 | Intake PE, see physical form   Forsythe RN, FNPC |

Michaelson, Barry  203279
Connaught Mantoux .1ml PPD
Given L forearm on 4-4-00
PPD read on 4-6-00 by Steve Jankowski RN
Results ∅mm   LOT #0046AAEXP 8-16-01

---

9-15-00    WT 205# TEMP 98.8   BP 130/76  P 77

**Medical Consult MCF-WR/ML - MICHAELSON, Barry OID # 203279 - September 15, 2000**
S:    Discussion regarding hepatitis C.
O:    205, 98.8, 130/76. He is hepatitis C positive.
A/P:  Hepatitis C positive.  Advised when released on 09/27/00 to seek further evaluation from family physician.
A. Hertsel Zackai, M.D./EM 108
Dictated but not reviewed
D: 09/15/00        T: 09/18/00         Job #183382

Form#45 Rev. 5-93

MEDICAL AND NURSING PROGRESS NOTE

DOC Lippns Michaelson 0000675

## MEDICATION ORDERS

### MINNESOTA CORRECTIONAL FACILITY - ST. CLOUD

| Name | Number | Date | Name | Number | Date |
|------|--------|------|------|--------|------|
|      |        |      |      |        |      |
|      |        |      |      |        |      |
|      |        |      |      |        |      |
|      |        |      |      |        |      |
| Midnelson Buzy | 203279 | 8/21/00 |

Hepatitis B, C screening
v.p. in lail R. w. X
4/10/01

Confidential – Private Government Data

DOC Ligons Michaelson 0000882

## STATE OF MINNESOTA
### Department of Corrections



| DATE & TIME | |
|---|---|
| 2-13-02 | ADMITTED TO MCF/SCL  No current problems — W Grahen RN |
| 2/20/02 | SRD        C Thompson |

NAME  Michaelson, Barry                     OID 203279

**PROGRESS NOTES**

5070020043

MINNCOR

Confidential – Private Government Data

DOC Ligons.Michaelson 0000672

**STATE OF MINNESOTA**
**Department of Corrections**

| DATE & TIME | |
|---|---|
| 30-05 1415 | RV out less than 90 days. Was on Molyft and said it was very helpful but the jail didn't give it to him. Requested an appoint to be scheduled c̄ psychiatrist. No other concerns at this time. Did complain of dry itchy feet. Advised to sign up for sick call. Mantoux given. ~ Stenson N |
| Addm: | Bee sting allergy. Med alert signed, and stickers given. ~ Stenson N |

Inmate _Michaelson_  OID _203279_
Release Date _9-18-05_  Chart Review _9-10-05_
Medications Ordered _KOP_
Waiver Signed/Instructed on pick-up _9-11-05_
Medical Summary completed _____
Prescriptions written _proza_c_
Date Delivered to B control _9-15-05_ By _Quellher_

| | |
|---|---|
| 22-05: 1330 | Chart to central office. L McConn DASI MCFU —— |

NAME _Michaelson, Barry_    OID _203279_

**PROGRESS NOTES**     Ⓜ MINNCOR

Confidential – Private Government Data     DOC Ligons.Michaelson 0000869

**Minnesota Department of Corrections**
MCF- ___

| Name Michaelson, Barry | Date 6/14/06 Time | County Hennepin |
| | OID 203279 | Date of Birth 9.16.64 |

| ☐ New | ☐ Release Violator | ☐ Escape | ☐ Temporary Out Out how long | ☐ Transfer Here Previously? FRB When? '04 |

| **ADMISSION** | General appearance/behavior: good/calm |
|---|---|
| | Temp: 97.8  B.P.: 118/80  Pulse: 64  Resp.: 16  Wt.: 198  Ht.: 57" |
| Physical Handicap? | ☐ Yes ☒ No |
| Evidence of physical abuse? | ☐ Yes ☒ No |
| Alcohol/drug abuse? | Type: Alcohol - Weed   Mode:   Last Used: '03 |
| Withdrawal problems anticipated: needs cat? Klarm |

Check all that apply: ☒ Trauma markings ☒ Bruises ☐ Lesions ☐ Jaundice ☐ Rashes
☐ Infections ☐ Weight loss > 10 lb. ☐ Cough > 3 weeks ☐ Night sweats ☐ Hepatitis when? Ø
ently had: ☐ Scabies ☐ Crabs ☐ Body/head lice...when? Ø
Exposure to communicable disease: Ø

| **MEDICAL** | Allergies (medications, insects, foods, etc.): ?PCN |
|---|---|
| Current Medications: Wellbutrin Am SR 200 mg | Lexapro 7 AM 10 mg |
| Currently under medical/dental care? ☐ Yes ☒ No |
| Medical/dental action required now: Ø |
| History of asthma: ☐ Yes ☒ No ............... Cell restriction: ☐ Yes ☒ No |
| History of seizures? ☐ Yes ☒ No ............... Cell restriction: ☐ Yes ☒ No |
| PPD history: ☐ Mantoux reactive ☒ Mantoux non-reactive 6.14.06 |
| Immunizations: Hepatitis A Series: ☐ Yes ☒ No  Hepatitis B series? ☐ Yes ☒ No |
| Influenza: ☐ Yes ☒ No |

**Health Screening**

MINNCOR
500.050 6/03

Confidential – Private Government Data

DOC Ligons.Michaelson 0000951

203279          9/16/1964

## PHYSICAL EXAMINATION

MICHAELSON, BARRY SCOTT

OID No.

| Temp. 98 | Resp. 16 | Pulse 64 | B.P. 118/80 | 5'7" Height | 198 Weight |

**System Review:**  Eyes Ø

Ears, Ø  Nose Ø  Throat Ø

Cardio respiratory Ø

Gastrointestinal Ø

Reproductive Ø
LMP N/A          Contraceptive N/A

Neuromuscular ® Knee occ pain probably due to
Skin & skeletal      injury - problems for last
                          6 months

**Physical Examination:** General Appearances NAD

Head nml

Eyes nml

Ears nml

Nose, Throat & Neck nml

Breast / Breasts nml

Heart RRR -s̄ ŵ

Abdomen Round & hepatomegaly

Rectal N/A Due to age

Pelvic / Genitalia circ & hernia

Trunk & Extremities
          wnl

Neurological

Skin   intact
          clean

Scars & Tattoos

### FAMILY HISTORY

| | AGE | HEALTH HISTORY |
|---|---|---|
| Father | 70 | A/W |
| Mother | 63 | A/W |
| Brother | X/ | A/W |
| Sister | X/ | A/W |
| Children | | |

ILLNESSES/INJURIES Give Age and/or Year
         Age/Year                    Age/Year

| | YEAR | | YEAR |
|---|---|---|---|
| Head | 05 | Herpes | — |
| Seizures | — | Syphilis | — |
| Fractures ® ankle | '99 | Gonorrhea | — |
| Ear, Hearing Problem | — | Chlamydia | — |
| Rheumatic Fever | — | Venereal Warts | — |
| Diabetes | — | Hepatitis | — |
| Kidney Disease | — | Infectious Mono | — |
| Asthma | — | Tuberculosis | — |
| Emphysema | — | Measles | — |
| Bronchitis | — | Mumps | — |
| Cancer | — | Chicken Pox | 40 as child |
| Heart Disease | — | HIV Test | |
| Hypertension | — | Tet. Toxoid | '07 |
| Ulcers | — | | |
| Last Dental Examination | '05 | | |

Vision Screening    (Snellen Chart)

R 20   L 20    With Glasses
  20      20    Without Glasses

Color Vision nml
Hearing (Gross Screening) nml

Work Status Limitations  none

Activity Restrictions  none

Treatment Recommended
occ knee pain ®
Ibuprofen PRN

Signature: Amo Powell RN NP  Title  Date 6/19/06

5070020030

Confidential – Private Government Data



DOC Ligons Michaelson 0000945

# Transfer Summary Form

Name: Michaelson Barry 9/14/09         Date: 10/16/09

AKA: _____          _X_ Male  ___ Female

### Current/Chronic Health Problems          ### Restrictions
_____ 1. None                          _____ Lower Bunk
_____ 2. Asthma                        _____ No Stairs
_____ 3. Diabetes                      _____ Crutches
_____ 4. Cardiovascular                _____ Cane
_____ 5. Hypertension                  _____ Wheelchair
_____ 6. Seizures                      _____ Prosthesis (specify)
_____ 7. Pregnancy
_____ 8. Vulnerable                    *Allergies*   NKA
__X__ 9. Mental Illness (specify)
_____ 10. Other (specify)              *Diet*   _X_ Regular

MDD, ADHD, OCD, PTSD, GAD, no Bi-Polar

                                       _____ Special Diet (specify)

### Tuberculosis Status
Skin Test:  Date Given: 11/24/08  Date Read: 11/26/08  Results: Ø mm

X-Ray:  Date: _____  Results: _____

### Current Medications

| Start Date | Stop Date | Medication | Dosage | Frequency | Route |
|---|---|---|---|---|---|
| 10/7/09 | 1/6/10 | Risperidone 1mg | 1mg | BID | po |
| 10/7/09 | 1/5/10 | Sertraline 100mg | 200mg | daily | po |
| 9/17/09 | 12/16/09 | Fiber-lax 625mg | 2tabs | TID | po |
| 9/3/09 | 12/2/09 | Doxepin 100mg | 100mg | prn HS | po |
| 9/3/09 | 9/3/09 | Lamotrigine 150mg (75mg) | ½ tab | daily | po |

Narrative: No suicidal ideations at this time

Date: 10/16/09      Signature/Title: _____ RN

*Circle Facility*

**Anoka County Jail**
325 East Jackson Street
Anoka, MN 55303
Phone: 763-323-5085
Fax: 763-323-5024

**Anoka County Medium Security**
7545 Fourth Avenue
Lino Lakes, MN 55014
Phone: 651-783-7633
Fax: 651-783-7540

**Anoka County Workhouse**
3300 4th Avenue
Anoka, MN 55303
Phone: 763-712-2229
Fax: 763-712-2709

## Minnesota Department of Corrections

| Age | 45 | Institution | MCF/SCL | Approximate SRD | ? |
|---|---|---|---|---|---|

**FAMILY HISTORY:** Indicate illness or cause of death (i.e. cancer, diabetes, stroke, heart, lung, HTN, epilepsy, TB, mental illness)

| Family member | Age | Deceased | Illness/cause of death | Family member | Illness/cause of death |
|---|---|---|---|---|---|
| Birth mother | 66 | Yes (No) | Ø | Children X 3 | Ø |
| Birth father | 73 | Yes (No) | HTN | | |
| | # living | # deceased | | | |
| Brother(s) | X 1 | | Ø | | |
| Sister(s) | X 1 | | Ø | | |

**OFFENDER PAST MEDICAL HISTORY & REVIEW OF SYSTEMS; CHECK IF HAS OR HAS HAD ANY OF THE FOLLOWING**

Past medical history:
1. ✓ Head injury with LOC briefly only
2. ✓ Fractures
3. ___ Thyroid problems
4. ___ Asthma or difficulty breathing
5. ___ Emphysema/COPD
6. ___ TB or lived with anyone with
7. ___ Hypertension
8. ___ Heart disease
9. ___ Stroke
10. ___ GERD or ulcers
11. ___ Hernia or rupture
12. ___ Hepatitis, liver problem

13. ___ Kidney disease
14. ___ HIV or AIDS
15. ✓ Sexually transmitted disease - ~~unsr~~
16. ___ Diabetes
17. ___ Seizures
18. ___ Cancer
19. ___ Bleeding disorder or sickle cell
20. ___ Attempted suicide

Review of systems (current or recent problem):
21. ___ Excessive fatigue or weakness
22. ___ Abnormal weight gain or loss
23. ___ Chronic cough or hemoptysis

24. ___ Night sweats
25. ✓ Ear, nose, throat problems ® tinnitus
26. ___ Dentures or partials
27. ___ Swollen lymph nodes
28. ___ Chest pain or shortness of breath
29. ___ Stomach problems
30. ___ Constipation or diarrhea
31. ✓ Hemorrhoids, black or bloody stools
32. ✓ Muscle, bone or joint problems
33. ___ Penile discharge
34. ___ Dysuria or trouble voiding
35. ___ Skin problems
36. ___ Unusual Bleeding

| Last TB Skin test | Date | ☐ Positive | ☒ Negative | Last Tetanus Date | < 10 yrs |
|---|---|---|---|---|---|

Current medications

Allergies (food, medication, insects)
NKDA

Bees

Chemical use:

Tobacco: occas. PPD 1-2/dy  25 Years    Problems with alcohol abuse: ☒ Yes ☐ No    Past CD Treatment ☒ Yes ☐ No

Drugs (list): Cocaine, MJ    History of IV Drug use: ☐ Yes ☒ No

| Nurse's | W [signature] RN | Date | 10-21-09 |
|---|---|---|---|
| | signature/title | | |

Comments on positive responses from PMH and ROS (identify by number)
① Construction accident lac. to head, brief LOC
② Rt ankle fx
㉕ Ringing in Rt ear [2 yrs ago noticed noise - sound ↑) reports exposure to loud noise/construction (now hissing) Lt starting.
㉛ Hemorrhoids noted prev. rectal exam (wants ROI Anoka Cty).
㉜ Rt leg/Lt knee crepitus

Past surgeries (Year and procedure)
Ø

Hospitalizations (Year and reason)
Lac repair / tendon repair - age 16
2nd digit on Rt.

| Practitioner | C. [signature] rns | Offender Name, OID, DOB | | |
|---|---|---|---|---|
| | signature/title | 203279 | 9/16/1964 | |
| | 10/26/09 | MICHAELSON, BARRY SCOTT | | |

Ⓜ MINNCOR
industries
5070020030
Confidential – Private Government Data

**HISTORY & PHYSICAL - MALE**

500 050
REVISED 9-08

DOC Ligons Michaelson 0000942

**PHYSICAL EXAMINATION – Male**

| Temp | BP | Pulse | Resp | Height | Weight | Visual acuity | | Conversational hearing |
|---|---|---|---|---|---|---|---|---|
| 96 | 118/77 | 61 | 16 | 5'7" | 198 | Uncorrected | L 20/25 | Normal   Abnormal |
| | | | | | | Corrected | R 20/25 | |

Physical Exam: (Check appropriate box, provide explanation for abnormal findings below)

| | NL | ABN | | | | NL | ABN | |
|---|---|---|---|---|---|---|---|---|
| Head | ☑ | ☐ | Atraumatic | | Rectal | ☐ | ☐ | Masses |
| Eyes | ☑ | ☐ | Pupils, EOM | | | ☐ | ☐ | Prostate |
| | ☑ | ☐ | Conjunctiva | | Not done/reason | | | *done at cty* |
| Ears | ☑ | ☐ | TM's, external ear canal | | | | | Hemocult (if done) |
| Nose | ☑ | ☐ | Inspection | | Genito/Urinary | ☐ | ☐ | Penis |
| Mouth | ☑ | ☐ | Inspection | | | ☐ | ☐ | Testicles |
| Throat | ☑ | ☐ | Inspection | | *done at cty* | ☐ | ☐ | Scrotum |
| | | | | | | ☐ | ☐ | Inguinal Hernia |
| Neck | ☑ | ☐ | Non-Tender | | Extremities | ☑ | ☐ | Inspection |
| | ☑ | ☐ | Range of Motion | | | ☑ | ☐ | Joints |
| | ☑ | ☐ | Thyroid | | *Lt knee* | ☑ | ☐ | Strength |
| | ☑ | ☐ | Lymph nodes | | *crepitus* | ☑ | ☐ | Feet |
| Breasts | ☑ | ☐ | Inspection | | Neurologic | ☑ | ☐ | Orientation |
| | | | | | | ☑ | ☐ | Mood |
| Respiratory | ☑ | ☐ | Breath sounds | | | ☑ | ☐ | Gait |
| | ☑ | ☐ | Chest wall symmetry | | | ☑ | ☐ | Cranial nerves II-XII grossly intact |
| | ☑ | ☐ | A/P diameter | | | ☑ | ☐ | Reflexes Achilles/patellar |
| Cardiac | ☑ | ☐ | Rate and rhythm | | | ☑ | ☐ | Gross motor |
| | ☑ | ☐ | Heart sounds | | | | | |
| | ☐ | ☐ | Carotids if over 50 | | Skin | ☑ | ☐ | Inspection |
| | ☐ | ☐ | Peripheral pulses | | Back | ☑ | ☐ | Inspection |
| Abdomen | ☑ | ☐ | Bowel Sounds | | | ☑ | ☐ | Range of Motion |
| | ☑ | ☐ | Non-Tender | | | | | |
| | ☑ | ☐ | Masses/hernia | | | | | |
| | ☑ | ☐ | Organomegaly (no change) | | | | | |
| | ☑ | ☐ | Ventral hernia | | | | | |

**Describe abnormal findings from physical examination:**

Lt knee crepitus

Tinnitus R > Lt

Refused - genital exam
" done at cty "
(also requests labs from cty - ROI signed)

**Current Medical Problems and Treatment Recommended:**

Arthritic changes - knees
Shoulders, advised NSAIDs

ROS - Anoka Cty for labs/ PE d rectal

**Work/Activity restrictions:**

Ø

Practitioner _C. Ness, RNP_

Date: 10/26/09

Offender's Name OID DOB
203279      9/16/1964
MICHAELSON, BARRY SCOTT

**STATE OF MINNESOTA**
**Department of Corrections**

| DATE & TIME | |
|---|---|
| )-09/1040 | ADMITTED TO MCF/SCL · On several meds for multiple stated diagnosis No immediate concerns. ————————— WJH ~ |
| 0-30-09/1200 | No Chart #1 Received from CD. —————— ⊗ Pettias OAST |
| 1-12-09 1106 | SRD___ TRF_X_ EXP___ WR___  1-13-09  to  MCF-FRB  vol 2 of 2 only. ——— ⊗ Thompson OAST |
| 1-13-09 1535 | Intake Health Screening Completed. No medical concerns. Concerned on getting his Zoloft + Lamictal medications. States he was dx. c̄ bi-polar, ADHD + PTSD and has personality disorder. Discussed c̄ offender how to contact Psych Services via Kite. States he has no problems on these medications and feels good. Offender here before in 2004. Given info packet on Health Services. ——————— RDwyn R |
| 11/16/09 0700 | Signed up for sick call @ RLU but declined when I asked him. Trinh RN |
| 12-09 1600 | Offender had continued to receive risperidone medication after expiration date. On call Dr. Krueger notified and stated due to offender's diagnoses it was ok to continue current meds until offender can be seen by Psych Services. Meds ordered from local pharmacy. ——— O. Bradley Lc? |
| 1-18-10 | 0900: AIMS screen complete. Rated "0". ⊘ ERS Note MLG |
| | Name Michaelson OID 203279 Draw Date: 2-26-10 Labs Lamictal <br> Signature SHyyn MT |
| | Name Michaelson OID 203279 Draw Date: 3-24-10 Labs EKG done. <br> Signature SHyyn MT |

NAME
203279          9/16/1964

MICHAELSON, BARRY SCOTT

**PROGRESS NOTES**

OID ____

Ⓜ MINNCOR

## STATE OF MINNESOTA
### Department of Corrections

**PRACTITIONER ORDER**

NAME: Michaelson    Barry                    OID  203279

DATE: 8·10·10    TIME: _____    ☐ AM ☐ PM

START: ① D/C Risperdal 2mg qhs.

② Risperdal 1mg qhs x 9d, then d/c.

③ Lab: LFT's, Hepatitis Screen

④ Referral to Health Services re: ↑ LFT's 5-10

⑤ D/C Camictal 100mg qAM

⑥ Camictal 150mg po q AM x 180d.

*DO NOT USE IF NO NUMBER*

---

**PRACTITIONER ORDER**

NAME: Michaelson    Barry                    OID  203279

DATE: 6/17/10    TIME: _____    ☐ AM ☐ PM

START:

Referral to Psych re ZOLOFT usage – not taking seriously.

*DO NOT USE IF NO NUMBER*

---

**PRACTITIONER ORDER**

NAME: Michaelson    Barry                    OID  203279

DATE: 6/14/10    TIME: _____    ☐ AM ☐ PM

START: ① Decrease LAMICTAL TO 100 mgpo

q AM x 120 DAYS

MAHbas RN 06/14/10 1100

*DO NOT USE IF NO NUMBER*

**WRITE ORDER FROM BOTTOM TO TOP**

Confidential – Private Government Data    DOC Ligons.Michaelson 0000892

Department of Corrections

| DATE OF ONSET | PROBLEM LIST | DATE RESOLVED |
|---|---|---|
| 9/01/10 | Hepatitis C, Genotype 1; Viral load 206,020 Fu/ml | |
| | TBI - LOC | |
| | | |
| | 12 may 2013 Hep C Fib score | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | Tinnitus Rt > Lt. (hx of exposure to loud noises) | |
| | | |
| | Arthritis - Knee / shoulder | |
| | crepitus Lt Knee | |
| | Fx Rt ankle | |
| | | |
| | hemorrhoids | |
| | | |
| | | |
| | | |
| | | |

NAME: _____ OID: _____ DOB: _/_/_

ALLERGIES: _ PCN  Bee Stings.

PROBLEM LIST

203279          9/16/1964

MICHAELSON, BARRY SCOTT

Confidential – Private Government Data

**STATE OF MINNESOTA**
**Department of Corrections**

PRACTITIONER ORDER

NAME: _MICHAELSON, BARRY_     OID _803279_
DATE: _09/08/10_    TIME: _____   ☐ AM ☐ PM

START:

Rte F/u on Hep C – next wk

*Jundink*

DO NOT USE
IF NO NUMBER

PRACTITIONER ORDER

NAME: _Michaelson, Barry_     OID _203279_
DATE: _08/30/10_    TIME: _____   ☐ AM ☐ PM

START:

Hepatitis C Viral load & Genotype
Referral to Physn – ASAP – requests to go
back on DISPROVAL

*Jundink*

(phone message left @ 12:55 @ x 2780 : Dr. Jorgenson)
(sec. office also notified @ 12:55 @ x 2621)

DO NOT USE
IF NO NUMBER

PRACTITIONER ORDER

NAME: _MICHAELSON, BARRY_     OID _203279_
DATE: _08/23/10_    TIME: _____   ☐ AM ☐ PM

START:

Rte F/u on Hepatitis screen – 1-2 wks

*Jundink*

DO NOT USE
IF NO NUMBER

**WRITE ORDER FROM BOTTOM TO TOP**

5070020042     PRACTITIONER ORDERS     MINNCOR

Confidential – Private Government Data     DOC Ligons,Michaelson 0000891

**STATE OF MINNESOTA**
Department of Corrections

| DATE & TIME | | | | | |
|---|---|---|---|---|---|

8/30/10
1040   WT _200_ TEMP___ BP _81_ P _71_ R _16_

↑ LFTs

G: HCV AB ⊕ — yet not avail, had done IV drugs
in FLORIDA in the '80s;
Had discontinued RISPERDAL, but now went
to go back on RISPERDAL

A: HCV AB ⊕ ; ↑ LFT

P: HCV Viral load & GenoType
referral to psych PRN

9/3/10
1335   WT _203_ TEMP _96.3_ BP _ _ P _86_ R _14_

M Vronoppen

**Progress Note MCF-STW        MICHAELSON, Barry Scott        OID#203279        09/03/2010**
S: The patient returns to clinic today for a follow-up on recent blood draw, which was for hepatitis C viral load
and genotype. This blood draw was apparently done two days ago and the results have not yet been returned.
Thus the patient is informed that he will be called again to clinic when the results have come in.
Stanley Quanbeck, M.D./Rrp/3270/Dictated, but not reviewed.

9/23/10   WT _200_ BP _120/82_ P _97_ R _16_
105.   MD FU HEP C.

**Progress Note MCF-STW        MICHAELSON, Barry Scott        OID#203279        09/23/2010**
S: The patient has returned for a follow-up on hepatitis C and that he was previously informed that the HCV
antibody test was positive. This was followed with a HCV viral load and genotype, and he is now informed that
the HCV viral load is in fact active with a count of 206,000 International Units per mL and that his type is 1B.
The patient reports today that he is now beginning to have pain in the right upper quadrant with bloating and
occasional pain into the right shoulder. He states that he has been reading up on hepatitis C and has been
reading up on the various symptoms that may be associated with hepatitis C. He notes that before he had been
told that he had hepatitis C, he had had no such complaints.
A:     Hepatitis C with active viral load and type I genotype. Recent right upper quadrant pain.
P:     Ultrasound of the liver and gallbladder to assess for possible gallbladder disease but more likely this is
psychosomatic given his reading of possible symptoms of hepatitis C. Referral to nurse practitioner, Mariam for
follow-up of the hepatitis C and as much as this patient is desirous of going ahead with treatment if possible.
Stanley Quanbeck, M.D./ss/5455/Dictated, but not reviewed.

| 2___79 | 9/16/1964 | | OID |
|---|---|---|---|

MICHAELSON, BARRY SCOTT

PRACTITION JR'S NOTES

MINNCOR

**STATE OF MINNESOTA**
**Department of Corrections**

CTITIONER ORDER

NAME: Michaelson Barry                          OID  203279.
DATE: 10/15/10      TIME:  1210      ☐ AM ☒PM

START: 1) Start  HAV & HBV vaccines
2) Obtain TSH
3) RTC in February 2011.                        10/15/10
          H Suttweeve                                   1310
                                                        S Callehu

DO NOT USE
IF NO NUMBER

**PRACTITIONER ORDER**

NAME: Michaelson, Barry                         OID  203279
DATE: 10/10/10      TIME: _____    ☐ AM ☐ PM

START:
          RTC F/u on U.S. & abdomen - next wk.
10-10                                     Sandwell
1542
EFullerten

DO NOT USE
IF NO NUMBER

**PRACTITIONER ORDER**

NAME: Michaelson, Barry                         OID  203279.
DATE: 09/23/10      TIME: _____    ☐ AM ☐ PM

START:
          in house U.S. of Gb
          referral to K.P. Miriam - Hep C
                                           Sandwell
9/24/10
@ 745
C Callehu

DO NOT USE
IF NO NUMBER

**WRITE ORDER FROM BOTTOM TO TOP**

5070020042                **PRACTITIONER ORDERS**              Ⓜ MINNCOR
                                                                  industries

Confidential – Private Government Data                    DOC Linoos Michaelson 0000880

**STATE OF MINNESOTA**
Department of Corrections

| ATE & TIME | |
|---|---|
| 10-22-10 1630 | WT 98 TEMP 41.7 BP 117 P84 R18 |
| | F/U US of abdomen |

**Progress Note MCF-STW**       **MICHAELSON, Barry**       **OID#203279**       **10/22/2010**

S: The patient returns to clinic today for a follow-up on an ultrasound of the abdomen, which was ordered to assess for possible gallbladder stones. The report of the ultrasound shows that he does have gallstones without gallbladder wall thickening with the impression being cholelithiasis with possible cholecystitis, prominence of the spleen and possible fatty infiltration. The patient continues to complain of bloating and recurrent right upper quadrant pains. Given the ultrasound report that he has cholelithiasis with only possibility of cholecystitis I think at this time it would be prudent to refer him to gastroenterologist to evaluate whether he should proceed with a cholecystectomy.

A:   Cholelithiasis with possible cholecystitis because of a positive Murphy sign, possible fatty infiltration of the liver, prominence of the spleen, hepatitis C genotype I with a viral load of 206,000 International Units per milliliter.

P:   Offsite referral to gastroenterology for evaluation of the cholelithiasis with possible cholecystitis and continued symptoms.

Stanley Quanbeck, M.D./ss/8807/Dictated, but not reviewed.

| 8/10/11 | Note dictated | 1254 | Ellerbusch CNP |

**Progress Note MCF-STW   MICHAELSON, Barry**       **OID#203279**       **08/10/2011**

S: The patient came to the Health Services. He evidently came from one of the shops and he had cut his left forearm approximately 3 inches above the wrist on the medial side. He evidently was lifting and caught his arm on an uncovered metal pipe causing a three-cornered tear in his skin. This will not stop bleeding. It has been bleeding quite a bit. The area was cleansed using Hibiclens and sterile water. The patient agreed to have sutures placed. Using sterile technique, the area was cleansed. Using 1% Xylocaine in a Tuberculin syringe, the area was injected. Using 4-0 Ethilon suture, four interrupted sutures were placed to close the laceration. The patient's tetanus diphtheria booster is current as of 2007. The patient was given Band-Aids to keep the area covered and that we would have him return in 10 days for suture removal. The patient did sign an approval to have the suturing done.

Judy Ellerbusch, CNP/isjr/1254/Dictated, but not reviewed

| 8-23-11 MOS | WT | TEMP | BP | P | R | 10d RTC - F/u suture removal - (X Stevens CPN) |
|---|---|---|---|---|---|---|

"I'm rea cancel of appt. "I'm removed sutures's hisself. Stating "My mom told me to + She's a dctor." I'm advised the wound needs to be seen for proper healing. Four pinpoint O/As noted along wound S which were scabbed. Ø S/sx inf. Conferred c NP. Ø need to be seen. — (X Stevens CPN)

| 203279 | 9/16/1964 | | OID |
|---|---|---|---|

MICHAELSON, BARRY SCOTT

PRACTITIONERS NOTES

Confidential – Private Government Data