## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA
15-CV-2210 PJS/BRT

RONALDO LIGONS,
BARRY MICHAELSON,
LAWRENCE A. MAXCY,
DEVON FARLEY,
individually, and on behalf of those similarly situated,

      Plaintiffs,

v.

MINNESOTA DEPARTMENT OF CORRECTIONS,

THOMAS ROY,
Minnesota Commissioner of Corrections,
in his official capacity,

DR. DAVID A. PAULSON, M.D.,
in his official capacities for actions
under color of law as Medical Director,
Minnesota Department of Corrections,

NANETTE LARSON,
in her official capacities
for actions under color of law as Health Services Director,
Minnesota Department of Corrections,

      Defendants

## THIRD AMENDED CLASS ACTION COMPLAINT—JURY DEMANDED

### Introduction

1.      Defendants argue they have mooted the claims in the Second Amended Complaint by providing Hepatitis C virus (HCV) treatment to named-Plaintiff, **RONALDO LIGONS**, and releasing named-Plaintiff **BARRY MICHAELSON** from custody. This Third Amended Complaint, adding two additional named Plaintiffs,

1

DEVON FARLEY and LAWRENCE MAXCY is a timely response to Defendants' arguments regarding mootness and class representation brought about by Defendants decision to treat Mr. LIGONS for HCV.

2.      Further, after the date for the amendment of pleadings had passed on 4 January 2016, Defendants promulgated a January 2016 HCV Treatment Protocol that purports to acknowledge, and partly adopt,  the American Association for the Study of Liver Disease (AASLD)/Infectious Disease Society of America (IDSA) standard of care as demanded in Plaintiff's Second Amended Complaint.  This Third Amended Complaint, responding to the Defendants' current HCV policy, is a necessary and timely response to Defendants' tactics to moot Plaintiffs' claims, after Plaintiff also obtained significant requested relief.

3.      After 4 January 2016, the Minnesota Department of Corrections, has admitted that the AASLD/IDSA Guidelines requiring direct acting anti-viral (DAA) drugs are the medical standard of care for the treatment of HCV for all persons infected with Hepatitis C regardless of the severity of the infection, at least for patients who are not prisoners.

4.      The Minnesota Department of Corrections (MN DOC) and its proposed expert witness admit it has substituted the AASLD/IDSA medical standard of care with a non-medical "correctional standard of care" in its January 2016 HCV treatment protocol, which remains in effect in May 2017.

5.      The MN DOC January 2016 HCV treatment protocol purports to treat only inmates infected with HCV and  fibrosis levels of FIB3 or 4, on a 4 point scale -  subject to the exclusive approval by the Medical Director, DAVID PAULSON, M.D., and admits to

denying the AASLD/IDSA standard of care DAA medications to the majority of HCV-positive inmates with fibrosis scores F0 to F4.

6.      Defendants admit the MN DOC January 2016 HCV treatment protocol is contrary to the AASLD/IDSA medical standard of medical care, which requires DAA medication treatment for "nearly <u>all</u>" persons infected with HCV, irrespective of fibrosis score. The DOC admits to treating 77 of 1000 to 1500 inmates with active HCV, according to its own estimates.

7.      The issue now before the Court is whether Defendants may impose a lower, non-medical "corrections standard of care" to replace the AASLD/IDSA Guidance Panel medical community standard of care in the treatment of HCV-positive patients who are prisoners.

8.      This is a class action that seeks declaratory and injunctive relief under 42 U.S.C. §1983 for violation of the Eighth Amendment as a result of the deliberate indifference of Defendants to the serious medical needs of the Plaintiffs, to be cured of the Hepatitis-C virus (HCV), the members of the class: (a) who are current inmates infected with HCV and have 12 weeks of incarceration left;  (b) who are not infected, or have been cured, and wish to avoid being infected or re-infected with HCV by being exposed to HCV-positive inmates.

9.      This is a class action that seeks declaratory and injunctive relief under 42 U.S.C. §1983 for violation of the Equal Protection Clause of the Fourteenth Amendment and legal relief under §504 of the Rehabilitation Act of 1973 (§504) and Title II of the Americans with Disabilities Act as Amended (Title II, ADA) for discriminatory denial of

the medical services in accordance with the community standard of medical care because of their HCV disability.

## JURISDICTION AND VENUE

10.     The Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§1331 (federal question jurisdiction) and 1343 (civil rights jurisdiction).

11.     Venue is proper pursuant to 28 U.S.C. §1391(b).

## PARTIES

12.     Plaintiff RONALDO LIGONS is currently incarcerated at Minnesota Correctional Facility, Faribault, Minnesota.

13.     At the beginning of this lawsuit, Mr. LIGONS was untreated for Hepatitis C despite having requested the AASLD/IDSA standard of care and exhausting his remedies.

14.     In February 2017, Defendants chose to treat Plaintiff LIGONS for HCV infection with a new DAA drugs  that cure Hepatitis C, in 12-weeks, whether he actually met the January 2016 HCV Treatment Protocols or not.

15.     The Defendants began to treat Mr. LIGONS after the deadline for amending the complaint (4 January 2016, ECF43) and have argued in their March 2017 Motion for Summary Judgment (ECF106) and Memorandum that the case is moot as a result.

16.     As a result of Mr. LIGONS' change in circumstance, he brings this action on his own behalf and on behalf of all prisoners in DOC custody who do not have HCV, or have been cured of HCV and who do not want to be infected or re-infected with Hepatitis C while incarcerated.

17.      Plaintiff BARRY MICHAELSON was infected with HCV by exposure to the blood of a Hepatitis C – infected cellmate while incarcerated in 2010.

18.      Mr. MICHAELSON was denied  treatment for Hepatitis C infection with DAA drugs as required by  the AASLD/IDSA medical community standard of care and exhausted his administrative  remedies.

19.      Defendants Minnesota Department of Corrections and Commissioner ROY released Mr. MICHAELSON from Minnesota Correctional Facility Stillwater (MCF Stillwater) on 27 March 2017, after the deadline for amending the complaint (4 January 2016, ECF43).

20.      Plaintiff BARRY MICHAELSON sues in his individual capacity, to receive DAA treatment at DOC expense, because he remains a parolee and presented a prescription for Harvoni or equivalent DAAs, more than twelve weeks before his release.

21.      Plaintiff LAWRENCE MAXCY is currently incarcerated at Minnesota Correctional Facility, Faribault, Minnesota.

22.      Mr. MAXCY is infected with HCV and has sought treatment with the AASLD/.IDSA standard of care which Defendants have denied repeatedly, and he has exhausted his administrative remedies.

23.      Plaintiff DEVON FARLEY is currently incarcerated at Minnesota Correctional Facility, Faribault, Minnesota.

24.      Mr. FARLEY was not infected with HCV when he went into the custody of MNDOC.   He tested positive for Hepatitis C infection in 2016.   He demanded AASLD/IDSA standard of care treatment for HCV.   Mr. FARLEY exhausted his

administrative remedies in March, 2017, after the deadline for amending the Complaint (4 January 2016, ECF43).

25.      Mssrs. LIGONS, MAXCY and FARLEY bring this action on their own behalf and on behalf of all prisoners in DOC custody who have HCV, whether diagnosed or not.

26.      Defendant MINNESOTA DEPARTMENT OF CORRECTIONS (MN DOC,) is an agency of the state of Minnesota, with its principal place of business and headquarters in the city of St. Paul, Ramsey County, state of Minnesota, and is a recipient of federal funds.

27.    Defendant THOMAS ROY, an adult individual, (Roy, Commissioner Roy, Commissioner) is the Commissioner of Corrections of the MINNESOTA DEPARTMENT OF CORRECTIONS (MN DOC), and is sued in his official capacity.

28.     Defendant DAVID A. PAULSON, M.D. is an adult individual and the Medical Director of MN DOC, with his office in the Central Office of MN DOC,   responsible for medical services within the MN DOC system.

29.    Dr. PAULSON admitted in correspondence on March 3, 2015 that he is aware of the AASLD/IDSA Guidelines for treatment of Hepatitis C infection, which he has acknowledged as the source of the medical standard of care.

30.    Dr. PAULSON is responsible for the creation and execution of contract 70449, as amended, which requires Centurion of Minnesota LLC to treat MN DOC inmates infected with HIV/AIDS in accordance with the Centers for Disease Control and Prevention (CDC) and Twin Cities standard of medical care, but does not require the same medical

community standard of care for treatment of HCV.

31.     Dr. PAULSON is the author of, and final authority for interpretation and execution of, the Minnesota Department of Corrections current Hepatitis C treatment policy, effective January 2016.

32.     The January 2016  Hepatitis C policy only authorizes treatment of inmates infected with HCV presenting fibrosis  scores of FIB3 or 4,  on a 4-point scale, subject to the exclusive  decision  of  Dr.  PAULSON,  which  contradicts  the  AASLD/ISDA  medical standard of care which requires DAA  treatment of all HCV infected patients.

33.      A supplement to Contract 70449, adding $3,000,000 to treatment of Hepatitis C infected inmates, adds monies sufficient to treat 40 of the potential 3,500  inmates with Hepatitis C infection, according to the Minnesota Department of Corrections' own data.

34.     To this date, Dr. PAULSON has refused to prescribe DAA medications in accordance with the AASLD/IDSA community standard of professional medical care for HCV, and has refused to require testing of all inmates for Hepatitis C infection.

35.     Plaintiffs sue Defendant DAVID PAULSON in his official capacity for actions taken under color of law as Medical Director, MN DOC.

36.     Defendant NANETTE LARSON is an adult individual and the Director of Health Services in the Central Office of MN DOC.

37.     Defendant LARSON is neither a medical doctor nor a registered nurse, but she supervises the entire MN DOC medical staff, including Dr. PAULSON.

38.     Grievances arising from the denial of medical care, and the denial of Plaintiffs' requested medical care by MN DOC staff that are appealed to the Central Office, are

reviewed and ruled upon by NANETTE LARSON. Plaintiffs' denials of requested HCV medical care that are appealed to the Central Office are reviewed and ruled upon by NANETTE LARSON, after consultation with Defendant PAULSON.

39.     Defendant LARSON is the last authority to approve or deny a medical grievance of an inmate before exhaustion of administrative remedies takes place.

40.     Dr. PAULSON and Ms. LARSON, jointly and severally, denied Hepatitis C treatment with direct-acting antiviral medication to Plaintiffs LIGONS, MAXCY and FARLEY.

41.     Plaintiffs sue Defendant LARSON in her official capacity for her actions taken under color of law as Director of Health Services, MN DOC.

## CLASS ACTION ALLEGATIONS

42.     Plaintiffs brings this action on behalf of themselves, and others similarly situated, (the "Class") pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2).

43.     Plaintiffs seeks to represent the following Class and sub-classes on claims for declaratory and injunctive relief and damages:

(a)     All persons (male and female) incarcerated in Minnesota Department of Corrections facilities with 12 weeks remaining on their sentence; who test HCV-positive  by RNA test and not only antibodies test, and who do not "opt-out" of HCV treatment, required by the current AASLD/IDSA Guidelines. *Erickson v. Pardus,* 551 U.S. 89, 90, (2007)

(b)     All currently incarcerated persons who are uninfected,  have been cured, or not aware of their HCV status, who are fearful of being exposed to HCV because of MN DOC

policies and practices that make it impossible to know if any other inmates with whom they come in contact are HCV-positive, or not. *Helling v. McKinney*, 509 U.S. 25, 33 (1993).

44.    Plaintiffs seek declaratory and injunctive relief to enjoin Defendants' actions, policies and practices that infringe on their rights, impose discriminatory denial of medical services in accordance with the community standard of medical care because of their disability, Hepatitis C, and seek prospective, equitable relief of the 12 week DAA cure per the AASLD/IDSA professional community standard of medical care, and ongoing screening for HCV.

45.    The requirements of Rules 23(a) are met by this action:

46.    <u>Numerosity</u> - under Fed. R. Civ. P. 23(a)(1): The precise number of inmates in the Class and their identity are within the control of Defendants, and  estimated by the Defendants at between 10% and 35% of the general prison population. (*Health Services Unit, Chronic Hepatitis C Management and Procedures*, 5/9/2012,  para. 1, LARSON Dep. 1,000 to 3,500 of 10,000 prison population).   All inmates face the danger of imminent infection from untreated fellow inmates.

47.    <u>Commonality </u>- under Fed. R. Civ. P. 23(a)(2): Questions of law and fact are common to the Class, including but not limited to: (1) the nature and scope of the safer, more effective AASLD/IDSA Standard-of-Care is common to all class members; (2)) whether the MN DOC policy preventing HCV treatment using non-medical barriers must be replaced with the AASLD/IDSA standard-of-care is common to the class; (3) whether the MN DOC refusal to adhere to the AASLD/IDSA Standard-of-Care violates the Eighth Amendment is common to the class; and (4) the commonality of declaratory and

prospective equitable relief. <u>Typicality</u> - Fed. R. Civ. P. 23(a)(3): Plaintiffs' claims are typical of the Class members because Plaintiffs and all Class Members were injured by the same wrongful policy and practices of Defendants as described in this Complaint. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class Members and are based on the same legal theories and factual question relating to the AASLD/IDSA standard-of-care.

48.     <u>Representativeness</u> - Fed. R. Civ. P. 23(a)(4): (1) Plaintiffs will fairly and adequately protect the interests of the Class. (2) Plaintiffs have no interests that are contrary to or in conflict with those of the Class they seek to represent. (3) Plaintiffs are represented by competent and skilled counsel whose interests are aligned with the interests of the Class. (4) Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the Class would be proper. (5) Defendants have acted or refused to act with respect to the Class, thereby making appropriate final injunctive relief or corresponding injunctive relief with regard to Class Members as a whole and certification of the Class under Rule 23(b)(2) proper; and (6) Counsel for Plaintiffs have developed a particular expertise in the rapidly changing science underlying the changes in the AASLD/IDSA standard-of-care and changing protocols in federal agencies and other private and public institutions. This research has resulted in the first articles published on this issue, and this suit, which is the first in the nation.

49.     <u>Superiority</u> - Fed. R. Civ. P. 23(b)(3): (1) A class action is superior to other available methods for the fair and efficient adjudication of this litigation since joinder of all members of the class is impracticable. (2) The number would prove unduly burdensome and

inefficient for the Court and parties.  (3) Because a common set of facts, grievances and remedies predominate over individual issues, individual litigation increases expenses to all parties, and better management of consistent adjudication and relief by a single court is in the interest of all parties.  (4) Conduct of this action as a class action will protect the rights of all class members and promote judicial efficiency and consistency.  Notice can be provided to class members by United States mail.

50.     These common questions predominate over any questions affecting only individual class members. Defendants have acted and refused to act on grounds generally applicable to the class so that final declaratory and injunctive relief would be appropriate to the class as a whole.

51.     Plaintiffs have a strong personal interest in the outcome of this litigation, and they are represented by competent counsel who will adequately and fairly protect the interests of the class.

52.     A class action is superior to any other available method for a fair and efficient adjudication of this controversy, and will avoid mootness argued by Defendants. Separate actions by individual members of the class would create a risk of inconsistent or differing adjudications and delay the ultimate resolution of the issues at stake.


## FACTS

### Hepatitis C Defined

53.     Hepatitis C is a blood borne disease caused by the Hepatitis C virus ("HCV") that brings about inflammation that damages liver cells. It is a leading cause of liver disease and

11

liver transplants.

54.      HCV was not discovered until 1989. Blood screening was not possible until the mid-1990's. Approximately eighty percent of people who become infected with the Hepatitis C virus will develop chronic Hepatitis C.

55.      Chronic Hepatitis C patients develop fibrosis (liver scarring), which can worsen liver function until the patient develops cirrhosis. Ultimately, patients may end up with end stage liver disease, cancer, or other serious illnesses.  Some patients will need a liver transplant, and others will die.

56.      Hepatitis C is transmitted by infected blood. Methods of transmission include intravenous drug use (via shared equipment), tattooing (same), blood transfusions (with infected blood), and sex.

57.      HCV is a chronic, potentially fatal blood-borne viral disease that substantially and materially degrades the liver's ability to purify blood and to convert substances in the blood to glucose, inflicting progressive damage on the liver, which substantially and materially impairs the body's digestive and circulatory systems each day.

58.      If left untreated, even asymptomatic HCV causes cirrhosis, or destructive scarring of the liver, liver cancer, and may require a liver transplant, and eventually cause other symptoms to those it afflicts.  The progression of Hepatitis C from F0 to F4 is not linear; sudden progression is an expected manifestation of the disease.

59.      The Centers for Disease Control recommends that each person in the United States born between 1945 and 1965 be tested at least once for Hepatitis C, for no reason other than date of birth. The Centers for Disease Control (CDC) estimate the potentially

fatal blood-borne Hepatitis-C Virus (HCV) infects some 4 million Americans of all ages and walks of life (about 2% of the population) and causes more deaths than HIV/AIDS.

60.     It is widely accepted that the number of reported cases of Hepatitis C nationwide understates its actual prevalence. In 2000, the United States Surgeon General called Hepatitis C a "silent epidemic," and estimated that as much as two percent of the adult U.S. population had Hepatitis C.

61.     The incidence of Hepatitis C is not diminishing, and its effects are worsening. In 2011, the CDC reported that Hepatitis C had overtaken HIV as a cause of death.

62.     The CDC recognizes incarceration as a risk factor for contracting  HCV – because of the high percentage of HCV– infected inmates and risk of HCV exposure  in prison.

63.     Between 20 - 50% of America's 2.3 million inmates are HCV-positive and according to the CDC, therefore, most prisoners and 98% of the general population are at risk from unscreened, untreated inmates.

64.     Eliminating HCV from corrections facilities filters HCV from the entire nation's blood pool by making prisons and jails sites where treatment is readily available to at-risk populations to stop transmission of the virus outside of prisons and jails.

65.     HCV can be spread by mere contact with an infected individual's blood, under such circumstances as:  (a) physical activity in sports,  (b) tattooing, (c) use of a needle not properly cleaned and sterilized, (d) exposure to an infected person's blood in the course of medical care, (e) barber and cosmetology care, (f) sexual activity, (g) sharing of eating utensils and food, (h) sharing razors or other personal grooming supplies, (i) sharing

bathrooms or shower facilities, (j) sharing living quarters, or (k) physical violence between inmates or involving staff.

66.    As a communicable disease, HCV poses an unreasonable and substantial risk of serious present and future medical and physical harm to the Plaintiffs, and the general public, after Plaintiffs' release from prison. *Roe v. Elyea*, 631 F.3d 843 (7th Cir. 2011), *Helling v. McKinney*, 509 U.S. 25, 33 (1993).

67.    HCV substantially and materially impairs the individual's, and these Plaintiffs', major life activities of (a) self-caring, (b) social interaction with other persons, (c) manual tasks particularly those involving knives, scissors, pins, needles, toothbrushes, eating utensils, or shaving razors, (d) walking and locomotion in view of the progressive attack and pain infliction in the joints that is a medically identified manifestation of hepatitis C in these Plaintiffs and many other Hepatitis C patients (e) reproduction, and (f) life itself.

68.    Each day treatment is postponed, the likelihoods of cirrhosis of the liver, liver cancer, a liver transplant, and death from HCV grow for each member of the Class, as does the likelihood of infection for those with whom they come in contact in MN DOC facilities, and for members of the general public after they are released into the general population outside prison.

<u>AASLD/IDSA Guidance Panel and the Standard of Care</u>

69.    The 12 week cure was not possible until late 2013 with FDA approval of direct acting antiviral (DAA) drugs Sovaldi and Olysio; and a twelve week oral cure without toxic Interferon injections was not possible until late 2014, with FDA approval of Harvoni and

Viekira-Pak.

70.     In late 2013, the American Association for the Study of Liver Disease (AASLD) and the Infectious Disease Society of America (IDSA), the two leading professional bodies for specialists treating HCV, established the HCV Guidance Panel to provide medical practitioners with up to date recommendations for the use of the DAA drugs.   In pleadings, depositions and affidavits, Defendants admit that the AASLD/IDSA Guidance Panel has established the HCV medical standard-of-care as published and regularly updated on the Guidance Panel website: www.hcvguidelines.org.

71.     On June 29, 2015, the AASLD/IDSA Guidance Panel established non-Interferon DAA drugs, Harvoni and Viekira-Pak, as the recommended medical standard-of-care for HCV-infected patients for all patients and all levels of infection.   Other DAA drugs have come to market since that time that are also recommended by the AASLD/IDSA Guidance Panel.

72.     The new AASLD/IDSA medical standard of care: (a) specifically rejects Interferon treatments; (b) recommends *immediate* treatment with the new medication for all HCV-infected patients without pre-condition to reach sustained SVR (Sustained Viral Response) to "cure" HCV as soon as possible; (c) specifically rejected rationing (prioritizing) of DAA medications by prescribing physicians; and (d) specifically rejected misplaced interpretation of prior AASLD/IDSA guidance, to excuse rationing or prioritization by FIB4 scores or any other criterion other than less-than-six-month expected lifespan for reasons not related to Hepatitis C.

73.     Cost of providing the medical standard of medical care, after an HCV diagnosis, is

not a lawful defense for delaying or refusing to treat prisoners under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976).

74.    *Erickson v. Pardus,* 551 U.S. 89, 90, (2007), acknowledges that conscious delay, denial, or interference in medical treatment of hepatitis C for non-medical reasons -- standing alone -- states a plausible claim against prison officials for deliberate indifference to the serious medical needs of a prisoner in violation of U.S. Const. amend. VIII and XIV through 42 U.S.C. §1983.

75.    Defendant Medical Director Dr. PAULSON, M.D. Director of Health Services LARSON, had actual knowledge of the AASLD/IDSA HCV Guidance Panel website *www.hcvguidelines.org,* (specifically referenced by Dr. PAULSON in his March 3, 2015 correspondence), as the medical standard of care for HCV infected patients.  (See *United States v. Kubrick*, 444 U.S. 111 (1979) (for discussion of medical standard of care.)

76.    At all times relevant to this lawsuit, Defendant MN DOC, Dr. PAULSON, and NANETTE LARSON, jointly and severally, have willfully denied, or, with deliberate indifference to the serious medical needs of the Plaintiffs, denied the AASLD/IDSA current medical professional HCV-treatment community standard of individualized medical care to Plaintiffs and similarly situated HCV positive inmates.

Discriminatory Denial of Medical Services and Deliberate Indifference
to HCV-Infected Inmates as Compared to HIV/AIDS-Infected Inmates

77.    Contract #70449 ("the Contract") governing the business relationship between Defendant MN DOC and Centurion, signed on October 17, 2013 requires that Defendant Centurion provide "infectious disease screenings" upon inmates' intake.  Such screening

for HIV/AIDS takes place regularly, but such screening does not include HCV infections.

78.      Contract #70449 obligates Centurion to provide "all treatment for HIV/AIDS <u>in a</u> <u>manner consistent with applicable standards of medical care, *including CDC guidelines*</u> *and the Twin Cities' area community standard of care.*  The **CONTRACTOR** shall be responsible for all medical costs associated with the screening and treatment of HIV/AIDS." (emphasis added)

79.      However, with respect to "Hepatitis C Treatment" Contract #70449 requires *only*: "services for the diagnosis and treatment of Hepatitis C <u>within the then current treatment</u> <u>guidelines and *then current Hepatitis C treatment protocols established by the DOC,* as</u> <u>incorporated herein.</u>"

80.      Contract #70449, on its face, specifically instructs Defendant Centurion that it *must* treat inmates with the life-threatening, incurable blood-borne infection HIV/AIDS according to the current professional medical community standard-of-care, but discriminates against inmates with the life-threatening, but curable, blood-borne HCV infection by limiting treatment to internal protocols of  Defendant MN DOC.

81.      At all times relevant to this lawsuit, Defendant **MN DOC**, its agents, employees, representatives, or contractors including **CENTURION**, provide free, routine screening for HIV/AIDS within 14 days of prisoners' intake, or in response to a "kite" written request to a facility health service, with treatment available at all **MN DOC** facilities.

82.      In contrast, at all times relevant to this lawsuit, Defendant **MN DOC**, its agents, employees, representatives, or contractors including **CENTURION**, provide **NO** routine screening for HCV during or after intake to identify sources of infection, or to protect

inmates from sources of infection.

83.      There is no excuse for discriminatory denial of medical services in accordance with the professional standard of medical care, because of the disability of Hepatitis C rather than HIV/AIDS.

Protection of Uninfected Inmates and the Public

84.      *Helling v. McKinney,* 509 U.S. 25, 33 (1993), holds that it is a violation of Eighth Amendment prohibitions against cruel and unusual punishment knowingly to hold inmates in conditions that lead foreseeably to exposure to life-threatening conditions, including HCV.

85.      The Defendants' promulgated the January 2016 Minnesota Department of Corrections Hepatitis C Treatment Protocol as a substitute for  the June 29, 2015 AASLD/IDSA (www.hcvguidelines.org) standard of professional medical care that prescribes direct-acting antiviral medication treatment for all HCV infected inmates.

86.      For non-medical reasons of policy and practice, MN DOC, Dr. PAULSON, and Ms. LARSON, jointly and severally, at all times relevant to this lawsuit, have systematically denied, and continue to deny systematically, MN DOC inmates' requests for treatment with the AASLD/IDSA medical community standard of care.

87.      The Defendants' joint and several willful, deliberate actions make progression of Plaintiffs' cases of Hepatitis C infection foreseeable, and increased public expense inevitable.

88.      Day by day, uninfected inmates, and the public at large, run increasing risks of HCV infection which Defendants could "cure;" to these inmates' serious, medical needs of

freedom from, and knowledge of, infection by HCV, the Defendants, jointly and severally, are deliberately indifferent, for reasons of non-medical policy and practice.

89.       In the case of prisoners who are released without having been treated, who will require treatment for the Hepatitis C and also the complications therefrom, such delay amounts to patient-dumping on the hospitals and medical providers who will inherit these patients, and manifests a clear and present public health danger to non-infected Hepatitis C infected inmates and the outside general public.

90.       In all relevant aspects, Defendants have acted, and are acting, under color of law, custom and policy.

## CLAIMS FOR RELIEF

## CLAIM I: CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE VIII AND XIV AMENDMENTS TO THE U.S. CONST.

91.   Plaintiffs reallege and reassert every claim and incorporated exhibit which constitute averments of imminent danger of serious physical, medical injury.

92.       By their policies, practices, and acts, Defendants are violating, or have violated, the rights of Plaintiffs LIGONS, MICHAELSON, MAXCY, FARLEY, and those similarly situated,  to be free from cruel and unusual punishment guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983 as a result of their deliberate refusal to treat Hepatitis C infection in accordance with AASLD/IDSA HCV medical treatment community standard of care.

93.       Defendants admit the AASLD/IDSA HCV Guidance Panel medical standard of care requires treating "nearly all" HCV positive patients with direct acting anti-viral

(DAA) drugs, but Defendants admit to have deliberately, knowingly and intentionally adopted a non-medical "correctional" standard of care that does not provide DAA drug treatment for the vast majority of HCV-positive inmates, contrary to the medical standard of care, in violation of the Eighth and Fourteen Amendments.

94.    Allegations of failure to provide treatment for Hepatitis C infection state a claim for a serious medical need. *Erickson v. Pardus,* 551 U.S. 89, 90, (2007) particularly when, as here, Defendants' January 2016 Hepatitis-C Protocol specifically exclude from treatment the majority of HCV-positive inmates (with fibrosis scores under FIB3).

## CLAIM II: U.S. CONST. AMEND. VIII AND XIV, THROUGH 42 U.S.C. §1983; PLAINTIFF LIGONS AGAINST DEFENDANT MINNESOTA DEPARTMENT OF CORRECTIONS AND COMMISSIONER TOM ROY IN HIS OFFICIAL CAPACITY

95. Plaintiffs reallege and reassert every claim and incorporated exhibit which constitute averments of imminent danger of serious physical, medical injury.

(c)    First, Plaintiff LIGONS and all persons similarly situated who were HCV-free when entering MNDOC, who have been cured of HCV or are otherwise HCV negative and, each day, face "imminent danger of serious physical injury" from being exposed to debilitating and potentially fatal HCV that Defendants could eradicate from the MNDOC prison population with the AASLD/IDSA medical community standard of care, and decline to do so, for non-medical reasons.

96. Second, Defendants Minnesota Department of Corrections and Commissioner TOM ROY , through the actions of their agents, employees, or representatives, Defendant

PAULSON,  and Defendant LARSON, were aware of, and deliberately indifferent to, Plaintiffs LIGONS'  and all other persons' similarly situated to them, respective serious medical needs, specifically, spending each day facing "imminent danger of serious physical injury" from being exposed to the debilitating and potentially fatal virus, HCV, from other inmates.

97. Third, Defendants Minnesota Department of Corrections and Commissioner ROY, Defendant PAULSON, and  Defendant LARSON, have a responsibility to assure proper safe and healthy, HCV-free, living conditions and care for Plaintiffs LIGONS and all other persons similarly situated. *Helling v. McKinney*, 509 U.S. 25, 33 (1993).

98. Fourth, Defendants Minnesota Department of Corrections, Commissioner ROY, Defendant PAULSON, and Defendant LARSON,  through the actions of their agents, employees, or representatives, and the kites and grievances of the plaintiffs, haveactual knowledge of a substantial risk that Plaintiffs LIGONS, , and all others similarly situated who were HCV-free when entering Minnesota Department of Corrections incarceration, or who have been cured of HCV, have a serious medical need, specifically, spending each day facing "imminent danger of serious physical injury" from being exposed to the debilitating and potentially fatal virus, HCV, from other inmates, infected with the hepatitis C virus.

99. Fifth, Defendants Minnesota Department of Corrections, Commissioner ROY, Defendant PAULSON, and Defendant LARSON, through the actions of their agents, employees, or representatives, were deliberately indifferent to, or disregarded, the substantial risk of "imminent danger of serious physical injury" to Plaintiffs from being exposed to the

debilitating and potentially fatal virus, HCV, from other inmates, infected with the hepatitis C virus, and subsequent progression of the hepatitis C infection,

100.     Sixth, Plaintiffs LIGONS,  and all other similarly situated persons, as the direct result of the failures and policy decisions of defendants Minnesota Department of Corrections and Commissioner ROY, and deliberate, reckless disregard to their serious medical need of staying free from Hepatitis C infection, suffered injuries, specifically, spending each day facing "imminent danger of serious physical injury" from being exposed to the debilitating and potentially fatal virus, HCV, from other inmates, progression of their respective infections, increased symptoms, pain, suffering, fear, diminished enjoyment of life, and decreased life expectancy.

101.      Minnesota Department of Corrections and Commissioner ROY, through  their agents, employees, or representatives, Defendant PAULSON, and Defendant LARSON, jointly and severally, acted under color of law.

## CLAIM III: PLAINTIFFS LIGONS, MICHAELSON, MAXCY, AND FARLEY, AND INMATES SIMILARLY SITUATED TO PLAINTIFFS MAXCY AND FARLEY: DENIAL OF EQUAL PROTECTION OF THE LAW UNDER U.S. CONST. XIV, THROUGH 42 U.S.C. §1983, AND DISCRIMINATORY DENIAL OF MEDICAL SERVICES IN VIOLATION OF §504 OF THE REHABILITATION ACT OF 1973 AND TITLE II OF THE AMERICANS WITH DISABILITIES ACT

102.      Plaintiffs reallege and reincorporate each and every claim and averment above and incorporate them below.

103.    Both HCV and HIV/AIDS are blood-borne viral diseases that are

transmitted by personal contact between individuals

104.    The HIV/AIDS can be suppressed to reduce or prevent transmission of the virus,

but only HCV can be cured in 12-weeks of oral medication.

105.    MN DOC withholds treatment for HCV in a manner that differs significantly from

the treatment it provides for HIV/AIDS without medical justification, or a rational basis for

doing so since the 12-week AASLD/IDSA medical standard-of-care has been adopted.

106.    MN DOC protocols require that HCV infections progress to the point of causing

cirrhosis or scarring of the liver, which cannot be reversed.

107.    This HCV policy is akin to a policy that permits HIV infection to become full-

blown AIDS, or to manifest life-threatening conditions including pneumonia or Kaposi's

Sarcoma, before approving anti-retroviral drug treatments,

108.    The MN DOC policy of differential treatment for HCV, in comparison to

HIV/AIDS, lacks rational basis under prevailing science and medicine, and clearly

established law.

109.    The MN DOC policy of refusal to treat HCV infection of inmates until manifesting

fibrosis scores of FIB3 or FIB4 , lacks rational basis in violation of Plaintiffs' rights to equal

protection of the laws under U.S. Const. amend. V and XIV, for which 42 U.S.C. §1983

provides declaratory and   prospective equitable relief, and a discriminatory denial of

medical services because of Hepatitis C infection, a disability, in violation of §504 of the

Rehabilitation Act and Title II of the Americans with Disabilities Act, which provide

declaratory; prospective equitable; and, legal remedies.

110.     These allegations constitute averments of imminent danger of serious physical, medical injury.

111.     The Department of Corrections' policy of discriminatory denial of public services because of the Plaintiffs' disability, hepatitis C inflicted damages on the Plaintiffs for which §504 and Title II provide legal remedies.

## PRAYER FOR RELIEF

112.     WHEREFORE, Plaintiffs request that this Court grant them the following relief:

a.     Certify that this action be maintained as a class action of all prisoners in Department of Correction custody who have Hepatitis C according to RNA testing;

b.     Issue a judgment against Defendants, declaring that their acts, omissions, policies, and practices with regard to the treatment of Hepatitis C are cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983, the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. §1983, and disability discrimination in violation of §504 of the Rehabilitation Act of 1973 and Title II of the Americans with Disabilities Act;

c.     Issue preliminary and permanent injunctions to enjoin the January 16 Hepatitis C Protocol of the MN DOC, and ordering Defendants to implement and adhere to a comprehensive treatment and testing protocol in accordance with the AASLD/IDSA standard of care (www.hcvguidelines.org);

d.     Enjoin Defendants from taking any action to interfere with Plaintiffs' right to

maintain this action, or from retaliating in any way against Plaintiffs for bringing this action;

e.        Award Plaintiffs their reasonable attorneys' fees and costs, in accordance with

42 U.S.C. § 1988 and other applicable law;

f.        Award Plaintiffs damages in excess of $75,000 against Defendants for violation of

Section 504 and their Title II rights and such sum may award; and

g.        Grant such other and further relief as this Court considers just and proper.

h.        PLAINTIFFS DEMAND TRIAL BY JURY.

Respectfully submitted,

Date: 3 June 2017                    Respectfully submitted:

                                    PETER J. NICKITAS LAW OFFICE, L.L.C.

                                    /s/Peter J. Nickitas (electronically signed)


                                    _____
                                    Peter J. Nickitas, MN Att'y #212313
                                    Co-counsel for Plaintiffs
                                    431 S. 7th St., Suite 2446
                                    Minneapolis, MN 55415
                                    651.238.3445/FAX 1.888.389.7890
                                    peterjnickitaslawllc@gmail.com

                                    LAW OFFICE OF C. PETER ERLINDER

                                    /s/C. Peter Erlinder (electronically signed)
                                    _____
                                    C. Peter Erlinder, MN Att'y #0398765
                                    Co-Counsel for Plaintiffs
                                    1043 Grand Ave. W., Suite 28
                                    St. Paul, MN 55104
                                    651.271.4616
                                    proferlinder@gmail.com