UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case Number 15-cv-2210 PJS/BRT

RONALDO LIGONS, et al

   Plaintiffs,

v.

 MINNESOTA DEPARTMENT OF CORRECTIONS et al.,

   Defendants.

**PLAINTIFFS' REPLY MEMORANDUM**
------------------------------------------------------------

## INTRODUCTION

"The AASLD (American Association for the Study of Liver Disease and IDSA (Infectious Disease Society of America) recommend that nearly all persons with chronic HCV infection be considered candidates for treatment with DAAs due to the multiple patient benefits and public health advancements associated with curing HCV infection." Kendig Report, p.8¶4.

* * *

So, for the field of Hepatitis C, I would agree that the Hepatitis C website http://www.hcvguidelines.org is the major -- the major -- for treatment -- is the major source for developing clinical practice guidelines for the correctional setting, but they must be adapted. So the answer to your question, are they identical? No. ECF122/22, Kendig Dep.

* * *

Q. Would you use the correctional standard of care for treating Hepatitis C patients in a private clinical setting in 2016?

A. NO. Id.

After filing of the Second Amended Complaint in October 2015, the AASLD/IDSA HCV Guidance Panel continued to update the HCV Guidelines.  Defendants disclosed contradictory sets of HCV treatment protocols dated April 2015 and January 2016, after the 4 January 2016 deadline for amendment and joinder, and disclosed Dr. Kendig's

1

"correctional standard of care" in late 2016.  In December 2016 Defendants' expert Dr. Kendig admitted he would use the AASLD/IDSA Guidelines in treating his private patients, not the "correctional standard of care."

Defendants admit the AASLD/IDSA Guidelines are the prevailing medical standard of care for the treatment of HCV, outside of a prison context.  Defendants claim mootness after having successfully treated Plaintiff Ligons for HCV and released Plaintiff Michaelson from custody in March 2017, in spite of Defendants' knowledge he had a doctor's prescription in time to be cured.

In spite of Defendants' assertion of mootness, this lawsuit, filed in 2015, has evolved because of changed circumstances beyond the control of Plaintiffs.  The only element that has not changed is the Defendants' ongoing willingness to watch the vast majority of infected inmates become progressively sicker.

Plaintiffs filed and served a motion to amend the complaint (thrice) and join new plaintiffs.  The central point remains the same:  Defendants' denial of the AASLD/IDSA standard of care, recommending prescribing lifesaving direct acting anti-viral (DAA) medications for HCV patients irrespective of fibrosis score comprises deliberate indifference to the serious medical needs of infected inmates and uninfected inmates who wants to stay clean.

I. SUMMARY JUDGMENT LIES RE: THE AASLD/IDSA STANDARD OF CARE.

As described in Dr. Kendig's above testimony, there is no material factual dispute whether:

(a) the AASLD/IDSA Guidance Panel and its website http://www.hcvguidelines.org is the source for establishing clinical practice guidelines, i.e. the medical standard of care; (b) the AASLD/IDSA recommends "nearly all persons with chronic HCV infection be considered candidates for treatment with DAAs..."; and (c) the "correctional standard of care" advocated by Dr. Kendig would not be appropriate for his private HCV patients. As applied to DOC, the "corrections standard of care" has resulted in approximately 77 having received DAA medications, of an estimated 1,000 to 3500 HCV-positive patient-inmates, a percentage of less than 1% that Dr. Kendig's private patients would likely consider intolerable.

A. The AASLD/IDSA Medical Standard of HCV Care is Undisputed

Defendants misperceive the significance of the AASLD/IDSA medical community standard of care which is not disputed by either Dr. Kendig or Dr. Paulson, attempting to cast the issue as a "...disagreement between one group of physicians, the AASLD, and another group of physicians, correctional medical practitioners." ECF157/4. Dr. Kendig acknowledges the primacy of the AASLD/IDSA guidelines in developing clinical practice guidelines for HCV. "Correctional medical practitioners" are neither HCV experts nor constitutional experts, and must rely on the AASLD/IDSA Guidance Panel website, as Dr. Paulson, ECF108¶51, and Dr. Kendig made clear. *Fourte v. Faulkner*, 746 F.3d 384 (8th Cir 2014), did not include failing to adhere to professional guidelines developed specifically to guide practitioners but was a dispute between practitioners.

MNDOC treatment protocols limit DAA drugs to patient-inmates at fibrosis levels F3 and F4 with full awareness of, and deliberate indifference to, the unsteady progression of the infection from lower to higher-level FIB scores.  Deliberate indifference to the progress of the disease, which is what "prioritization" means, is built-in to the DOC protocol.  Failure to treat, itself, makes out a claim of deliberate indifference.  *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2000) (Posner, Richard, J.)

B.  Dr. Kendig's "Correctional Standard of Care" Fails the *Daubert* Factors

The four non-exclusive factors from *Daubert* do not apply to Dr. Kendig's assertion of a "corrections" standard of care standing in opposition to the AASLD/IDSA medical standard of care: (1) scientific testing; (2) peer review and/or publication; (3) the known rate of error; and (4) general acceptance.  *Daubert,* 509 U.S. at 593-94.  Dr. Kendig does not justify his testimony supporting "prioritization" of treatment on any medical or scientific grounds at all.

Rather, Kendig purports to justify "gradually treating inmates based on disease severity" using financial resources and administrative costs as a rationale.  Kendig Report/5:

(1) correctional systems have a large number of HCV patients; (undisputed);

(2) HCV treatment logistics are daunting, requiring resource expenditures; (*i.e.* financially-based);

(3) the fiscal burden dwarfs previous fiscal burdens; (*i.e.* financially-based);

(4) correctional health administrators operate within fixed budgets; delaying HCV treatment is cost-effective; (*i.e.* financially-based);

4

(5) correctional health care providers practice population medicine; not community based care, irrelevant with respect to treatment of each individual seeking HCV treatment.

None of these rationales relates in any way to the four *Daubert* factors, or Dr. Kendig's particular medical expertise. Dr. Kendig is a capable physician, but he is testifying as a budget-minded administrator—like Dr. Paulson. Dr. Kendig merely confirmed the AASLD/IDSA guideline is the medical standard of care he employs in his private practice and, therefore, must be the basis for HCV treatment protocols in correctional institutions, too. "Prioritization" based on fibrosis level was rejected by the AASLD/IDSA nearly two years ago. Even if his testimony is not excluded *in toto*, summary judgment lies for the Plaintiff as to the AASLD/IDSA standard of care over MNDOC protocols that intentionally sicken infected inmates.

## II. DISPUTED MATERIAL FACTS, INCLUDING DELIBERATE INDIFFERENCE, FORECLOSE SUMMARY JUDGMENT FOR DEFENDANTS

Genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), *Graves v. Arkansas Dep't of Fin. & Admin.*, 229 F.3d 721, 723 (8th Cir. 2000), *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 525 (8th Cir. 2009) (en banc). Defendants admit that, as of March 27, 2017, DOC has treated approximately 77 individuals with DAAs out of a prison population of 10,000, leaving 923 to 3,423 of the 1,000 to 3,500 DOC-estimated infected inmates.

There is no dispute that "prioritization" in providing DAA medications to chronic HCV-infected patient-inmates, *requires* DOC medical personnel to refuse treatment to HCV-positive patients for whom the AASLD/IDSA Guidelines recommend treatment to prevent the progress of the disease, and whom Dr. Kendig would treat, if they were his private patients. The nature of the "prioritization system" compared to the AASLD/IDSA standard of care, is sufficient for a jury to return a verdict of both "deliberateness" and "indifference" to serious medical harm for the vast majority of DOC inmates suffering from chronic HCV.

In *Shabazz v. Schofield*, 2016 U.S. Dist. LEXIS 104144, *10-13 (M.D. Tenn. Aug. 1, 2016), the Court held that the Defendant DOC was not entitled to summary judgment on Plaintiff's Eighth Amendment deliberate indifference claim for failure to be treated for HCV according to the AASLD/IDSA standard of care:

> However, Plaintiff can show, through testimony of Drs. William and Wylie (among others), at trial, that (a) the American Association for the Study of Liver Diseases (AASLD) Guidelines set forth a required treatment; (b) that Defendants failed to prescribe such treatment; and (c) they failed to do so because such treatment was not provided for in the State's budget. The 2014 AASLD Guidelines provide, as their sixth recommendation, that "Antiviral treatment is recommended for all patients with chronic HCV infection, except those with limited life expectancy . . ." It is undisputed that Plaintiff is not receiving such treatment, as Defendants concede that they have prescribed no antiviral treatment for him.... Thus, there are genuine issues as to material fact concerning whether Plaintiff should receive actual treatment and not merely monitoring, and if so, what form such treatment should take. The State Defendants are not entitled to a judgment as a matter of law on these claims.[1]

---

[1] The Court further took judicial notice of *Graham, et al. v. Parker, et al.*, Case No. 3:16-1954 (M.D. Tenn. 2016) class action on behalf of Tennessee DOC inmates with HCV being denied treatment in violation of the Eighth Amendment which also refers to the

Whether Dr. Kendig's Report enters into evidence in whole or part, the question is whether a jury may conclude that refusal to adhere to the AASLD/IDSA standard of care is deliberate indifference, when both Dr. Kendig and Dr. Paulson admit it is the source of guidelines for all clinical practice in the treatment of HCV, is not a matter for summary judgment as a matter of law.  Whether the non-medical "correctional standard of care" excuses Dr. Kendig uses to provide DAA's to his private patients, but not to patient-inmates, as shown in *Shabazz*, may well cause a jury to conclude is both deliberate and indifferent, particularly in light of the fact that the DAA life-saving drugs that have recently come to market.

But "deliberate indifference" is not the only material fact that remains in dispute. Plaintiffs' initial brief stated with particularity (A through H) Defendants' factual assertions that were in dispute, and remain so.  In addition, Defendants admit Dr. Paulson never speaks to a patient-inmate and receives all information from Centurion contractors. ECF157¶1, ECF108¶8.  Centurion medical staff apparently provides to Dr. Paulson with any information about prison conditions or sources of HCV transmission within the prison, and is subject to dispute.  But, Dr. Paulson does admit that prohibited conduct that spreads HCV does occur in prisons, despite prohibitory regulations.  ECF121-1/81-83.

---

AASLD/IDSA HCV Guidance Panel that  recommends that "all HCV positive individuals" be treated. (Class certification  granted Feb. 27, 2017. ECF28. See fn. 2, *infra.*

7

III. PLAINTIFFS' CLAIMS, INCLUDING THE ADA AND REHABILITATION ACT, CHALLENGE DOC POLICY, NOT MEDICAL JUDGMENT.

*Dinkins v. Corr. Med. Servs.*, 743 F.3d 633, 634, (8th Cir. 2014), ECF157¶2, distinguishes the "failure to diagnose" issue in that case from the HCV treatment policy issue in this case, as reflected in Contract #70449 re: treatment of HCV and HIV/AIDS; the AASLD/IDSA standard of care; the various MN DOC HCV treatment protocols and Dr. Kendig's "correctional standard of care. In *Penn. Dept of Corr. v. Yeskey,* 524 U.S. 206 (1998) a prison *policy* discriminating against an inmate with hypertension and in *Randolph v. Rogers*, 253 F.3d 342 (8th Cir 2001) a *policy* discriminating against deaf prisoner, were at issue.

Defendants have already acknowledged that the medical community standard of care must be provided to HIV/AIDS-positive prisoners, per current Contract #70449, demonstrating MNDOC knowledge that such a standard exists outside the "correctional context" and within the medical profession. Failing to provide the HCV medical standard of care is, therefore, intentional, not negligent. Moreover, it is a policy that discriminates against inmates with the "wrong" type of potentially fatal blood-borne virus – one that is curable, HCV, in contrast to one only manageable, HIV/AIDS.

IV. PLAINTIFFS' THIRD AMENDED COMPLAINT
MOOTS DEFENDANTS' QUALIFIED IMMUNITY ARGUMENT.

Defendants successfully treated Plaintiff Ligons for HCV and released Plaintiff Michaelson from custody in March 2017. Defendants asserted the claims of named-Plaintiffs are moot and they have no standing to assert class claims. ECF157/18. In response, Plaintiffs' Third Amended Complaint names two additional Plaintiffs, Messrs.

Maxcy and Farley. The Defendants are named in their official capacities only, and the Complaint seeks only prospective equitable relief, thereby mooting qualified immunity defenses and simplifying the claims.

V. PLAINTIFFS' REQUESTED PROSPECTIVE INJUNCTIVE RELIEF, OF NECESSITY, MUST INCORPORATE THE AASLD/IDSA GUIDELINES AND BE TAILORED TO CONSIDER INSTITUTIONAL CAPABILITIES OVER TIME.

    A. <u>The AASLD/IDSA Guidelines are Neither Overbroad nor Vague</u>

Just as the DOC implemented HCV treatment protocols in January 2016 that specifically limit HCV treatment to patient-inmates with FIB3 and FIB4 fibrosis score, along with other considerations, the AASLD/IDSA Guidelines can be the basis for future MNDOC protocols. Plaintiffs ask the Court to recall that Dr. Kendig testified:

> So, for the field of Hepatitis C, I would agree that the Hepatitis C website http://www.hcvguidelines.org is the major... source for developing clinical practice guidelines for the correctional setting, ECF122/22.

Plaintiffs are asking that the "clinical practice guidelines for the correctional setting" mirror those for the population as a whole. There can be no doubt that a program will require a phase-in period, which may require some oversight by the Court, to assure that Defendants are implementing their own AASLD/IDSA-based treatment protocols.

Plaintiffs acknowledge Defendants have made great improvements since this suit was filed in 2015, when chemotherapy-like Interferon and chemical dependency treatment were on offer to DOC patients, which makes the remedy sought less drastic. The adoption of DAAs and elimination of chemical dependency treatment requirements in January 2016 were important steps forward. Without a more rigorous effort to apply the AASLD/IDSA HCV Guidance Panel Guidelines, however, only a small number of chronic HCV-positive

inmate-patients are likely to be cured. In almost two years since the DAAs began being provided only 77 of some 1,000 to 3,500 have been "prioritized" by the DOC system administered by Dr. Paulson.

Defendants ask the Court to conceptualize a "parade of horribles" remedy in which:

- All HCV-infected inmates currently in prison would be identified;
- Those inmates with more than 12 or more weeks remaining on their confinement would be identified;
- Each inmate's medical condition and history would be assessed to determine whether there are any contraindications. (ECF157/38)

For example, were the program to begin systematically when each new inmate entered the DOC system, and is being tested for TB and HIV/AIDS as they are now, an opt-out test for HCV anti-bodies and a follow-up RNA test only those who test positive would identify the number of new HCV patients every year. In the general inmate population, free HCV anti-body testing for risk-groups (age, drug use, tattoos, etc.) and RNA follow-up done systematically is not far from what the DOC is doing already. ECF108¶¶62-69. In any case the remedy must be tailored to assure that those chronic HCV-positive patient-inmates receive the AASLD/IDSA standard of care treatment with DAA drugs without regard to cost.

The remaining "horribles" the Defendants cite are that "each inmate" must have "someone" perform and review lab tests; decide which DAA is appropriate; review the patient-inmate's medications; perform follow-up testing and assess the results to determine whether treatment should be discontinued. ECF157/38-39. With an average sentence of 45 months, in something less than four years the vast majority of the DOC population

entering in 2017 could well be HCV-free by 2021, further supporting Plaintiffs' claim for a safe, healthy living environment. *Helling v. McKinney*, 509 U.S. 25, 33 (1993). Dr. Paulson concedes that inmate-to-inmate transmission of HCV happens, if convicted felons break prison behavior rules. ECF 121-1/80-81.

### B. Injunctive Relief Adopting the AASLD/IDSA Standard of Care Is the ONLY Way to Eliminate Violations of Equal Protection, as Well as Discrimination Under the ADAA and Rehabilitation Act, Built-in to DOC Policies in Contract #70449.

Pursuant to Department of Corrections Contract #70449, medical care contractor Centurion MUST provide treatment to patient-inmates with HIV/AIDS that meets the CDC and Twin Cities community standard of care. However, the same contract limits treatment for patient-inmates with HCV to whatever protocols the DOC deems appropriate. Injunctive relief requiring the DOC to adopt the AASLD/IDSA standard of care is the only way to eliminate the discriminatory policies between the treatment of chronic HIV/AIDS infected prisoners, and HCV infected prisoners.

Contract #70449 provides that cognizable violation in the contradiction between the treatment of HIV/AIDS and HCV. A policy that prevents access to prison medical and other services based on a disability (HCV rather that HIV/AIDS) violates Equal Protection, the ADAA and the Rehab Act, on its face. *Penn. Dept of Corr. v. Yeskey*, 524 U.S. 206 (1998); *Randolph v. Rogers*, 253 F.3d 342 (8th Cir. 2000).

## VI. PLAINTIFFS' MOTION FOR CLASS CERTIFICATION IS WELL-FOUNDED, AS AMENDED BY PLAINTIFFS' THIRD AMENDED COMPLAINT, ECF174[2]

### A. Mootness and Standing Issues, Created by Defendants After the Filing of the Second Amended Complaint, are Resolved by Joinder of Plaintiffs Maxcy and Farley.

Because of changed circumstances between the filing of the Second Amended Complaint, ECF42, chargeable to Defendants' actions as discussed more fully in Plaintiffs' Memorandum in Opposition, ECF141, Plaintiffs filed a Third Amended Complaint, ECF174, that seeks to join Lawrence Maxcy and Devon Farley as named Plaintiffs. Mr. Maxcy and Mr. Farley are chronic HCV infected DOC inmates, as were Mr. Ligons and Mr. Michaelson before the DOC treated Mr. Ligons for HCV in early 2017, and released Mr. Michaelson in March 2017.

Defendants' mootness/standing argument arises *only* because Defendants took the discretionary act to treat Mr. Ligons with DAAs, after having refused to do so for years, thus arguably eliminating him as named Plaintiff with an "injury in fact" required by *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Mr. Maxcy and Mr. Farley are both "incarcerated individuals with active HCV infection," as Defendants acknowledge. ECF157¶2, and thus have standing to assert claims on behalf of the class. If a class is not certified, by permitting amendment of the complaint, Defendants will similarly be

---

[2] Massachusetts certified a class action for HCV-infected Massachusetts DOC inmates. *Fowler v. Turco*, 15-cv-12298 (D. Mass. July 22, 2016), ECF48. Pending class certification in Tennessee, *Graham v. Parker*, 16-cv-1954 (Order, M.D. Tenn. Feb. 27, 2017), ECF28 the Court acknowledged medical monitoring as a remedy ("However, given the nature of the case, settlement discussion will of necessity involve medical personnel and potentially the need for monitoring by some designated agency[,]") The issue is on appeal to the Sixth Circuit.

empowered to treat any named Plaintiffs with DAAs and claim the case is moot and named Plaintiffs lack standing *ad infinitum*.

B. Regarding the HCV Standard of Care: the AASLD/IDSA Guidelines Are Precise in Defining the Size and Scope of the Class to be Treated[3]; the Treatment Options[4]; and the General Standards to be Applied to the Class Under Rule 23(b)2[5].

The two classes described in the Third Amended Complaint are:

(a) All persons (male and female) incarcerated in Minnesota Department of Corrections facilities with 12 weeks remaining on their sentence; who test HCV-positive by RNA test and not only antibodies test, and who do not "opt-out" of HCV treatment, required by the current AASLD/IDSA Guidelines. *Erickson v. Pardus*, 551 U.S. 89, 90, (2007)

(b) All currently incarcerated persons who are uninfected, have been cured, or not aware of their HCV status, who are fearful of being exposed to HCV because of policies and practices that make it impossible to know if any other inmates with whom they come in contact are HCV-positive, or not. *Helling v. McKinney*, 509 U.S. 25, 33 (1993).

Mr. Maxcy and Mr. Farley are named representatives of Class (a), Mr. Ligons is the named representative of Class (b). ECF174. The remedy for both proposed classes is the same, systematic screening and testing program for chronically infected HCV-positive inmates and treatment with DAAs according to the AASLD/IDSA standard of care for chronically infected HCV-positive patient inmates, which does not "prioritize" DAA treatment based on fibrosis score.

Defendants have never undertaken systematic testing of the MNDOC population for the prevalence of chronic HCV infection. Thus, the size and scope of the class can only be

---

[3] See AASLD Recommendations for Testing, Managing and Treating Hepatitis C, available at http://hcvguidelines.org/sites/default/files/HCV-Guidance_April_2017a.pdf(Apr. 12, 2017 (last accessed May 24, 2017).
[4] Id.
[5] Id.

estimated by using population estimates provided by MNDOC. There is no dispute that approximately 10,000 inmates are housed in DOC facilities and some 77 have been treated for HCV using DAAs, under the HCV Treatment Protocols in place since January 2016. ECF157/4. MNDOC estimates that between 10% and 35% of inmate population is chronically HCV-positive. *Health Services Unit, Chronic Hepatitis C Management and Procedures*, 5/9/2012¶1.

It cannot be denied that, until such time as Defendants are required to screen the DOC inmate population for HCV anti-bodies, and then for HCV RNA to identify individuals who would benefit from DAA treatment, the identity of each infected inmate and size of the class cannot be known with certainty, but it is within the power of Defendants to identify each within a reasonable period of time using current testing methodology, at intake and after.[6] Since the AASLD/IDSA standard of care prohibits "prioritizing" patients according to fibrosis score, the *entire* cohort of chronically HCV infected patient-inmates makes up the readily identifiable class to be treated with DAAs, rather than "prioritized" FIB score sub-classes. The Class of non-chronically infected individuals will be between 9,000 and 6,500 individuals depending on the results of anti-body and RNA testing.

---

[6] Defendants assert that, in the last quarter of 2016, they achieved a 76% and 88% compliance rate using "opt-in" HCV testing at intake for males and females respectively. ECF108¶66. Plaintiffs seek "opt-out" testing at intake to increase the compliance rate and to maintain the intake testing protocol over at least four years, given average sentence of 4.5 years of the inmate population. Rather than "monitoring" chronic HCV infected inmates as described under current procedures with FIB scores below F3 and F4, ECF108¶¶70-99, all chronic HCV infected inmates meeting AASLD/IDSA guidelines would be recommended for treatment irrespective of fibrosis score.

Under Rule 23(b)(2), with respect to the AASLD/IDSA standard of care vs. the "correctional standard of care," as evidenced by MNDOC's January 2016 HCV Treatment protocols, the Defendants *have* acted and "refused to act on grounds that apply generally to the class [regarding the AASLD/IDSA standard of care] so that final injunctive or corresponding declaratory relief is appropriate respecting the class as a whole." Prospective injunctive or declaratory relief that eliminates "prioritization" of DAA treatment to chronic HCV positive patient inmates with fibrosis scores of FIB3 and FIB4, and expands existing intake screening and screening of at risk populations will provide the AASLD/IDSA standard of care for both classes of MN DOC Plaintiffs, (a) those infected with active or chronic HCV and (b) those who wish to remain uninfected or avoid re-infection.

C. Plaintiffs Satisfy the Requirements of Rule 23(a)

The Eighth Circuit recognized that prison condition civil rights claims in the medical context are particularly well suited to class-action claims. *Coley v. Clinton*, 636 F.2d 1364, 1378 (8th Cir. 1980). Similarly, Defendants' policy and practice of not treating HCV according to the AASLD/IDSA standard of care means injunctive and declaratory relief as to anyone would be injunctive and declaratory relief to all. ("...one purpose of Rule 23(b)(2) was to enable plaintiffs to bring lawsuits vindicating civil rights, the rule "must be read liberally in the context of civil rights suits." *Ahrens v. Thomas*, 570 F.2d 286, 288 (8th Cir. 1978). See generally, 7A C. Wright & A. Miller, *Federal Practice & Procedure* §§ 1775-1776 (1972).

The Eighth Circuit rejected Defendants' argument that individual medical treatment considerations make class relief impossible, when setting the standard of care for prison

medical protocols within which individual treatment decisions might arise. *Clinton*, 636 F.2d at 1378:

> The fact that individuals may also seek relief on the basis of facts peculiar to their individual cases does not deflect the thrust of this lawsuit away from the constitutional questions which will ultimately determine if there is any reason to hear individual claims. Indeed, appellants take the sensible position that, if they prevail in their constitutional challenge to commitment procedures for and conditions in Rogers Hall, "[r]elief may be had through the creation by the state hospital of standards.... Initially, therefore, the application of the relief ... to individuals would be made by the hospital itself." Brief of Appellants at 56. Any federal court intervention in an individual case would thus arise only as a secondary matter in implementing class relief and does not provide a basis for refusing to allow a class action here. *Halderman v. Pennhurst State School & Hospital*, 612 F.2d 84, 109-11 (3d Cir. 1979) (en banc), *cert. granted,* 447 U.S. 904 (1980).

(1) Numerosity:

There is no dispute that the proposed Class(es) are so numerous and the remaining DOC inmate population that wishes to avoid infection or reinfection] that joinder is impracticable. *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 556 (8th Cir. 1982). However, Defendants assert Plaintiffs have not defined the Class(es) with sufficient precision to certify a Class. ECF157/20-22. But Defendants fail to grasp that Plaintiffs refer throughout *only* to those chronically infected, HCV-positive individuals <u>who would benefit from DAA treatment under the AASLD/IDSA standard of care</u>, which <u>excludes individuals testing positive for HCV anti-bodies *only,* by definition</u>. ("[Under Rule 23(a)(l)], [t]he plaintiff need not precisely enumerate the potential size of the proposed class, nor is the plaintiff required to demonstrate that joinder would be impossible."); see also 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §1762 (3d ed. 2005).

(2) Commonality: FRCP 23(a)(2)

"Commonality requires the plaintiff to demonstrate that the class members `have suffered the same injury.'" *Dukes,* 131 S. Ct. at 2551, quoting *Falcon,* 457 U.S. at 157. Plaintiffs have demonstrated that class (a) members have suffered the same injury arising from being denied the AASLD/IDSA standard-of-care treatment with DAA drugs to treat chronic HCV in violation of the Eighth Amendment. *Coley v. Clinton,* 636 F.2d 1364, 1378 (8th Cir. 1980).

The threat of exposure to HCV is the same injury suffered by all members of Class (b). The declaratory and prospective equitable relief is common to both Classes (a) and (b). If the same evidence on an issue can suffice for each class member, then it is a common question. *Blades v. Monsanto Co.,* 400 F.3d 562, 566 (8th Cir. 2005).

(3) Typicality: FRCP 23(a)(3)

As set forth in the Third Amended Complaint, all Class Members were injured by the same wrongful policy and practices of Defendants, *i.e.* refusal to adopt the AASLD/IDSA standard of care for chronic HCV infected individuals in their care. Plaintiffs Maxcy's and Farley's claims arise from the same practices and course of conduct that give rise to the claims of the Class Members and the claims stem from a set of facts that is common to every Class Member. See *DeBoer v. Mellon Mortgage Co.,* 64 F.3d 1171, 1174-75 (8th Cir. 1995) (typicality was satisfied because the Class Members sought the same relief, even if the amount of damages differed.). Defendants argue, "each claim depends on the individualized details of an inmate's medical history." ECF157/23. However, the issue before the Court is whether MNDOC must apply the AASLD/IDSA standard of care in

evaluating the case of each individual with chronic HCV. Whether the AASLD/IDSA standard of care for HCV diagnosis and treatment is "typical" standard of care applicable in treating each case of HCV infection is the relevant question. See, *Coley v. Clinton*, 636 F.2d 1364, 1378 (8th Cir. 1980).

(4) Representativeness: FRCP 23(a)(4)

Named Plaintiffs Maxcy and Farley have no interests in conflict with unnamed class members seeking DAA treatment, nor does Plaintiff Ligons regarding class members seeking to avoid infection or re-infection. Rule 23(c)(1)(A) requires class issues to be adjudicated at "an early practicable time..." which in this case was governed first by two Scheduling Orders and setting the dates, therefor. "The district court must decide whether Rule 23(a)(4) is satisfied through balancing the convenience of maintaining a class action and the need to guarantee adequate representation to the class members." *Rattray,* 614 F.3d at 835.

The adequacy requirement is satisfied when the class representative is "part of the class and possess[es] the same interest and suffer[s] the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594-95 (1997). Unlike *Rattray,* the delay in filing for class certification, with Mr. Ligons and Mr. Michaelson as representatives, is the product of changes in status of Plaintiffs over which they had no control, *i.e.*, the HCV treatment of Mr. Ligons and the release from custody or Mr. Michaelson, in spite of his having a Harvoni prescription with enough time for treatment. Before that time, Scheduling Orders were timely met by Plaintiffs' initial counsel, including the filing of the class certification motion.

Defendants cite *Rattray* to argue that passage of time in seeking certification alone warrants denial of certification. ECF157/28. However, Plaintiffs and solo practitioner counsel demonstrated willingness, dedication and determination to pursue a very difficult case, one of first impression and without precedent, because of a deep commitment to achieving for MNDOC inmates infected with HCV what the AASLD/IDSA standard of care requires, treatment with DAAs and cure of their Hepatitis-C. Even after the original named Plaintiffs were arguably mooted out, co-counsel was added to the case and the Third Amended Complaint was filed to retain the core class claims for adoption of the AASLD/IDSA standard of care.

In the final analysis, because Plaintiffs seek certification pursuant to Rule 23(b)(2), the relative inexperience of counsel in litigating class actions is counterbalanced with the specific expertise and dedication which counsel and, now, co-counsel, bring to a case in which, "[under 23(b)(2)] the indivisible nature of the injunctive or declaratory remedy warranted-the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores, Inc.,* 131 S. Ct. at 2557. Whether the AASLD/IDSA HCV Guidance Panel clinical practice guidelines, that both Parties acknowledge are the medical standard of care outside of prisons, is the standard of care for HCV treatment inside of prisons too, and DOC's refusal to provide comprises unconstitutional deliberate indifference, are the issues. And, whether the Court is satisfied that the record before the Court guarantees adequate representation to class members on *that* fundamental question.

## Conclusion

The Court should deny summary judgment to the Defendants, grant partial summary judgment as to liability on standard of care to Plaintiffs, grant Plaintiffs' preliminary injunction for prospective equitable relief of a treatment protocol consistent with the AASLD/IDSA standard of care, and certify the Plaintiffs' classes.

Date: 07 June 2017　　　　　Respectfully submitted:

PETER J. NICKITAS LAW OFFICE, L.L.C.

/s/Peter J. Nickitas (electronically signed)

_____
Peter J. Nickitas, MN Att'y #212313
Co-counsel for Plaintiffs
431 S. 7th St., Suite 2446
Minneapolis, MN 55415
651.238.3445/FAX 1.888.389.7890
peterjnickitaslawllc@gmail.com

LAW OFFICE OF C. PETER ERLINDER

/s/C. Peter Erlinder (electronically signed)

_____
C. Peter Erlinder, MN Att'y #0398765
Co-Counsel for Plaintiffs
1043 Grand Ave. W., Suite 228
St. Paul, MN 55105
651.271.4616
proferlinder@gmail.com