UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| RONALDO LIGONS, BRENT BUCHAN, LAWRENCE MAXCY, JOHN ROE, and JANE ROE, individually, and on behalf of those similarly situated, | Case No. 15-CV-2210 (PJS/BRT) |
| Plaintiffs, | |
| v. | MEMORANDUM OPINION |
| MINNESOTA DEPARTMENT OF CORRECTIONS; THOMAS ROY, in his official capacity as Commissioner, Minnesota Department of Corrections; DAVID A. PAULSON, M.D., in his official capacity as Medical Director, Minnesota Department of Corrections; and NANETTE LARSON, in her official capacity as Health Services Director, Minnesota Department of Corrections, | |
| Defendants. | |

Andrew H. Mohring, Michael V. Ciresi, Katie Crosby Lehmann, and Esther O. Agbaje, CIRESI CONLIN LLP; Peter J. Nickitas; and Carl Peter Erlinder, for plaintiffs.

Kathryn A. Fodness, Andrew Tweeten, and Kelly S. Kemp, MINNESOTA ATTORNEY GENERAL'S OFFICE, for defendants.

Plaintiffs are inmates who are in the custody of defendant Minnesota

Department of Corrections ("DOC") and who have chronic hepatitis C ("HCV")

infections.  They bring claims under the Eighth Amendment[1] and Title II of the

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq., on behalf of

themselves and a putative class of inmates challenging the protocol under which the

DOC decides whether and how to treat inmates with chronic HCV.

This matter is before the Court on defendants' motion for summary judgment

and plaintiffs' motion for class certification.  For the reasons that follow, defendants'

motion is granted in part and denied in part and plaintiffs' motion is granted.

## I.  BACKGROUND

### A.  HCV and Treatment

HCV is a bloodborne pathogen that causes liver inflammation.  Second Paulson

Aff. ¶¶ 9-10.  It is primarily transmitted through infected blood or bodily fluids,

commonly through contaminated needles; casual contact with an infected person does

not pose a risk of transmission.  Second Paulson Aff. ¶¶ 9-10; *id.* Ex. I at 7941.  About 70

to 75 percent of persons infected with HCV will develop a chronic infection.  Second

Paulson Aff. ¶ 13.  Chronic HCV can cause liver disease, which is characterized by

fibrosis (the accumulation of scar tissue in the liver).  Second Paulson Aff. ¶ 18.  The

amount of scarring that chronic HCV causes to the liver is classified by "stage," with

---

[1]The Eighth Amendment's prohibition on cruel and unusual punishment applies
to the states via the Fourteenth Amendment's Due Process Clause.  *Long v. Nix*, 86 F.3d
761, 765 (8th Cir. 1996).

stage 0 (or "F0") indicating that the liver has a normal appearance and stage 4 (or "F4") indicating cirrhosis.  Second Paulson Aff. ¶ 19.  There is no way to predict whether or when a given individual with chronic HCV will develop liver disease.  ECF No. 311 at 6-8.

Chronic HCV kills one third of infected persons and kills more Americans than any other infectious disease.  Mohring Decl. Ex. 12 ¶ 6.  HCV infection rates are many times higher in prison than in the general population.  Thompson Aff. Ex. 2 ¶ 17.  Even when there is limited or no fibrosis, chronic HCV can cause other problems.  Thompson Aff. ¶¶ 15, 17.  For example, patients without fibrosis may experience symptoms such as fatigue, joint pain, and muscle aches.  Thompson Aff. ¶¶ 10, 18.  HCV also increases the risk of cardiovascular disease, kidney disease, diabetes mellitus, lymphomas, and cryoglobulinemic vasculitis (an inflammation of the blood vessels).  Thompson Aff. ¶¶ 10, 20.  Understandably, living with chronic HCV—and not knowing whether or when that infection will damage the liver or cause other symptoms—can cause psychological problems.  Thompson Aff. ¶ 18.

A patient's fibrosis stage may be assessed with a blood test, ultrasound elastography, or a liver biopsy.  Thompson Aff. ¶ 22; Second Paulson Aff. ¶¶ 20-22.  The primary goal of such testing is to distinguish among cases of advanced scarring for purposes of determining which medications would be most effective, the length of

treatment necessary, and what kind of aftercare is needed.  Thompson Aff. ¶ 22.

Ultrasound elastography performs poorly in distinguishing among lower stages of

fibrosis.  Thompson Aff. ¶ 22.

Until recently, treating chronic HCV involved a lengthy course of treatment with

interferon injections.  Second Paulson Aff. ¶¶ 31, 37.  Such treatment could cause

debilitating physical and mental side effects and had a cure rate at or below 50 percent.

ECF No. 242-4 at 9, 17.  In the last few years, however, there have been significant

breakthroughs in HCV treatment with the emergence of direct-acting antivirals

("DAAs").  Compared to previous forms of treatment, DAAs are a miracle drug; DAA

treatment generally takes eight to twelve weeks, is considered safe, and has a success

rate greater than 95 percent.  Second Paulson Aff. ¶¶ 38-42; Mohring Decl. Ex. 12 ¶ 7.

Importantly, the American Association for the Study of Liver Disease and the Infectious

Diseases Society of America recommend DAA treatment for *all* patients with chronic

HCV—even those at F0—with the exception of certain patients who have a short life

expectancy.  Mohring Decl. Ex. 13.

According to defendants, the wholesale cost of a course of treatment with DAAs

ranges from $54,600 to $147,000 per patient.[2]  Second Fodness Aff. Ex. C at 9.  During

---

[2]Plaintiffs offer evidence that, in August 2017, the Food and Drug Administration approved a DAA that "is suitable for patients across all six HCV genotypes" and costs about $15,000.  Mohring Decl. Ex. 12 ¶ 7; *id.* Ex. 22.

the 2017-2018 biennium, the DOC spent over $3 million treating inmates with DAAs.

Second Larson Aff. ¶ 19.

## B. DOC's Treatment Policy

In April 2018, the DOC released a new version of its protocol for treating chronic

HCV.  Thompson Aff. ¶ 7.  Under the new guidelines, the DOC generally provides

antiviral treatment only to inmates at F2, F3, and F4; the DOC does not provide antiviral

treatment to inmates at F0 and F1, unless they have certain other medical conditions or

complications.  Thompson Aff. ¶¶ 9-11; Second Paulson Aff. Ex. I at 7944-45.  In other

words, most F0 and F1 inmates are told that their chronic HCV will not be treated with

DAAs until they suffer liver damage (or additional liver damage).  Untreated inmates at

F0 and F1 are instructed to follow up with the on-site medical practitioner every six

months.  Second Paulson Aff. ¶¶ 74, 82; *id.* Ex. I at 7943.  An inmate at F1 is re-staged

(i.e., the damage to his liver is reassessed) every year, and an inmate at F0 is re-staged

every two years.  Thompson Aff. ¶ 11.  The DOC currently uses ultrasound

elastography to determine stages.  Second Paulson Aff. ¶ 21.

## C. Plaintiffs

### 1. Ronaldo Ligons

Plaintiff Ronaldo Ligons has been in DOC custody since 1993 and has an

anticipated release date of November 19, 2019.  Ligons Aff. ¶ 2.  Ligons was diagnosed

with chronic HCV in 1998.  Ligons Aff. ¶ 4.  The DOC began treating Ligons with a

DAA in January 2017, and he completed treatment on April 23, 2017.  Ligons Aff. ¶ 14.

Ligons was cleared of chronic HCV in July 2017 and is considered cured.  Ligons Aff.

¶ 15; Second Paulson Aff. ¶ 109.

### 2.  Brent Buchan

Plaintiff Brent Buchan is in DOC custody pursuant to a sentence that was

imposed in July 2017 and has an anticipated release date of February 24, 2020.  Buchan

Aff. ¶ 2.  Buchan was previously in DOC custody from October 2012 to March 2015; he

was diagnosed with chronic HCV in August 2014.  Buchan Aff. ¶¶ 2-3.  Testing in

November 2017 indicated that Buchan was at F2.  Second Paulson Aff. ¶ 115.  After

some delay due to an unrelated medical condition, the DOC began treating Buchan

with a DAA on March 7, 2018, and he completed treatment on May 1, 2018.  Third

Paulson Aff. ¶ 56.  The results of his post-treatment testing were not yet available at the

time of oral argument, but defendants have said that he appears to be cured, Third

Paulson Aff. ¶ 56, Second Paulson Aff. ¶ 121 (Buchan's viral load was undetectable

after five weeks of treatment), and plaintiffs have not contended otherwise.

### 3.  Lawrence Maxcy

Plaintiff Lawrence Maxcy is in DOC custody pursuant to a sentence that was

imposed in 2006 and has an anticipated release date of January 12, 2021.  Maxcy Aff.

¶ 2.  Maxcy was diagnosed with chronic HCV in 1995 and also ███████.  Maxcy Aff.

¶ 4; Second Paulson Aff. ¶ 123.  Maxcy's most recent elastography results (from

December 2017) indicate that he is at F0.  Second Paulson Aff. ¶ 124 & Ex. Q.  Under the

DOC's then-existing treatment guidelines, Maxcy was not eligible for treatment with

DAAs.  Second Paulson Aff. ¶ 125.  Under the DOC's April 2018 guidelines, however,

the fact that Maxcy ███████████ may make him eligible for treatment with DAAs.

Second Paulson Aff. ¶ 126.

### D.  Procedural Posture

Ligons and another inmate (Barry Michaelson) commenced this action by filing a

class-action complaint on May 1, 2015.  ECF No. 1.  Ligons and Michaelson filed a first

amended complaint on June 3, 2015, and a second amended complaint on October 29,

2015.  ECF Nos. 11, 42.  The parties began briefing an initial round of dispositive

motions (as well as a class-certification motion) in March and April of 2017.

As noted, Ligons completed DAA treatment in April 2017.  Michaelson was

released from prison on March 27, 2017.  Pung Aff. ¶ 16.  Defendants accordingly

argued that plaintiffs' claims for injunctive relief were moot.  ECF No. 106 at 31.  In

response, plaintiffs moved for leave to amend the second amended complaint to add

additional plaintiffs.  ECF Nos. 170, 173.

The Court held a hearing on the parties' motions on July 26, 2017.  ECF No. 189.

At the hearing, the Court identified various problems with plaintiffs' case, including

that the named plaintiffs' claims for injunctive relief had become moot, that all claims

for damages were likely barred by qualified immunity, and that, due to the Court's

concerns about the competency and lack of class-action experience of plaintiffs' counsel,

the Court was unwilling to certify a class.  ECF No. 204.  In lieu of denying class

certification and dismissing most or all of plaintiffs' claims, the Court offered to hold

the case in abeyance for a short time to give plaintiffs' counsel the opportunity to

associate with experienced class-action counsel and then file an amended complaint.

ECF No. 204 at 40-44.

Plaintiffs agreed with this proposal.  ECF No. 204 at 44-46.  Accordingly, after

bringing on additional counsel (Ciresi Conlin LLP[3]), Ligons and two new

plaintiffs—Buchan and Maxcy—filed a third amended complaint.  The parties then

renewed their respective motions for summary judgment and class certification.

---

[3]The Court expresses its gratitude to Ciresi Conlin LLP, who have worked
diligently to streamline and focus this case.

## II.  SUMMARY JUDGMENT

### *A.  Standard of Review*

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

### *B.  Jurisdiction*

#### 1.  Mootness

Ligons and Buchan have been treated with DAAs; they have received all of the individual relief to which they would be entitled if they prevailed in this case.  They do not dispute that their individual claims are moot.  In fact, they have made clear that they are no longer pursuing those claims.  ECF No. 311 at 43.  Defendants accordingly move to dismiss Ligons and Buchan from the case.  Ligons and Buchan oppose dismissal, contending that, even though they are no longer pursuing claims on their own behalf, they are still entitled to pursue claims on behalf of a class.

The judicial power of the United States is limited to "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1; *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980).  Consequently, if a plaintiff does not have a personal stake in a live controversy, a federal court cannot adjudicate that plaintiff's claim.  *Geraghty*, 445 U.S. at 396-97.  This requirement applies at all stages of the case.  *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016).  Ordinarily, therefore, a court must dismiss a claim that becomes moot during the course of litigation.  *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) ("If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." (citation and quotation marks omitted)).

This general rule is subject to several important caveats in the class-action context.  Typically, if the named plaintiff's individual claim became moot before a class was certified, the entire case is moot, and the plaintiff is not entitled to pursue claims on behalf of the yet-to-be-certified class.  *See United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1538 (2018) ("Normally a class action would be moot if no named class representative with an unexpired claim remained at the time of class certification.").  But if a class was certified before the named plaintiff's individual claim became moot, there is still Article III jurisdiction over the class's claims, and the inquiry shifts to whether the

named plaintiff remains a proper class representative. *Sosna v. Iowa*, 419 U.S. 393, 399-403 (1975); *see also Kremens v. Bartley*, 431 U.S. 119, 132-33 (1977) ("a properly certified class . . . may succeed to the adversary position of a named representative whose claim becomes moot" (citation and quotation marks omitted)).

 If the named plaintiff's individual claim became moot after class certification was denied, the named plaintiff nevertheless has standing to appeal the denial of certification. *Geraghty*, 445 U.S. at 404. If the named plaintiff succeeds in reversing the denial of class certification, then certification will relate back to the date on which it was erroneously denied (when the named plaintiff still had a live claim). *Id.* at 404 & n.11. At that point, the case comes under the rule of *Sosna*; because the class is treated as though it had been certified when the named plaintiff still had a live claim, the focus shifts to whether the named plaintiff remains an adequate representative. *Id.* at 405-07.

Finally, in a narrow class of cases, a named plaintiff whose individual claim became moot before a class was certified may nevertheless be permitted to proceed if the claim is of a type that is inherently unable to be fully adjudicated before becoming moot.[4] *See Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975); *Sosna*, 419 U.S. at 402 n.11;

---

[4]This is similar to the exception for individual claims that are "capable of repetition, yet evading review." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (per curiam). Ordinarily, for that exception to apply, there must be a reasonable expectation that the plaintiff himself will again be subject to the allegedly unlawful conduct. *Id.* at 482-83. In the class-action context, however, this requirement is relaxed for claims that "are so

(continued...)

*Anderson v. CNH U.S. Pension Plan*, 515 F.3d 823, 826 (8th Cir. 2008).  In this context,

certification is also said to "relate back"—here, to the filing of the complaint.  *Sosna*, 419

U.S. at 402 n.11; *Anderson*, 515 F.3d at 826.

Ligons's and Buchan's individual claims do not fit into any of these categories.

Their claims became moot before (not after) class certification, and nothing about their

claims makes them inherently incapable of being fully adjudicated before becoming

moot.  As Maxcy's health history demonstrates, an individual with HCV may remain at

F0—and thus, under the challenged policy, presumptively ineligible for treatment

absent other medical complications—for many years.

Plaintiffs compare this case to cases in which the defendant attempts to avoid

class certification by making an offer of judgment to the named plaintiff under Fed. R.

Civ. P. 68.  Typically, such cases involve nominal damages or modest statutory

damages, raising the specter that the defendant could "pick off" named plaintiff after

named plaintiff.  In that way, the defendant could forever insulate itself from a class

action, even though class treatment may be desirable (precisely because each class

member's claim is so modest).

---

[4](...continued)
inherently transitory that the trial court will not have even enough time to rule on a
motion for class certification before the proposed representative's individual interest
expires." *Geraghty*, 445 U.S. at 399.

For a number of years, courts struggled with these cases, with the majority of courts holding that the named plaintiffs were entitled to pursue class certification, notwithstanding the offer of judgment. *See Epps v. Wal-Mart Stores, Inc.*, 307 F.R.D. 487, 491 (E.D. Ark. 2015) (collecting cases). Many of these decisions observed that, like the claims in *Gerstein*, these claims are capable of repetition yet evading review—albeit because they are vulnerable to being serially picked off, rather than because of their subject matter.

In 2016, the Supreme Court resolved the issue, holding that an unaccepted offer of judgment does not render a plaintiff's claim moot. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016). As the Court explained, ordinary principles of contract law dictate that an unaccepted Rule 68 offer, like any other unaccepted contract offer, is a legal nullity. *Id.* at 670. And without a settlement, the parties remain adverse. *Id.* at 670-72. In other words, if the named plaintiff does not accept the offer of judgment, his claim does not become moot.

In the Court's view, *Campbell-Ewald* substantially undermines the previous case law regarding the impact of Rule 68 offers. Again, that case law began with the premise that a Rule 68 offer (even if rejected) renders the named plaintiff's individual claim moot. That case law then extended *Gerstein* to permit the named plaintiff to seek class certification notwithstanding the fact that his or her individual claim was moot. But

-13-

under *Campbell-Ewald*, an unaccepted Rule 68 offer does not render the named plaintiff's individual claim moot, and thus there is no need to extend *Gerstein* to cover this situation.

Moreover, even if the reasoning of the pre-*Campbell-Ewald* cases retains its vitality, that reasoning is a poor fit for this case.  This is not a case involving nominal or modest damages, in which the defendant can pick off a named plaintiff by offering a few hundred dollars.  Rather, this is a case in which the defendant can pick off a named plaintiff only by offering to treat a potentially deadly disease with expensive medical care.  In short, the types of claims at issue here are not so inherently likely to evade class certification that an extension of *Gerstein* is warranted.  *See Anderson*, 515 F.3d at 826-27 (declining to apply *Gerstein* in the absence of any showing that future claims would evade review); *Shipman v. Mo. Dep't of Family Servs.*, 877 F.2d 678, 682 (8th Cir. 1989) (characterizing the *Gerstein* exception as "narrow" and declining to apply it); *Inmates of Lincoln Intake & Detention Facility by Windes v. Boosalis*, 705 F.2d 1021, 1023-24 & n.2 (8th Cir. 1983) (same); *Bishop v. Comm. on Prof'l Ethics & Conduct of Iowa State Bar Ass'n*, 686 F.2d 1278, 1284 n.13 (8th Cir. 1982) (declining to apply *Gerstein* because "there is absolutely no reason to expect that Bishop's individual interest in advertising means and contents prohibited by the Iowa Disciplinary Rules would expire prior to the time the district court could reasonably be expected to certify a class action").

-14-

The Court therefore applies the ordinary rule that, if a named plaintiff's claim becomes moot before class certification, that claim must be dismissed without prejudice, and the named plaintiff cannot represent the class. *Hechenberger v. W. Elec. Co.*, 742 F.2d 453, 455 (8th Cir. 1984) ("The normal rule is that when claims of the named plaintiffs are moot before class certification dismissal of the action is required."). Accordingly, defendants' motion for summary judgment as to Ligons and Buchan is granted, and their claims are dismissed without prejudice.

### 2. Standing to Pursue Claims Regarding Testing

In the third amended complaint, plaintiffs seek, among other things, "[a]n injunction requiring opt-out testing for HCV of all incoming MN DoC prisoners at intake, and of all MN DoC prisoners at regular intervals thereafter." Third Am. Compl. [ECF No. 205] at 23. Defendants later amended their HCV testing and treatment protocol to require opt-out testing at intake, Second Paulson Aff. Ex. I at 7942, but plaintiffs continue to seek periodic opt-out testing of all inmates, not just opt-out testing at intake, ECF No. 240 at 2. Defendants argue that plaintiffs lack standing to seek such relief.

A plaintiff has standing if (1) the plaintiff suffered an injury in fact; (2) the injury is fairly traceable to the challenged conduct of the defendant; and (3) the injury is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540,

1547 (2016).  All of the named plaintiffs have already been diagnosed with chronic

HCV, and none of them claim any injury from a failure to test them or other inmates for

HCV.  Plaintiffs contend that this is not necessary, but the Court disagrees.  "[A]

plaintiff must demonstrate standing separately for each form of relief sought."  *Friends

of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

Because plaintiffs lack standing to pursue a failure-to-test claim on their own

behalf, they cannot pursue such a claim on behalf of the class.  *Golan v. Veritas Entm't,

LLC*, 788 F.3d 814, 821 (8th Cir. 2015) ("It is well established that a plaintiff who lacks

standing to assert his claims cannot be a proper class representative under Rule 23(a).");

*Hall v. Lhaco, Inc.*, 140 F.3d 1190, 1196 (8th Cir. 1998) ("Because Hall does not have

standing to pursue his claim pursuant to § 502(a)(1)(B), it is immaterial whether any

member of the potential class would have standing to pursue this claim.  Hall is not a

proper representative of the class where he himself lacks standing to pursue the

claim.").  The Court therefore grants defendants' motion for summary judgment as to

the failure-to-test claims, and those claims are dismissed without prejudice.

### C.  Merits

#### 1.  Eighth Amendment

"To prevail on an Eighth Amendment claim for deprivation of medical care, an

inmate must show that the prison official was deliberately indifferent to the inmate's

serious medical needs." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011).  As

discussed at the hearing on the parties' motions, the Court believes that there are

genuine disputes of material fact regarding whether chronic HCV is a serious medical

need, whether defendants' treatment policy is consistent with the medical standard of

care, and whether a deliberate choice not to follow the medical standard of care under

the circumstances of this case constitutes deliberate indifference.  *Cf. Burke v. N.D. Dep't*

*of Corr. & Rehab.*, 294 F.3d 1043, 1043-44 (8th Cir. 2002) (per curiam) (reversing dismissal

of inmate's Eighth Amendment claims for failure to treat his HCV).  Accordingly,

defendants' motion for summary judgment as to Maxcy's Eighth Amendment claim is

denied.

## 2.  ADA

### *a.  Procedural Challenge*

In its order granting plaintiffs permission to file a third amended complaint, the

Court ordered that the existing named plaintiffs and any new named plaintiffs could

not add new claims for relief, but could only delete or narrow the claims that had been

pleaded in the second amended complaint.  ECF No. 201 ¶ 3(b).  Defendants argue that

Maxcy's ADA claim, as pleaded in the third amended complaint, violates this order

because it differs from the ADA claim that was pleaded by Ligons and Michaelson in

the second amended complaint.  The Court disagrees.

In the third amended complaint, Maxcy alleges that defendants discriminate against inmates with chronic HCV by refusing to follow the medical standard of care for that condition even though defendants do follow the medical standard of care for other conditions (notably, HIV). Third Am. Compl. ¶¶ 8, 130-136, 172. This claim is fairly encompassed within the factual allegations of the second amended complaint and the arguments plaintiffs advanced during the initial round of dispositive motions. *See* Second Am. Compl. [ECF No. 42] ¶¶ 77-80, 85 (alleging unequal treatment of inmates with HCV and inmates with HIV); ECF No. 141 at 3, 65-66 (plaintiffs' brief arguing that defendants' "discriminatory denial" of the medical standard of care for inmates with HCV, in contrast to their treatment of inmates with HIV, violates the ADA).[5] The Court therefore finds that Maxcy's ADA claim is within the scope of the Court's order granting permission to file a third amended complaint.

### b. Merits

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish an ADA violation, a plaintiff must prove that: "1) he is a qualified individual with a disability; 2) he was excluded from

---

[5]The Court cites this document's internal pagination rather than the pagination produced by the Court's electronic filing system.

participation in or denied the benefits of a public entity's services, programs, or

activities, or was otherwise discriminated against by the entity; and 3) that such

exclusion, denial of benefits, or other discrimination, was by reason of his disability."

*Layton v. Elder*, 143 F.3d 469, 472 (8th Cir. 1998).

A state prison is a "public entity" and prison medical services are "services,

programs, or activities" within the meaning of Title II.  *Pa. Dep't of Corr. v. Yeskey*, 524

U.S. 206, 210 (1998); *Mason v. Corr. Med. Servs., Inc.*, 559 F.3d 880, 886 (8th Cir. 2009).

Thus, for example, a prison may be required to provide a sign-language interpreter so

that a deaf inmate can access medical services.  *See Randolph v. Rodgers*, 253 F.3d 342,

343-44 (8th Cir. 2001).  Similarly, a disabled inmate who is physically unable to access

medical care in prison may have a claim under the ADA.  *Cf. United States v. Georgia*,

546 U.S. 151, 157 (2006) ("it is quite plausible that the alleged deliberate refusal of prison

officials to accommodate Goodman's disability-related needs in such fundamentals as

mobility, hygiene, medical care, and virtually all other prison programs [violated the

ADA]").  In addition, a prison may be liable under the ADA for denying medical care

that was prescribed to the inmate, if that denial was based on disability.  *Dinkins v. Corr.*

*Med. Servs.*, 743 F.3d 633, 635 (8th Cir. 2014) (per curiam) (denial of physical therapy

"could form the basis for a viable claim if the therapy was medically prescribed").

The situation is different, however, when an inmate claims that the allegedly inadequate medical treatment that he has received for his disabling condition violates the ADA.  The Eighth Circuit has repeatedly held—in no uncertain terms—that such claims are not cognizable.  *See A.H. v. St. Louis Cty., Mo.*, 891 F.3d 721, 729 (8th Cir. 2018) ("Improper medical treatment claims may not be brought under the ADA or [Rehabilitation Act]."); *Dinkins*, 743 F.3d at 634 (medical-treatment decisions, including the failure to properly diagnose and treat inmate's pernicious anemia, "cannot form the basis of a claim under the [Rehabilitation Act] or the ADA"); *Shelton v. Ark. Dep't of Human Servs.*, 677 F.3d 837, 843 (8th Cir. 2012) ("The district court correctly held that a claim based upon improper medical treatment decision may not be brought pursuant to either the ADA or the Rehabilitation Act."); *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) (per curiam) (agreeing with *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005) and *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) that ADA claims cannot be based on medical-treatment decisions).

No doubt aware of this Eighth Circuit precedent, Maxcy does not directly claim that defendants' allegedly improper treatment of his chronic HCV violates the ADA. Instead, he claims that defendants discriminate on the basis of disability in violation of the ADA because they do not follow the medical standard of care for HCV but do follow the medical standard of care for HIV and other illnesses.  In the Court's view,

however, Maxcy's attempt to reframe his claim does not take this case outside of the Eighth Circuit's prohibition on using the ADA to attack the adequacy of medical treatment.

To begin with, it is difficult to understand how it could constitute unlawful disability discrimination for prisoners with different diseases to be given different medical treatment under different treatment protocols. Indeed, an allegation that different diseases receive different medical treatment would appear to be a most unlikely candidate for a discrimination claim. Discrimination means failing to extend like treatment to like situations, but different diseases do not present like situations.

To overcome this problem, Maxcy relies on the allegation that the DOC follows the medical standard of care in treating HIV but follows a lesser standard of care in treating HCV. If Maxcy's recasting was successful, however, *every* claim of inadequate medical treatment by a prisoner could be brought under the ADA (rather than under the Eighth Amendment), as *every* prisoner could claim that "my institution provides adequate treatment for $x$ (whether $x$ is HIV, or high cholesterol, or tooth decay), but does not provide adequate treatment for my condition."

Putting that aside, in order to make out a claim of discrimination under his theory, Maxcy would still have to prove that the care that he is receiving is inadequate, as providing *adequate* medical care to a prisoner cannot possibly be discriminatory. At

bottom, then, Maxcy is making a claim of inadequate medical care, and the Eighth

Circuit has repeatedly said that such a claim cannot be brought under the ADA.  *See*

*Burger*, 418 F.3d at 883 ("a lawsuit under the Rehab Act or the Americans with

Disabilities Act (ADA) cannot be based on medical treatment decisions").

The Court acknowledges that other district courts have held that similar claims

for treatment of HCV may be brought under the ADA.  *See Postawko v. Mo. Dep't of*

*Corr.*, No. 2:16-CV-4219 (NKL), 2017 WL 1968317, at *12-13 (W.D. Mo. May 11, 2017);

*Mitchell v. Williams*, No. 6:15-CV-93, 2016 WL 723038, at *3-4 (S.D. Ga. Feb. 22, 2016).

These courts reason that the plaintiffs' ADA claims resemble the kind of denial-of-care

claims that are cognizable under the ADA.  *See Postawko*, 2017 WL 1968317, at *13

("Claims of inadequate medical treatment for a disability are distinguishable from

claims that a prisoner was denied access to medical services because of his disability.").

The Court respectfully disagrees with this reasoning.  The claims to which these

courts refer involve the denial of care to which a prisoner is indisputably entitled, such

as medication or treatment that has already been prescribed for him.  *See Dinkins*, 743

F.3d at 635.  In other words, the question in those cases is not whether the plaintiff is

entitled to particular medication or treatment—he is—but whether the plaintiff has been

denied that medication or treatment on account of a disability.  Here, by contrast, the

central question before the Court is whether Maxcy is entitled to have his chronic HCV

treated with DAAs.  Maxcy must establish that he is entitled to that particular course of

treatment—and, to do so, Maxcy will first have to establish that he is currently receiving

inadequate care.  That is precisely the kind of claim that the Eighth Circuit has held is

not cognizable under the ADA.  The Court therefore grants defendants' motion for

summary judgment on Maxcy's ADA claim.

Although the Court need not reach the issue, there is another problem with

Maxcy's ADA claim.  As noted, to prevail on his claim, Maxcy must prove, among other

things, that he is a "qualified individual with a disability."  42 U.S.C. § 12132; *Layton*,

143 F.3d at 472.  A "disability" means "a physical or mental impairment that

substantially limits one or more major life activities of such individual"; "a record of

such an impairment"; or "being regarded as having such an impairment . . . ."  42 U.S.C.

§ 12102(1).  The Eighth Circuit has held that a diagnosis of HCV is not, in and of itself,

sufficient to establish disability; the plaintiff must present evidence showing that one of

his major life activities has been substantially limited by the condition.  *Kirkeberg v.*

*Canadian Pac. Ry.*, 619 F.3d 898, 903 (8th Cir. 2010).[6]

---

[6]*Kirkeberg* was decided under the version of the ADA in effect prior to January 1, 2009.  *Kirkeberg*, 619 F.3d at 904 n.2.  Under the current version, "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures" such as medication and medical supplies.  42 U.S.C. § 12102(4)(E).  In the Court's view, this amendment does not undermine the holding of *Kirkeberg* that a diagnosis of HCV, standing alone, is insufficient to establish that a plaintiff is disabled within the meaning of the ADA.

The parties' briefs barely mention the issue of whether Maxcy is "disabled" for

purposes of the ADA.  Even if Maxcy personally meets the ADA's definition—which is

doubtful, based on the evidence in the record—it is clear that this is a complex and

highly fact-specific inquiry that is not amenable to resolution on a classwide basis.  *See*

*Stafford v. Carter*, No. 1:17-CV-0289 (JMS/MJD), 2018 WL 4361639, at *21 (S.D. Ind.

Sept. 13, 2018) (decertifying class of inmates with HCV with respect to claims under the

ADA).  Even if the Court were to permit Maxcy's individual ADA claim to proceed to

trial, therefore, the Court would not likely certify a class under the ADA.  *See McKeage v.*

*TMBC, LLC*, 847 F.3d 992, 998 (8th Cir. 2017) (noting Rule 23's "implicit requirement

that a class must be adequately defined and clearly ascertainable," which is "enforce[d]

through a rigorous analysis of the Rule 23 requirements" (citation and quotation marks

omitted)).

### 3.  Damages

Finally, the parties dispute the status of Ligons's and Michaelson's claims for

damages.  As discussed above, plaintiffs retained additional counsel and, at the Court's

suggestion, those new attorneys simplified this case, including by dropping Ligons's

and Michaelson's claims for damages.  Ligons and Michaelson ask that their damages

claims be dismissed without prejudice; defendants contend that those claims should be

dismissed with prejudice.

If a defendant has filed an answer or moved for summary judgment, an action may be dismissed at the plaintiff's request only by court order or by stipulation of the parties.  Fed. R. Civ. P. 41(a).[7]  In considering whether to permit dismissal without prejudice, "the district court should consider whether the party has presented a proper explanation for its desire to dismiss; whether a dismissal would result in a waste of judicial time and effort; and whether a dismissal will prejudice the defendants."  *Mullen v. Heinkel Filtering Sys., Inc.*, 770 F.3d 724, 728 (8th Cir. 2014) (cleaned up).

All of these factors militate in favor of dismissing Ligons's and Michaelson's damages claims without prejudice.  Ligons and Michaelson are not trying to avoid an adverse decision or obtain a more favorable forum, *id.*; rather, they were encouraged by the Court to relinquish their damages claims and drop Michaelson as a plaintiff so as to make the case more suitable for class treatment.  Far from wasting judicial time and effort, Ligons and Michaelson are attempting to conserve judicial resources.  Finally,

---

[7]It is not entirely clear whether the dismissal of some, but not all, of the claims in an action is controlled by Fed. R. Civ. P. 15 (which governs amendments to pleadings) or Fed. R. Civ. P. 41(a) (which by its terms governs only the dismissal of an "action").  *See Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1141 n.9 (8th Cir. 2014) (mentioning, but not resolving, the issue).  Defendants have proceeded under the assumption that Rule 41 governs, and plaintiffs have not argued otherwise.  Following the parties' lead, the Court will apply Rule 41(a).  To the extent that this issue may be governed by Rule 15(a)(2), the Court notes that it has already granted plaintiffs permission to delete or narrow their claims for the reasons discussed at the hearing on July 26, 2017.  *See* ECF No. 201 ¶ 3(b) (Court's order permitting plaintiffs to delete or narrow their claims); ECF No. 204 (transcript of hearing).

defendants have not identified any legally cognizable prejudice.  Having to defend a

separate action is not such prejudice, and any evidence that the parties have developed

regarding damages may be used in any subsequent action.  *Id.* (the necessity of

defending another action is not prejudice, nor is the "expense and effort of drafting and

responding to discovery prior to dismissal").  Accordingly, the Court grants Ligons's

and Michaelson's requests that their claims for damages be dismissed without

prejudice.[8]

## III.  CLASS CERTIFICATION

Plaintiffs seek to certify a class under Fed. R. Civ. P. 23(b)(2) of all current and

future DOC inmates who have chronic HCV but who have not been treated with a

DAA.

For a class to be certified, the proposed class must meet all of the criteria of Fed.

R. Civ. P. 23(a) and fall within one of the categories of  Fed. R. Civ. P. 23(b).  The

plaintiff bears the burden of showing that a class should be certified and that the

---

[8]Defendants have not requested that dismissal be conditioned on the payment of
their reasonable costs and attorney's fees.  *See Blaes v. Johnson & Johnson*, 858 F.3d 508,
516 (8th Cir. 2017) (remanding for the district court to consider defendant's request that
dismissal be conditioned on an award of fees and costs).  Even if defendants had made
such a request, the Court would deny it.  Ligons and Michaelson are indigent inmates
proceeding *in forma pauperis* who, in good faith and with the Court's encouragement,
amended their complaint to simplify this case.  Defendants are a state agency and state
officials who are being sued in their official capacities.  Under the circumstances, it
would be unjust to impose fees and costs against Ligons and Michaelson.

requirements of Rule 23 are met.  *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994).

District courts have wide discretion in determining whether certification of a class is

warranted.  *Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir. 1980).  But district courts must

exercise that discretion through careful application of Rule 23, which requires a

"rigorous analysis" to ensure that class certification is appropriate.  *Gen. Tel. Co. of Sw. v.

Falcon*, 457 U.S. 147, 161 (1982).

## A.  Rule 23(a) Requirements

The four threshold requirements of Rule 23(a) are (1) that the class "is so

numerous that joinder of all members is impracticable"; (2) the existence of questions of

law or fact common to the class; (3) typicality of the named plaintiff's claims or

defenses; and (4) that the named plaintiff and class counsel will "fairly and adequately

protect the interests of the class."  Fed. R. Civ. P. 23(a); *Ebert v. Gen. Mills, Inc.*, 823 F.3d

472, 477 (8th Cir. 2016).

## 1.  Numerosity

Plaintiffs offer evidence that there are several hundred DOC inmates with

chronic HCV who have not been treated with a DAA.  Mohring Decl. Ex. 14 at 156-57;

Second Fodness Aff. Ex. I.  This is clearly sufficient to meet the numerosity requirement.

*See Alberts v. Nash Finch Co.*, 245 F.R.D. 399, 409 (D. Minn. 2007) ("In general, a putative

class exceeding 40 members is sufficiently large to make joinder impracticable.").

Defendants do not dispute that the number of inmates with untreated chronic HCV meets the numerosity requirement.  Instead, they attempt to reframe the issue, claiming that Maxcy has failed to show that there are a sufficient number of such inmates who have suffered a cognizable Eighth Amendment injury.  In other words, defendants argue that the proposed class is a null set because all of the proposed class members (including Maxcy) will lose on the merits.[9]

Defendants' argument puts the merits cart before the certification horse.  The purpose of a class action is to adjudicate the merits of a large number of claims in an efficient manner; sometimes the class members win, and sometimes the class members lose.  But whether the class members will ultimately prevail on their claims is not part of the class-certification inquiry.  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." (citation and quotation marks omitted)).

---

[9]Defendants similarly argue that Maxcy lacks standing because he has not suffered a constitutional injury.  This argument confuses the requirements for Article III standing with the merits of the case.  *See Am. Farm Bureau Fed'n v. U.S. Envtl. Prot. Agency*, 836 F.3d 963, 968 (8th Cir. 2016) ("The standing inquiry is not, however, an assessment of the merits of a plaintiff's claim.  In assessing a plaintiff's Article III standing, we must assume that on the merits the plaintiffs would be successful in their claims." (cleaned up)).

The Court therefore concludes that the proposed class meets the numerosity requirement.

## 2.  Commonality

To satisfy the commonality requirement, the claims of the class must present common questions of law or fact that are capable of classwide resolution.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  As Maxcy has framed his Eighth Amendment claim, there are several such questions, including (1) whether chronic HCV is a serious medical need under the Eighth Amendment; (2) whether treating all patients with chronic HCV (including those at F0 and F1) with a DAA unless such treatment is contraindicated is the accepted medical standard of care; and (3) whether defendants' policy of not treating inmates at F0 or F1 unless other comorbidities are present constitutes deliberate indifference to a serious medical need under the Eighth Amendment.

Defendants emphasize that treatment decisions are ultimately a matter of individualized medical judgment.  That is true.  The fact remains, however, that defendants are allegedly denying DAAs to (most) F0 or F1 inmates *not* as a matter of individualized medical judgment, but as a matter of fiscal policy.  All members of the proposed class are subject to this allegedly unconstitutional policy, and all members of the class have suffered the same alleged injury—namely, being deliberately and

categorically excluded from access to effective treatment for an allegedly serious

medical need.  *See Webb v. Exxon Mobil Corp.*, 856 F.3d 1150, 1156 (8th Cir. 2017)

("Pivotal to commonality . . . is whether the class members have suffered the same

injury . . ."  (citation and quotation marks omitted)).

Clearly, then, whether the DOC policy constitutes deliberate indifference to the

serious medical needs of untreated inmates is a question that is capable of classwide

resolution.  *See Postawko v. Mo. Dep't of Corr.*, 910 F.3d 1030, 1038 (8th Cir. 2018)

(affirming district court's finding of common questions of law in inmates' challenge to

prison's HCV treatment protocol).  The fact that DAA treatment may be contraindicated

for certain members of the plaintiff class does not render class treatment inappropriate.

*Id.* (rejecting argument that each class member's "unique medical condition" precludes

class treatment).

It bears emphasizing that Maxcy is not asking the Court to order that each and

every member of the class *be treated with DAAs*.  He is asking the Court to order that

each and every member of the class be treated with DAAs *if he would benefit from such

treatment*.  Maxcy alleges that, under the DOC policy, class members who *would* benefit

from being treated with DAAs are being denied that treatment, not as a matter of

individualized (or even collective) medical judgment, but as a matter of fiscal policy.

As this policy applies to all class members, its constitutionality can be determined—and relief can be granted—on a classwide basis.

### 3.   Typicality

"Typicality under Rule 23(a)(3) means that there are other members of the class who have the same or similar grievances as the plaintiff." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (citation and quotation marks omitted). Defendants argue that typicality is lacking because each class member's claim depends on whether his or her individual medical treatment is constitutionally adequate.  Again, this misconstrues Maxcy's claim.  Maxcy is challenging a policy that is generally applicable to the class, and therefore his claim is typical of the class's claims.  Nor does it matter that Maxcy has an additional medical condition that will require individualized evaluation; as noted, ultimately all class members will have to be individually evaluated for treatment.  *Id.* ("Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory.").

### 4.   Adequacy

"The focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will

vigorously prosecute the interests of the class through qualified counsel." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562-63 (8th Cir. 1982). Maxcy is now represented by able and experienced counsel, and Maxcy is well-informed about the case. Maxcy Aff. ¶¶ 17-29. The Court has no reason to doubt that Maxcy will ably represent the interests of the class. Defendants contend that Maxcy's interests diverge from those of the class because he ▮▮▮▮▮▮ and therefore currently eligible for DAA treatment. So far as the record reflects, however, Maxcy has yet to be treated, and therefore his interests still align with those of the class. The Court finds that Maxcy meets the prerequisites for class certification under Rule 23(a).

### B. Rule 23(b)(2)

Maxcy seeks certification under Rule 23(b)(2), which permits class treatment where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores, Inc.*, 564 U.S. at 360 (citation and quotation marks omitted).

This case plainly qualifies for certification under Rule 23(b)(2).  As discussed above, the challenged policy applies to all class members.  The Court is capable of adjudicating the constitutionality of that policy as to all class members, and an injunction enjoining application of the policy and requiring defendants to consider each class member for treatment with DAAs under the prevailing medical standard of care would apply to all class members.  Defendants' arguments regarding the individualized nature of medical treatment miss the mark.  The Court cannot don a lab coat and decide whether any particular class member should be treated with DAAs; the Court can, however, remove an allegedly unconstitutional barrier to *others* donning lab coats and making that medical decision.

The Court therefore finds that this case is suitable for class certification under Rule 23(b)(2).  The Court will certify a class of all present and future inmates of DOC facilities who have been diagnosed with chronic HCV and have not received treatment with DAAs.  The Court is aware of defendants' concern regarding the length of class members' incarceration, and in particular the concern that defendants may be forced to offer DAA treatment to individuals who have not been in custody long enough to be diagnosed with chronic HCV or who will not be in custody long enough to complete a course of treatment.  Should the class prevail at trial, the Court can address these concerns through appropriate limitations on any ensuing injunctive relief.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1.    Defendants' motion for summary judgment [ECF No. 219] is GRANTED

      IN PART and DENIED IN PART.

      a.    The motion is GRANTED as to all claims by plaintiffs Ronaldo

            Ligons and Brent Buchan, and those claims are DISMISSED

            WITHOUT PREJUDICE.

      b.    The motion is GRANTED as to all claims seeking universal opt-out

            screening for hepatitis C, and those claims are DISMISSED

            WITHOUT PREJUDICE.

      c.    The motion is GRANTED as to plaintiff Lawrence Maxcy's claim

            under the Americans with Disabilities Act, and that claim is

            DISMISSED WITH PREJUDICE AND ON THE MERITS.

      d.    The motion is DENIED in all other respects.

2.    Any remaining claims for damages are DISMISSED WITHOUT

      PREJUDICE.

3.    Plaintiffs' motion for class certification [ECF No. 238] is GRANTED.

4.      The Court hereby certifies the following class under Fed. R. Civ.

P. 23(b)(2):  "All current and future inmates of Minnesota correctional

facilities who have been diagnosed with chronic hepatitis C and have not

received treatment with a direct-acting antiviral medication."

5.      Plaintiff Lawrence Maxcy is appointed class representative and his

attorneys of record are appointed as class counsel, with Ciresi Conlin LLP

appointed as lead class counsel.

Dated:  January 14, 2019                 s/Patrick J. Schiltz_____
                                            Patrick J. Schiltz
                                            United States District Judge