UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

LAWRENCE MAXCY,                                              Civil No. 15-2210 (PJS/BRT)

Individually, and on behalf of those similarly situated,

    Plaintiff,

v.

PAUL SCHNELL,
In his official capacity as Commissioner, Minnesota Department of Corrections;

DAVID A. PAULSON, M.D.,
In his official capacity as Medical Director, Minnesota Department of Corrections;

NANETTE LARSON,
In her official capacity as Health Services Director, Minnesota Department of Corrections,

    Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT**

**INTRODUCTION**

As narrowed by the Court's January 3, 2019 Order (Dkt. No. 317), this lawsuit involves Lawrence Maxcy's claim, as the representative of the certified class ("Class Representative"), that Defendants' Guidelines for Evaluation and Management of Chronic Hepatitis C (HCV) Infection fail to provide necessary medical care to prisoners with chronic, viral hepatitis C ("HCV"), in violation of the Eighth Amendment of the United States Constitution and 42 U.S.C. § 1983. Defendants have denied these allegations throughout the pendency of the case.

The Parties have reached an agreement that resolves the case. Their signed Settlement Agreement and Release ("Settlement Agreement" or "Settlement"), attached as Exhibit 1, if approved by the Court, will resolve all claims made in the pending, Third Amended Complaint in this matter. (Dkt. No. 205). Consistent with Rule 23(e) of the Federal Rules of Civil Procedure, the Parties' proposed Notice to the Class and summary letter from class counsel ("Notice Documents"), attached as Exhibit 2, will properly inform the class members of the Settlement Agreement and give them an opportunity to object to it, on behalf of themselves, a specific subset of the class, or the entire class.

Accordingly, Class Representative Lawrence Maxcy, himself and on behalf of the certified class (as defined below) respectfully submits this memorandum of law in support of his unopposed motion for:

(i) preliminary approval of the proposed settlement of the above-captioned action ("Action") on the terms and conditions set forth in the Settlement Agreement dated March 14, 2019;

(ii) approval of the form, content, and manner of providing notice of the settlement to the Class; and

(iii) a hearing to consider final approval of the settlement and other related matters ("Final Approval Hearing").[1]

---

[1] Unless otherwise noted, quotation marks, internal citations, and footnotes are omitted and emphasis is added.

1

**PRELIMINARY STATEMENT**

Class Representative and Defendants Paul Schnell, in his official capacity as Commissioner of the Minnesota Department of Corrections ("the DOC"), David A. Paulson, in his official capacity as the Medical Director of the DOC, and Nanette Larson, in her official capacity as Health Services Director of the DOC, (collectively, "Defendants" or "the DOC") have reached an agreement to settle this Action. If approved by the Court, the Settlement will result in significant changes to the DOC guidelines and practices for the testing and treatment of prisoners with chronic, viral hepatitis C ("HCV"), and an expansion of treatment eligibility for the DOC prisoners with HCV, to prisoners at all HCV fibrosis levels. Pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"), Class Representative seeks the Court's preliminary approval of the Settlement so that the Notice Documents can be disseminated to Class Members and the Final Approval Hearing scheduled.

The Settlement—reached following over three and one half years of hard-fought litigation—provides a significant expansion of treatment for the certified class, prisoners diagnosed with HCV who have not been treated with direct acting antiviral ("DAA") medication ("Class"). The Settlement follows an extensive legal and factual investigation into possible claims, a significantly modified third amended complaint, a fully briefed and successfully litigated motion for class certification, and a fully briefed and litigated motion for summary judgment. This litigation was coupled with substantial discovery (including a review of nearly 25,000 pages of documents and eleven fact depositions) as well as expert reports and four expert depositions. The Settlement is the product of adversarial, arm's length negotiations by the Parties.

Class Representative and his counsel are fully aware of the strengths and weaknesses of the Action, and have evaluated the fairness of its resolution at this time and the risks of continued litigation. By this Settlement, Class Members stand to benefit from an expansion of treatment for HCV. This result appropriately balances Class Representative's objective of securing the highest

possible access to treatment for the Class while accounting for the risk that they could receive a lesser expansion of access to treatment—or no expansion—if Class Representative were to be unsuccessful at trial. Class Representative and the undersigned counsel ("Lead Class Counsel") believe that the Settlement is unambiguously in the best interest of the Class.

At the Final Approval Hearing, the Court will have before it more extensive motion papers in support of the Settlement, and will be asked to make a determination of whether the Settlement is fair, reasonable, and adequate under all of the circumstances surrounding the Action. At this time, Class Representative requests entry of the proposed Preliminary Approval Order that will begin the final approval process by, among other things:

- Preliminarily approving the terms of the Settlement set forth in the Settlement Agreement as fair, reasonable, and adequate after considering the factors in Rule 23(e)(2);

- Approving the form and content of the Notice Documents, attached as Exhibit 2;

- Finding the method for disseminating the Notice Documents to constitute the best notice practicable under the circumstances and to satisfy the requirements of Rule 23, due process, and all other applicable law; and

- Setting a schedule for: (i) notice to the Class; (ii) objecting to the Settlement, or any part thereof; (iii) submitting Objections; (iv) submitting papers in support of final approval of the Settlement and related matters; and (v) the Final Approval Hearing.

For the reasons set forth herein, the Settlement warrants the Court's preliminary approval and the Preliminary Approval Order should be entered.

## NATURE AND PROCEDURAL BACKGROUND OF THE ACTION

Plaintiffs Ronaldo Ligons and Barry Michaelson initiated this action on May 1, 2015, alleging that the DOC's HCV testing and treatment guidelines and practices violated the Eighth Amendment of the United States Constitution, 42 U.S.C. § 1983, and the Americans with Disabilities Act. (Dkt. No. 1). A Third Amended Complaint was filed on December 1, 2017, seeking declaratory and injunctive relief from claims brought under the Eighth Amendment and the Americans with Disabilities Act. Plaintiff Michaelson was dropped from this complaint

because of his release from custody, and Brent Buchan and Lawrence Maxcy were added as named plaintiffs. (Dkt. No. 205).

Throughout the case, Plaintiffs alleged that HCV can lead to liver disease, cirrhosis, liver cancer, and death, along with other painful complications, and that as such it is a serious medical need. (Dkt. Nos. 1, 205). Plaintiffs alleged that the standard of care is to treat all with HCV with DAA medications, that this treatment is safe, with minimal side effects, that it is effective, with cure rates above 95%, and that it is easily administered. (*Id.*). Plaintiffs alleged that the DOC's testing and treatment guidelines and practices, which provide access to DAA treatment to only some of its prisoners with HCV, constitute deliberate indifference to this serious medical need. Defendants, on the other hand, have contended throughout the case that their guidelines and practices are appropriate and lawful.

After a July 26, 2017 hearing on motions for summary judgment, class certification, a preliminary injunction, and to exclude the testimony of Defendants' expert, the Court allowed Plaintiffs' counsel 90 days to associate with experienced class counsel, and to have counsel take over as lead counsel in the case. The undersigned counsel from Ciresi Conlin, LLP entered appearances on October 3, 2017 (Dkt. No. 199), and filed the pending Third Amended Complaint on December 1, 2017. (Dkt. No. 205).

Extensive discovery, involving significant efforts by both sides, preceded the Third Amended Complaint, and additional discovery followed it. These efforts included Defendants' production (and Plaintiffs' review) of over 10,000 pages of documents, Plaintiffs' production (and Defendants' review) of over 14,000 pages of documents, and fifteen depositions, including four expert depositions and three that were taken under Rule 30(b)(6) of the Federal Rules of Civil Procedure. The Parties also exchanged lengthy expert reports in support and opposition to summary judgment and class certification and on the merits of the case.

Plaintiffs' motion for class certification, and Defendants' motion for summary judgment, were filed, briefed, and argued on July 27, 2018. In its January 3, 2019 Order, the Court granted in part and denied in part Defendants' summary judgment claims, leaving in place the Eighth

4

Amendment claim and one of the three named plaintiffs. (Dkt. No. 317). The Court certified a class, defined as: "All current and future inmates of Minnesota correctional facilities who have been diagnosed with chronic hepatitis C and have not received treatment with a direct-acting antiviral medication." (*Id*.). The Court appointed Lawrence Maxcy as Class Representative, and Ciresi Conlin, LLP as Lead Class Counsel.

The Court's August 21, 2018 Trial Notice and Final Pretrial Order set a trial date of February 4, 2019. Consistent with the Order and its schedule, the Parties engaged in active trial preparation, including the selection of exhibits and witnesses, the preparation and exchange of witness and exhibit lists, and the research and development of proposed findings of fact and conclusions of law.

While discovery and motion practice was proceeding, the Parties discussed the possibility of resolving the case. These discussions intensified following the Court's summary judgment and class certification Order. (Dkt. No. 317). Following these adversarial, arm's-length negotiations, the Parties reached an agreement-in-principle to settle the case, and negotiated a term sheet ("Term Sheet") setting forth the material terms of their agreement. The Parties informed the Court of their agreement on January 15, 2019, and the Term Sheet was executed the same day.

Over the next several weeks, the Parties negotiated the Settlement Agreement (and exhibits thereto), which sets forth the final and binding agreement to settle the case. During this time, Lead Class Counsel worked to develop the Notice and this motion. The Parties executed the Settlement Agreement on March 14, 2019.

Under the terms of the Settlement Agreement: 1) all HCV-infected prisoners at levels F1 through F4 are eligible for DAA treatment, with treatment beginning within three months of the determination of their fibrosis level; 2) all prisoners at F0 with co-occurring conditions, including HIV, hepatitis B, diabetes and others, will also receive DAA treatment in the same timeframe; 3) the remaining untreated prisoners with HCV, those at F0 without co-occurring conditions, will receive treatment after continuous imprisonment of sixteen months; 4) untreated prisoners are eligible for reassessment every six months, and if it is determined that they have

become eligible for treatment, for example by progressing from F0 to F1, they will receive treatment; 5) prisoners who are released without treatment, including those at F0 whose sentences are less than sixteen months and those whose sentences are too short to allow for treatment, will receive counseling about HCV and about antiviral treatment resources in the community.

The Settlement Agreement further provides for a two-year monitoring period to permit supervision of its implementation, during which time the DOC will provide quarterly reports to the Court and Plaintiff's counsel, documenting any changes to its HCV treatment policies and the numbers of prisoners tested, diagnosed, treated, and untreated, by fibrosis level, further indicating the reason for the deferral or denial of treatment to any prisoner who would otherwise qualify under the revised guidelines. No Party admits any wrongdoing or deficiency in their case. Defendants will reimburse class counsel for attorneys' fees in the amount of $325,000, and for documented costs to the date of settlement of $41,144.25, and Plaintiff and class members will release their claims

## ANALYSIS

Rule 23(e) of the Federal Rules of Civil Procedure outlines the standards and procedures courts follow in approving settlements for a class proposed to be certified for purposes of settlement. As recently amended, Rule 23(e)(1) directs courts to determine whether they "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." These standards are met here.

### I. THE PROPOSED SETTLEMENT WARRANTS APPROVAL UNDER RULE 23(e)(2).

Rule 23(e) provides that a class action settlement must be presented to the Court for approval, and the settlement should be approved if the Court finds it "fair, reasonable, and adequate," after considering whether: A) the class representatives and class counsel have adequately represented the Settlement Class; B) the proposal was negotiated at arm's length; C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of

trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2); *see Marshall v. Nat'l Football League*, 787 F.3d 502, 509 (8th Cir. 2015). Further, public policy favors settlement of class action litigation. "The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context." *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, No. 11-MD-2247 ADM/JJK, 2012 WL 2512750, at *7 (D. Minn. June 29, 2012).

Consistent with these considerations, Eighth Circuit precedent highlights four factors for final settlement approval: "(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." *Keil v. Lopez*, 862 F.3d 685, 693 (8th Cir. 2017) (citing *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)). The approval of class settlements and the assessment of their fairness, reasonableness, and adequacy, is a matter for the trial court's discretion. *See Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975) ("Such a determination is committed to the sound discretion of the trial judge.").

Judicial review of a proposed class action settlement consists of a two-step process: 1) preliminary approval, followed by the distribution of notice to the class, and 2) final approval, after class members have received notice of the settlement and the opportunity to raise objections. The Court's preliminary approval allows notice to issue to the class and for class members to object to the settlement. *See White v. Nat'l Football League,* 822 F. Supp. 1389, 1399 (D. Minn. 1993). In this process courts consider whether the proposed settlement falls "within the range of possible approval." *Id*.

Application of the uniform set of amended Rule 23(e)(2) factors is designed to focus the Court's examination at the preliminary approval stage on both the procedural and substantive fairness of the proposed Settlement. Rule 23(e)(2)'s determination of whether a settlement is fair,

reasonable, and adequate considers "both the adequacy of class counsel and the negotiating process leading up to the settlement, "procedural review," as well as the settlement's substantive terms, "substantive review." Fed. R. Civ. P. 23(e)(2), cmt. The Parties' proposed Settlement is both procedurally and substantively fair.

> A. **The Class Representative and Class Counsel Have Adequately Represented the Settlement Class.**

The Settlement in this case was achieved after good faith, arm's-length negotiations between well-informed and experienced counsel for the Parties, following more than three and one-half years of litigation, including the completion of fact and expert discovery, briefing, argument, and resolution of summary judgment and class certification motions, and preparation for trial. The briefing and proceedings demonstrate that counsel negotiating on behalf of the class had an "adequate information base" prior to reaching their agreement to settle, as contemplated by the Advisory Committee on the new Rule 23(e)(2). Fed. R. Civ. P. 23(e) advisory committee note (2018); *see also In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 631 F. Supp. 2d 1151, 1158 (D. Minn. 2009) ("Where sufficient discovery has been provided and the parties have bargained at arm's-length, there is a presumption in favor of the settlement.").

During the pendency of this case, named plaintiffs and their counsel, *inter alia*: (1) conducted an extensive investigation prior to filing their initial and subsequent complaints; (2) moved, briefed, and argued for class certification; (4) fully briefed and argued against Defendants' summary judgment motions; (5) augmented and completed substantial fact discovery, including reviewing extensive collections of documents, e-mails, and spreadsheets, taking and defending fact, expert, and 30(b)(6) depositions; (6) completed substantial expert discovery; and (7) conducted extensive trial preparation. Fact and expert discovery and much trial preparation were concluded by the time the proposed settlement was reached. As a result, Class Representative and Lead Class Counsel had an adequate basis for assessing the strength of the Class's claims and the DOC's defenses when they negotiated and entered into the Settlement.

Further, Lead Class Counsel has experience prosecuting complex cases around the country and believes the Settlement is in the best interests of the Class. *See, e.g.*, *Id.*; *White*, 822 F. Supp. at 1420-21 ("[S]ettlement was not reached easily, but represents the product of long and difficult negotiations, conducted in good faith and at arm's length by experienced and able attorneys."); *In re Uponor, Inc.*, 2012 WL 2512750, at *7 (approving settlement after arm's length negotiations, extensive discovery over a three-year period, and the involvement of experienced counsel on both sides).

Lead Class Counsel's extensive litigation expertise and its class action experience, together with the motion practice and discovery in this case, demonstrates that Class Representative and Lead Class Counsel have adequately represented the Settlement Class. These facts strongly support the conclusion that the Settlement is fair. *See White*, 822 F. Supp. 2d at 1420 (upholding deference to negotiated settlement agreements when both parties have capable and experienced attorneys).

### B.  The Settlement Was Negotiated at Arm's-Length by Well-Informed and Experienced Counsel.

The Settlement in this case was achieved after good faith, arm's-length negotiations between experienced counsel. As noted above, the Parties and their counsel were extremely knowledgeable about the strengths and weaknesses of their respective cases prior to reaching their agreement to settle.

In addition, earlier in the litigation process, the Parties engaged in Court-facilitated settlement discussions, facilitated by Magistrate Judge Thorson, on January 3, 2018, prefaced by the preparation and submission of settlement materials, which were not successful. Although the settlement conference did not produce agreement, it helped identify impediments to consensus and, in so doing, provided useful groundwork for the discussions that followed. Unable to reach an agreement at that time, the Parties engaged in additional settlement negotiations after the completion of fact and expert discovery, the briefing and argument of the Parties' summary judgment and class certification motions, trial preparation activities, and the Court's ruling that

narrowed the case and preserved its essential core. The Parties continued to engage in adversarial, arm's-length negotiations before finally reaching an agreement-in-principle to settle the case and executing the Term Sheet.

The fact that the Settlement is the product of arm's-length settlement negotiations and was entered into by experienced and well-informed counsel demonstrates that the process by which the Settlement was reached is procedurally fair. It is, therefore, presumptively fair, reasonable and adequate. *See Id.* at 1420 ("The court therefore affords considerable weight to the opinion of experienced and competent counsel that is based on their informed understanding of the legal and factual issues involved.").

### C. The Relief Provided for the Class Is Adequate When Weighed Against Litigation Risks, the Effectiveness of Distributing Relief, and the Terms of a Proposed Fee Award.

In addition to being procedurally fair, the Settlement is also substantively fair. At final approval, the Parties will provide the Court with a full analysis of the factors set forth in *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988).[2] A preliminary analysis of these factors supports preliminary approval. *See Martin v. Cargill, Inc.*, 295 F.R.D. 380, 383 (D. Minn. 2013) ("If the proposed settlement is preliminarily acceptable, the Court then directs that notice be provided to absent class members, in order to afford them an opportunity to be heard on, object to, and opt out of the settlement.").

#### 1. The Relief Provided for the Class Is Adequate When Weighed Against Litigation Risks.

In assessing a proposed settlement, courts consider the range of reasonableness in light of both the best possible recovery and litigation risks. *See In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 631 F. Supp. 2d at 1158 ("The nature of the litigation to date, and the certainty of continued complex and expensive proceedings, counsels in favor of approval."). Courts consider not only the length and complexity of trial, but also that "the likely post-trial motions

---

[2] As noted above, the factors are: "the merits of the plaintiff's case, weighed against the terms of the settlement; the defendant's financial condition; the complexity and expense of further litigation; and the amount of opposition to the settlement." *Van Horn*, 840 F.2d at 607.

and appeals would have taken years to resolve, during which time the Class would have received no distribution of any [relief]." *Beaver Cty. Employees' Ret. Fund v. Tile Shop Holdings, Inc.*, No. 014-CV-00786 ADM/TNL, 2017 WL 2574005, at *3 (D. Minn. June 14, 2017).

Considering the potential for lengthy litigation, even if Class Representative were to succeed, the class members would be delayed in receiving treatment for their HCV. Courts find in favor of settlement in such situations "[b]ecause the Settlement Agreement will yield a certain, substantial, and prompt recovery, without further delay and expense." *Yarrington v. Solvay Pharm., Inc.*, No. 09-CV-2261 RHK/RLE, 2010 WL 11453553, at *10 (D. Minn. Mar. 16, 2010).

The proposed Settlement falls well above the threshold established by Eighth Circuit precedent. If approved, the Settlement will significantly expand treatment to prisoners with HCV, extending eligibility to prisoners at every fibrosis level. The addition of a sixteen-month waiting period for prisoners at level F0 without co-occurring conditions, with interim reassessments every six months, constitutes a reasonable midpoint between the relief sought in the complaint, which would have provided treatment eligibility to this subpopulation without delay, and the result had Plaintiffs been unsuccessful at trial, under which they and many others would not receive treatment unless and until their disease progressed to level F2. This result must be viewed in light of the risk that a less positive result, or no remedy at all, might be achieved after trial, and that any remedy would only come after the delay and expense of trial and presumptive appeals. Counsel believe this discount from their "best case" scenario is warranted.

While Lead Class Counsel believe that their claims would be borne out by the evidence, they also recognize that they face significant risks in establishing Defendants' liability and the entitlement of the Class to relief had the action continued. Establishing Defendants' liability under the Eighth Amendment requires an assessment of whether untreated prisoners' HCV constitutes a serious medical need, and whether the DOC's delay or denial of their treatment manifests deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Butler v. Fletcher*, 465 F.3d 340, 344-45 (8th Cir. 2006). During the pendency of the case, the DOC expanded the

scope of its HCV treatment coverage, from prisoners at F3 and F4 to prisoners at F2, F3, and F4, and also to prisoners at F0 and F1 with co-occurring conditions. The current policy leaves prisoners at F1 and F0 without co-occurring conditions untreated. By definition, the livers of people at these fibrosis levels have no or minimal scarring, and evidence suggests that that disease progression is slower at lower fibrosis levels. As the scope of the DOC's coverage expanded, establishing that the untreated population has a serious medical need, and that the DOC's monitoring of them constitutes deliberate indifference, became more difficult.

Even if Mr. Maxcy prevailed at trial, Defendants would likely appeal. The foregoing would pose substantial risk, expense, and delay to the Class. *See Beaver Cty. Employees' Ret. Fund*, 2017 WL 2574005, at *3. In contrast, the Settlement provides the Settlement Class with an immediate and significant recovery, one that Defendants', aware of their financial condition, are prepared to provide.

Accordingly, consistent with the final approval factors identified in *Van Horn*, the merits of Class Representative's case weighed against the settlement terns, Defendants' financial condition, and the complexity and expense of further litigation, all support preliminary approval of the Settlement. *See Van Horn*, 840 F.2d at 607. The amount of opposition to the Settlement, and the specifics of any objections, will be evaluated in connection with the Final Approval Hearing.

### 2. The Proposed Attorney's Fee Award Is Reasonable.

As set forth in the Notice, the Settlement Agreement provides attorneys' fees in the amount of $325,000, and documented costs of $41,144.25. These agreements in no way impact or lessen the relief that the Settlement affords to class members. Further, these sums reflect a very substantial reduction from counsel's investments of time and resources, and as such are more than reasonable. "Where, as here, class counsel has expended considerable time and effort in procuring a settlement, has independently negotiated the fee amount at arm's length with defendants, and the fee amount does not impact or diminish the total settlement received by class

members, the attorneys' fees requested are appropriate." *In re Uponor, Inc.*, 2012 WL 2512750, at *11.

### D. The Settlement Treats Settlement Class Members Equitably Relative to Each Other.

The Settlement Agreement does not unfairly differentiate among class members in the relief afforded to them. First, all class members will benefit from the Settlement, which extends treatment eligibility to prisoners at all fibrosis levels, with or without co-occurring conditions. It does delay treatment access to prisoners at F0 without co-occurring conditions, but this group suffers from HCV at its lowest and least-threatening stage. The needs of this group are further addressed by periodic reassessments, by counseling about HCV and about access to community-based antiviral treatment, should their sentences expire before they become eligible for the DOC treatment, and by establishing a definitive deadline after which they will be treated.

In sum, Class Representative still faces the substantial hurdles of trial and likely appeals—a process which could possibly extend for years. In light of these litigation risks, Plaintiff Maxcy and Lead Class Counsel believe—based on their thorough understanding of the strengths and weaknesses of their claims against Defendants—that the proposed Settlement provides solid remedies to the class members. Accordingly, the Settlement warrants preliminary approval. *See, e.g., Buchet v. ITT Consumer Fin. Corp.*, 845 F. Supp. 684, 691 (D. Minn.), *amended*, 858 F. Supp. 944 (D. Minn. 1994) (holding that courts review proposed settlements for fairness, reasonableness, and adequacy.); *Martin*, 295 F.R.D. at 383 ("[A]t the preliminary-approval stage, the fair, reasonable and adequate standard is lowered, with emphasis only on whether the settlement is within the *range* of possible approval due to an absence of any glaring substantive or procedural deficiencies.").

## II. THE COURT SHOULD APPROVE THE FORM, CONTENT, AND METHOD FOR DISSEMINATING NOTICE TO THE CLASS.

The Parties propose a Notice from the Court and a summary letter to the class ("Notice Documents"), summarizing the settlement terms and notifying class members of the availability

of copies of the Settlement Agreement, of their right to submit objections to the settlement, and of the procedure for doing so. These are attached to the Motion for Preliminary Approval as Exhibit 2. Class Representative requests that the Court approve the form and content of the proposed Notice Documents, as well as the proposed manner for providing notice of the Settlement to the Class Members, as set forth in the Settlement Agreement and proposed Preliminary Approval Order.

Rule 23 calls upon the Court to "direct notice in a reasonable manner to all class members who will be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). For Rule 23(b)(2) classes, the Court must determine that the notice is "appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A). Class notice "must 'reasonably [ ] convey the required information and it must afford a reasonable time for those interested to make their appearance.'" *Grunin*, 513 F.2d at 120.

In clear, concise, and plain language, the proposed Notice Documents will provide class members with the terms of the Settlement Agreement, the methods and opportunity for objecting, and notice of the Fairness Hearing. *See White v. Nat'l Football League*, 836 F. Supp. 1458, 1470 (D. Minn. 1993) (finding that class members had "extensive and proper court-approved notice"). Among other things, the Notice Documents apprise recipients of the nature of the Action, the definition of the Class, the claims to be released, the binding effect of the judgment, and information regarding Lead Class Counsel's motion for attorneys' fees and reimbursement of expenses. The Notice Documents provide specifics on the date, time, and place of the Final Approval Hearing, how to access the Settlement Agreement for review, and procedures and deadlines for objecting to the Settlement and/or the motion for attorneys' fees and reimbursement of expenses.

As such, the proposed method of dissemination provides notice "in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The class consists of "all current and future inmates . . . who have been diagnosed with chronic hepatitis C and have not received treatment." (Dkt. No. 317). The DOC is and will remain aware

of who these are. The Settlement Agreement provides that the DOC will deliver the agreed Notice to each of these prisoners, and that the Notice documents will also be posted in prison Health Service Areas where they can be reviewed by class members.

This manner of providing notice, which includes the delivery of the agreed Notice Documents to all class members, represents "appropriate notice to the class" and satisfies the requirements of Rule 23, due process, and all other applicable law and rules. *Id.*; *Grunin*, 513 F.2d at 120-122. Accordingly, Plaintiffs respectfully submit that the proposed notice provisions of the Settlement Agreement are adequate and should be approved by the Court.

### III. PLAINTIFF RESPECTFULLY REQUESTS THAT ITS PROPOSED SCHEDULE BE ADOPTED.

In connection with preliminary approval of the Settlement, Lead Class Counsel respectfully propose the schedule set forth below for Settlement-related events. The proposed schedule revolves around the date the Court enters a Preliminary Approval Order and the date of the Final Approval Hearing—which counsel request to be no earlier than 84 calendar days from the date of entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.

| EVENT | PROPOSED TIMING |
|---|---|
| Delivery of Notice documents to class members. (Preliminary Approval Order, ¶ 4) | Beginning no later than 21 days after the date of the entry of the Preliminary Approval Order ("Notice Date") |
| Objecting to the Settlement and/or Lead Class Counsel's application for attorneys' fees and reimbursement of Litigation Expenses. (Preliminary Approval Order, ¶ 7) | No later than 42 calendar days after the date of the entry of the Preliminary Approval Order |
| Filing opening briefs in support of final approval of Settlement Agreement and Lead Class Counsel's application for attorneys' fees and reimbursement of Litigation Expenses. (Preliminary Approval Order, ¶ 12) | No later than 21 calendar days prior to the Final Approval Hearing |
| Filing of reply briefs. (Preliminary Approval Order, ¶ 12) | No later than 7 calendar days prior to the Final Approval |

| | |
|---|---|
| | Hearing |
| Final Approval Hearing.<br>(Preliminary Approval Order, ¶ 2) | No earlier than 84 calendar days from the date of entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter |

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order submitted herewith.

Respectfully submitted,

Dated: _March 15, 2019___

By: _/s/ Andrew H. Mohring_____
Michael V. Ciresi (MN #0016949)
Katie Crosby Lehmann (MN #0257357)
Andrew H. Mohring (MN #0190731)
Esther O. Agbaje (MN#0399145)
Ciresi Conlin LLP
225 South 6th Street, Suite 4600
Minneapolis, MN 55402
Telephone: 612.361.8200
AHM@CiresiConlin.com
EOA@CiresiConlin.com
LEAD COUNSEL FOR PLAINTIFF AND CLASS

Peter J. Nickitas (MN #0212313)
Peter J. Nickitas Law Office, LLC
431 S. 7th St., Suite 2446
Minneapolis, MN 55415-1854
peterjnickitaslawllc@gmail.com

Carl Peter Erlinder (MN #0398765)
Law Office of Carl Peter Erlinder
1043 Grand Avenue, Suite 28
St. Paul, MN 55104
651.271.4616
proferlinder@gmail.com

ATTORNEYS FOR PLAINTIFF AND CLASS